David W. Sanford (DC Bar No. 457933, *Pro Hac Vice* forthcoming)
dsanford@sanfordheisler.com
Aimee Krause Stewart (DC Bar No. 1047933, *Pro Hac Vice* forthcoming)
astewart@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
1666 Connecticut Avenue NW, Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Deborah K. Marcuse (DC Bar No. 99538, *Pro Hac Vice* forthcoming)
dmarcuse@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
400 E. Pratt Street, 8th Floor
Baltimore, MD 21202
Telephone: (410) 834-7420
Facsimile: (410) 834-7425

Ed Chapin (CA Bar No. 53287)
echapin2@sanfordheisler.com
Jill Sullivan Sanford (CA Bar No. 185757)
jsanford@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
655 W. Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4253
Facsimile: (619) 677-4250

*Attorneys for Plaintiffs and Proposed Class*
*[Additional Attorneys Listed After Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, and JANE DOE 3 on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MORRISON & FOERSTER, LLP<br><br>Defendant. | Case No.: _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jane Doe 1, Jane Doe 2, and Jane Doe 3 ("Plaintiffs" or "Class Representatives"), by and through their attorneys, Sanford Heisler Sharp, LLP, bring this action on behalf of themselves and all similarly situated female attorneys against Defendant Morrison & Foerster. Plaintiffs allege, upon knowledge as to themselves and otherwise upon information and belief, that Defendant engages in systemic discrimination based on gender, pregnancy, and maternity, as follows:

I. **INTRODUCTION**

1.      Defendant Morrison & Foerster, LLP ("Defendant," "MoFo," or "the Firm"), is one of the largest law firms in the nation, employing nearly 800 attorneys across the country, with sixteen offices globally. MoFo specializes in a wide range of practice areas, including defense-side labor and employment law, in which the Firm defends clients against individual and class action employment lawsuits, including discrimination actions. The Firm markets itself as a progressive firm with policies and initiatives that champion the advancement of its female employees. However, this is far from the truth.

2.      At MoFo, female attorneys who become pregnant, have children, and take maternity leave are denied opportunities for advancement and higher pay. MoFo's standard operating procedure is to hold back women who take maternity leave, regardless of their performance before or after leave. Continuing to bill out these attorneys at the same higher rate as their peers until the rate is contested, MoFo fails to pay these women on par with their seniority and, by holding them back, creates a lasting stain on their careers.

3.      Faced with effective demotion, mothers are forced to prove their commitment to the Firm in a way no one else is. They risk isolation, work droughts, and even being pushed out of their group if they do not meet the new, and impossibly high, standards that are set for them after they return from leave.

4.      MoFo's policies and practices are emblematic of the "old boys' club" that permeates law firms, suppresses female advancement, and stereotypes women. When female attorneys become mothers, their constrained roles in a workplace culture built on gender stereotypes become even more evident.

5.      Persistent stereotypes about working mothers have serious financial and social consequences for women. Women in law who have children and take maternity leave return to face a

\\

\\

lower volume of work, a lower level of interesting work, and fewer opportunities for advancement.[1] More often than not, their employers are acting on stereotypes they place on working mothers: mothers are uncommitted to their jobs, overwhelmed, or no longer competent. When working mothers are viewed through the warped lens of employer stereotypes, their actual commitment or output becomes irrelevant. Consigned to the "mommy track," pregnant women and mothers are steered away from the opportunities for professional development that would permit them to reach the same levels of pay and promotion as their male peers.

6.      At MoFo, the mommy track is a dead end. Not only are pregnant attorneys and mothers routinely prevented from advancing with their class years, but the Firm forces women to work harder to prove that they are dedicated to their positions and to the Firm, setting unreasonably high expectations for them. Those who avail themselves of the Firm's maternity leave or flexible work schedule policy—which permits attorneys to work part-time to care for their newborn children, purportedly without fear of repercussions for their career—are particularly vulnerable. Adding insult to injury, women are often denied even the chance to meet these expectations when they return from maternity leave and find themselves without sufficient work to meet the billable hour expectations set by the Firm.

7.      Women in the law already face significant challenges based on their gender. Women are regularly excluded from the upper echelons of law firms country-wide, and continue to encounter the "glass ceiling" at large law firms. A recent American Bar Association study found that at law firms nationwide, female attorneys comprise about 45% of law firm associates, but only 21.5% of partners and 18% of equity partners.[2] Men also far outpace women in their representation on firm-wide decision-making bodies.[3] Female attorneys across the board are paid significantly less than their male counterparts. A 2017 survey by the National Association for Women Lawyers found that the typical female attorney earns less than a typical male attorney at the same level, from lower ranks of associates all the way up to

---

[1] *See, e.g.*, Marc Tracy, *What Happens to Pregnant Women at a Big Law Firm*, New Republic (Jul. 25, 2013), https://newrepublic.com/article/114026/why-big-law-firms-lag-behind-parental-leave.

[2] Comm'n on Women in the Profession, Am. Bar Ass'n, *A Current Glance at Women in the Law 2017* (January 2017), http://www.americanbar.org/groups/women/resources/statistics.html

[3] Na'l Ass'n of Women Lawyers, *Annual Survey on Promotion and Retention of Women in Law Firms* (2017), http://www.nawl.org/p/cm/ld/fid=1163.

CASE NO. _____ – CLASS AND COLLECTIVE ACTION COMPLAINT

equity partners.[4] Even for associates, the median man makes on average $10,000 more per year than the median woman.[5]

8.     At MoFo, pregnancy and maternity only amplify the costs of doing business as a woman. MoFo subjects female attorneys to discrimination based on their gender, pregnancy, and maternity. The Firm has subjected Plaintiffs and other similarly situated employees to (a) unwarranted suppression of pay, professional development, and promotions after taking federal and state protected leave; (b) disparate treatment based on pregnancy and/or maternity; (c) discriminatory career and development opportunities and promotion denials; (d) discriminatory policies and procedures implemented by a male-dominated leadership that have a disparate impact on female attorneys, especially pregnant women and mothers; (e) lower pay for substantially equal work requiring equal skill, effort, and responsibility; and (f) other adverse terms and conditions of employment.

9.     Upon information and belief, MoFo has long been aware of these problems but has failed to take remedial measures to prevent or correct them.

10.     To remedy the gender and pregnancy discrimination they witnessed and experienced at the Firm, Plaintiffs and the class are seeking all legal and equitable relief available under state and federal anti-discrimination, equal pay, and retaliation statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended; the Family and Medical Leave Act, 29 U.S.C § 2601 *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.*; the California Equal Pay Act, Cal. Lab. Code § 1197.5; the California Fair Employment and Housing Act, ("FEHA"), Cal. Gov. Code § 12940 *et seq.*; and the California Family Rights Act, Cal. Gov. Code § 12945.2. Plaintiffs seek monetary and injunctive relief to rectify the Firm's discriminatory practices and policies and to ensure that, going forward, the Firm abides by the law.

II.     **THE PARTIES**

11.     **Plaintiff Jane Doe 1 is** a woman who, at all times relevant to this action, lived and worked in California. At present, Jane Doe 1 is an attorney employed in one of Defendant's California offices.

\\

---

[4] *Id.*

[5] *Id.*

12. **Plaintiff Jane Doe 2** is a woman who, at all times relevant to this action, lived and worked in California. At present, Jane Doe 2 is an attorney employed in one of Defendant's California offices.

13. **Plaintiff Jane Doe 3** is a woman who, at all times relevant to this action, lived and worked in California. At present, Jane Doe 3 is an attorney employed in one of Defendant's California offices.

14. **Defendant Morrison & Foerster** is a law firm with offices worldwide, including four offices in California. The Firm's California offices are located in Los Angeles, Palo Alto, San Diego, and San Francisco. According to its web site, Morrison & Foerster employs over 400 attorneys in California. During all relevant times, Morrison & Foerster was Plaintiffs' employer within the meaning of all applicable federal and state statutes.

### III.    JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' state law claims. The claims constitute the same case and controversy raised in the claims under federal law.

16. The Northern District of California has personal jurisdiction over the Firm because the Firm has headquarters in and transacts significant business in the State of California and in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because Defendant conducts substantial business in the Northern District of California, and because, upon information and belief, unlawful employment practices originated in this District.

