RACHEL S. BRASS, SBN 219301
    rbrass@gibsondunn.com
DANIEL M. BRUGGEBREW, SBN 307037
    dbruggebrew@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

CATHERINE A. CONWAY, SBN 98366
    cconway@gibsondunn.com
MICHELE L. MARYOTT, SBN 191993
    mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

AMANDA C. MACHIN, *admitted pro hac vice*
    amachin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306
Telephone: 202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, and JANE DOE 6, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MORRISON & FOERSTER LLP, <br><br> Defendant. | Case No. **18-CV-2542 (JSC)** <br><br><br> **DEFENDANT MORRISON & FOERSTER LLP'S ANSWER TO CLASS AND COLLECTIVE ACTION COMPLAINT** |

Gibson, Dunn &
Crutcher LLP

1

**PRELIMINARY STATEMENT**

2       Defendant Morrison & Foerster LLP ("Morrison") is proud to be an industry leader in

3   supporting and promoting women and working parents.  Through hard work and forward-looking

4   decisions, Morrison has been and remains at the forefront of the legal industry in supporting female

5   attorneys and attorneys who are caregivers.

6       Morrison's commitment is borne out not only in its policies and programs, but in its individual

7   treatment of women and parents.  Thus the facts in this case will show Morrison's commitment to equal

8   treatment of all associates, and to supporting and advancing women.  In the last five years alone, nearly

9   half of all partner promotions have been women.  Women co-chair approximately twenty of the firm's

10  practice groups, and the chair of the firm's partner compensation committee is female.  According to

11  *Working Mother*, the firm exceeds the averages on leadership metrics for their 50 Best Law Firms for

12  Women in terms of female equity partners and on the percentage of women on its compensation,

13  executive, and partner-promotion committees.

14      Once women are promoted, they are also given positions of influence and leadership.  Here too,

15  Morrison puts words into action.  Morrison is a founding signatory of the Mansfield Rule Initiative, a

16  program that requires at least 30 percent of candidates for key leadership roles be women and attorneys

17  of color.  And Morrison has recently been given "Mansfield Certification Plus" status, which indicates

18  that, in addition to achieving the requirement for *considering* candidates, the firm has successfully

19  *reached* at least 30 percent women and minority lawyer representation in a notable number of current

20  leadership roles and committees.

21      The firm is also dedicated to supporting and advancing female associates and parenting

22  associates.  The Firm's Women's Strategy Committee works closely with firm leadership (including

23  the Board of Directors—itself 40% women—managing partners, and Chair) to ensure that the

24  advancement of women is an important strategic priority.  This important committee regularly reviews

25  retention data regarding the firm's women lawyers.  Sub-committees are tasked with addressing key

26  strategic priorities (such as lateral recruitment).  And regular working calls serve as a forum for raising

27  and addressing topics of interest to women at the firm.  Those efforts are complemented by affinity

28  groups that foster a sense of community by hosting everything from networking lunches to trivia nights

Gibson, Dunn &
Crutcher LLP

1    to "coding and cocktails" evenings.  The firm also provides award-winning mentoring programs for

2    women lawyers.

3           Morrison brings this same leadership to supporting its attorneys who are parents.  The firm

4    provides 20 weeks of paid parental leave, plus 5 additional weeks of unpaid leave, to associate attorneys

5    who are primary caregivers.  For the month before attorneys begin parental leave, and for the month

6    after they return, Morrison's transition period policy ensures that their billable hours expectations are

7    cut in half without any corresponding reduction in compensation.  New and expectant parents at

8    Morrison also have a wide variety of other resources, including career coaching and a mentoring

9    network, as well as a program that pays for attorneys to ship their breast milk for free while traveling

10   for work.  And, Morrison maintains a generous reduced-hours schedule policy that gives returning

11   parents additional flexibility.

12          In light of Morrison's leadership in these areas, industry experts consistently recognize

13   Morrison as a firm of choice for women lawyers and working parents.  Yale Law Women has

14   recognized Morrison as one of its Top 10 Family Friendly Firms from 2014 to 2017 and, in 2018, as

15   one of its Top 10 Female Friendly Firms.  The firm was named Law Firm of the Year for Flexible

16   Working Environments and Innovative Programs for Mothers by the 2017 Chambers Women in Law

17   Awards: USA.  *Working Mother* has named Morrison to its list of the 50 (now 60) Best Law Firms for

18   Women from 2014 to 2018.  And, for seven consecutive years, Morrison has received Gold Standard

19   Certification from the Women in Law Empowerment Forum in recognition of the integration of women

20   into leadership roles.

21          Morrison is committed to treating its associates fairly, and after investigating the Plaintiffs'

22   claims, Morrison is confident that they were indeed treated fairly.  Jane Does 1, 2, and 3 complain that

23   they did not advance with their class year at the end of 2017.  Those decisions were made for different

24   reasons for each of Jane Does 1-3, all of them legitimate and unrelated to sex, gender, or parental status.

25   Two of the Doe plaintiffs, Jane Does 1 and 3, were reclassified during their year-end evaluations.

26   Under Morrison policy, an associate is typically but not always progressed in connection with the

27   annual evaluation process.  A decision to reclassify means that for varying individualized reasons,

28   partners determined that the associate in question needs an additional year of experience at his or her

current level.  As a result of the reclassification, the associate's billing rate and compensation rate are not increased.  Thus, for example, if an associate who possesses the requisite skills and experiences progresses from a fourth year to a fifth year, her salary and billable rate may also increase.  If she does not, her salary and billing rate are at the applicable fourth year rate.  To the extent the complaint suggests that the billing rate is increased by a class year when associates are reclassified, that is simply wrong.

A Morrison associate is automatically reclassified if he or she bills fewer than 600 client chargeable, pro bono, and legal service hours in a year—600 hours is approximately 30% of the firm's 1,950-hour annual requirement for full-time associates.  That automatic reclassification is a reflection of the fact that an attorney's skill, knowledge and judgment build over time, through experience.  If an associate bills 600 hours or more, he or she may still be reclassified on a discretionary basis because of a lack of skills or experience that the firm considers necessary for advancement.  This can sometimes occur after a leave, but it can also occur in other circumstances, including after an associate laterals to the firm or changes practice groups, when an associate's practice group has been particularly slow, or if the associate performed well but has had the opportunity to work only on a limited set of substantive areas.

The reclassification policy is gender-neutral, and applies to male and female associates alike. It allows associates to gain critical additional experience at their current seniority level before they are priced out of the work they are asked to perform, and helps them to avoid being placed in situations where they fail to meet the expectations of more senior colleagues and clients.  As associates advance within the firm, their billable rates increase, and, as a result, more senior attorneys are less likely to be given more junior-level assignments.  By reclassifying associates, Morrison's policy allows associates to catch up.

Reclassification is not considered a performance failure or deficiency and it is not a black mark on someone's performance record.  Accordingly, the fact that an associate was reclassified has no effect on his or her bonus eligibility.  And it does not prevent future advancement—Morrison associates have made partner after being reclassified.  Indeed, some associates have affirmatively requested

1   reclassification, because it provides them with additional opportunities to develop at their current class
2   year without being priced out (via billing rates) of the work they are performing.

3          The third, Jane Doe 2, received a "Not Progress" result.  This result, unlike reclassification, is
4   a signal that the associate's work reflects serious performance deficiencies.  It often means, as it did in
5   Jane Doe 2's case, that an associate has had sustained performance deficiencies over a number of years.
6   Accordingly, a "Not Progress" result affects bonus eligibility.  The "Not Progress" result does not
7   correlate at all with parental leave.  Since 2014, twelve associates have received a "Not Progress" result
8   on their annual evaluations, and only one (Jane Doe 2) received that result in a year that a parental
9   leave was taken.

10         Plaintiffs incorrectly suggest that there is a standard operating procedure to hold back female
11  associates or parents who take leave.  Of the hundreds of women who have worked at Morrison over
12  the past five years, only about five percent have been reclassified and fewer still have not progressed.
13  And of the hundreds of associates who have taken parental leave, men and women, approximately 10%
14  were reclassified and approximately 1% were not progressed.  The vast majority of women who have
15  taken leave were not reclassified or not progressed.  This is not only a signifier of the strength of
16  Morrison's programs to support and advance women and working parents, but a fundamental defect in
17  the theory of this case.

18         Separately, Jane Does 4 and 5 challenge their terminations.  Both were terminated after a
19  sustained history of performance deficiencies.  There is no basis for their suggesting that pregnancy or
20  motherhood had any impact on their terminations.  In fact, in 2017, the year in which each was
21  terminated for underperforming over a multi-year period, 57 firm associates took parental leave, and
22  only one was terminated.

23         Jane Doe 6 challenges the fact that she was not elevated to partner, but during the three years
24  in which she met the minimum length-of-service requirements to be considered for partner, more than
25  48% of those elevated to partner were women.  Not a single person from Jane Doe 6's practice group
26  was elevated to partner in that time, although one woman was elevated to partner in a practice group
27  that later merged with Jane Doe 6's.  And Jane Doe 6's suggestion that she was discriminated against
28  for taking leave is absurd.  She was hired with the knowledge that she was weeks away from taking

maternity leave, and she took two additional maternity leaves during her time at the firm.  She was not penalized in any way for doing so.

The bulk of Jane Doe 6's allegations relate to workplace frustrations that the firm tried to help her with, despite her failure to respond to requests for information or otherwise engage in the process. Here, she misrepresents facts around the firm's commitment to *helping* her succeed.  For example, she suggests that she was forced to join a call in the middle of the night while traveling abroad and was chastised when she missed the call.  In fact, a prominent female partner received a client inquiry in Jane Doe 6's professed area of expertise and proactively sponsored Jane Doe 6 by offering her the opportunity to speak to high-level executives at the client—an offer Jane Doe 6 accepted, writing "***Sure – I'm happy to dial into a call.  (I'm expecting to be in [another country] for work, but 4 pm (NY time) is free for me.  Thanks for reaching out!***"  In light of Jane Doe 6's schedule, the partner responded, "I am not sure that makes sense.  Let me see what I can do."  Jane Doe 6 refused that offered accommodation, and instead wrote that she wanted to join the call even "in the night, [local] time."  She then went completely dark at the time of the call, which she did not join, and did not respond to her work email for several days, including long after she was back in the United States.

Jane Doe 6 similarly alleges that male partners "required her to travel internationally on their behalf for informational" meetings, which the facts also belie.  Here too, the evidence will show those partners *offered* her the *optional* opportunity to feature her practice before an international audience— an opportunity she refused to pass up, even when she was asked if she had the time for it.  The partners made clear that the "main goal is to get you in front" of the other firms to present *her* practice.  Once abroad, whatever lasting relationships Jane Doe 6 allegedly created, they were unrelated to the firm-related efforts Morrison paid for and had invited her abroad to collaborate on.  While on the trip, Jane Doe 6 went completely incommunicado while she toured local sights, arrived late for a business meeting, absented herself for a large portion of a business meal in order to speak with a blogger, and made the personal decision to cut her trip short (and necessitate the firm cancelling several in-person meetings with valued relationships) in order to fly back to the United States and accept an award she claimed to have just learned about.

Gibson, Dunn & Crutcher LLP

Ultimately, unwilling to comply with basic firm requirements (entering time, following proper matter onboarding procedures, and being responsive to client concerns), Jane Doe 6 quit.