18. Plaintiffs duly filed their administrative charges before the California Department of Fair Employment and Housing ("DFEH") and the U.S. Equal Employment Opportunity Commission ("EEOC") on April 24, 2018, and are currently perfecting their right to sue; upon receipt of Notices of Case Closure and Right to Sue they will serve such notices on opposing counsel.

### IV.    FACTUAL ALLEGATIONS

#### A.  What Happened When She Became a Mommy: MoFo Routinely Holds Back Women Who Are Pregnant, Have Children, and Take Maternity Leave

19. Pregnant women and mothers, even those attorneys who are considered the "best," cannot last long at MoFo. Indeed, these women are strikingly absent from the upper ranks of management. To
\\

---

understand what happens to high-performing women at the Firm, one need only refer to the words of one partner: "She became a mommy."

20.    The Firm boasts of its "work-life programs" for employees, including parental and adoption leave, parental transition time upon returning from leave, backup caregiving, flexible work options, and a reduced hours program. Through these benefits, the Firm ostensibly allows, and even encourages, its female employees to take up to six months of maternity leave. Indeed, MoFo recently received recognition for offering the greatest number of weeks for paid primary caregiver leave amongst big law firms.[6]

21.    However, MoFo remained absent from Yale Law Women's Top Ten Family-Friendly Firms list, and rightly so. The reality for female attorneys, especially for those who have or wish to have children, is far from the Firm's family-friendly façade. MoFo may allow maternity leave on paper, but when women take advantage of the Firm's "generous" maternity leave, or notify the Firm that they have children, they are routinely held back and set up to fail.

22.    Morrison & Foerster discriminates against Plaintiffs and other female attorneys, especially pregnant attorneys and women with children, with respect to compensation and promotions through the use of common policies and procedures. When a female attorney at MoFo is pregnant, has children, or takes maternity leave, the Firm's standard operating procedure is to hold her back from advancement with her peers, denying her opportunities for greater pay and limiting her progression. This Firm practice reinforces stereotypes that mothers are worse at and less committed to their jobs, and sets in motion a chain of events that leads to the dead end of the mommy track: when female attorneys become mothers, the Firm demands they prove their commitment by working more hours; when they seek additional work, they are denied assignments because of stereotype-driven perceptions that they lack commitment to their jobs.

23.    The stereotype becomes self-reinforcing, and women become stuck. They now face a Hobson's choice: pay a motherhood penalty in the form of slower rates of progression and correspondingly
\\

---

[6] Yale Law Women, *The Top Ten Female & Family Friendly Firms Lists of 2018* (2018), http://yalelawwomen.org/wp-content/uploads/2012/11/2018-FFFFI-Report_Final-2.pdf. Notably, the survey includes no data on how women are paid as compared to their male peers.

lesser compensation, thus accepting lower pay for substantially equal work requiring equal skill, effort, and responsibility as their male colleagues; or, in the alternative, resign from their roles altogether.

24.     In some cases, female attorneys are not even given the courtesy of receiving prior notification that they will be held back or not promoted. Only through checking the Firm's online portal do they find the news: despite meeting expectations, or even stellar performance, they will not be progressing with their peers.

25.     In one California office alone, Plaintiffs are aware that, since 2013, at least seven female attorneys have been held back upon their return from maternity leave.

26.     These policies disparately impact the Firm's female attorneys, who represent an increasingly lower percentage of each tier of the Firm as title and compensation rise. Because the Firm does not progress women, especially pregnant attorneys and women with children, at rates equal to those of similarly situated men, there is a dwindling proportion of women at each successive level of the Firm's hierarchy. For example, while women represent approximately 46% of the Firm's associates, only 22% of MoFo's 248 partners are women.[7]

27.     Upon information and belief, men who become fathers or take advantage of the Firm's paternity leave policy do not face similar automatic disqualification from advancement and higher pay.

**B.  The Firm's Male-Dominated Hierarchy Sets Policies that Disparately Impact Female Attorneys, in Particular Pregnant Women and Women with Children**

28.     Men dominate MoFo's leadership and management. Out of the six attorneys on MoFo's leadership team, only one woman holds a seat as a Managing Partner. As noted above, while women represent approximately 46% of the Firm's Associates, only 22% of MoFo's 248 Partners are female. MoFo's own website acknowledges that only 27% of the Partner Compensation Committee and 39% of the Board of Directors are women. The disproportionately large representation of men in leadership roles at MoFo facilitates discrimination against women, especially pregnant women and women with children, throughout the Firm.

\\

\\

---

[7] Firm demographics are reflected as of December 31, 2016.

29.     Upon information and belief, the overrepresentation of men and employees who are not pregnant or mothers is both the source and a product of continuing systemic discrimination against female attorneys, especially those who are pregnant or have children.

30.     Promotion and compensation decisions at Morrison & Foerster are controlled by a practice group's chair or head partner. In the Firm's San Francisco office alone, less than one third of the partners are female. Similarly, in the Los Angeles office, there are only nine female partners out of a total of 24. In the Palo Alto office, there are eight female partners out of 28; in San Diego, there are only three female partners out of 13. The predominantly male leadership facilitates favoritism towards men and women who are not pregnant or have no children in promotions and other opportunities, regardless of their qualifications. In some offices, it is also not uncommon to see an entire practice group consisting primarily of female attorneys with a male chair or head who controls all compensation and promotion decisions for his team.

31.     MoFo discriminates against women by permitting its predominantly male leadership to favor men overtly in pay, promotions, and other opportunities regardless of their qualifications and to otherwise discriminate against women, pregnant women, and mothers. MoFo leadership fosters or condones a Firm culture that marginalizes, demeans, and undervalues women and mothers.

32.     Upon information and belief, Morrison & Foerster's leadership is aware of the Firm's inequitable promotion, pay, job assignment, and other practices but have taken no steps to remedy the root causes of the disparity. Defendant is aware of the demographics of its workforce, including the underrepresentation of women in different levels and functions. Despite several initiatives the Firm has taken in the recent past to address this disparity, the problem still persists at Morrison & Foerster due to its culture and common practices and policies.

33.     Upon information and belief, Defendant is aware of its own misconduct, but it has failed to rectify the discrimination.

**C. The Firm's Common Business Development and Job Assignment Practices Disfavor Women, Particularly Pregnant Women and Mothers**

34.     Female attorneys throughout the Firm are given less substantive and less desirable work than their male counterparts. Prominent members of Morrison & Foerster's predominantly male leadership

have shown a preference for working with other male attorneys. Thus, male attorneys, non-pregnant women and women without children are given significantly more access to partners at any given time, allowing them to thrive under a partner's close tutelage and to stay on track to attain partnership themselves. This common practice ensures that women are underrepresented in more senior or leadership roles, while perpetuating the "old boys' club" culture at the Firm.

35.     The lack of substantive work coupled with higher expectations together make progression and promotion extremely difficult for women. After returning from maternity leave, female attorneys at the Firm are punished and held to a higher standard than their male counterparts.

**V.     PLAINTIFF JANE DOE 1**

36.     Plaintiff Jane Doe 1 currently works in one of Morrison & Foerster's California offices.

37.     Plaintiff Jane Doe 1 has a B.A. and a J.D., and is admitted to the California bar. Jane Doe 1 joined MoFo as a mid-level associate after several years of practicing law elsewhere.

38.     Jane Doe 1 excelled at her duties at the Firm.

**A.  Becoming a Mommy: Once She Returned From Maternity Leave, MoFo Took Adverse Employment Action Against Plaintiff Jane Doe 1**

39.     Knowing that the Firm permitted, and believing that it encouraged, its female employees to take maternity leave, Plaintiff Jane Doe 1 went on maternity leave during the statutory period about two years after she joined the Firm.

40.     On January 9, 2018, Jane Doe 1 discovered through the Firm's online portal for employees that her salary no longer matched up to her class year; she had not been promoted with her peers, nor had she received the corresponding salary and base pay increase that should have accompanied her anticipated promotion. Jane Doe 1's supervisors had given her no indication or notice that the Firm would not progress her. Jane Doe 1 had no history of performance issues, nor had she ever been held back previously during her time at MoFo.