Morrison is confident that each of the six Doe plaintiffs was treated fairly with respect to work and advancement opportunities, pay, and their work experience.  That is because Morrison has created an environment in which each was given every opportunity to succeed.  The firm has provided communication coaches, marketing support, flexible work arrangements, and formal and informal mentoring.  To those who had serious performance deficiencies, the firm provided detailed feedback and resources for improvement over a number of years.  The firm cannot be blamed if, for example, Jane Doe 2 ignored the statement in her 2016 evaluation that, "the coming year is an important one for [her] development, and evaluators will be looking for her to establish command over her transactions."

That environment of respect and support is how Morrison approaches the careers of each of its lawyers, male and female alike.  Morrison is consistent in its commitment to fair and equal treatment of associates and others, without regard to sex, gender or parenting status.  It is dedicated to working with each individual associate on his or her unique career path.  And make no mistake:  the path navigated by each lawyer at Morrison is unique.  Over time, no two associates will work with the same partners, on the same matters, or for the same clients, doing the same work.  Each will be called upon to demonstrate her or his ability to exercise judgment, provide legal services and counsel, and perform those critical aspects of his or her legal practice in a manner that meets a given partner's expectations.  For these and other reasons, indeed, as the fact-intensive claims and differences across the experiences of each of the six plaintiffs here underscore, the claims here are wholly incompatible with class-based litigation.  Setting aside the fact that each Plaintiff was treated fairly, each challenges highly individualized personnel decisions.  The evidence will show that Morrison actively cultivates a work environment irreconcilable with Plaintiffs' narrative.  In the words of a female executive committee member, "It's been a longstanding policy of MoFo's to continue to promote and encourage women.  We don't just speak it, we walk the walk as well."

Below, Morrison has responded to the specific Paragraphs of the Complaint.  At the outset, Morrison notes that it adopts the pseudonyms used in the Complaint.  At this time, Morrison does not

object to the use of pseudonyms in this case, and defers to the Court on that issue.  However, Morrison reserves the right to object to the continued use of pseudonyms as the cases progresses.[1]

\*\*\*

1.      Defendant admits that it employs nearly 800 attorneys in the United States and has 16 offices worldwide.  Defendant further admits that it specializes in a wide range of practice areas, including labor and employment, and that its policies and initiatives champion the advancement of female employees.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 1 of the Complaint.

2.      Defendant denies the allegations set forth in Paragraph 2 of the Complaint.

3.      Defendant denies the allegations set forth in Paragraph 3 of the Complaint.  As set forth in the preliminary statement, Morrison is an industry leader in providing flexible work arrangements for parents returning from leave.

4.      Defendant denies the allegations set forth in Paragraph 4 of the Complaint.  As set forth in the preliminary statement, many of Morrison's most successful female partners have been elevated to partner after or during parental leave.

5.      This paragraph does not set forth any factual allegations against Morrison and therefore does not require a response.  As set forth in the preliminary statement, many third-party groups have recognized that Defendant is ahead of the pack in the legal industry in terms of the advancement of women and parents.  To the extent there are any allegations against Morrison set forth in Paragraph 5 of the Complaint, Morrison denies them.

6.      Defendant denies the allegations set forth in Paragraph 6 of the Complaint.

7.      This paragraph does not set forth any factual allegations against Morrison and therefore does not require a response.  As set forth in the preliminary statement, many third-party groups have recognized that Defendant is ahead of the pack in the legal industry in terms of the advancement of

---

[1]   Plaintiffs' Complaint contains many narrative headings that are not explicitly incorporated into the numbered paragraphs of the Complaint.  To the extent any response is required, Defendant denies all facts and allegations contained in these headings.

CASE NO. 18-CV-2542 JSC – DEFENDANT'S ANSWER TO AMENDED COMPLAINT

women and parents.  To the extent there are any allegations against Morrison set forth in Paragraph 7 of the Complaint, Morrison denies them.

8.      Defendant denies the allegations set forth in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations set forth in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations set forth in Paragraph 10 of the Complaint.

11.     To the extent that Paragraph 11 summarizes Plaintiffs' legal theories, no response is required.  Defendant otherwise denies the allegations set forth in Paragraph 11 of the Complaint, and specifically denies that Plaintiffs are entitled to any relief.

12.     Defendant admits that Jane Doe 1 has been an employee in one of Morrison's California offices throughout her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 12 of the Complaint.

13.     Defendant admits that Jane Doe 2 has been an employee in one of Morrison's California offices throughout her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 13 of the Complaint.

14.     Defendant admits that Jane Doe 3 has been an employee in one of Morrison's California offices throughout her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 14 of the Complaint.

15.     Defendant admits that Jane Doe 4 was an employee in one of Morrison's California offices throughout her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 15 of the Complaint.

16.     Defendant admits that Jane Doe 5 was an employee in Morrison's Washington, D.C. office throughout her tenure at the firm.  Defendant further admits that Jane Doe 5 provided Morrison a home address in Maryland.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 16 of the Complaint.

17.     Defendant admits that Jane Doe 6 was an employee in Morrison's New York office throughout her tenure at the firm and that, for a portion of her tenure, she was an Of Counsel.  Defendant further admits that Jane Doe 6 provided Morrison a home address in New Jersey.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 17 of the Complaint.

18.     Defendant admits that it has offices located around the world, including offices in Los Angeles, Palo Alto, San Diego, San Francisco, and Washington, D.C.  Defendant further admits that nearly 400 Morrison attorneys work in California.  Defendant also admits that it has been Plaintiffs' employer throughout their tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 18 of the Complaint.

19.     Defendant admits that, pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal law claims alleged.  Defendant further admits that this Court may exercise supplemental jurisdiction over the state law claims at this time.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 19 of the Complaint.

20.     Morrison admits that it is headquartered in and transacts significant business in the State of California and this District; Morrison further admits that the Court has personal jurisdiction over the firm.

21.     Defendant admits only that venue is proper in this district and that Morrison conducts substantial business in the Northern District of California, where it is headquartered.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 21 of the Complaint.

22.     Defendant admits that Jane Does 1-3 filed charges with the DFEH and EEOC on April 24, 2018 and subsequently received Notices of Case Closure and Right to Sue from the DFEH.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 22 of the Complaint.

23.     Defendant admits that Jane Doe 4 filed an administrative charge before the DFEH and the EEOC, and that the charges are dated October 30, 2018, but appear to have been filed on November 6, 2018.  Defendant further admits that the DFEH issued a Right to Sue notice, dated November 6, 2018, which made no factual findings.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 23 of the Complaint.

24.     Defendant admits that Jane Doe 5 filed an administrative charge before the EEOC that was dated October 31, 2018 but appears to have been filed on November 1, 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Defendant admits that Jane Doe 6 filed an administrative charge before the EEOC, and that the charge is dated December 26, 2018.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 25 of the Complaint.

26.     Defendant denies the allegations set forth in Paragraph 26 of the Complaint.   Women co-chair approximately twenty of the firm's practice groups, and the chair of the firm's partner compensation committee is female.

27.     Defendant admits that it has a number of work-life programs, including parental transition time before going out on leave and upon returning from leave, backup caregiving, flexible work options, and a reduced hours program.   Defendant further admits that it has received recognition for providing a greater number of weeks for paid primary caregiver leave than the vast majority of its peers in the legal industry, or any other industry, and that Morrison encourages attorneys to take the leave to which they are entitled under the policy.   Morrison further admits that where individual attorneys need additional leave, it engages with the requesting attorney about such leave on a person-by-person basis.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 27 of the Complaint.

28.     Defendant denies the allegations set forth in Paragraph 28 of the Complaint.

29.     Defendant denies the allegations set forth in Paragraph 29 of the Complaint.

30.     Defendant denies the allegations set forth in Paragraph 30 of the Complaint.

31.     Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.   Defendant further admits that the information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 31 of the Complaint.

32.     As to the allegations in Paragraph 32 of the Complaint regarding Plaintiffs' state of mind, Defendant lacks knowledge or information sufficient to form a belief about the truth of those

1    allegations, and on that basis, denies them.  Defendant denies that reclassification constitutes being

2    held back.

3    33.    Defendant denies the allegations set forth in Paragraph 33 of the Complaint.  Both Jane

4    Does 4 and 5 had significant, ongoing performance issues in the years leading up to their respective

5    terminations.

6    34.    Defendant admits that approximately 50% of its associates are female.  Defendant

7    further admits that approximately 25% of its partners are females.  The representation of women in the

8    firm's partnership and management well exceeds industry averages, as independent publications like

9    *Working Mother* have repeatedly recognized.  That is also reflected in the firm's receipt of Mansfield

10   Certification Plus, which indicates that the firm has reached at least 30 percent women and minority

11   representation in a notable number of current leadership roles and committees.  The firm has made a

12   concerted effort over many years to be an industry leader in this area.  Except as expressly admitted,

13   Defendant denies the allegations set forth in Paragraph 34 of the Complaint.

14   35.    Defendant denies that there is any disqualification from advancement for men or women

15   returning from parental leave.  Defendant denies the allegations set forth in Paragraph 35 of the

16   Complaint.

17   36.    Defendant is proud that the representation of women in its partnership and management

18   exceeds the national averages among peer firms, and that the representation of women continues to

19   increase over time.  Except as expressly admitted, Defendant denies the allegations set forth in

20   Paragraph 36 of the Complaint.

21   37.    Defendant denies the allegations set forth in Paragraph 37 of the Complaint.

22   38.    Defendant admits that associate promotion decisions and certain compensation

23   decisions are, in most cases, heavily influenced by the input of Practice Group and/or Department

24   chairs.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 38 of the

25   Complaint.

26   39.    Defendant denies the allegations set forth in Paragraph 39 of the Complaint.

27   40.    Defendant denies the allegations set forth in Paragraph 40 of the Complaint.

28

1        41.      Defendant admits that it has a proud history of mentorship and sponsorship at the firm,

2  and that its history includes a tradition of attorneys encouraging and promoting colleagues different

3  from themselves.  Defendant further admits that the firm has many powerful women who chair and co-

4  chair practice groups, serve on the Board of Directors, and serve on key committees.  Those women

5  have sponsored and supported attorneys (male and female alike), as have their male partners.

6  Defendant further admits that it compiled a video highlighting how Morrison partners have sponsored

7  more junior attorneys different from themselves, consistent with the firm's culture and respect for

8  diversity.  That video highlights men who have sponsored women, women who have sponsored

9  women, and women who have sponsored men, among other differences.  Except as expressly admitted,

10  Defendant denies the allegations set forth in Paragraph 41 of the Complaint.

11        42.      Defendant denies the allegations set forth in Paragraph 42 of the Complaint.

12        43.      Defendant admits that, for many years, it has invested in initiatives to encourage the

13  recruitment, retention, and advancement of women and parents.  Defendant denies that there is

14  inequitable promotion, pay, job assignment or other practices.  Except as expressly admitted, Defendant

15  denies the allegations set forth in Paragraph 43 of the Complaint.

16        44.      Defendant denies that it engaged in misconduct or discriminated and otherwise denies

17  the allegations set forth in Paragraph 44 of the Complaint.

18        45.      Defendant denies the allegations set forth in Paragraph 45 of the Complaint.

19        46.      Defendant denies the allegations set forth in Paragraph 46 of the Complaint.

20        47.      Defendant admits the allegations set forth in Paragraph 47 of the Complaint.