41.     Although the Firm decided to hold back Plaintiff Jane Doe 1, MoFo increased her external billing rate as if she had been promoted, while not increasing her compensation internally. This was only rectified after Jane Doe 1 raised it with upper management.

\\

42.     Upon information and belief, male colleagues, including two male eighth year associates in the same office, were advanced with Jane Doe 1's class year and received the corresponding pay increase. Upon information and belief, the key difference between the class members who progressed and Jane Doe 1 was Ms. Doe's status as a woman who had become pregnant and taken leave.

**B.   "Parents Tend Not to Do Well In This Group:" MoFo Discriminated Against Plaintiff Jane Doe 1 Due to Her Pregnancy, Leave-Taking and Maternity**

43.     The Firm's decision to hold back Jane Doe 1 after she returned from maternity leave was not the first time the Firm discriminated against her due to her gender and pregnancy or her status as a mother.

44.     On Plaintiff Jane Doe 1's first day at the Firm, one of her now supervising partners ("Partner 1") told her: "We didn't realize you were a parent when we extended you the offer," implying that Jane Doe 1 had concealed her motherhood during her interview process with the Firm. In fact, although it was not required as part of the hiring process, Jane Doe 1 had been clear with the Firm's Human Resources department that she was interviewing during her maternity leave and had told three Partners at the Firm that she had a child. Partner 1's comment made it clear from the start that Jane Doe 1 would face obstacles at the Firm because she was a mother, and only became clearer when the same partner warned: **"parents tend not to do well in this group."** Ironically, Partner 1 was appointed by the Firm to be Jane Doe 1's partner mentor.

45.     Partner 1 continued to show preferential treatment toward attorneys without children and routinely denied Jane Doe 1 opportunities to complete substantive work. For example, Partner 1 transitioned Jane Doe 1 off a deal and replaced her with another female associate who was not pregnant and did not have children, despite Jane Doe 1's excellent performance.

46.     This kind of discriminatory conduct based on Plaintiff Jane Doe 1's gender, pregnancy, and maternity was not limited to Partner 1. During the Firm's holiday party, another supervising partner ("Partner 2") told Plaintiff Jane Doe 1 about a female associate who was "one of the best he had ever worked with." When Jane Doe 1 asked him what the attorney was doing now, he said that "she became a mommy."

\\

**C.   MoFo Unfairly Evaluated Jane Doe 1's Performance Because of Her Gender, Pregnancy and Maternity**

47.     When she returned from maternity leave, Jane Doe 1 repeatedly sought to discuss the ongoing deals and status of her practice group with Partner 1, but the Firm refused to discuss this with her.

48.     The day she learned that her salary no longer matched up with her class year, January 9, 2018, Jane Doe 1 called Partner 1 to seek clarification about her promotion status.   Partner 1 told Jane Doe 1 that she would not be progressing; instructed her to speak with Partner 2 during her performance review who "had a plan for her"; and faulted Jane Doe 1 for being on maternity leave when the performance reviews were conducted. Partner 1 ended the call by terminating their mentor-mentee relationship, and also informed Jane Doe 1 that Jane Doe 1 should no longer consider her a sponsoring Partner and to direct all future conversations to Partner 2.

49.     Jane Doe 1 complained to a representative of the Firm's Attorney Development Group about the Firm's decision to hold her back one year and the termination of her mentor-mentee relationship.

50.     The next day, Partner 1 told Plaintiff Jane Doe 1 that she was instructed to tell Jane Doe 1 that the decision to hold Jane Doe 1 back was not "performance-based," and referred Jane Doe 1 to Attorney Development for any further questions.

**D.   "Ramp Up" Your Efforts: Following Her Maternity Leave, MoFo Encouraged Jane Doe 1 to Leave the Firm**

51.     Jane Doe 1 met with Partner 2 in person to conduct her performance review, with Partner 1 in attendance telephonically. In that review, Jane Doe 1 was told that she had been making good headway before her maternity leave, but would now, post-leave, have to "ramp up" her efforts. She was then advised to bill at least 2000 "substantive" hours before the end of 2018 —an unrealistic expectation considering that business in the group in their office had been slow.

52.     In response to this unrealistic expectation, Jane Doe 1 asked for more work to ensure that she would be able to meet her higher billable hours target. Partner 1 then chided Jane Doe 1, indicating that she should "think of the team."

\\

53.     Jane Doe 1 has not received any substantive assignments from either of her supervising partners that would allow her to meet her hourly minimum requirements. Jane Doe 1's supervising partners instructed her to seek work from other partners but did not make introductions or help Jane Doe 1 obtain assignments. Jane Doe 1 reached out herself to seven different attorneys in five different MoFo offices, but to no avail.

54.     Following Jane Doe 1's review, she reached out to the head of Attorney Development, who acknowledged that she was in a difficult position between Partner 1, who unambiguously cut her off from the group, and Partner 2, who requested that she bill 2000 hours without providing a viable means for her to do so. She also spoke with another member of Attorney Development, who told Jane Doe multiple times that, as a senior associate, she needed a plan to advance within the Firm, and acknowledged that the comments from her supervising partners indicated there was no such plan for her.

55.     Jane Doe 1 has sought, but MoFo has failed to provide, any substantive guidance or development plan to meet the hours requirements imposed upon her in light of the dearth of work opportunities she faces. Instead, Jane Doe 1 is being pushed out.

**VI.    PLAINTIFF JANE DOE 2**

56.     Plaintiff Jane Doe 2 currently works in one of Morrison & Foerster's California offices.

57.     Plaintiff Jane Doe 2 has a B.S. and a J.D., and is admitted to the California bar. Prior to law school, she had experience in the corporate sector and as a legal intern.

58.     After working at MoFo as a summer associate during law school, Jane Doe 2 was offered a permanent position and joined the Firm full-time as an associate.

59.     Since joining the Firm, Jane Doe 2 has excelled in her job duties at MoFo. She has been a committed attorney and involved in many firm initiatives.

**A.  Becoming a Mommy: Once She Returned From Maternity Leave, MoFo Took Adverse Employment Action Against Plaintiff Jane Doe 2**

60.     Knowing that the Firm permitted, and believing that it encouraged, its female employees to take maternity leave, Plaintiff Jane Doe 2 went on maternity leave during the statutory period.

61.     On January 9, 2018, Jane Doe 2 discovered through the Firm's online portal for employees that her salary no longer matched up to her class year; she had not been promoted with her peers, nor had

she received the corresponding salary and base pay increase that should have accompanied her anticipated promotion. Jane Doe 2's supervisors had given her no indication or notice that the Firm would not progress her. Jane Doe 2 had no history of performance issues nor had she ever been held back previously during her time at MoFo.

62.     Although the Firm decided to hold back Plaintiff Jane Doe 2, MoFo increased her external billing rate as if she had been promoted, while not increasing her compensation internally. This was only rectified after Jane Doe 2's colleagues, Jane Doe 1 and Jane Doe 3, raised the issue with upper management.

63.     Upon information and belief, within Jane Doe 2's office alone, four male colleagues in the same office were advanced with Jane Doe 2's class year and received the corresponding pay increase. Upon information and belief, the key difference between the male associates who progressed and Jane Doe 2 was Ms. Doe's status as a woman who had become pregnant and taken leave.

**B.  MoFo Unfairly Evaluated Plaintiff Jane Doe 2's Performance Based on Her Gender, Pregnancy and Maternity**

64.     After learning through the Firm's online portal that she would not be advanced with her peers, Jane Doe 2 spoke to a representative of the Firm's Attorney Development Group about the Firm's decision to hold her back one year and in the manner in which she had discovered the decision.

65.     Jane Doe 2's supervising partner ("Partner 3") stated during her review that there was some debate about "how to deal with [Jane Doe 2's] leave of absence" and indicated that he would have held her back regardless of her performance.

66.     Throughout her tenure at MoFo, Jane Doe 2 has never had problems with her performance. In fact, she has been progressed and received a bonus every year since starting her employment at the Firm, until she took maternity leave.

**C.  The Firm Discriminated Against Jane Doe 2 Due to Her Gender, Favoring a More Junior Male Associate in Work and Development Opportunities**

67.     The Firm's decision not to progress Jane Doe 2 after she returned from her maternity leave was not the first time it discriminated against her due to her gender, pregnancy, or maternity.