21        48.      Defendant admits that Jane Doe 1 has a B.A. and a J.D. and is admitted to the California

22  bar.  Defendant further admits that Jane Doe 1 was hired as a lateral associate.  Except as expressly

23  admitted, Defendant denies the allegations set forth in Paragraph 48 of the Complaint.

24        49.      Defendant denies the allegations set forth in Paragraph 49 of the Complaint.  Jane Doe 1

25  came to the firm with less substantive experience than would be expected at her level and faced a

26  significant "learning curve," as her first annual evaluation stated.  Although she was encouraged to

27  develop more skills relevant to her practice group, she did not do so, and she did not meet hours

28

expectations.  She has also been non-responsive to partner requests and worked inefficiently (resulting in write-downs of her time) even after being advised to focus on efficiency.

50.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe 1 took maternity leave approximately two years after joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 50 of the Complaint.

51.     Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 51 of the Complaint.

52.     Defendant admits that, for a couple of days only, Morrison's intranet reflected the incorrect billing rate for Jane Doe 1.  This error was caused by a time delay between the processing of certain Human Resources data regarding class years and the processing of certain financial data regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 52 of the Complaint.

53.     Defendant admits only that certain colleagues in Jane Doe 1's office, including both male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 53 of the Complaint.

54.     Defendant denies that Jane Doe 1 was discriminated against and otherwise denies the allegations set forth in Paragraph 54 of the Complaint.

55.     Defendant admits that the partner it understands to be "Partner 1" (hereinafter, Partner 1) was assigned to be Jane Doe 1's partner mentor for a period of time.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

56.     Defendant denies the allegations set forth in Paragraph 56 of the Complaint and further states that Partner 1 has actively encouraged the advancement of female colleagues and those who are parents.

57.     Defendant admits only that the partner it understands to be "Partner 2" (hereinafter, "Partner 2") spoke with Jane Doe 1 about an excellent female associate formerly at another firm; when Jane Doe 1 asked why the associate no longer worked with Partner 2, he informed her that the associate had decided not to return from maternity leave and was no longer working outside the home.  Defendant denies there was any discriminatory conduct.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendant denies the allegations set forth in Paragraph 58 of the Complaint.

59.     Defendant admits that Jane Doe 1 and Partner 1 had a conversation about her class year on or about January 9, 2018, and that Partner 1 informed her that Partner 2 would provide her formal performance review in person and discuss the issue further.  In discussing the inadvertent error of the class year being posted prior to the evaluation delivery, Partner 1 also noted that the other associate evaluations in the office's practice group had been delivered while Jane Doe 1 had been on leave.  When the topic of their prior mentorship relationship came up, Partner 1 explained that she was no longer Jane Doe 1's assigned mentor.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 59 of the Complaint.

60.     Defendant admits that Jane Doe 1 spoke with a representative of the Attorney Development Group about her evaluation results and her relationship with Partner 1.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 60 of the Complaint.

61.     Defendant admits that, during a subsequent conversation about her evaluation result, Partner 1 explained to Jane Doe 1 that she had been reclassified.  As set forth in the preliminary statement, reclassification is not viewed at Morrison as a negative evaluation result, including that it does not affect bonus eligibility.  Defendant further admits that Partner 1 reminded Jane Doe 1 that the Attorney Development Group could serve as a useful resource for Jane Doe 1, including for questions about the reclassification policy.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 61 of the Complaint.

Gibson, Dunn &
Crutcher LLP

CASE NO. 18-CV-2542 JSC – DEFENDANT'S ANSWER TO AMENDED COMPLAINT
15

62.    Defendant admits that Partner 2 delivered Jane Doe 1's performance evaluation in person, and that Partner 1 participated telephonically.  Defendant further admits that Partner 2 explained that Jane Doe 1 was behind in terms of her experience and skills development, and advised her to make a concerted effort in these areas.  Partner 2 further cautioned that portions of Jane Doe 1's time often could not be charged to clients (also called "written off") because of her inefficiency, and that she should strive to meet her hours target with hours that were not inefficient.  Jane Doe 2 similarly was advised that she needed to improve her time management skills and to deepen her commitment to the matters on which she was staffed.  Even though Jane Doe 1's hours fell 128 below her prorated annual billable target in 2017, she was "overly inclined to delegate work to others" rather than "'roll[] up her sleeves' and take ownership of a task."  And she "does not seem to effectively juggle multiple matters," with the "'biggest' assignment get[ting] great weight, and other assignments fall[ing] to the side."  For example, Jane Doe 1 had sent a partner in her group a draft document with an entire section missing, rather than proactively seeking guidance so the entire project could be timely completed; she had instead written a note that she did not know how to handle that portion.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 62 of the Complaint.

63.    Defendant admits only that, during a discussion of a natural dip in the practice group's overall business, Partner 1 explained to Jane Doe 1 that she was actively trying to build new business in order to support the entire team.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 63 of the Complaint.

64.    Defendant admits only that Jane Doe 1 spoke with representatives of the Attorney Development Group, who provided Jane Doe 1 with guidance about her career but acknowledged that in light of the low demand for her services—as compared to other individuals in her practice group (including working mothers)—she needed to find work in other practice areas or it would be difficult for her to be successful at the firm long-term.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 64 of the Complaint.

65.    Defendant admits only that Partners 1 and 2 encouraged Jane Doe 1 to seek work from other partners during a period of decreased activity in the practice group, during which the practice group leaders were also seeking additional work for the team.  Many months went by with almost no

engagement from Jane Doe 1.  As to the remaining allegations set forth in Paragraph 65 of the Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the allegations and on that basis denies same.

66.     Defendant denies the allegations set forth in Paragraph 66 of the Complaint.

67.     Defendant admits that Jane Doe 1's hours are inordinately low.  Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 67 of the Complaint and on that basis denies same.

68.     Defendant admits that, at the time Jane Doe 1's 2018 annual evaluation was delivered, she had billed 287 hours and was projected to bill 387 hours total through the end of the year.  Because Jane Doe 1 was on a full-time schedule, that was approximately 21% of the firm's hours expectation. Defendant denies that Jane Doe 1 was performing at the level expected; for example, on at least one occasion she turned down an assignment offered to her.  Defendant further admits that her 2018 annual evaluation advised her to address her lack of productivity.  Except as expressly admitted or denied, Defendant denies the allegations set forth in Paragraph 68 of the Complaint.

69.     Defendant admits that others in Jane Doe 1's practice group, including a working mother, billed significantly more hours than Jane Doe 1 in 2018, but Defendant denies that all attorneys in the group met their hours expectations for 2018. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 69 of the Complaint.

70.     Defendant admits the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendant admits that Jane Doe 2 has a B.S. and a J.D., and is admitted to the California bar.  Defendant further admits that Jane Doe 2 had work experience before joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 71 of the Complaint.

72.     Defendant admits the allegations set forth in Paragraph 72 of the Complaint.

73.     Defendant admits only that Jane Doe 2 has participated in certain firm initiatives. However, Jane Doe 2's performance declined over a period of years even as the firm's expectations increased because of her increased seniority.  From the beginning, partners advised her to improve her attention to detail and her legal knowledge, among other things.  She failed to do so.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 73 of the Complaint.

74.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe 2 took maternity leave during her employment with the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 74 of the Complaint.

75.     Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 75 of the Complaint.

76.     Defendant admits that, in previous years, Jane Doe 2 had advanced with her class year, but Defendant denies Plaintiff's allegation that she had no history of performance issues prior to her maternity leave.  In fact, her performance reviews expressed serious concerns about her capabilities.  Jane Doe 2's evaluations identified material concerns with her performance (including her struggles with incorporating client instructions into initial work product and the extent of supervision required for her work).  In 2016, for example, she was cautioned regarding these issues and encouraged to resolve them promptly.  Her review explained that "her initial drafts . . . . were characterized by careless mistakes such as typos, formatting errors, cross-referencing errors and leaving carryover references to other deals, and . . . she did not pay adequate attention to the content of schedules and exhibits."  She "sometimes fail[ed] to effectively analyze and pull together all the information that she has reviewed."  She was cautioned that, "[t]he coming year [was] an important one for [her] development, and evaluators will be looking for her to establish command over her transactions."  At the close of the evaluation, to avoid any ambiguity, the firm encouraged Jane Doe 2 to seek support from the Attorney Development Group on ways to improve her performance.  Yet the same problems persisted the following year.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 76 of the Complaint.

77.     Defendant admits that, for a couple of days only, Morrison's intranet reflected the incorrect billing rate for Jane Doe 2.  This error was caused by a time delay between the processing of

certain Human Resources data regarding class years and the processing of certain financial data regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 77 of the Complaint.

78.    Defendant admits only that certain colleagues in Jane Doe 2's office, including both male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 78 of the Complaint.

79.    Defendant admits that Jane Doe 2 spoke with a representative of the Attorney Development Group about her evaluation and the inadvertent error with the intranet posting.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 79 of the Complaint.

80.    Defendant admits only that the partner it understands to be "Partner 3" (hereinafter "Partner 3") met with Jane Doe 1 to deliver her performance evaluation, and that he explained he considered whether she might be a candidate for reclassification, but ultimately decided that her performance was so sub-par that "Not Progress" was the appropriate result.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 80 of the Complaint.

81.    Defendant admits that, in previous years, Jane Doe 2 had advanced with her class year and received a bonus, but Defendant denies Plaintiff's allegation that she had no history of performance issues prior to her maternity leave.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 81 of the Complaint.

82.    Defendant denies that it discriminated against Jane Doe 2 and otherwise denies the allegations set forth in Paragraph 82 of the Complaint.

83.    Defendant admits that, when a lateral associate candidate with unique subject matter expertise was considering his offer to join Morrison, Partner 3 took him and the other members of the practice group out to dinner.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 83 of the Complaint.

84.    Defendant denies that Partner 3—who has worked with and mentored a number of working mothers and other women over the years—has any preference for working with male attorneys.  Defendant admits that, at one point, Partner 3 made efforts to retain two male associates in

1    Jane Doe 2's practice group who had been working with a partner who exited Morrison.  During that

2    time, Partner 3 suggested that the associates' experience might be a better fit for the work performed

3    by certain partners in Morrison's New York office than it was for the work that he himself (and Jane

4    Doe 2) does.  Accordingly, Partner 3 arranged for the associates to travel on one occasion to New York

5    to meet with those other partners in person.  Except as expressly admitted, Defendant denies the

6    allegations set forth in Paragraph 84 of the Complaint.

7            85.     Defendant admits the allegations set forth in Paragraph 85 of the Complaint.

8            86.     Defendant admits that Jane Doe 3 has a B.A. and a J.D., and is admitted to the California

9    bar.  Defendant further admits that Jane Doe 3 had work experience before joining Morrison.  Except

10   as expressly admitted, Defendant denies the allegations set forth in Paragraph 86 of the Complaint.

11           87.     Defendant admits the allegations set forth in Paragraph 87 of the Complaint.

12           88.     Defendant denies the allegations set forth in Paragraph 88 of the Complaint.

13           89.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe

14   3 took maternity leave during her employment with the firm.  Except as expressly admitted, Defendant

15   denies the allegations set forth in Paragraph 89 of the Complaint.

16           90.     Defendant admits that Morrison's intranet was updated for all associates on

17   approximately January 9, 2018 to show class placement, and that some associates, including Jane Does

18   1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the

19   information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each

20   Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class

21   placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 90

22   of the Complaint.