\\

68.     Earlier in her tenure, Partner 3 encouraged Jane Doe 2 and other attorneys in the practice group to "wine and dine" a young male associate, a practice usually reserved for more senior attorneys. Once the male associate was hired, Partner 3 began working primarily with him.

69.     Partner 3 prefers to work with male attorneys. This preference has had a discriminatory impact on the women in Jane Doe 2's practice group, who have had fewer opportunities for substantive work, client contact, and business development opportunities. As an example, male associates in the practice group have been flown to New York to meet and work with prominent partners and clients; MoFo has not offered the same experience to female associates in the group, even those more senior than the male associates in question.

**VII.    PLAINTIFF JANE DOE 3**

70.     Plaintiff Jane Doe 3 currently works in one of Morrison & Foerster's California offices.

71.     Plaintiff Jane Doe 3 has a B.A. and a J.D., and is admitted to the California bar. Prior to joining the Firm, Jane Doe 3 had consulting experience.

72.     Jane Doe 3 joined MoFo as an associate.

73.     Since joining the Firm, Jane Doe 3 has excelled in her job duties.

**A.     Becoming a Mommy: Once She Returned from Maternity Leave, MoFo Took Adverse Employment Action Against Plaintiff Jane Doe**

74.     Knowing that the Firm permitted, and believing that it encouraged, its female employees to take maternity leave, Plaintiff Jane Doe 3 went on maternity leave during the statutory period.

75.     On January 9, 2018, Jane Doe 3 discovered through the Firm's online portal for employees that her salary no longer matched up to her class year; she had not been promoted with her peers, nor had she received the corresponding salary and base pay increase that should have accompanied her anticipated promotion. Jane Doe 3's supervisors had given her no indication or notice that the Firm would not progress her. Jane Doe 3 had no history of performance issues nor had she ever been held back previously during her time at MoFo.

76.     Although Firm decided to hold back Plaintiff Jane Doe 3 from progressing, MoFo increased her external billing rate as if she had been promoted, while not increasing her compensation internally. This was only rectified after Jane Doe 3 raised it with upper management.

77.     Upon information and belief, male colleagues, including a male associate in the same office, were advanced with Jane Doe 3's class year and received the corresponding pay increase. Upon information and belief, the key difference between the male associate who progressed and Jane Doe 3 was Ms. Doe's status as a woman who had become pregnant and taken leave.

**B.     "Work Really Hard to Prove That You Are Committed:" Following Plaintiff Jane Doe 3's Maternity Leave, the Firm Stereotyped Her and Subjected Her to Higher Expectations Due to Her Pregnancy and Maternity**

78.     The Firm's decision to hold Jane Doe 3 back was not the first time the Firm discriminated against her due to her gender, pregnancy or maternity.

79.     Before she had returned from maternity leave, Jane Doe 3 sought a flexible work schedule in which she would return to her position full-time but would work from home part of the week. Although the Firm nominally "offers" new mothers flexible schedules for up to a year following their return from maternity leave, Jane Doe 3's proposal was rejected. It was made clear to her that she had to choose one of only three options: 1) return to the Firm full-time in the office; 2) work part-time at a fraction of her salary; or 3) quit.

80.     Jane Doe 3's supervising partner ("Partner 3") suggested that if Jane Doe 3 chose to go part-time, it would be interpreted as a lack of interest in her career and in becoming partner, especially in combination with "being out," a reference to her taking protected maternity leave. Partner 3 went on to say that she would have to "work really hard to prove that [she was] committed and to get the best, most interesting work." He told her it was "difficult to progress if you are on part-time after being out."

**C.     You Cannot Progress Because of Your Leave: The Firm Unfairly Evaluated Jane Doe 3's Performance Because of Her Gender, Pregnancy and Maternity**

81.     During her January 11, 2018 performance review, Partner 3 made it clear to Jane Doe 3 that MoFo did not promote her because she had become a mother. Partner 3 noted that Jane Doe 3 had not progressed because she had taken leave.

82.     Jane Doe 3 billed nearly 100 hours more than the minimum needed to be considered for progression following maternity leave. Even though Jane Doe 3 took maternity leave, she performed better in every metric than she had the prior year, a year during which she received a promotion.

83. Jane Doe 3's written review contained stellar feedback from other partners and associates with whom she worked throughout 2017.

84. Upon information and belief, male colleagues who have taken leave or had children have not been held back from progression.

**D. The Firm Discriminated Against Jane Doe 3 Due to Her Gender, Favoring a Similarly Situated Male Colleague in Work and Development Opportunities**

85. During Jane Doe 3's tenure at the Firm, even prior to her maternity leave, Partner 3 had showed preferential treatment towards her similarly situated male colleague, who is repeatedly assigned more substantive work than Jane Doe 3 and her other female peers. In stark contrast, Jane Doe 3 has not had nearly the same degree of access to MoFo senior partners and management during her time with the Firm.

86. The inequitable assignment of substantive work and access to influential partners has negatively impacted Jane Doe 3 and other female attorneys who are pregnant or have children. The Firm's favoritism towards male attorneys has impeded Jane Doe 3's future at the Firm and has diminished her chances of becoming a partner.

## CLASS AND COLLECTIVE ALLEGATIONS

87. Plaintiffs incorporate allegations from the previous paragraphs of the Complaint alleging class-based discrimination against female attorneys and mothers.

88. Plaintiffs represent a class consisting of all female attorneys at the Firm who have or will be employed by MoFo in the United States from June 28, 2017 to the date of judgment, as well as subclasses of all female attorneys who have been or will be employed by MoFo: (a) in the United States, and who have been or will become pregnant or a mother, and/or take maternity leave between June 28, 2017 and the date of judgment (the "pregnancy class"); (b) in California from April 24, 2017 to the date of judgment (the "California subclass"); (c) in California and who have been or will become pregnant or a mother, and/or take maternity leave between April 24, 2017 and the date of judgment (the "California pregnancy class"); (d) in California from April 30, 2015 to the date of judgment (the "CEPA subclass"); and (e) in California from April 30, 2014 to the date judgment (the "California Unfair Competition" subclass).

89.     Plaintiffs also seek to represent a collective of female attorneys employed by MoFo from April 2015 to the date of judgment (a) who were not compensated equally to male attorneys who had substantially similar job classifications, functions, titles, and/or duties, (b) who were not compensated equally to male attorneys who performed substantially similar work and/or (c) who were denied equal compensation to similarly situated male attorneys by being held back to lower pay levels than male attorneys who performed substantially similar work and had substantially similar experience.

## VIII.    CLASS ALLEGATIONS UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

90.     MoFo tolerates and cultivates a work environment that discriminates against female attorneys, in particular those who are pregnant or take maternity leave.

91.     Female attorneys, pregnant attorneys, and mothers are subjected to continuing unlawful disparate treatment in pay and promotions. Moreover, the Firm's policies and procedures have an ongoing disparate impact on female attorneys and mothers.

92.     The Firm maintains policies and methods of setting compensation that promote gender-based inequities in compensation, and policies and methods for promotion that lead to gender-based unequal promotion. The Firm's discriminatory policies, practices, and procedures include a system where women who become pregnant and take maternity leave are denied opportunities for advancement in the Firm's hierarchy, as well as the higher pay afforded to their male colleagues. Specifically, the Firm maintains a pay system that includes a lock-step pay scale, under which women who are pregnant or take maternity leave are routinely held back, resulting in pay differentials between men and women and less frequent promotions for mothers. MoFo circumvents the pay scale by holding mothers back a year and this results in lower pay for women who continue to do the same work as their male colleagues with similar levels of experience.

93.     The Firm's nationwide practices, policies, and procedures result in lower compensation for female attorneys than similarly situated male attorneys.

94.     In general, the policies, practices, and procedures that govern the pay and promotions of female attorneys lack the sufficient standards, quality controls, implementation metrics, transparency, and oversight to ensure equal opportunity at the Firm.

95.     Because the Firm's management does not provide sufficient oversight or safety measures to protect against intentional and overt discrimination or the disparate impact of facially neutral policies and procedures, female attorneys suffering from discrimination are without recourse. Whatever complaint and compliance policies may exist lack meaningful controls, standards, implementation metrics, and means of redress such that upper management may ignore, disregard, minimize, cover up, mishandle or otherwise fail to properly respond to evidence of discrimination in the workplace.