23           91.     Defendant admits that Jane Doe 3 progressed a class year at the end of the 2016

24   evaluation process.  Except as expressly admitted, Defendant denies the allegations set forth in

25   Paragraph 91 of the Complaint.

26           92.     Defendant admits that, for a couple of days only, Morrison's intranet reflected the

27   incorrect billing rate for Jane Doe 3.  This error was caused by a time delay between the processing of

28   certain Human Resources data regarding class years and the processing of certain financial data

Gibson, Dunn &
Crutcher LLP

CASE NO. 18-CV-2542 JSC – DEFENDANT'S ANSWER TO AMENDED COMPLAINT
20

1  regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect

2  rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 92 of the

3  Complaint.

4      93.    Defendant admits only that certain colleagues in Jane Doe 2's office, including both

5  male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly

6  admitted, Defendant denies the allegations set forth in Paragraph 93 of the Complaint.

7      94.    Defendant denies that it discriminated against Jane Doe 3 and otherwise denies the

8  allegations set forth in Paragraph 94 of the Complaint.

9      95.    Defendant admits that it has a reduced-hours (or "flex-time") policy, under which

10  associates may request reduced-hours arrangements for any number of reasons.  In the case of

11  associates returning from parental leave, they are automatically eligible for a reduced-hours schedule

12  for one year, without regard to their level or length of employment.  Under this policy, an attorney

13  returning from leave must notify at least one partner for whom they work that they intend to work a

14  reduced-hours schedule, but the attorney does not need permission to do so.  The attorney may work

15  as little as 67% of the standard full-time schedule, and his or her compensation is proportionate to the

16  selected schedule.  Morrison will "true up" the associate's compensation at the end of the year if he or

17  she works more than the selected schedule.  With respect to remote work arrangements, the reduced-

18  hours policy makes clear that such arrangements are not guaranteed—rather, "the firm will . . . consider

19  requests to telecommute regularly; i.e., work one or more days per week outside the office or shortened

20  days in the office each week."

21      Defendant also admits that, upon her return from maternity leave in 2017, Jane Doe 3 requested

22  that she be permitted to work full-time but largely remotely from a city nearly 100 miles away, coming

23  into the office only "one to two days per week" most weeks.  Partner 3 discussed Jane Doe 3's request

24  with her and expressed concern that she would not be able to develop as quickly while working mostly

25  from home because she would not have the advantage of in-person interactions on matters.  For

26  someone at her more junior level and in her practice group, remote work (and particularly extended

27  remote work) is not ideal.  After she and Partner 3 discussed the options available to her, Jane Doe

28  elected to work a 67% schedule that would include some remote work.

Gibson, Dunn &
Crutcher LLP

CASE NO. 18-CV-2542 JSC – DEFENDANT'S ANSWER TO AMENDED COMPLAINT

1    Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 95 of the

2    Complaint.

3        96.    Defendant denies the allegations set forth in Paragraph 96 of the Complaint.

4        97.    Defendant denies the allegations set forth in Paragraph 97 of the Complaint.

5        98.    Defendant admits only that, in 2017, Jane Doe 3 billed slightly more than the 600

6    minimum hours required to be considered for progression (including because she had failed the bar

7    exam and took additional time away from work in order to retake it).  Her reclassification was therefore

8    discretionary and based on her relative lack of experience and skill development in the years preceding

9    the review.  In part because Jane Doe 3 had significantly less experience than expected for an associate

10   of her class year at Morrison, her work product was "not always on the mark substantively."  Reviewers

11   noted that her "record is mixed as to whether she readily incorporates the direction she has received

12   into the work product that she is preparing."  One partner "noted several instances in which [she] did

13   not fully reflect the directions that she had been given into her work product, and needed to rework

14   drafts several times in order to capture the directions she had received in a way that also aligned with

15   the terms of the underlying transaction that she was handling."  As a result, her "legal knowledge" and

16   her "familiarity" with her practice area were "areas in which further progress is needed in order for

17   [her] to perform as effectively as she could and to progress to the level we would expect for someone

18   in her upcoming class year.'"  Except as expressly admitted, Defendant denies the allegations set forth

19   in Paragraph 98 of the Complaint.

20       99.    Defendant admits that Jane Doe 3's written review contained some positive feedback,

21   but was not uniformly positive; her review noted that although she "generally drafts and communicates

22   in writing in an effective manner, her written work product is not always on the mark substantively.

23   This is partially a function of her need to advance her substantive knowledge and analytical skills,

24   which are areas where evaluators would like to see further progress before advancing her to the next

25   level."  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 99 of the

26   Complaint.

27       100.   Defendant denies the allegations set forth in Paragraph 100 of the Complaint.

28       101.   Defendant denies the allegations set forth in Paragraph 101 of the Complaint.

Gibson, Dunn &
Crutcher LLP

1    102.   Defendant denies the allegations set forth in Paragraph 102 of the Complaint.

2    103.   Defendant admits the allegations set forth in Paragraph 103 of the Complaint.

3    104.   Defendant admits that Jane Doe 4 has a B.A. and a J.D., and is admitted to the California

4    bar.  Defendant further admits that Jane Doe 4 had work experience before joining Morrison.  Except

5    as expressly admitted, Defendant denies the allegations set forth in Paragraph 104 of the Complaint.

6    105.   Defendant admits the allegations set forth in Paragraph 105 of the Complaint.

7    106.   Defendant denies the allegations set forth in Paragraph 106 of the Complaint.  In her

8    first year at the firm, in which she took no leave, Jane Doe 4 performed "significantly below the level

9    expected."  Her work was often sloppy and inaccurate, even when the assignment was straightforward.

10   For example, one reviewer noted that Jane Doe 4 was asked to look at two batches of agreements to

11   see if a provision was the same across the batches.  Although she said that the provision remained the

12   same, the partner determined Jane Doe 4's assessment was incorrect.  One set of agreements was

13   missing an entire section, which Jane Doe 4 failed to realize.  Even though the firm encouraged Jane

14   Doe 4 from the beginning to work on these areas and take more ownership of her work, her performance

15   never reached the level expected of her seniority.

16   107.   Defendant admits that it encourages employees to take parental leave.  Except as

17   expressly admitted, Defendant denies the allegations set forth in Paragraph 107 of the Complaint.

18   108.   Defendant admits only that it put Jane Doe 4 on notice of termination because of

19   sustained performance deficiencies.  Evaluators noted that she had "not shown sufficient progress in

20   her substantive legal knowledge and, as a result, her written work often does not reflect the level of

21   legal analysis that would be expected from an associate at her level."  For example, although she could

22   summarize the documents she reviews, "she often does not take the next step of providing substantive

23   legal analysis or useful 'value adds' for the client.  As had been the case in prior years, evaluators stated

24   that "knowledge of [the statutory] issues" central to her practice "still does not meet expectations."

25   Also, "it was noted that [she] frequently bills significantly more time than would be expected for the

26   work she performs. As a result, a number of Corporate partners are reluctant to staff her on their

27   matters."  Further answering Paragraph 108 of the Complaint, Defendant admits that Jane Doe 4 was

28   pregnant when she was put on notice of her termination, but Defendant denies that her pregnancy—

rather than her sustained performance deficiencies over multiple years—was a factor in her termination. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 108 of the Complaint.

109.    Defendant denies the allegations set forth in Paragraph 109.

110.    Defendant incorporates by reference its response to Paragraph 108 of the Complaint. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 110 of the Complaint.

111.    Defendant admits that the decision to terminate Jane Doe 4 followed internal discussions about her sustained performance deficiencies.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 111 of the Complaint.

112.    Defendant admits that the negotiation period between Morrison and Jane Doe 4 of her severance agreement spanned approximately two weeks.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 112 of the Complaint.

113.    Defendant admits that Plaintiff informed a firm representative that she had consulted counsel regarding her severance agreement before signing it.  Defendant further admits that Plaintiff negotiated the terms of that agreement, resulting in a doubling of the lump sum payout.  The agreement made clear that by signing, each party "confirm[ed] that they have chosen to sign the Agreement freely, without coercion, and based upon their respective judgments."  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 113 of the Complaint.

114.    Defendant states that Jane Doe 4 received a severance package that included a substantial and generous sum in the form of continued salary, a lump sum, and additional benefits. Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 114 and on that basis denies same.

115.    Defendant denies that it took adverse employment action against any attorneys, including Jane Doe 4, for having children or taking leave; in 2017, the year in which Jane Doe 4 was terminated for sustained performance deficiencies, 57 firm associates took parental leave, and only one was terminated.

116.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 116 and on that basis denies same.

117.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 117 and on that basis denies same.

118.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 118 and on that basis denies same.

119.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 119 and on that basis denies same.

120.     Defendant denies the allegations set forth in Paragraph 120 of the Complaint.  Defendant further notes, upon information and belief, that Jane Doe 4 has in fact secured employment at another firm.

121.     Defendant admits that Jane Doe 5 was employed in its Washington, D.C. office. Defendant further admits that Jane Doe 5 was on the firm's payroll until August 2017, after being notified of her termination on May 4, 2017.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 121 of the Complaint.

122.     Defendant admits that Jane Doe 5 has a B.A. and a J.D., and is admitted to the Washington, D.C. bar.  Defendant further admits that Jane Doe 5 had work experience at a law firm before joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 122 of the Complaint.

123.     Defendant admits the allegations set forth in Paragraph 123 of the Complaint.

124.     Defendant admits that Jane Doe 5's hours of pro bono work met the firm's threshold for Pro Bono All Star.  The firm appreciates the commitment to pro bono work demonstrated by Jane Doe 5 and the approximately 500 of her colleagues each year who meet that threshold, consistent with the firm's commitment to pro bono service.  However, Jane Doe 5's work in her practice area was consistently sub-par, despite repeated encouragement and opportunities to improve.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 124 of the Complaint.

125.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe 5 took maternity leave in 2016. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 125 of the Complaint.

126.     Defendant admits that on December 2, 2016, Jane Doe 5's year-end evaluation was delivered. As part of that evaluation, she was informed that she was being reclassified because of her low hours. At that time, Jane Doe 5 was projected to bill only 451 hours by the end of the year, far less than the 600 hours required to be considered for progression. In other words, Jane Doe 5 was projected to bill less than 25% of what a full-time associate was expected to bill, and approximately half of the hours expectation for a person taking six months of leave (accounting for the ramp up and ramp down periods). Jane Doe 5 ultimately billed only 524.95 hours by the end of that year. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 126 of the Complaint.

127.     Defendant admits only that certain colleagues in Jane Doe 5's office, including both male and female colleagues, advanced a class year at the beginning of 2017. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 127 of the Complaint.

128.     Defendant denies that it discriminated against Jane Doe 5 and otherwise denies the allegations set forth in Paragraph 128 of the Complaint.

129.     Defendant admits that it has a reduced-hours (or "flex-time") policy, under which associates may request reduced-hours arrangements for any number of reasons. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 129 of the Complaint.

130.     Defendant admits that on May 4, 2017, Jane Doe 5 was informed that she would be terminated effective August 4, 2017 because of continued performance deficiencies, including that she would often bill many times the hours that would be expected for even rote tasks while still committing significant errors requiring correction by more senior attorneys. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 130.