96.     The Firm's policies, practices, and procedures are not valid, job-related, or justified by business necessity. Alternative, objective, and more valid procedures are available to the Firm that would avoid such a disparate impact on female attorneys. The Firm has failed or refused to use such alternative procedures.

97.     Upon information and belief, the Firm's discriminatory employment practices, policies, and procedures are centrally established and implemented at the highest levels of the Firm.

98.     Upon information and belief, the Firm's employment policies, practices, and procedures are not unique or limited to any office or practice group; rather, they apply uniformly and systematically to Attorneys throughout the Firm, occurring as a pattern and practice throughout all office locations and practice groups.

99.     Because of the Firm's systemic pattern and practice of gender and pregnancy discrimination, the Plaintiffs and members of the proposed Class have suffered harm including lost compensation, back pay, employment benefits, and emotional distress.

100.    The Plaintiffs and members of the Class have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs and members of the Class have suffered and are now suffering irreparable injury from the Firm's ongoing, unlawful policies, practices, and procedures set forth herein, and they will continue to suffer unless those policies, practices, and procedures are enjoined by this Court.

**A.  Rule 23 Class Definition**

101.    The proposed Rule 23 Class consists of all female attorneys who are, have been, or will be employed by the Firm in the United States from June 28, 2017 until the date of judgment. Upon information and belief, there are more than 40 members of the proposed Class.

102.   Plaintiffs also seek to represent subclasses of female attorneys who are, have been or will be employed at the Firm in: (a) in the United States, and who have been or will become pregnant or a mother, and/or take maternity leave between June 28, 2017 and the date of judgment (the "pregnancy class"); (b) in California from April 24, 2017 to the date of judgment (the "California subclass"); (c) in California and who have been or will become pregnant or a mother, and/or take maternity leave between April 24, 2017 and the date of judgment (the "California pregnancy class"); (d) in California from April 30, 2015 to the date of judgment (the "CEPA subclass"); and (e) in California from April 30, 2014 to the date judgment (the "California Unfair Competition" subclass). Upon information and belief, there are more than 40 members of each of these subclasses.

103.   Plaintiffs are each members of the Class and subclasses.

104.   The systemic gender and pregnancy discrimination described in this Complaint has been, and is, continuing in nature.

105.   Plaintiffs reserve the right to amend the class definitions based on discovery or legal developments.

**B.  Efficiency of Class Prosecution of Class Claims**

106.   Certification of the proposed classes and sub-classes is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Plaintiffs and the Class.

107.   The individual claims of Plaintiffs, as Class Representatives, require resolution of the common questions concerning whether the Firm has engaged in a pattern and/or practice of gender discrimination against its female attorneys, particularly against women who are pregnant, or have children, and whether its policies or practices have an adverse effect on the Class. Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers, and working conditions and in the lives, careers, and working conditions of the Class members, and to prevent the Firm's continued gender discrimination.

108.   The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has on them individually and on female attorneys generally. MoFo caused Plaintiffs' injuries through its discriminatory practices, policies, and procedures and through the disparate

impact its policies, practices, and procedures have on female and/or pregnant attorneys. These injuries are redressable through systemic relief, such as equitable and injunctive relief and other remedies sought in this action. In addition, proper relief for Plaintiffs' individual discrimination claims can include promotion and increased compensation. Plaintiffs have a personal interest in the policies, practices, and procedures implemented at the Firm.

109.   To obtain relief for themselves and the Class members, the Class Representatives will first establish the existence of systemic gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to relitigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

110.   Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the Class members and the Firm.

**C.  Numerosity and Impracticability of Joinder**

111.   The Class that the Class Representatives seek to represent is so numerous that joinder of all members is impracticable. In addition, joinder is impractical as the attorneys are physically based in different locations throughout the United States and California. Fear of retaliation on the part of the Firm's female attorneys is also likely to undermine the possibility of joinder.

**D.  Common Questions of Law and Fact**

112.   The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to their individual claims and those of the Class they seek to represent.

113.   The common issues of law include, *inter alia*: (a) whether MoFo has engaged in unlawful, systemic gender discrimination in its work assignment, promotion, and compensation policies, practices, and procedures; (b) whether the failure to institute adequate standards, quality controls, implementation metrics or oversight of those policies, practices, and procedures violates Title VII, the FEHA, or the CEPA, and/or other statutes; (c) whether the lack of transparency and opportunities for redress in those systems violates Title VII, the FEHA, the CEPA, and/or other statutes; (d) a determination of the proper standard for proving whether MoFo's employment policies had a disparate impact on the Class and Sub-

Classes; (e) a determination of the proper standards for proving a pattern or practice of discrimination by the Firm against its female attorneys, and under the disparate treatment theory of liability for attorneys; (f) whether MoFo's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates Title VII and other statutes; and (g) whether the Firm is liable for continuing systemic violations of Title VII and other statutes.

114.    The common questions of fact include, *inter alia*: whether the Firm has: (a) intentionally held back female attorneys who have children on its pay scale because they took maternity leave; (b) used a compensation system that lacks appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (c) relied on compensation criteria that perpetuate discrimination, such as basing salaries on prior salaries or on whether that person was pregnant or took maternity leave; (d) compensated female attorneys less than similarly-situated male attorneys in base salary, bonuses, and/or promotions; (e) allocated Firm resources, including mentoring time, billable assignments, and development opportunities in ways that undermined and/or frustrated the work and the advancement of female attorneys, especially those who are pregnant or have children; (f) minimized, ignored, or covered-up evidence of gender and pregnancy discrimination in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination; (g) cultivated an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints of gender discrimination; and (h) otherwise discriminated against female attorneys, especially those who are pregnant or have children, in the terms and conditions of employment.

115.    Upon information and belief, the Firm's employment policies, practices, and procedures are not unique or limited to any office or practice group; rather, they apply uniformly and systematically to attorneys throughout the Firm, occurring as a pattern and practice throughout all office locations and practice groups. They thus affect the Class Representatives and Class members in the same ways regardless of the office location or practice group in which they work. Discrimination in compensation occurs as a pattern and practice throughout the Firm's offices and practice groups.

**E.  Typicality of Claims and Relief Sought**

116.    The Class Representatives' claims are typical of the claims of the proposed Class. The

Class Representatives possess and assert each of the claims they assert on behalf of the proposed Class. They pursue the same factual and legal theories and seek similar relief.

117.    Like members of the proposed Class and Sub-Classes, the Class Representatives are female attorneys who were employees of the Firm during the liability period and who were pregnant, had children, and took maternity leave during the liability period.

118.    Differential treatment between male and female attorneys occurs as a pattern and practice throughout all office and practice groups of the Firm. The Firm discriminates against female attorneys, especially those who are pregnant or have children, in compensation and promotion and subjects them to a work culture predominated by men. This differential treatment has affected the Class Representatives and the Class members in the same or similar ways.

119.    The Firm has failed to respond adequately or appropriately to evidence and complaints of discrimination. The Class Representatives and Class members have been affected in the same or similar ways by the Firm's failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

120.    The Firm has failed to create adequate procedures to ensure its executive leadership complies with equal employment opportunity laws regarding each of the policies, practices, and procedures referenced in this Complaint, and the Firm has failed to discipline adequately others in Firm leadership when they violate anti-discrimination laws. These failures have affected the Class Representatives and the Class members in the same or similar ways.

121.    The relief necessary to remedy the claims of the Class Representatives is the same as that necessary to remedy the claims of the proposed Class members.

122.    The Class Representative seeks the following relief for their individual claims and for the claims of the members of the proposed Classes: (a) a declaratory judgment that the Firm has engaged in systemic gender and pregnancy discrimination against female attorneys by (i) denying promotions to female attorneys who are pregnant, have children, or take maternity leave and on the basis of gender, (ii) paying female attorneys and those who are pregnant, have children, or take maternity leave less than their male counterparts in base compensation and/or bonuses, in a way that is not consistent with a legitimate lock-step system, (iii) failing to investigate or respond to evidence of discrimination in the workplace

against female attorneys, especially those who are pregnant or have children, and (iv) otherwise exposing female attorneys, especially those who are pregnant or have children, to differential treatment; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief that effects a restructuring of the Firm's policies, practices, and procedures for promoting and awarding compensation to female attorneys; (d) equitable relief that effects a restructuring of the Firm compensation system so female attorneys receive the compensation they would have been paid in the absence of the Firm's discrimination; (e) back pay, front pay, reinstatement, and other equitable remedies necessary to make female attorneys whole from the Firm's past discrimination; (f) compensatory damages; (g) punitive damages to deter the Firm from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs, and expenses.