131.     Defendant denies that Jane Doe 5's maternity leave was the cause of her termination and otherwise denies the allegations set forth in Paragraph 131 of the Complaint. Defendant was unaware that Jane Doe 5 was pregnant at the time of her termination.

132.     Defendant denies the allegations set forth in Paragraph 132 of the Complaint.

Gibson, Dunn &
Crutcher LLP

133.    Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 133 and on that basis denies same.

134.    Defendant admits only that Jane Doe 5 seeks equitable tolling, but denies that it is warranted.  Defendant otherwise denies the allegations in Paragraph 134 of the Complaint.

135.    Defendant denies the allegations set forth in Paragraph 135.

136.    Defendant denies the allegations set forth in Paragraph 136.

137.    Defendant denies the allegations set forth in Paragraph 137.

138.    Defendant admits that Jane Doe 6 worked in its New York office, and that she resigned her employment in 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 138 of the Complaint.

139.    Defendant admits that Jane Doe 6 has a B.A. and a J.D., and is admitted to the New York bar.  Defendant further admits that Jane Doe 6 was a lateral associate who had previously worked at other firms.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 139 of the Complaint.

140.    Defendant admits that Jane Doe 6 was offered an associate position at the firm in 2013, while she was employed by another firm, pregnant, and understood to be shortly taking a maternity leave.  The offer letter provided that she would receive a transition bonus of $10,000, and that she would be eligible for a discretionary bonus that year (which would not be prorated based on her start date or otherwise).  Defendant denies that her offer letter promised her that she would be considered for partner after two years at the firm; instead, the offer letter states, "The firm has a flexible partnership track.  An attorney is considered for partnership when it appears that his or her experience with the firm and its practice make it appropriate to be considered, which generally first occurs between the seventh to ninth year after law school graduation.  For those attorneys joining the firm as senior associates, of counsel and other senior attorneys, the firm takes into consideration the attorney's prior experience, but requires *at least two years* with the firm prior to consideration for potential admission to the partnership.  Therefore, the *earliest* time that you might be reviewed for admission to the partnership would be the fall of 2015 for potential admission as of January 1, 2016" (emphases added). Further answering Paragraph 140 of the Complaint, Defendant admits that Jane Doe 6 was not elected

1   to the firm's partnership.  Except as expressly admitted, Defendant denies the allegations set forth in

2   Paragraph 140 of the Complaint.

3        141.    Defendant denies the allegations set forth in Paragraph 141 of the Complaint.

4        142.    Defendant admits that Jane Doe 6 participated in pro bono work and diversity and

5   inclusion activities.  Defendant further admits that, at times, Jane Doe 6 received positive evaluations.

6   As a result, within a year of her arrival at the firm and after her first maternity leave at the firm, Jane

7   Doe 6 was promoted to an Of Counsel position.  Except as expressly admitted, Defendant denies the

8   allegations set forth in Paragraph 142 of the Complaint.

9        143.    Defendant admits only that Jane Doe 6 was not admitted to the partnership.  The only

10   years in which she was eligible for consideration were 2015 (for admission in 2016), 2016, and 2017.

11   In 2015, Morrison elected 12 partners, 5 of whom were women.  Two of those individuals were in Jane

12   Doe 6's Department, both of whom were women.  In 2016, Morrison elected 15 partners, 7 of whom

13   were women.  Of the two individuals in Jane Doe 6's Department, one was a woman and the male

14   attorney was from an international office.  In 2017, Morrison elected 10 partners, 6 of whom were

15   women; none of the newly-named United States partners were in Jane Doe 6's Department.  During

16   these three years, no one from Jane Doe 6's practice group was elevated to the partnership; one woman

17   was elevated to the partnership in a practice group that later merged with Jane Doe 6's.  Defendant

18   otherwise denies the allegations in Paragraph 143 of the Complaint.

19        144.    Defendant admits that Jane Doe 6 took three maternity leaves during her tenure at the

20   firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 144 of the

21   Complaint.

22        145.    Defendant states that Jane Doe 6 received four pay raises during her five years at the

23   firm.  She was never denied a pay raise to which she was entitled.  She was never demoted.  She and

24   Attorney 1 had co-created a working group, and Attorney 1 had actively encouraged the Marketing

25   Department to first feature Jane Doe 6 as sole Chair in order to help her advance her career, with the

26   understanding that in time he would serve as Co-Chair with Jane Doe 6.  He did ultimately serve as

27   Co-Chair, while Jane Doe 6 retained the working group Co-Chair title and role.  Jane Doe 6

28   acknowledged, unsolicited, that she "could not ask for a better Co-Founder of" the working group, "or

a better and more supportive colleague" than Attorney 1.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 145 of the Complaint.

146.     Defendant denies the allegations set forth in Paragraph 146 of the Complaint.

147.     Defendant denies the allegations regarding Jane Doe 6's compensation, including the allegation that her base compensation was below that of full-time associates.  Defendant also denies that Jane Doe 6 was doing partner level work, instead she failed to respond to client concerns and failed to comply with basic firm policy—in 2018, she had approximately 6% compliance with time entry deadlines even though multiple partners advised her that compliance was a basic expectation of all lawyers and failure to comply diminished the firm's return on her hours because late-submitted time often could not be billed to clients.  As to the allegations regarding discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them.

148.     Defendant acknowledges that Jane Doe 6 received 80% of her base compensation because she had elected an 80% schedule, consistent with Morrison's flex-time policies and practices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 148 of the Complaint.

149.     Defendant admits that, in response to a request from Jane Doe 6, her compensation was increased.  Defendant denies the remaining allegations set forth in Paragraph 149 and specifically denies that any similarly-situated attorney was paid more than Jane Doe 6.

150.     Defendant denies that any similarly-situated attorney was paid more than Jane Doe 6.  As to the allegations regarding discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them.  Defendant denies the remaining allegations in Paragraph 150.

151.     Defendant admits that Jane Doe 6 was not elevated to partner.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 151 of the Complaint.

152.     Answering Paragraph 152 of the Complaint, Defendant denies that any similarly-situated attorney was paid more than Jane Doe 6.  Defendant further denies that Jane Doe 6 was denied any promotion based on her sex, gender, or pregnancy, or that less qualified colleagues were advanced

1    to the partnership.  Defendant further denies that anyone less "trusted" than Jane Doe 6 was elevated

2    to the partnership.  Defendant otherwise denies the allegations in Paragraph 152.

3            153.    Defendant denies the allegations set forth in Paragraph 153 of the Complaint.

4            154.    Defendant denies the allegations set forth in Paragraph 154 of the Complaint.

5            155.    Defendant denies the allegations set forth in Paragraph 155 of the Complaint.  With

6    respect to the specific allegations regarding compensation, Defendant states that in years during which

7    Jane Doe 6 worked more than her part-time schedule, her compensation was increased at year-end to

8    account for that work.

9            156.    Defendant admits that Jane Doe 6 was not elevated to partner.  Defendant denies that

10   Jane Doe 6 was expected to "cede" to Attorney 1, who practiced in another Department.  Defendant

11   further denies that Jane Doe 6 received anything but fair compensation.  As to the allegations regarding

12   discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief

13   about the truth of those, and on that basis, denies them.

14           157.    Defendant admits that Jane Doe 6 elected an 80% schedule after her maternity leave.

15   With respect to the allegations regarding compensation, Defendant states that in years during which

16   Jane Doe 6 worked more than her part-time schedule, her compensation was increased at year-end to

17   account for that work.  Defendant denies that Jane Doe 6's part-time schedule affected the allocation

18   of her work among billable and non-billable matters.  Except as expressly admitted, Defendant denies

19   the allegations set forth in Paragraph 157 of the Complaint.

20           158.    Defendant admits that Jane Doe 6 exceeded her hours targets, and in one year exceeded

21   her hours target by approximately 54% (annualizing at 1,017 credited hours for the year).  Defendant

22   further admits that evaluators occasionally described certain aspects of Jane Doe 6's efforts (including

23   her marketing efforts) as "tireless."  Except as expressly admitted, Defendant denies the allegations set

24   forth in Paragraph 158 of the Complaint, including the allegation that Jane Doe 6 experienced

25   retaliation.

26           159.    Defendant admits that Jane Doe 6 consulted with other attorneys on occasion regarding

27   reduced-hours schedules.  Defendant further admits that Jane Doe 6 was counseled in her last year at

28   the firm to be more targeted in her nonbillable efforts so that she could focus more on billable work.

Gibson, Dunn &
Crutcher LLP

At that time, Jane Doe 6 was recording time almost exclusively for business development efforts, rather than client services, despite being informed that the partnership she wanted to join was a "working partnership." Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 159 of the Complaint.

160. Defendant states that attorneys (both male and female) have been encouraged in specific circumstances to pursue a reduced hours schedule if the individual attorney in question determined that was the best fit for his or her life. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 160 of the Complaint.

161. Defendant denies the allegations set forth in Paragraph 161 of the Complaint.

162. Defendant denies the allegations set forth in Paragraph 162 of the Complaint.

163. Defendant denies the allegations set forth in Paragraph 163 of the Complaint.

164. Defendant denies the allegations set forth in Paragraph 164 of the Complaint.

165. Defendant incorporates its response to Paragraph 145 of the Complaint. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 165 of the Complaint.

166. Defendant admits that, in response to feedback about Jane Doe 6's email communications, Defendant retained (at its own expense) a job coach to assist Jane Doe 6 in improving her communication skills. Jane Doe 6 failed to respond to repeated requests from the job coach to connect. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 166 of the Complaint.

167. Defendant admits that the Attorney Development Group received negative feedback regarding Jane Doe 6's communication skills. Defendant further admits that it retained (at its own expense) a job coach to assist Jane Doe 6 in improving her communication skills. Jane Doe 6 failed to respond to repeated requests from the job coach to connect. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 167 of the Complaint.

168. Defendant admits that Jane Doe 6 was encouraged not to work while on maternity leave. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 168 of the Complaint.

1

2

169.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 169, and on that basis, denies them.

3

170.     Defendant denies the allegations set forth in Paragraph 170 of the Complaint.

4

171.     Defendant denies the allegations set forth in Paragraph 171 of the Complaint.

5

6

7

8

9

10

11

172.     Defendant admits that Partner 2 was named Co-Chair of a new practice group that included Jane Doe 6.  Defendant further admits that, after that announcement, Jane Doe 6 raised concerns with a partner and a member of the Attorney Development Group, informing them that she had a prior personal relationship with Partner 2, which took place before either joined the firm.  In response, the firm ensured that she did not have to work with Partner 2, nor was he making decisions about her pay or career trajectory.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 172 of the Complaint.

12

13

173.     Defendant denies Partner 2 engaged in gender-based harassment and otherwise denies the allegations set forth in Paragraph 173 of the Complaint.

14

174.     Defendant denies the allegations set forth in Paragraph 174 of the Complaint.

15

175.     Defendant denies the allegations set forth in Paragraph 175 of the Complaint.

16

17

18

19

20

21

22

23

24

25

26

27

176.     Defendant admits that Jane Doe 6 expressed frustration with some of her working relationships to the Attorney Development Group, the Chief Human Resources Officer, and the head of her Department.  In response, all of those individuals attempted to speak with her multiple times to understand her concerns and explore possible solutions.  Jane Doe 6 was often non-responsive to these individuals, refusing to either meet with them or provide the information necessary to understand her concerns.  She was further non-responsive when these individuals actively tried to assist her.  Indeed, after she expressed her frustrations to the head of her Department, he handed over a matter with one of his existing clients, telling her that she would be responsible for the matter and be credited as such.  But she promptly failed to respond to the client's request for basic information.  She so disappointed that client that the Department head received an email from the client, asking if perhaps the client should consult another firm on the matter.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 176 of the Complaint.