## F.  Adequacy of Representation

123.    The Class Representatives' interests are coextensive with those of the members of the proposed Class. The Class Representatives seek to remedy the Firm's discriminatory policies, practices, and procedures so female attorneys, and those who are pregnant, have children, or take maternity leave, will not receive disparate pay and differential treatment.

124.    The Class Representatives are willing and able to represent the proposed Class fairly and vigorously as they pursue their similar individual claims in this action.

125.    The Class Representatives have retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representatives and their counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

## G.  Requirements of Rule 23(b)(2)

126.    The Firm has acted on grounds generally applicable to the Class Representatives and the proposed Class by adopting and following systemic policies, practices, and procedures that discriminate on the basis of gender, pregnancy, and maternity. Gender discrimination is the Firm's standard operating procedure rather than a sporadic occurrence.

127.    The Firm has also acted or refused to act on grounds generally applicable to the Class Representatives and the proposed Class by, *inter alia*: (a) using a promotion system that systematically intentionally, or knowingly disadvantages women, pregnant women, and mothers; (b) systematically, intentionally, or knowingly denying promotions for women, pregnant women, and mothers in favor of similarly situated males; (c) using a compensation system and promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (d) compensating women, pregnant women, and mothers less than similarly situated males in salary and/or bonuses; (e) systematically, intentionally, or knowingly compensating women, pregnant women, and mothers less than similarly situated male attorneys, including less base salary and/or bonus pay; (f) minimizing, ignoring, or covering up evidence of gender, pregnancy, and maternity discrimination in the workplace and/or otherwise mishandling the investigation of and response to complaints of discrimination; (g) cultivating an indifference to evidence of discrimination in the workplace or otherwise minimizing, ignoring, mishandling, or covering up evidence of or complaints of gender, pregnancy, and maternity discrimination; and (h) otherwise discriminating against women, pregnant women, and mothers in the terms and conditions of employment as attorneys.

128.    The Firm's policies, practices, and procedures with respect to compensation have led to gender, pregnancy, and maternity discrimination and stratification. The systemic means of accomplishing such gender-based stratification include, but are not limited to, the Firm's policies, practices, and procedures for awarding base compensation, bonus pay, and promotions to female attorneys and those who are pregnant or have children. These practices and procedures all suffer from a lack of: transparency; adequate quality standards, and controls; sufficient implementation metrics; and opportunities for redress or challenge. As a result, female attorneys and attorneys who are pregnant or who have children are compensated within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward them.

129.    The Firm's systemic discrimination and refusals to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief with respect to the Class as a whole.

130.    Injunctive, declaratory, and affirmative relief are a predominant form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically

1  from proof of the Firm's systemic gender discrimination. In turn, entitlement to declaratory, injunctive,

2  and affirmative relief forms the factual and legal predicate for recovery by the Class Representatives and

3  Class members of monetary and non-monetary remedies for individual losses caused by the systemic

4  discrimination, as well as their recovery of compensatory and punitive damages.

### H.  Requirements of Rule 23(b)(3)

131.    The common issues of fact and law affecting the claims of the Class Representatives and proposed Class members—including, but not limited to, the common issues identified above— predominate over any issues affecting only individual claims. The common issues include whether the Firm has engaged in gender, pregnancy, and maternity discrimination against female attorneys by paying and promoting female attorneys, particularly those who take maternity leave, less than their male counterparts.

132.    A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representatives and members of the proposed Class.

133.    By virtue of the pattern and practice of discrimination at the Firm, the Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including back pay, front pay, reinstatement, compensatory damages and other relief.

134.    Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rules 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

### IX.    COLLECTIVE ALLEGATIONS UNDER THE EQUAL PAY ACT

135.    Plaintiffs incorporate all allegations of the Complaint alleging class-based discrimination.

136.    Plaintiffs bring collective claims under the Equal Pay Act pursuant to Section 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), on behalf of all members of the EPA Collective Action. The EPA Action includes female attorneys (a) who were not compensated equally to male attorneys who had substantially similar job classifications, functions, titles, and/or duties, (b) who were not compensated equally to male attorneys who performed substantially similar work, and/or (c) who were denied equal compensation to similarly situated male attorneys by being held back to lesser pay levels than male attorneys who performed substantially similar work and had substantially similar experience.

137.    Plaintiffs and the Collective Action members are similarly situated with respect to their claims that the Firm paid and promoted them less than their male counterparts.

138.    There is a common nexus of fact and law suggesting that Plaintiffs and the Collective Action members were discriminated against in the same manner. Questions at issue in the case include:

(a)    Whether the Firm unlawfully awarded less in base pay to female attorneys than to similarly-qualified male attorneys;

(b)    Whether the Firm unlawfully awarded less in bonuses to female attorneys than similarly-qualified male attorneys;

(c)    Whether the Firm unlawfully assigned and continues to assign attorneys into positions with lesser pay and other compensation than similarly-qualified male attorneys;

(d) Whether the Firm's resulting failure to compensate female attorneys on a par with comparable male attorneys was willful within the meaning of the EPA.

139.    Counts for violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs who opt-in to this action because the claims of the Plaintiff are similar to the claims of the EPA Collective Action Class.

140.    Plaintiffs and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, titles, and/or duties; and (c) are subject to the Firm's common policy and practice of gender discrimination in failing to compensate female attorneys commensurate with compensation given to male attorneys who perform substantially equal work.

**X.    COUNTS**

**CLASS AND COLLECTIVE COUNTS**

**COUNT 1**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e) *et seq.*,**

***as amended by the* PREGNANCY DISCRIMINATION ACT OF 1978**

**PREGNANCY AND MATERNITY (SEX PLUS) DISCRIMINATION**

**On Behalf of Class Representatives and all Pregnancy Subclass Members**

141.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

142.    This Count is brought on behalf of the Class Representatives and all members of the Pregnancy subclass.

143.    MoFo has discriminated against Class Representatives and all members of the subclass in violation of Title VII by subjecting them to different treatment on the basis of their gender, including pregnancy and maternity. The members of the Class have been disparately impacted and disparately treated as a result of MoFo's wrongful conduct and its policies, practices, and procedures.

144.    MoFo has discriminated against the subclass members by treating them differently from and less preferably than similarly situated male employees and female employees who are not pregnant and who do not have children, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional opportunities, and discriminatory treatment with respect to leave, work responsibilities, and other terms and conditions of employment in violation of Title VII.

145.    MoFo's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Class Representatives and the members of the proposed subclass, entitling the Class Representatives and the members of the subclass to punitive damages.

146.    As a result of MoFo's conduct alleged in this Complaint, Class Representatives and the members of the subclass have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

147.    By reason of MoFo's discrimination, Class Representatives and members of the Sub-Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

148.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT 2

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e) *et seq.*

### GENDER DISCRIMINATION

#### On Behalf of Class Representatives and all Class Members

149.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

150.    This Count is brought on behalf of the Class Representatives and all members of the Class.

151.    MoFo, an employer of Class Representatives and Class Members within the meaning of Title VII, has discriminated against the Class Representatives and the Class Members in violation of Title VII by subjecting them to different treatment on the basis of their gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

152.    MoFo has engaged in an intentional, company-wide and systemic policy, pattern, and/or practice of discrimination against Class Representatives and the Class by, among other things: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; discriminating against Class Representatives and Class members in pay and promotions; discriminatory denials of development opportunities; and other forms of discrimination.

153.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Class Representatives and the Class with respect to the terms and conditions of their employment.

154.    As a result of this disparate treatment and disparate impact discrimination, MoFo has treated Class Representatives and the Class differently from and less preferentially than similarly-situated male employees with respect to pay and promotions.

155.    MoFo has failed to prevent, to respond to, to investigate adequately, and/or to appropriately resolve this gender discrimination.