28

Gibson, Dunn & Crutcher LLP

177.    Defendant states that appropriate firm personnel have spoken with witnesses identified by Jane Doe 6.  Defendant denies that Jane Doe 6 was forced to report to or interact with anyone who had allegedly discriminated against her.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 177 of the Complaint.

178.    Defendant denies the allegations set forth in Paragraph 178 of the Complaint.

179.    Defendant admits that Jane Doe 6 was expected to comply with firm policy regarding the onboarding of matters, including performing appropriate conflicts checks and analyzing the potential risk of any engagement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 179 of the Complaint.

180.    Defendant denies the allegations set forth in Paragraph 180 of the Complaint.

181.    Defendant denies that partners "required [Jane Doe 6] to travel internationally on their behalf for informational" meetings.  The evidence will show those partners who *offered* her the *optional* opportunity to feature her practice before an international audience—an opportunity she refused to pass up, even when she was asked if she had the time for it.  The partners made clear that the "main goal is to get you in front" of the other firms to present *her* practice.  Once abroad, whatever lasting relationships Jane Doe 6 allegedly created, they were unrelated to the firm-related efforts Morrison paid for and had invited her abroad to collaborate on.  While on the trip, Jane Doe 6 went completely incommunicado while she toured local sights, arrived late for a business meeting, absented herself for a large portion of a business meal in order to speak with a blogger, and made the personal decision to cut her trip short (and necessitate the firm cancelling several in-person meetings with valued relationships) in order to fly back to the United States and accept an award she claimed to have just learned about.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 181 of the Complaint.

182.    Defendant denies that Jane Doe 6 was forced to join a call in the middle of the night while traveling.  Rather, a prominent female partner received a client inquiry in Jane Doe 6's professed area of expertise.  She offered Jane Doe 6 the opportunity to speak to high-level executives at the client.  Jane Doe 6 responded, "Sure – I'm happy to dial into a call.  (I'm expecting to be in [another country] for work, but 4 pm (NY time) is free for me.  Thanks for reaching out!"  In light of Jane Doe 6's

schedule, the partner responded, "I am not sure that makes sense.  Let me see what I can do."  Jane Doe 6 professed that she still wanted to join the call even "in the night, [local] time."  She then went completely dark at the time of the call and did not respond to her work email for days, long after she was back in the United States.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 182 of the Complaint.

183.    Defendant admits that Partner 5 was asked to attend a client development meeting with Jane Doe 6.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 183 of the Complaint.

184.    Defendant admits that firm policy encourages the internal reporting of concerns. Attorney Development encouraged Jane Doe 6 to share her concerns about any workplace frustrations. As to the allegations regarding discussions Jane Doe 6 has had with others, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 184 of the Complaint.

185.    Defendant admits that Partner 4 was supportive of Jane Doe 6.  Defendant denies that either Partner 4 or Jane Doe 6 faced any retaliation based on Jane Doe 6's internal Human Resources report.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 185 of the Complaint.

186.    Defendant admits that a female partner expressed concern that Jane Doe 6 was exposing the firm to unnecessary risk, including by failing to complete the necessary opening matter paperwork and by offering advice that she was not authorized to give (such as when she suggested to a third party that he steal documents from his employer).  Defendant further admits that the firm developed a risk management protocol for Jane Doe 6's practice area, and that Jane Doe 6 contributed to the development of that protocol.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 186 of the Complaint.

187.    Defendant admits that Jane Doe 6 voluntarily resigned her employment with the firm and is now pursuing other career opportunities.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 187 of the Complaint.

188.    Defendant denies that it retaliated against Jane Doe 6, whose counsel notified Defendant of her alleged claims approximately two weeks before she voluntarily resigned her employment. Defendant further denies that Attorney 1 and Partner 5 have avoided participating in events attended by Jane Doe 6.  Defendant otherwise denies the allegations set forth in Paragraph 188 of the Complaint.

189.    Defendant admits that Attorney 1 (who practices in a Department other than the one in which Jane Doe 6 practiced) was one of the many diverse candidates elevated to Morrison's partnership.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 189 of the Complaint.

190.    Defendant incorporates Paragraphs 1 through 189 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 190 of the Complaint.

191.    Answering Paragraph 191 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 191 of the Complaint.  Defendant specifically denies that class certification is appropriate.

192.    Answering Paragraph 192 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 192 of the Complaint.  Defendant specifically denies that collective action certification is appropriate.

193.    Defendant denies the allegations set forth in Paragraph 193 of the Complaint.

194.    Defendant denies the allegations set forth in Paragraph 194 of the Complaint.

195.    Defendant denies the allegations set forth in Paragraph 195 of the Complaint.

196.    Defendant denies the allegations set forth in Paragraph 196 of the Complaint.

197.    Defendant denies the allegations set forth in Paragraph 197 of the Complaint.

198.    Defendant denies the allegations set forth in Paragraph 198 of the Complaint.

199.    Defendant denies the allegations set forth in Paragraph 199 of the Complaint.

200.    Defendant denies the allegations set forth in Paragraph 200 of the Complaint.

201.    Defendant admits only that certain policies (including Morrison's anti-discrimination policy) are applicable to all offices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 201 of the Complaint.

202.    Defendant denies the allegations set forth in Paragraph 202 of the Complaint.

203.    Defendant denies the allegations set forth in Paragraph 203 of the Complaint, and expressly denies that Plaintiffs are entitled to any relief.

204.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 204 of the Complaint.  Defendant specifically denies that class certification is appropriate.

205.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 205 of the Complaint.  Defendant specifically denies that class certification is appropriate.

206.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 206 of the Complaint.  Defendant specifically denies that class certification is appropriate.

207.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 207 of the Complaint.  Defendant specifically denies that class certification is appropriate.

208.    Defendant admits only that Jane Does 1-4 so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 208 of the Complaint.  Defendant specifically denies that class certification is appropriate.

209.    Defendant denies the allegations set forth in Paragraph 209 of the Complaint.

210.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 210 of the Complaint.

211.    Defendant denies the allegations set forth in Paragraph 211 of the Complaint.

212.    To the extent Paragraph 212 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 212 of the Complaint.

213.    To the extent Paragraph 213 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 213 of the Complaint.

214.    To the extent Paragraph 214 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 214 of the Complaint.

215.    To the extent Paragraph 215 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 215 of the Complaint.

216.    To the extent Paragraph 216 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 216 of the Complaint.

217.    To the extent Paragraph 217 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 217 of the Complaint.

218.    To the extent Paragraph 218 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 218 of the Complaint.

219.    To the extent Paragraph 219 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 219 of the Complaint.

220.    Answering Paragraph 220 of the Complaint, Defendant admits only that certain policies (including Morrison's anti-discrimination policy) are applicable to all offices.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 220 of the Complaint.

221.    To the extent Paragraph 221 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 221 of the Complaint.

222.    To the extent Paragraph 222 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 222 of the Complaint.

223.    To the extent Paragraph 223 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 223 of the Complaint.

224.    To the extent Paragraph 224 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 224 of the Complaint.

225.    To the extent Paragraph 225 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 225 of the Complaint.

226.    To the extent Paragraph 226 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 226 of the Complaint.

227.    To the extent Paragraph 227 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 227 of the Complaint, and denies Plaintiffs are entitled to relief.

228.    To the extent Paragraph 228 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 228 of the Complaint.

229.    To the extent Paragraph 229 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 229 of the Complaint.

230.    To the extent Paragraph 230 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 230 of the Complaint.

231.    To the extent Paragraph 231 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 231 of the Complaint.

232.    To the extent Paragraph 232 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 232 of the Complaint.

233.    To the extent Paragraph 233 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 233 of the Complaint.

234.    To the extent Paragraph 234 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 234 of the Complaint.

235.    To the extent Paragraph 235 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 235 of the Complaint.

236.    To the extent Paragraph 236 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 236 of the Complaint.

237.    To the extent Paragraph 237 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 237 of the Complaint.

238.    To the extent Paragraph 238 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 238 of the Complaint.

239.    To the extent Paragraph 239 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 239 of the Complaint.

240.    Defendant incorporates Paragraphs 1 through 239 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 240 of the Complaint.

241.     Answering Paragraph 241 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 241 of the Complaint.  Defendant specifically denies that collective action certification is appropriate.

242.     To the extent Paragraph 242 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 242 of the Complaint.

243.     To the extent Paragraph 243 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations contained in Paragraph 243 of the Complaint.

244.     To the extent Paragraph 244 states legal conclusions, Defendant is not required to respond.  Defendant states that 29 U.S.C. § 216(b) is a statute that speaks for itself.  Defendant denies the remaining allegations contained in Paragraph 244 of the Complaint.

245.     To the extent Paragraph 245 states legal conclusions, Defendant is not required to respond.  Answering Paragraph 245 of the Complaint, Defendant admits only that Plaintiffs seek to bring collective action claims pursuant to the FLSA.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 245 of the Complaint.

246.     Defendant incorporates Paragraphs 1 through 245 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 246 of the Complaint.

247.     To the extent Paragraph 247 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 247 of the Complaint.

248.     Defendant denies the allegations set forth in Paragraph 248 of the Complaint.

249.     Defendant denies the allegations set forth in Paragraph 249 of the Complaint.

250.     Defendant denies the allegations set forth in Paragraph 250 of the Complaint.

251.     Defendant denies the allegations set forth in Paragraph 251 of the Complaint.

252.     Defendant denies the allegations set forth in Paragraph 252 of the Complaint.

253.     Defendant denies the allegations set forth in Paragraph 253 of the Complaint.

254.     Defendant incorporates Paragraphs 1 through 253 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 254 of the Complaint.

255.     To the extent Paragraph 255 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 255 of the Complaint.

256.   Defendant denies the allegations set forth in Paragraph 256 of the Complaint.

257.   Defendant denies the allegations set forth in Paragraph 257 of the Complaint.

258.   Defendant denies the allegations set forth in Paragraph 258 of the Complaint.

259.   Defendant denies the allegations set forth in Paragraph 259 of the Complaint.

260.   Defendant denies the allegations set forth in Paragraph 260 of the Complaint.

261.   Defendant denies the allegations set forth in Paragraph 261 of the Complaint.

262.   Defendant denies the allegations set forth in Paragraph 262 of the Complaint.

263.   Defendant denies the allegations set forth in Paragraph 263 of the Complaint.

264.   Defendant denies the allegations set forth in Paragraph 264 of the Complaint.

265.   Defendant denies the allegations set forth in Paragraph 265 of the Complaint.

266.   Defendant denies the allegations set forth in Paragraph 266 of the Complaint.

267.   Defendant incorporates Paragraphs 1 through 266 above.   Except was expressly admitted, Defendant denies the allegations set forth in Paragraph 267 of the Complaint.

268.   To the extent Paragraph 268 states legal conclusions, Defendant is not required to respond.   Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 268 of the Complaint.

269.   To the extent Paragraph 269 states legal conclusions, Defendant is not required to respond.   Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 269 of the Complaint.