156.    MoFo's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and the Class, entitling the Class Representatives and all members of the Class to punitive damages.

157.    By reason of the continuous nature of MoFo's discriminatory conduct, which persisted throughout the employment of the Class Representatives and the Class, the Class Representative and all members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

158.    By reason of MoFo's discrimination, the Class Representatives and the Class are entitled to all legal and equitable remedies available for violations of Title VII.

159.    As a result of MoFo's conduct alleged in this Complaint, the Class Representatives and the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, including interest.

160.    As a further result of MoFo's unlawful conduct, the Class Representatives and the Class have suffered and continue to suffer, inter alia, impairment to their name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Class Representative and the Class are entitled to recover damages for such injuries from MoFo under Title VII.

161.    Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT 3

**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT,**

**Cal. Gov. Code § 12940, *et seq*.**

**PREGNANCY AND MATERNITY (SEX PLUS) DISCRIMINATION**

**On behalf of Plaintiffs and the California Pregnancy Subclass Members**

162.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

163.    This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the California subclass.

164.    MoFo has discriminated against Plaintiffs and the California subclass in violation of the FEHA by subjecting them to different treatment because and on the basis of their gender, in particular their pregnancy and maternity, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

165.    MoFo has engaged in an intentional, company-wide and system policy, pattern, and/or practice of discrimination against plaintiffs and the California subclass by, among other things: maintaining a discriminatory system for promotions, maintaining a discriminatory system for promotions, unwarrantedly suppressing pay, promotions, and professional development for women who are pregnant or have children, and other forms of discrimination.

166.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Plaintiffs and the members of the California subclass with respect to the terms and conditions of their employment.

167.    As a result of this disparate treatment and disparate impact discrimination, MoFo has treated Plaintiffs and California subclass differently from and less preferentially than similarly-situated male attorneys and female attorneys who are not pregnant or do not have children, with respect to pay and promotions.

168.    MoFo has failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

169.    MoFo's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the California Pregnancy subclass, entitling the Class Representatives and all members of the California Pregnancy subclass to punitive damages.

170.    As a result of MoFo's conduct alleged in this Complaint, Class Representatives and the California Pregnancy subclass have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic damages.

171.    By reason of the continuous nature of MoFo's discriminatory conduct, which persisted throughout the employment of the Class Representatives and the members of the California Pregnancy subclass, the continuing violations doctrine applies to all violations alleged herein.

172.    By reason of MoFo's discrimination, Class Representatives and the members of the California Pregnancy subclass are entitled to all legal and equitable remedies available for violations of the FEHA, including reinstatement and an award of compensatory and punitive damages.

173.    Attorneys' fees should be awarded under Cal. Gov't Code § 12940.

## COUNT 4

## VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT,

### Cal. Gov. Code § 12940, *et seq*.

### GENDER DISCRIMINATION

### On behalf of Plaintiffs and the California Subclass Members

174.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

\\

175.     This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the California subclass.

176.     MoFo has discriminated against Plaintiffs and the California subclass in violation of the California Fair Employment and Housing Act (the "FEHA"), Cal. Gov. Code § 12940, et seq., by subjecting them to different treatment because and on the basis of their gender (including pregnancy), by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on them.

177.     MoFo has engaged in an intentional, company-wide, and systemic policy, pattern, and/or practice of discrimination against Plaintiffs and the California subclass by, among other things: maintaining a discriminatory system for promotions, maintaining a discriminatory system for promotions, unwarrantedly suppressing pay, promotions, and professional development for women, and other forms of discrimination.

178.     These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on Plaintiffs and the members of the California subclass with respect to the terms and conditions of their employment.

179.     As a result of this disparate treatment and disparate impact discrimination, MoFo has treated Plaintiffs and California subclass differently from and less preferentially than similarly-situated male attorneys with respect to pay and promotions.

180.     MoFo has failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

181.     MoFo's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Class Representatives and all members of the California subclass, entitling the Class Representatives and all members of the California subclass to punitive damages.

182.     As a result of MoFo's conduct alleged in this Complaint, Class Representatives and the California subclass have suffered and continue to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as non-economic damages.

183.   By reason of the continuous nature of MoFo's discriminatory conduct, which persisted throughout the employment of the Class Representatives and the members of the California subclass, the continuing violations doctrine applies to all violations alleged herein.

184.   By reason of MoFo's discrimination, Class Representatives and the members of the California subclass are entitled to all legal and equitable remedies available for violations of the FEHA, including reinstatement and an award of compensatory and punitive damages.

185.   Attorneys' fees should be awarded under Cal. Gov't Code § 12940.

## COUNT 5

### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C § 2601 *et seq.*

### DISCRIMINATION, INTERFERENCE AND RETALIATION

### On behalf of Plaintiffs and the Pregnancy Subclass

186.   Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

187.   This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the Pregnancy subclass.

188.   Under the FMLA, an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Further, an employer cannot use the taking of FMLA leave as a "negative factor" in employment actions such as hiring, promotions, or disciplinary actions. Plaintiffs took approved FMLA leave for maternity leave.

189.   MoFo interfered with the taking of protected maternity leave by Class Representatives and subclass members and discriminated against them for the taking of such leave, in violation of the FMLA.

190.   MoFo interfered with the taking of protected maternity leave by Class Representatives and subclass members and discriminated against them for taking such leave by using the taking of FMLA leave as a negative factor in employment actions, including, inter alia, failing to promote them, denying them career-advancement opportunities and work opportunities, making inaccurate statements harmful to their professional careers, and creating an environment hostile to pregnancy and the taking of statutorily protected maternity leave.

\\

191.    MoFo acted willfully, intentionally, and with reckless disregard for Class Representatives' rights under the FMLA.

192.    As a direct and proximate result of MoFo's actions, Class Representatives suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses, and costs and are entitled to all legal and equitable remedies available.

193.    By reason of MoFo's discrimination, Class Representatives and Class members are entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

## COUNT 6

### VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT, Cal. Gov. Code § 12945.2

### DISCRIMINATION, INTERFERENCE AND RETALIATION

#### On behalf of Plaintiffs and the California Pregnancy Subclass

194.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

195.    This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the California Pregnancy subclass.

196.    Under the California Family Rights Act ("CFRA"), an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Further, an employer cannot use the taking of CFRA leave as a "negative factor" in employment actions such as hiring, promotions, or disciplinary actions. Plaintiffs took approved CFRA leave for maternity leave and bonding leave.

197.    MoFo interfered with the taking of protected maternity and bonding leave by Class Representatives and subclass members and discriminated against them for the taking of such leave, in violation of the CFRA.

198.    MoFo interfered with the taking of protected maternity and bonding leave by Class Representatives and subclass members and discriminated against them for taking such leave by using the

taking of CFRA leave as a negative factor in employment actions, including, inter alia, failing to promote them, denying them career-advancement opportunities and work opportunities, making inaccurate statements harmful to their professional careers, and creating an environment hostile to pregnancy and the taking of statutorily protected maternity leave.

199.    MoFo acted willfully, intentionally, and with reckless disregard for Class Representatives' rights under the CFRA.

200.    As a direct and proximate result of MoFo's actions, Class Representatives suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses, and costs and are entitled to all legal and equitable remedies available.

201.    By reason of MoFo's discrimination, Class Representatives and Class members are entitled to all legal and equitable remedies available for violations of the CFRA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation.

<u>**COUNT 7**</u>

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, *as amended by***

**THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 216(b)**

**DENIAL OF EQUAL PAY FOR EQUAL WORK**

**On Behalf of Class Representatives and the EPA Collective Action Plaintiffs**

202.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

203.    This Count is brought on behalf of Plaintiffs and the EPA Collective Action, including all EPA Collective Action Plaintiffs who "opt-in" to this action.

204.    MoFo has discriminated against Plaintiffs and all EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as amended by the EPA, by providing them with a lower rate of pay than similarly situated male colleagues on the basis of their gender, female, even though Plaintiffs and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

\\

\\

205. Plaintiffs, all EPA Collective Action Plaintiffs, and similarly situated male attorneys all perform similar job duties and functions. Plaintiffs, all EPA Collective Action Plaintiffs, and similarly situated male attorneys all performed jobs that required equal skill, effort, and responsibility.