270.   Defendant denies the allegations set forth in Paragraph 270 of the Complaint.

271.   Defendant denies the allegations set forth in Paragraph 271 of the Complaint.

272.   Defendant denies the allegations set forth in Paragraph 272 of the Complaint.

273.   Defendant denies the allegations set forth in Paragraph 273 of the Complaint.

274.   Defendant denies the allegations set forth in Paragraph 274 of the Complaint.

275.   Defendant incorporates Paragraphs 1 through 274 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 275 of the Complaint.

276.   To the extent Paragraph 276 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 276 of the Complaint.

1    277.    Defendant denies the allegations set forth in Paragraph 277 of the Complaint.

2    278.    To the extent Paragraph 278 states legal conclusions, Defendant is not required to

3    respond.   Except as expressly admitted, Defendant denies the remaining allegations contained in

4    Paragraph 278 of the Complaint.

5    279.    Defendant denies the allegations set forth in Paragraph 279 of the Complaint.

6    280.    Defendant denies the allegations set forth in Paragraph 280 of the Complaint.

7    281.    Defendant denies the allegations set forth in Paragraph 281 of the Complaint.

8    282.    Defendant denies the allegations set forth in Paragraph 282 of the Complaint.

9    283.    Defendant denies the allegations set forth in Paragraph 283 of the Complaint.

10    284.    Defendant denies the allegations set forth in Paragraph 284 of the Complaint.

11    285.    Defendant incorporates Paragraphs 1 through 284 above.  Except as expressly admitted,

12    Defendant denies the allegations set forth in Paragraph 285 of the Complaint.

13    286.    To the extent Paragraph 286 states legal conclusions, Defendant is not required to

14    respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 286 of

15    the Complaint.

16    287.    Defendant denies the allegations set forth in Paragraph 287 of the Complaint.

17    288.    Defendant denies the allegations set forth in Paragraph 288 of the Complaint.

18    289.    Defendant denies the allegations set forth in Paragraph 289 of the Complaint.

19    290.    Defendant denies the allegations set forth in Paragraph 290 of the Complaint.

20    291.    Defendant denies the allegations set forth in Paragraph 291 of the Complaint.

21    292.    Defendant denies the allegations set forth in Paragraph 292 of the Complaint.

22    293.    Defendant denies the allegations set forth in Paragraph 293 of the Complaint.

23    294.    Defendant denies the allegations set forth in Paragraph 294 of the Complaint.

24    295.    Defendant denies the allegations set forth in Paragraph 295 of the Complaint.

25    296.    Defendant denies the allegations set forth in Paragraph 296 of the Complaint.

26    297.    Defendant incorporates Paragraphs 1 through 296 above.  Except as expressly admitted,

27    Defendant denies the allegations set forth in Paragraph 297 of the Complaint.

28

Gibson, Dunn &
Crutcher LLP

298.   To the extent Paragraph 298 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 298 of the Complaint.

299.   Defendant denies the allegations set forth in Paragraph 299 of the Complaint.

300.   Defendant denies the allegations set forth in Paragraph 300 of the Complaint.

301.   Defendant denies the allegations set forth in Paragraph 301 of the Complaint.

302.   Defendant denies the allegations set forth in Paragraph 302 of the Complaint.

303.   Defendant denies the allegations set forth in Paragraph 303 of the Complaint.

304.   Defendant denies the allegations set forth in Paragraph 304 of the Complaint.

305.   Defendant denies the allegations set forth in Paragraph 305 of the Complaint.

306.   Defendant denies the allegations set forth in Paragraph 306 of the Complaint.

307.   Defendant denies the allegations set forth in Paragraph 307 of the Complaint.

308.   Defendant denies the allegations set forth in Paragraph 308 of the Complaint.

309.   Defendant incorporates Paragraphs 1 through 308 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 309 of the Complaint.

310.   To the extent Paragraph 310 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 310 of the Complaint.

311.   To the extent Paragraph 311 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 311 of the Complaint.

312.   Defendant denies the allegations set forth in Paragraph 312 of the Complaint.

313.   Defendant denies the allegations set forth in Paragraph 313 of the Complaint.

314.   Defendant denies the allegations set forth in Paragraph 314 of the Complaint.

315.   Defendant denies the allegations set forth in Paragraph 315 of the Complaint.

316.   Defendant denies the allegations set forth in Paragraph 316 of the Complaint.

317.   Defendant incorporates Paragraphs 1 through 316 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 317 of the Complaint.

318.     To the extent Paragraph 318 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 318 of the Complaint.

319.     Defendant denies the allegations set forth in Paragraph 319 of the Complaint.

320.     Defendant denies the allegations set forth in Paragraph 320 of the Complaint.

321.     Defendant denies the allegations set forth in Paragraph 321 of the Complaint.

322.     Defendant denies the allegations set forth in Paragraph 322 of the Complaint.

323.     Defendant denies the allegations set forth in Paragraph 323 of the Complaint.

324.     Defendant denies the allegations set forth in Paragraph 324 of the Complaint.

325.     Defendant denies the allegations set forth in Paragraph 325 of the Complaint.

326.     Defendant denies the allegations set forth in Paragraph 326 of the Complaint.

327.     Defendant incorporates Paragraphs 1 through 326 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 327 of the Complaint.

328.     To the extent Paragraph 328 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 328 of the Complaint.

329.     To the extent Paragraph 329 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 329 of the Complaint.

330.     Defendant denies the allegations set forth in Paragraph 330 of the Complaint.

331.     Defendant denies the allegations set forth in Paragraph 331 of the Complaint.

332.     Defendant incorporates Paragraphs 1 through 331 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 332 of the Complaint.

333.     To the extent Paragraph 333 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 333 of the Complaint.

334.     Defendant denies the allegations set forth in Paragraph 334 of the Complaint.

335.     Defendant denies the allegations set forth in Paragraph 335 of the Complaint.

336.    Defendant denies the allegations set forth in Paragraph 336 of the Complaint.

337.    Defendant denies the allegations set forth in Paragraph 337 of the Complaint.

338.    Defendant denies the allegations set forth in Paragraph 338 of the Complaint.

339.    Defendant denies the allegations set forth in Paragraph 339 of the Complaint.

340.    Defendant denies the allegations set forth in Paragraph 340 of the Complaint.

341.    Defendant incorporates Paragraphs 1 through 340 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 341 of the Complaint.

342.    To the extent Paragraph 342 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 342 of the Complaint.

343.    Defendant denies the allegations set forth in Paragraph 343 of the Complaint.

344.    Defendant denies the allegations set forth in Paragraph 344 of the Complaint.

345.    Defendant denies the allegations set forth in Paragraph 345 of the Complaint.

346.    Defendant denies the allegations set forth in Paragraph 346 of the Complaint.

347.    Defendant denies the allegations set forth in Paragraph 347 of the Complaint.

348.    Defendant denies the allegations set forth in Paragraph 348 of the Complaint.

349.    Defendant incorporates Paragraphs 1 through 348 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 349 of the Complaint.

350.    Defendant denies the allegations set forth in Paragraph 350 of the Complaint.

351.    Defendant denies the allegations set forth in Paragraph 351 of the Complaint.

352.    Defendant denies the allegations set forth in Paragraph 352 of the Complaint.

353.    Defendant denies the allegations set forth in Paragraph 353 of the Complaint.

354.    Defendant denies the allegations set forth in Paragraph 354 of the Complaint.

355.    Defendant incorporates Paragraphs 1 through 354 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 355 of the Complaint.

356.    Defendant denies the allegations set forth in Paragraph 356 of the Complaint.

357.    Defendant denies the allegations set forth in Paragraph 357 of the Complaint.

358.    Defendant denies the allegations set forth in Paragraph 358 of the Complaint.

1    359.    Defendant denies the allegations set forth in Paragraph 359 of the Complaint.

2    360.    Defendant denies the allegations set forth in Paragraph 360 of the Complaint.

3    361.    Defendant incorporates Paragraphs 1 through 360 above.  Except as expressly admitted,

4    Defendant denies the allegations set forth in Paragraph 361 of the Complaint.

5    362.    Defendant admits only that Jane Doe 4 signed a severance agreement on or about

6    November 17, 2017.  Except as expressly admitted, Defendant denies the allegations set forth in

7    Paragraph 362 of the Complaint.

8    363.    Defendant denies the allegations set forth in Paragraph 363 of the Complaint.

9    364.    Defendant denies the allegations set forth in Paragraph 364 of the Complaint.

10   365.    Defendant incorporates Paragraphs 1 through 364 above.  Except as expressly admitted,

11   Defendant denies the allegations set forth in Paragraph 365 of the Complaint.

12   366.    Defendant denies the allegations set forth in Paragraph 366 of the Complaint.

13   367.    Defendant denies the allegations set forth in Paragraph 367 of the Complaint.

14   368.    Defendant denies the allegations set forth in Paragraph 368 of the Complaint.

15   369.    Defendant denies the allegations set forth in Paragraph 369 of the Complaint.

16   370.    Defendant denies the allegations set forth in Paragraph 370 of the Complaint.

17   371.    Defendant incorporates Paragraphs 1 through 370 above.  Except as expressly admitted,

18   Defendant denies the allegations set forth in Paragraph 371 of the Complaint.

19   372.    Defendant denies the allegations set forth in Paragraph 372 of the Complaint.

20   373.    Defendant denies the allegations set forth in Paragraph 373 of the Complaint.

21   374.    Defendant denies the allegations set forth in Paragraph 374 of the Complaint.

22   375.    Defendant denies the allegations set forth in Paragraph 375 of the Complaint.

23   376.    Defendant incorporates Paragraphs 1 through 375 above.  Except as expressly admitted,

24   Defendant denies the allegations set forth in Paragraph 376 of the Complaint.

25   377.    Defendant denies the allegations set forth in Paragraph 377 of the Complaint.

26   378.    Defendant denies the allegations set forth in Paragraph 378 of the Complaint.

27   379.    Defendant denies the allegations set forth in Paragraph 379 of the Complaint.

28   380.    Defendant denies the allegations set forth in Paragraph 380 of the Complaint.

1        381.     Defendant denies the allegations set forth in Paragraph 381 of the Complaint.

2        382.     Defendant incorporates Paragraphs 1 through 381 above.  Except as expressly admitted,

3   Defendant denies the allegations set forth in Paragraph 382 of the Complaint.

4        383.     Defendant denies the allegations set forth in Paragraph 383 of the Complaint.

5        384.     Defendant denies the allegations set forth in Paragraph 384 of the Complaint.

6        385.     Defendant denies the allegations set forth in Paragraph 385 of the Complaint.

7        386.     Defendant denies the allegations set forth in Paragraph 386 of the Complaint.

8        387.     Defendant denies the allegations set forth in Paragraph 387 of the Complaint.

9        388.     Defendant incorporates Paragraphs 1 through 387 above.  Except as expressly admitted,

10   Defendant denies the allegations set forth in Paragraph 388 of the Complaint.

11       389.     Defendant denies the allegations set forth in Paragraph 389 of the Complaint.

12       390.     Defendant denies the allegations set forth in Paragraph 390 of the Complaint.

13       391.     Defendant denies the allegations set forth in Paragraph 391 of the Complaint.

14       392.     Defendant incorporates Paragraphs 1 through 391 above.  Except as expressly admitted,

15   Defendant denies the allegations set forth in Paragraph 392 of the Complaint.

16       393.     Defendant denies the allegations set forth in Paragraph 393 of the Complaint.