206. MoFo discriminated against Plaintiffs and all EPA Collective Action Plaintiffs by subjecting them to discriminatory pay in violation of the Equal Pay Act.

207. The differential in pay between male and female attorneys was not due to a legitimate seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

208. MoFo caused, attempted to cause, contributed to or caused the continuation of pay discrimination based on gender, in violation of the EPA. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because MoFo has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

209. As a result of MoFo's conduct as alleged in this Complaint, Plaintiffs and all EPA Collective Action Plaintiffs have suffered and continue to suffer harm, including but not limited to: lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

210. By reason of MoFo's discrimination, Plaintiffs and all EPA Collective Action Plaintiffs are entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages, interest, and other compensation pursuant to 29 U.S.C. § 216(b).

211. Attorneys' fees should be awarded under 29 U.S.C. §216(b).

## **COUNT 8**

**VIOLATION OF THE CALIFORNIA EQUAL PAY ACT, *as amended by* THE CALIFORNIA FAIR PAY ACT, Cal. Lab. Code § 1197.5, *et seq*. ; CALIFORNIA EQUAL PAY ACT, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015)**

**DENIAL OF EQUAL PAY FOR EQUAL & SUBSTANTIALLY SIMILAR WORK**

**On behalf of Plaintiffs and the CEPA Subclass**

212. Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

213. This Count is brought on behalf of Plaintiffs in their individual and representative capacities, and all members of the CEPA subclass.

214.    MoFo has discriminated against the Plaintiffs and all members of the CEPA subclass in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015), et seq. MoFo has paid Class Representative and members of the CEPA subclass less than similarly-situated male attorneys in the same establishment performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

215.    MoFo has discriminated against the Plaintiffs and the CEPA subclass in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 *et seq.* MoFo has paid Class Representatives and members of the class less than similarly situated male attorneys performing substantially equal work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

216.    MoFo subjected Class Representatives and the members of the CEPA subclass to common discriminatory pay policies, including: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; and other forms of discrimination affecting pay.

217.    The differential in pay between male and female attorneys was not due to seniority, merit, or the quantity or quality of production, a bona fide factor other than sex, such as education, training, or experience, but was due to gender. In the alternative, to the extent that MoFo relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

218.    The foregoing conduct constitutes a willful violation of the California Equal Pay Act, Cal. Lab. Code §1197.5 *et seq.*, as amended by the California Fair Pay Act. Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code § 1197.5(h), *et seq.*, and California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Lab. Code § 1197.5(h).

219.    As a result of MoFo's conduct alleged in this Complaint and/or MoFo's willful, knowing, and intentional discrimination, the CEPA subclass members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

220.    Plaintiffs and the CEPA subclass are therefore entitled to all legal and equitable remedies,

1   including doubled compensatory awards for all willful violations.

2       221.    Attorneys' fees should be awarded under California Labor Code § 1197.5(g).

3   **COUNT 9**

4   **VIOLATION OF CALIFORNIA BUSINESS AND**

5   **PROFESSIONS CODE, Cal. Bus. & Prof. Code § 17200** *et seq.*

6   **UNFAIR COMPETITION**

7   **On behalf of Plaintiffs and the California Unfair Competition Subclass**

8       222.    Plaintiffs re-allege and incorporate each and every allegation in this Complaint.

9       223.    This Count is brought on behalf of Plaintiffs in their individual and representative

10   capacities, and all members of the California Unfair Competition subclass.

11       224.    MoFo is a "person" as defined under California Business & Professions Code § 17201.

12       225.    MoFo's willful failure to pay women equally, to promote women equally, and otherwise

13   to offer women equal employment opportunities as alleged above, constitutes unlawful, unfair and/or

14   fraudulent activity prohibited by California Business and Professions Code § 17200. As a result of its

15   unlawful, unfair and/or fraudulent acts, MoFo reaped and continues to reap unfair benefits and illegal

16   profits at the expense of Plaintiffs and the California Unfair Competition subclass. MoFo should be

17   enjoined from this activity.

18       226.    Accordingly, Plaintiff and the California Unfair Competition subclass members are entitled

19   to restitution with interest and other equitable relief, pursuant to Business & Professions Code § 17203.

20   **PRAYER FOR RELIEF**

21       Wherefore, Plaintiffs, on their own behalf and on behalf of the Class, Subclasses, and EPA

22   Collective Action, request the following relief:

23       a.    Acceptance of jurisdiction of this case;

24       b.    Certification of this case as a class action under Federal Rule of Civil Procedure 23,

25       on behalf of the proposed Plaintiff Class and Subclasses, designation of the proposed

26       Class Representatives as representatives of this Class and Subclasses, and designation

27       of Plaintiffs' counsel of record as Class Counsel;

28   \\

1     c.     Designation of this action as a collective action on behalf of the proposed EPA

2             Collective Plaintiffs (asserting EPA claims) and:

3          i.   promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated

4              members of the EPA Opt-In Class, which (a) apprises them of the pendency of

5              this action and (b) permits them to assert timely EPA claims in this action by

6              filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and

7         ii.  tolling the statute of limitations on the claims of all members of the EPA Opt-In

8              Class from the date the original Complaint was filed until the Class members are

9              provided with reasonable notice of the pendency of this action and a fair

10            opportunity to exercise their right to opt in as Plaintiffs;

11    d.     Designation of Plaintiffs as representatives of the EPA Collective Action;

12    e.     A declaratory judgment that the practices complained of therein are unlawful and

13             violate, among other laws, 42 U.S.C. § 2000(e) *et seq.*, as amended; 29 U.S.C.

14             § 2601, *et seq.*; 29 U.S.C. § 206, *et seq.*; Cal. Gov. Code § 12940 *et seq.*; Cal. Gov.

15             Code § 12945.2; Cal. Labor Code section 1197.5 *et seq.*; and Cal. Bus. & Prof. Code

16             § 17200 *et seq.*

17    f.     A permanent injunction against MoFo and its partners, officers, owners, agents,

18             successors, employees, representatives and any and all persons acting in concert with

19             them, from engaging in any further unlawful practices, policies, customs and usages

20             set forth therein;

21    g.     An Order requiring the Firm to initiate and implement programs that (i) remedy the

22             hostile work environment at Morrison & Foerster; (ii) ensure prompt, remedial action

23             regarding all claims of gender, pregnancy, and maternity discrimination; and (iii)

24             eliminate the continuing effects of the discrimination and retaliatory practices

25             described therein;

26    h.     An Order requiring MoFo to initiate and implement systems for compensating female

27             attorneys in a non-discriminatory manner;

28  \\

i.     An Order directing MoFo to adjust the compensation for Class Representatives and the Class members to the level that they would be enjoying but for the MoFo's discriminatory policies, practices, and procedures;

j.     An award of back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by the Plaintiffs, Members of the Classes, and Members of the EPA Collective Action, in an amount not less than $25,000,000;

k.     An award of nominal, liquidated, and compensatory damages to Plaintiffs and Members of the Classes, in an amount not less than $25,000,000;

l.     Award punitive damages to Plaintiffs and Members of the Classes, in an amount not less than $50,000,000;

m.     An award of penalties available under applicable laws, including waiting time penalties;

n.     An award of litigation costs and expenses, including reasonable attorneys' fees to the Plaintiffs;

o.     An award of pre-judgment and post-judgment interest; and

p.     Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all issues triable of right to a jury.

Dated: April 30, 2018                   Respectfully Submitted,

                                     _/s/Jill Sullivan Sanford_____
                                     David W. Sanford (*Pro Hac Vice forthcoming*)
                                     Deborah K. Marcuse (*Pro Hac Vice forthcoming*)
                                     Ed Chapin (CA Bar No. 53287)
                                     Jill Sullivan Sanford (CA Bar No. 185757)
                                     Aimee Krause Stewart (*Pro Hac Vice forthcoming*)
                                     Danielle Fuschetti (CA Bar No. 294065)
                                     SANFORD HEISLER SHARP, LLP

                                     *Attorneys for Plaintiffs and the Class*

[*Continued from Caption Page*]

Danielle Fuschetti (CA Bar No. 294065)
dfuschetti@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

*Attorneys for Plaintiff and the Class*