17       394.     Defendant denies the allegations set forth in Paragraph 394 of the Complaint.

18       395.     Defendant denies the allegations set forth in Paragraph 395 of the Complaint.

19       396.     Defendant incorporates Paragraphs 1 through 395 above.  Except as expressly admitted,

20   Defendant denies the allegations set forth in Paragraph 396 of the Complaint.

21       397.     Defendant denies the allegations set forth in Paragraph 397 of the Complaint.

22       398.     Defendant denies the allegations set forth in Paragraph 398 of the Complaint.

23       399.     Defendant denies the allegations set forth in Paragraph 399 of the Complaint.

24       400.     Defendant denies the allegations set forth in Paragraph 400 of the Complaint.

25       401.     Defendant incorporates Paragraphs 1 through 400 above.  Except as expressly admitted,

26   Defendant denies the allegations set forth in Paragraph 401 of the Complaint.

27

28

402.    Defendant admits that Jane Doe 6 expressed concerns about her workplace frustrations to Partner 4, Human Resources, and the Attorney Development Group.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 402 of the Complaint.

403.    Defendant denies the allegations set forth in Paragraph 403 of the Complaint.

404.    Defendant denies the allegations set forth in Paragraph 404 of the Complaint.

405.    Defendant denies the allegations set forth in Paragraph 405 of the Complaint.

406.    Defendant denies the allegations set forth in Paragraph 406 of the Complaint.

407.    Defendant denies the allegations set forth in Paragraph 407 of the Complaint.

408.    Defendant denies the allegations set forth in Paragraph 408 of the Complaint.

409.    Defendant denies the allegations set forth in Paragraph 409 of the Complaint.

410.    Defendant incorporates Paragraphs 1 through 409 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 410 of the Complaint.

411.    Defendant admits only that Jane Doe 6 expressed concerns about her workplace frustrations to Partner 4, Human Resources, and the Attorney Development Group.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 411 of the Complaint.

412.    Defendant denies the allegations set forth in Paragraph 412 of the Complaint.

413.    Defendant denies the allegations set forth in Paragraph 413 of the Complaint.

414.    Defendant denies the allegations set forth in Paragraph 414 of the Complaint.

415.    Defendant denies the allegations set forth in Paragraph 415 of the Complaint.

416.    Defendant denies the allegations set forth in Paragraph 416 of the Complaint.

417.    Defendant denies the allegations set forth in Paragraph 417 of the Complaint.

418.    Defendant denies the allegations set forth in Paragraph 418 of the Complaint.

419.    Defendant incorporates Paragraphs 1 through 418 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 419 of the Complaint.

420.    Defendant admits only that Jane Doe 6 discussed her compensation with certain members of the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 420 of the Complaint.

421.    Defendant denies the allegations set forth in Paragraph 421 of the Complaint.

1    422.    Defendant denies the allegations set forth in Paragraph 422 of the Complaint.

2    423.    Defendant denies the allegations set forth in Paragraph 423 of the Complaint.

3    424.    Defendant denies the allegations set forth in Paragraph 424 of the Complaint.

4    425.    Answering the unnumbered prayer for relief (including subparts), Defendant denies that

5    Plaintiffs are entitled to the relief requested or any relief.

6                    **SEPARATE AND ADDITIONAL DEFENSES**

7        Without admitting any of the facts alleged in the Complaint, Defendant hereby asserts and

8    alleges the following separate and additional defenses, without assuming the burden of proving any

9    fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs, and without

10   prejudice to Defendant's right to argue that Plaintiffs bear the burden of proof as to any one or more of

11   said defenses.  Furthermore, all such defenses are pleaded in the alternative and do not constitute an

12   admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever.  Defendant

13   presently has insufficient knowledge or information as to whether it may have additional, as yet

14   unasserted, defenses.  Defendant therefore reserves the right to assert additional defenses in the event

15   discovery or further proceedings indicate such additional defense would be appropriate:

16
17       1.    Plaintiffs' claims are barred to the extent the Complaint, and each purported cause of

18   action asserted therein, fails to state facts sufficient to constitute a cause of action against Defendant.

19       2.    Plaintiffs' claims are barred to the extent Plaintiffs lack the requisite standing to assert

20   each purported cause of action.

21       3.    Plaintiffs' claims are barred by applicable statutes of limitations.

22       4.    Plaintiffs' claims are barred by the doctrine of laches.

23       5.    Plaintiffs' claims are barred by the doctrine of unclean hands.

24       6.    Plaintiffs' claims are barred by the doctrine of estoppel.

25       7.    Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

26       8.    Plaintiffs' claims are barred by the doctrine of release; Jane Doe 4 in particular

27   negotiated and executed a severance agreement that bars her suit.

28       9.    Plaintiffs' claims are barred by the doctrine of payment.

     10.   Plaintiffs' claims are barred by the doctrine of waiver.

11.     Plaintiffs' claims are barred by the doctrine of ratification.

12.     Plaintiffs' claims are barred by the doctrine of consent.

13.     Plaintiffs' claims are barred by their failure to exhaust jurisdictional, procedural, or administrative remedies under state and federal laws.

14.     Plaintiffs' claims for punitive damages are barred to the extent such damages are not authorized by applicable federal or state law.

15.     The imposition of punitive damages would violate the federal and state constitutions. The Complaint, to the extent it seeks exemplary damages or penalties, violates Defendant's right to equal protection under the United States and California Constitutions, violates Defendant's right to procedural due process under the Fourteenth Amendment of the United States Constitution, and under Article I, Section 7 of the Constitution of the State of California, and violates Defendant's right to substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution and, therefore, fails to state a cause of action upon which exemplary, double, or punitive damages or penalties may be awarded.

16.     An award of punitive damages would violate the Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution because:  (a) the standard for an award of punitive damages is so vague, indefinite, and uncertain that it does not give the Defendant adequate notice of the kind of conduct for which it may be liable for punitive damages or the extent of their possible liability; (b) the judge or jury is not provided with constitutionally adequate standards of sufficient clarity, objectivity, and uniformity for determining either the appropriate imposition of an award of punitive damages or the appropriate size of an award of punitive damages; (c) the judge or jury is not instructed in a constitutionally adequate manner on the limits of punitive damages awards imposed by the applicable principles of punishment and deterrence; (d) the judge or jury is not expressly prohibited from awarding punitive damages, or from determining the amount of an award of punitive damages, in whole or in part, on the basis of individually discriminatory characteristics, including without limitation the residence, wealth, and corporate status of Defendant; (e) Defendant may be subjected to punishment based upon the same course of conduct in more than one action; (f) the judge or jury is permitted to award punitive

damages under standards for determining liability for, and the amount of, punitive damages that are vague and arbitrary and that do not define with sufficient clarity the culpable conduct or mental state that makes an award of punitive damages permissible; and (g) an award of punitive damages is not subject to judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate standards of sufficient clarity, objectivity, and uniformity.

17.     Plaintiffs' claims for punitive damages are barred because Defendant did not act with fraud, oppression, malice, wanton, willful, or conscious disregard, or reckless indifference toward Plaintiffs.

18.     Plaintiffs' claims for punitive damages are barred because Defendant engaged in good faith effort to comply with the law.

19.     Plaintiffs' claims for punitive damages are barred because no managerial agent of Defendant acted with the requisite mental state toward any individual.

20.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were based on legitimate, nondiscriminatory business reasons and were not pretexts for discrimination.

21.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were job-related and consistent with business necessity.

22.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were based on *bona fide* factors other than sex, gender, pregnancy, or parenthood.

23.     Plaintiffs' claims are barred in whole or in part to the extent that the claims challenge employment decisions and actions that were based on a *bona fide* seniority, merit, or incentive system.

24.     Plaintiffs' claims are barred in whole or in part because Defendant did not intentionally engage in an unlawful employment practice.

25.     Plaintiffs' claims are barred in whole or in part to the extent that the claims are based on alleged incidents that do not constitute tangible adverse employment actions against Plaintiffs,

1   Defendant exercised reasonable care to prevent the alleged incidents, and the Plaintiffs unreasonably

2   failed to take advantage of available preventative or corrective opportunities

3       26.     Plaintiffs have suffered no damages as a result of any alleged act or omission of

4   Defendant.

5       27.     Even if Plaintiffs have suffered damages, Plaintiffs' claims are barred in whole or in

6   part by their failure to mitigate, or attempt to mitigate, their damages.

7       28.     Plaintiffs' claims are barred to the extent that damages, if any, resulted from the acts

8   and/or omissions of Plaintiff or any person on whose behalf relief is sought.

9       29.     Plaintiffs' claims are barred in whole or in part because actual payments paid to

10  Plaintiffs were reasonable, appropriate, and commensurate with the services and work actually

11  performed.

12      30.     Plaintiffs' claims are barred in whole or in part by the after-acquired evidence

13  doctrine.

14      31.     Plaintiffs' claim of purported "pattern and practice" discrimination fails because

15  Defendant has not engaged in any "pattern or practice" of discrimination.

16      32.     Plaintiffs' claims for injunctive, equitable, and/or declaratory relief are inappropriate

17  to the extent Plaintiffs have an adequate remedy at law.

18      33.     Plaintiffs' claims for equitable relief are barred in whole or in part to the extent

19  Plaintiffs have not suffered injury or harm and will not suffer imminent and irreparable injury or

20  harm as a result of any action or conduct by Defendant.

21      34.     Plaintiffs' claims are barred to the extent they result in an unjust enrichment to

22  Plaintiffs and/or any person on whose behalf relief is sought.

23      35.     This action may not be maintained as a class action because one or more of the

24  requirements for a class action are not met:  (1) joinder of all members of the purported class is not

25  impracticable; (2) there are no questions of fact or law common to all purported members of the

26  class; (3) the claims asserted in the Complaint are not typical of the claims of the purported class;

27  (4) the representative party and proposed class counsel will not fairly and adequately protect the

28  interests of the purported class; (5) facts common to the purported class do not predominate over

questions affecting only individual members; and (6) a class action lawsuit is not superior to other methods for the fair and efficient adjudication of the matter.

36.     Trying this case as a class action would violate the U.S. Constitution, the California Constitution, and the Constitution of the State of New York.

37.     Defendant cannot be liable for any alleged violation of the Unfair Competition Law, California Business and Professions Code sections 17200 *et seq.*, because its actions were not unfair, fraudulent, or likely to mislead, and its conduct and dealings were lawful, as authorized by applicable state and federal statutes, rules, and regulations, and such actions, conduct, and dealings were carried out in good faith and for legitimate business purposes.

38.     Any award of restitution under California Business & Professions Code, sections 17200 *et seq.*, would constitute a taking of property without just compensation in violation of the Takings Clauses of the Fifth Amendment to the United States Constitution (as incorporated into the Fourteenth Amendment to the United States Constitution) and of Article I, Section 19, of the California Constitution.

39.     Any finding of liability under California Business & Professions Code Sections 17200, 17203, and 17204 would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and of Article I, Section 7 of the California Constitution, because the standards of liability under these statutes are unduly vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest.

40.     Any award of restitution under California Business & Professions Code Section 17203 to persons who refuse to execute an acknowledgement that the payment is in full settlement of claims

against Defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Dated: February 8, 2019                              GIBSON, DUNN & CRUTCHER LLP


By: /s/ Catherine A. Conway

Attorneys for Defendant
MORRISON & FOERSTER LLP