RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
DANIEL M. BRUGGEBREW, SBN 307037
  dbruggebrew@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

CATHERINE A. CONWAY, SBN 98366
  cconway@gibsondunn.com
MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

AMANDA C. MACHIN, *admitted pro hac vice*
  amachin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306
Telephone:    202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE 1, et al., | CASE NO. 3:18-cv-02542-JSC |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS WITH REGARD TO PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)** |
| v. | |
| MORRISON & FOERSTER LLP, | |
| Defendant. | Date:      April 4, 2019 |
| | Time:      9:00 a.m. |
| | Place:     Courtroom F, 15th Floor |

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................................ 2

II. LEGAL STANDARD ...................................................................................................... 3

III. SUMMARY OF FACTUAL ALLEGATIONS.............................................................. 4

    A.    After Receiving Notice Of Her Termination, Jane Doe 4 Negotiated And
        Executed A Release That Bars Her Claims................................................................ 4

    B.    Jane Doe 5 Is Terminated And Does Not Timely Assert Her Claims ....................... 6

IV. ARGUMENT .................................................................................................................. 7

    A.    Jane Doe 4's Release Bars Her Employment-Related Claims.................................... 7

        1.    Jane Doe 4 Fails To Allege Economic Duress.................................................. 9

        2.    Jane Doe 4 Fails To Allege Undue Influence ................................................ 13

    B.    Jane Doe 5's Title VII, DCHRA, DCFMLA and EPA Claims Must Be
        Dismissed ................................................................................................................ 16

        1.    The Majority Of Jane Doe 5's Claims Are Time-Barred, And No
                Tolling Doctrine Applies ............................................................................... 16

        2.    Jane Doe 5 Failed To Allege The Essential Elements of Her EPA Claim...... 19

V. CONCLUSION ............................................................................................................. 21

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004)..................................................................................................4

*Ali v. Intel Corp.*,
No. 18-cv-03981-LHK, 2018 WL 5734673 (N.D. Cal. Oct. 31, 2018)...........................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. *passim*

*Baker Pac. Corp. v. Suttles*,
220 Cal. App. 3d 1148 (1990)...............................................................................8, 9

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)..................................................................................3

*Banawis-Olila v. World Courier Ground, Inc.*,
No. 16-cv-00982-PJH, 2016 WL 4070133 (N.D. Cal. July 29, 2016)...........................20

*Bedrosian v. Tenet Healthcare Corp.*,
208 F.3d 220 (9th Cir. 2000)..................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................3, 14

*Bey v. City of Oakland*,
No. 14-cv-01626-JSC, 2016 WL 1639372 (N.D. Cal. Apr. 26, 2016) ...........................19

*Braz v. Delta Air Lines, Inc.*,
No. 18-cv-06162-JST, 2019 WL 202817 (N.D. Cal. Jan. 15, 2019) ...........................18

*Brewer v. HR Policy Ass'n*,
887 F. Supp. 2d 118 (D.D.C. 2012) ......................................................................16

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012)..................................................................................3

*Congress v. D.C.*,
324 F. Supp. 3d 164 (D.D.C. 2018) ......................................................................17

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011)...........................................................................3, 21

*Craig-Gersham v. CitiFinancial Credit Co.*,
No. Civ. 04-40285, 2006 WL 901181 (E.D. Mich. Mar. 31, 2006) ...........................14

Page(s)

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980) ............................................................................................................17

*Durant v. D.C. Gov't*,
    875 F.3d 685 (D.C. Cir. 2017) ...........................................................................................7

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014) .............................................................................................20

*Elshirbiny v. Hewlett Packard Co.*,
    No. C 00-4104 MMC, 2001 WL 590034 (N.D. Cal. May 24, 2001) ...............................19

*Fall v. Delta Air Lines, Inc.*,
    731 F. App'x 678 (9th Cir. 2018) ...............................................................................16, 17

*Farzana K. v. Indiana Dep't of Educ.*,
    473 F.3d 703 (7th Cir. 2007) ............................................................................................18

*Fyan v. McNutt*,
    266 Mich. 406 ( 1934) ......................................................................................................15

*Green v. L.A. Cty. Superintendent of Sch.*,
    883 F.2d 1472 (9th Cir. 1989) ..........................................................................................16

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1990) ............................................................................................3

*Hein v. Or. Coll. of Educ.*,
    718 F.2d 910 (9th Cir. 1983) .........................................................................................3, 20

*Johnson v. IBM Corp.*,
    891 F. Supp. 522 (N.D. Cal. 1995) ..........................................................................9, 11, 12

*Kennedy v. Columbus Mfg., Inc.*,
    No. 17-cv-03379-EMC, 2018 WL 1911808 (N.D. Cal. Apr. 23, 2018) ...............10, 12, 13, 14

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..............................................................................................5

*Lacayo v. Donahoe*,
    No. 14-cv-04077-JSC, 2015 WL 993448 (N.D. Cal. Mar. 4, 2015) ..................................19

*Landmark Am. Ins. Co. v. Navigators Ins. Co.*,
    No. 18-cv-05504-CRB, 2018 WL 6591620 (N.D. Cal. Dec. 14, 2018) ...............................3

*Lanigan v. County of L.A.*,
    199 Cal. App. 4th 1020 (2012) ..........................................................................................11

Gibson, Dunn &
Crutcher LLP

Page(s)

*Levesque v. Rinchem Co.*,
  No. 14-cv-05655-PSG, 2015 WL 6152783 (N.D. Cal. Oct. 20, 2015)......................................9, 11

*Limon-Rodriguez v. U.S. Dep't of Homeland Sec.*,
  No. 12-cv-833-IEG (RBB), 2012 WL 1416274 (S.D. Cal. Apr. 24, 2012)...................................19

*Long v. Paulson*,
  349 F. App'x 145 (9th Cir. 2009) .............................................................................................19

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006).......................................................................................................7

*Minor v. FedEx Office & Print Servs., Inc.*,
  78 F. Supp. 3d 1021 (N.D. Cal. 2015) ......................................................................................7, 9

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
  554 F. Supp. 2d 1034 (C.D. Cal. 2008) .......................................................................................7

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*,
  797 F.2d 799 (9th Cir. 1986).......................................................................................................9

*Odorizzi v. Bloomfield Sch. Dist.*,
  246 Cal. App. 2d 123 (Cal. App. 1966) .....................................................................................15

*Olam v. Cong. Mortg. Co.*,
  68 F. Supp. 2d 1110 (N.D. Cal. 1999) ...........................................................................13, 14, 15

*Opperman v. Kong Techs., Inc.*,
  No. 13-cv-00453-JST, 2017 WL 3149295 (N.D. Cal. July 25, 2017)..........................................5

*Osanitsch v. Marconi PLC*,
  No. CV 05–3988 CRB, 2009 WL 5125821 (N.D. Cal. Dec. 21, 2009)........................................10

*Palantir Techs., Inc. v. Palantir.net, Inc.*,
  No. C 10–04283 CRB, 2011 WL 62411 (N.D. Cal. Jan. 7, 2011)................................................8

*Perez v. Uline, Inc.*,
  157 Cal. App. 4th 953 (2007) ...............................................................................................10, 12

*Powell v. Am. Red Cross*,
  518 F. Supp. 2d 24 (D.D.C. 2007) .............................................................................................16

*Rice v. Ralphs Foods*,
  No. 09-cv-02650 SBA, 2010 WL 5017118 (N.D. Cal. Dec. 3, 2010)...........................................5

*San Diego Hospice v. Cty. of San Diego*,
  31 Cal. App. 4th 1048 (1995) ....................................................................................................12

Gibson, Dunn &

Crutcher LLP

Page(s)

*Scholar v. Pac. Bell,*
    963 F.2d 264 (9th Cir. 1992) ........................................................................................18

*Skrbina v. Fleming Cos., Inc.,*
    45 Cal. App. 4th 1353 (Cal. App. 1996) ......................................................................10

*Speiser v. U.S. Dep't of Health & Human Servs.,*
    670 F. Supp. 380 (D.D.C. 1986) ..................................................................................18

*Stanley v. Univ. of S. Cal.,*
    178 F.3d 1069 (9th Cir. 1999) ......................................................................................20

*Stoll v. Runyon,*
    165 F.3d 1238 (9th Cir. 1999) ......................................................................................19

*Stratton v. Grant,*
    139 Cal. App. 2d 814 (1956) ........................................................................................14

*Tanner v. Kaiser Found. Health Plan, Inc.,*
    No. 15-cv-02763-SBA, 2016 WL 4076116 (N.D. Cal. Aug. 1, 2016) ...................*passim*

*Thompson v. Brennan,*
    No. 17-cv-03798-EMC, 2018 WL 558934 (N.D. Cal. Jan. 25, 2018) ...........................17

*Ticer v. Young,*
    No. 16-cv-02198-KAW, 2018 WL 2088393 (N.D. Cal. May 4, 2018) ..........................18

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ......................................................................................4, 5

*V.C. v. L.A. Unified Sch. Dist.,*
    139 Cal. App. 4th 499 (2006) .......................................................................................19

*Warzon v. Drew,*
    60 F.3d 1234 (7th Cir. 1995) ..........................................................................................4

*Weger v. Rocha,*
    138 Cal. App. 109 (1934) .............................................................................................15

*Weisbuch v. Cty. of L.A.,*
    119 F.3d 778 (9th Cir. 1997) .......................................................................................2, 4

*Werner v. Advance Newhouse P'ship, LLC,*
    No. 1:13-cv-01259-LJO, 2013 WL 4487475 (E.D. Cal. Aug. 19, 2013) ..............19, 20, 21

*Wong v. Beebe,*
    732 F.3d 1030 (9th Cir. 2013) ......................................................................................18

Gibson, Dunn &
Crutcher LLP

1

Page(s)

**Statutes**

42 U.S.C. § 2000e–5(e)................................................................................................16, 17

Cal. Civil Code § 1542.......................................................................................................5

Cal. Civil Code § 1575.....................................................................................................13

D.C. Code § 2-1403.16(a).................................................................................................16

D.C. Code § 12-302(a)......................................................................................................18

D.C. Code § 32-510(b)......................................................................................................17

**Rules**

Fed. R. Civ. P. 8(a)(2)......................................................................................................14

Fed. R. Civ. P. 12(c)...........................................................................................................5

**Regulations**

D.C. Mun. Regs. tit. 4 § 702............................................................................................17

D.C. Mun. Regs. tit. 4 § 1610..........................................................................................17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 3:18-CV-02542-JSC

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 4, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley in Courtroom F on the 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, 94102, Defendant Morrison & Foerster LLP will and hereby does move the Court, under Rule 12(c) of the Federal Rules of Civil Procedure, for an Order for partial judgment on the pleadings in the above-captioned case, dismissing the claims of Jane Does 4 and 5. This motion is based upon this Notice of Motion; the following Memorandum of Points and Authorities; the Declaration of Rachel S. Brass; the attached exhibits incorporated by reference in Plaintiffs' Amended Complaint; argument of counsel; and such other matters as the Court may consider.


Dated: February 8, 2019

GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Rachel S. Brass*_____
Catherine A. Conway
Michele L. Maryott
Rachel S. Brass
Amanda C. Machin
Daniel M. Bruggebrew

*Attorneys for Defendant Morrison & Foerster LLP*

1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3

Jane Does 4 and 5 seek relief under various state and federal laws based on their wholly

4

unsupported allegations that Defendant Morrison & Foerster LLP ("Morrison") made unlawful

5

decisions based on gender or maternity status.  Am. Compl. ¶ 11.  The claims of Jane Does 4 and 5

6

suffer from irrefutable procedural defects which mandate entry of judgment against them.

7

**Jane Doe 4 Released All Claims**: Jane Doe 4 admits, as she must, that she signed a severance

8

agreement with Defendant Morrison "in exchange for a full release of claims."  Am. Compl. ¶¶ 112,

9

113, 362.  Over a year after signing that agreement and receiving a generous and material sum in salary

10

and benefits, which she also concedes she was not otherwise entitled to, Jane Doe 4 now seeks

11

rescission of the severance agreement.  *Id.* ¶¶ 362–63.  She has not only failed to plead a claim for

12

rescission, but instead affirmatively alleged facts that would preclude her from ever pursuing such a

13

claim. *See Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).  Specifically, her admissions

14

that she (1) is an attorney, (2) consulted legal counsel before signing the severance agreement,

15

(3) obtained a higher severance payout as a result of her negotiations, and (4) acknowledged the legally

16

recognized reasonable alternatives available to her, separately and together disprove her claims of

17

undue influence and economic duress.  This Court should enforce Jane Doe 4's severance agreement

18

and enter judgment against her.

19

**Jane Doe 5's Title VII, DCHRA, and DCFMLA Claims Are Time-Barred**:  Jane Doe 5

20

admits, as she too must, that the majority of her claims are time-barred, but seeks equitable tolling

21

because of intermittent medical issues.  Am. Compl. ¶¶ 133–34.  She has not, however, alleged facts

22

sufficient to provide a legally viable basis for tolling.  She fails to allege either that she was mentally

23

incapacitated, as required under federal and California law, or that she was unable to understand her

24

legal rights during the statute of limitations period, as required under District of Columbia law.  And

25

her allegations demonstrate that she could not amend to correct that deficiency:  she pleads that she

26

was working at another company during the period in which she slept on her rights.  Jane Doe 5's

27

medical situation, as a matter of law, does not provide a basis for equitable tolling.

28

1      **Jane Doe 5 Fails to State an EPA Claim**:  Jane Doe 5 also fails to allege facts supporting the

2    essential elements of an Equal Pay Act claim.  She alleges that she was paid less than "similarly

3    situated" male colleagues, Am. Compl. ¶ 277, and she alleges that she was paid less than male

4    colleagues who worked the same number of hours that she did.  *Id.* ¶ 137.  This is legally insufficient.

5    She has not alleged facts suggesting that "different wages" were paid to "employees of the opposite

6    sex for equal work."  *Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983).  As a matter of law,

7    Jane Doe 5 has failed to state a cognizable claim for violation of the EPA, and it should be dismissed.

8                          **II. LEGAL STANDARD**

9       "A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is

10   proper 'when the moving party clearly establishes on the face of the pleadings that no material issue of

11   fact remains to be resolved and that it is entitled to judgment as a matter of law.'"  *Landmark Am. Ins.*

12   *Co. v. Navigators Ins. Co.*, No. 18-cv-05504-CRB, 2018 WL 6591620, at *2 (N.D. Cal. Dec. 14, 2018)

13   (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)

14   (citation omitted)).  In ruling on a motion for judgment on the pleadings under Rule 12(c), this Court's

15   analysis "is substantially identical to the analysis under Rule 12(b)(6) because, under both rules, a court

16   must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal

17   remedy."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks

18   omitted).

19       A motion for judgment on the pleadings may, like a motion to dismiss under Rule 12(b)(6),

20   "assert[] that the complaint fails to state a claim upon which relief may be granted."  *Landmark*, 2018

21   WL 6591620, at *3 (applying *Twombly* standard to Rule 12(c) motion).  A court may dismiss claims

22   based on the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

23   cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting

24   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  "To survive a motion to dismiss,

25   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

26   plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

27   *Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action,

28   supported by mere conclusory statements, do not suffice" to state a claim.  *Id.* at 678.  And "the tenet

1   that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

2   conclusions." *Id.* Accordingly, "where the well-pleaded facts do not permit the court to infer more

3   than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the

4   pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted); *see Adams v. Johnson*, 355

5   F.3d 1179, 1183 (9th Cir. 2004). And "'a plaintiff may plead [him]self out of court'" if he "plead[s]

6   facts which establish that he cannot prevail on his . . . claim." *Weisbuch*, 119 F.3d at 783 n.1 (quoting

7   *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

8        In deciding a Rule 12(c) motion, the court may consider "documents attached to the complaint,

9   documents incorporated by reference in the complaint, or matters of judicial notice." *United States v.*

10  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

11          **III.  SUMMARY OF FACTUAL ALLEGATIONS**

12   **A.**     **After Receiving Notice Of Her Termination, Jane Doe 4 Negotiated And**

13               **Executed A Release That Bars Her Claims**

14        Jane Doe 4 was an associate in one of Morrison's California offices before Morrison put her on

15   notice of her termination in November 2017. Am. Compl. ¶¶ 15, 107–08. She was terminated only

16   after multiple years of sustained performance deficiencies. *See* Answer ¶ 108.

17        After Morrison notified Jane Doe 4 of her termination, the firm offered her significant and

18   generous additional salary and benefits in exchange for a full release of claims. Am. Compl. ¶ 112.

19   She had approximately two weeks to review and evaluate that offer and to decide whether to sign the

20   agreement. *Id.* Although Jane Doe 4 makes the conclusory allegation that she reluctantly signed the

21   agreement because she was "[u]nder extreme pressure, and fe[lt] that she had no other choice," *id.*

22   ¶ 113, she admits that she consulted an attorney regarding her termination. *Id.* ¶ 116. She further

23   admits that during the two weeks provided to consider the agreement she *negotiated* its terms, including

24   by successfully persuading Morrison to increase the lump sum component. *Id.* ¶ 113. After that

25   negotiation process, Jane Doe 4 signed a Separation Agreement and General Release on November 17,

26

27

28

1  2017 (the "Release").  *Id.* ¶ 362; Declaration of Rachel S. Brass In Support of Defendant's Motion for

2  Judgment on the Pleadings ("Brass Decl."), Ex. A (Release).[1]

3          The terms of Exhibit A make clear that Jane Doe 4, an attorney, negotiated for herself generous

4  and substantial consideration in exchange for the Release she executed.  That included a lump sum

5  monetary payment, a period of continued employment, continued salary payment for nearly five

6  months after her active employment ended, and nearly six additional months of benefits.  Brass Decl.,

7  Ex. A ¶ 2(a)–(c).  And she was also entitled to outplacement services through an outplacement

8  consulting firm for to up to six months from the time she initiated services.  *Id.* ¶ 2(d).

9          In exchange for this consideration, Jane Doe 4 "completely release[d] Morrison & Foerster LLP

10  and its partners . . . from all claims of any kind, known or unknown, suspected or unsuspected, which

11  Associate may now have or have ever had against any of them, including all claims arising from

12  Associate's employment with the Firm . . . , whether based on tort, contract (express or implied), or

13  any federal, state, or local law, statute, or regulation ("Released Claims")[,] . . . includ[ing] any claims

14  that may arise under Title VII of the Civil Rights Act of 1964, . . . the federal Family Medical Leave

15  Act, . . . and any comparable state or local laws. . . ."  Brass Decl., Ex. A ¶ 4.  The Release explicitly

16  encompassed all known and unknown claims:

17          Associate understands and acknowledges this is a full and final release covering all
        known, unknown, anticipated, and unanticipated injuries, debts, claims, or damages to
18          her.  Associate hereby waives any and all rights or claims which she may now have, or
        in the future may have, under the terms of Section 1542 of the California Civil Code or
19          any similar laws or statutes that may be applicable in other states.  Section 1542
        provides, as follows:

20

21  ────────────────

[1]  The Severance Agreement, EEOC Charges of Discrimination, and Website Biography page cited
22  herein are the appropriate subject of judicial notice.  *See Rice v. Ralphs Foods*, No. 09-cv-02650
    SBA, 2010 WL 5017118, at *3 (N.D. Cal. Dec. 3, 2010) (citing *United States v. Ritchie*, 342 F.3d
23  903, 908 (9th Cir. 2003) (on a Rule 12(c) motion, the court may consider "documents incorporated
    by reference in the complaint, or matters of judicial notice.").  Because the Amended Compliant
24  references the Release, the EEOC charge, and the Amended Charge, the Court should take judicial
    notice of these documents.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir.
25  2018); *Tanner v. Kaiser Found. Health Plan, Inc.*, 2016 WL 4076116, at *2 n.1 (N.D. Cal. Aug. 1,
    2016) (finding judicial notice appropriate where a "[p]laintiff advocates for rescission of the
26  Separation Agreement" and "does not dispute its authenticity."); *Ali v. Intel Corp.*, No. 18-cv-
    03981-LHK, 2018 WL 5734673, at *3 (N.D. Cal. Oct. 31, 2018) ("The Court agrees with Intel that
27  the EEOC charge of discrimination and attached narrative are subject to judicial notice because the
    charge and narrative are incorporated into the complaint by reference."); *Opperman v. Kong Techs.,*
28  *Inc.*, No. 13-cv-00453-JST, 2017 WL 3149295, at *4 (N.D. Cal. July 25, 2017) (taking judicial
    notice of a webpage on a non-party's publically available website).

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

*Id.* ¶ 5.

When Jane Doe 4's employment with Morrison concluded in 2017, she began to apply for lateral associate positions at comparable firms, working with an experienced recruiter.  Am. Compl. ¶ 110, 117.  It is Morrison's understanding that Jane Doe 4 has successfully secured employment at another law firm.  *See* Answer ¶ 120; Brass Decl., Ex. D (current website bio, submitted under seal).

Jane Doe 4 now alleges that she was under "duress" at the time she executed the Release, largely because she was pregnant at the time.  Am. Compl. ¶¶ 112, 363.  Based on this theory, she seeks to pursue a variety of claims that she previously released, *id.* ¶¶ 246–360, as well as rescission of the Release.  *Id.* ¶¶ 361–64.

**B.      Jane Doe 5 Is Terminated And Does Not Timely Assert Her Claims**

Jane Doe 5 was employed as an associate in Morrison's Washington, D.C. office until August 2017.  *See* Am. Compl. ¶ 16; Brass Decl., Ex. B (EEOC Charge) ¶ 1.  Her claim primarily involves two discrete events:  (1) the decision not to promote her by a class year at the beginning of 2017 (Am. Compl. ¶ 126, Brass Decl., Ex. B ¶ 8), and (2) the fact that the firm put her on notice of termination on May 4, 2017, with an August 4, 2017 effective date.  Am. Compl. ¶ 130; Brass Decl., Ex. B ¶ 14.  Setting aside that these decisions were based solely on Jane Doe 5's low hours and poor performance (Answer ¶ 126–30), the statute of limitations for challenging those decisions has long since passed.

Jane Doe 5 concedes that the majority of her claims are untimely but asks this Court to "toll[] . . . the 300-day period in which to file an administrative complaint challenging her termination and other applicable limitations periods."  Am. Compl. ¶ 134.  Although it was unknown at the time of her termination, Jane Doe 5 later learned she was pregnant.  *Id.* at ¶ 133.  She seeks equitable tolling of the statute of limitations primarily on the grounds that she had medical complications during some of the nearly 18 months between her termination and the date on which she filed her EEOC charge.  It is

1    undisputed that she was not disabled throughout that time and that for several months she worked at

2    another company.  Brass Decl., Ex. B ¶ 20.  For a small portion of the period, the parties had entered a

3    tolling agreement, which Morrison does not dispute.  Brass Decl., Ex. C ¶ 21 n.1.  As Jane Doe 5

4    acknowledges, however, Morrison only agreed to tolling to the extent the statutes of limitations had

5    not expired.  *Id*. (referring to agreement to toll statutes of limitations, to the extent they had not expired,

6    during the period from June 13, 2018 to November 9, 2018).  Indeed, most had.

7    On November 1, 2018, at least 639 days after she learned that she would not be promoted,

8    546 days after she was given notice of her termination, and 454 days after her last day of employment,

9    Jane Doe 5 filed a charge with the EEOC.  Brass Decl., Ex. B at 1 (reflecting EEOC's receipt of the

10    original charge on November 1, 2018); *see Durant v. D.C. Gov't*, 875 F.3d 685, 696 (D.C. Cir. 2017)

11    (the date on which the EEOC receives the charge controls), *cert. denied sub nom. Durant v. D.C.*, 138

12    S. Ct. 2608 (2018).  Jane Doe 5 filed an amended charge on November 29, 2018 (the "Amended

13    Charge").  Brass Decl., Ex. C at 1.  Unlike the first charge, the Amended Charge was filed with the

14    D.C. Office of Human Rights as well as with the EEOC.  *Id.*

15    ### IV.  ARGUMENT

16    #### A.    Jane Doe 4's Release Bars Her Employment-Related Claims

17    By her own admission, Jane Doe 4 negotiated and executed a severance agreement that released

18    all claims related to her employment with Morrison in exchange for substantial monetary and non-

19    monetary consideration.  Am. Compl. ¶¶ 15, 362; Brass Decl., Ex. A ¶¶ 4–5.  That Release bars all of

20    Jane Doe 4's claims here.

21    Where a plaintiff releases her claims through a written agreement, the plaintiff is barred from

22    pursuing those claims, and they must be dismissed.  *See Marder v. Lopez*, 450 F.3d 445, 453–54 (9th

23    Cir. 2006); *Minor v. FedEx Office & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1034–35 (N.D. Cal. 2015)

24    (granting motion to dismiss former employee's wrongful termination claim where employee released

25    all claims against employer in settlement agreement resolving a prior class action).  In this case, the

26    Court may decide this issue on the pleadings because the "'terms of the contract are unambiguous.'"

27    *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008)

28    (quoing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)).  A release is valid and

enforceable if it is "'clear, explicit and comprehensible in each of its essential details,' and 'read as a whole . . . clearly notif[ies] the prospective releasor . . . of the effect of signing the agreement.'" *Palantir Techs., Inc. v. Palantir.net, Inc.*, No. C 10–04283 CRB, 2011 WL 62411, at *3 (N.D. Cal. Jan. 7, 2011) (quoting *Baker Pac. Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1153 (1990)).  Where, as here, Jane Doe 4's claims are barred as a matter of law, judgment should be entered against her.

In the Amended Complaint, Jane Doe 4 does not dispute the validity of the Release or suggest that it is not "clear, explicit and comprehensible in each of its essential details." *Palantir*, 2011 WL 62411, at *3.  Nor is there any plausible argument that any of the claims asserted fall outside the unambiguous terms of the Release, which expressly identifies the statutory and common law claims now asserted:

> Associate hereby **completely releases** Morrison & Foerster LLP and its partners . . . from all claims of any kind, known or unknown, suspected or unsuspected, which Associate may now have or have ever had against any of them, including all claims arising from Associate's employment with the Firm . . . , whether based on tort, contract (express or implied), or any federal, state, or local law, statute, or regulation ("Released Claims")[,] . . . includ[ing] any claims that may arise under **Title VII of the Civil Rights Act of 1964**, . . . **the federal Family Medical Leave Act**, **the California Fair Employment and Housing Act** . . . **and any comparable state or local laws**. . . ."

Brass Decl., Ex. A ¶ 4 (emphases added).  By signing the Release, Jane Doe 4 further confirmed that she "underst[ood] and acknowledge[d] this is a full and final release covering all known, unknown, anticipated, and unanticipated injuries, debts, claims, or damages to her" and "waive[d] any and all rights or claims which she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code . . . ." *Id.* ¶ 5.  The Release explicitly obligates Jane Doe 4 to "not file or initiate any lawsuit concerning the Released Claims." *Id.* ¶ 4.

Rather than "dispute that the [Release], if enforceable, bars [her] claims," Jane Doe 4 "argues only that the [Release] is subject to rescission." *Tanner v. Kaiser Found. Health Plan, Inc.*, No. 15-cv-02763-SBA, 2016 WL 4076116, at *7 (N.D. Cal. Aug. 1, 2016).  But because she "fails to state a claim for rescission," as set forth in the following section, all of her claims should be dismissed. *Id.* (dismissing claims that were barred by release).

Jane Doe 4 asserts two theories in support of her rescission claim:  economic duress and undue influence.  But she fails to plead anything beyond "threadbare recitals of the elements of a cause of

action" in support of either theory.  Merely concluding, for example, that the Release should be rescinded because Morrison "obtained Jane Doe 4's signature to the [Release] through duress and/or undue influence in violation of California law" (Am. Compl. ¶ 363) is not enough.  *See also id.* ¶ 112; *Iqbal*, 556 U.S. at 678–79; *see Minor*, 78 F. Supp. 3d at 1034.  But such threadbare conclusions are all that is alleged here.

What is more, Jane Doe 4 pleads facts that cannot be reconciled with her rescission claims.  She admits that she sought legal advice related to any possible claims against Morrison, negotiated more favorable treatment than that included in the initial draft agreement, and failed to take advantage of reasonable alternatives.  Because Jane Doe 4 does not sufficiently plead her rescission claim under either theory, the claim should be dismissed as a matter of law.

### 1.     Jane Doe 4 Fails To Allege Economic Duress

Plaintiff has failed to allege facts sufficient to meet the high standard applicable to a claim of economic duress.  Releases and contracts are presumptively enforced in California.  *See MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986); *Baker Pac. Corp.*, 220 Cal. App. 3d at 1153.  "The doctrine of economic duress serves as a 'last resort' to correct exploitation of business exigencies 'when conventional alternatives and remedies are unavailing.'"  *Levesque v. Rinchem Co.*, No. 14-cv-05655-PSG, 2015 WL 6152783, at *2 (N.D. Cal. Oct. 20, 2015) (quoting *Johnson v. IBM Corp.*, 891 F. Supp. 522, 528–29 (N.D. Cal. 1995)).  To establish a claim for economic duress, Jane Doe 4 must allege: "(i) [Morrison] engaged in a sufficiently coercive wrongful act such that; (ii) a reasonably prudent person in [Jane Doe 4's] economic position would have had no reasonable alternative but to succumb to [Morrison's] coercion; (iii) Morrison knew of [Jane Doe 4's] economic vulnerability; and (iv) [Morrison]'s coercive wrongful act actually caused or induced [Jane Doe 4] to endorse the Release."  *See Johnson*, 891 F. Supp. at 529 (finding no economic duress where an employee consulted counsel, confirmed voluntary assent, and was not facing imminent bankruptcy before signing a severance).  Here, Jane Doe 4 has not only failed to allege facts sufficient to demonstrate each of these prerequisites, but makes affirmative allegations that disprove her own claim.

### a.     Jane Doe 4 Fails To Allege A Wrongful Act

Jane Doe 4 fails to identify a single coercive or wrongful act by Morrison, despite her conclusory allegation that "wrongful acts caused or induced [her] to endorse the severance agreement." Am. Compl. ¶ 363.  Neither Jane Doe 4's termination nor the fact that she was offered a severance agreement satisfies the "wrongful act" element.  *See Kennedy v. Columbus Mfg., Inc.*, No. 17-cv-03379-EMC, 2018 WL 1911808, at *7 (N.D. Cal. Apr. 23, 2018).  To the contrary, obtaining a release of potential claims as part of a severance package, as Morrison did here, is a common employment practice, not a "wrongful act."  *See, e.g.*, *Kennedy*, 2018 WL 1911808, at *10; *Tanner*, 2016 WL 4076116, at *5; *see also Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959–60 (2007) (finding no economic duress where, like the Release, a general release was given in exchange for six weeks' severance pay).  The decision in *Kennedy* is particularly instructive.  There, the court held that even "[t]ermination *during* a medical leave," which did not occur here, "does not itself establish economic duress."  2018 WL 1911808, at *8 (emphasis added); *see also Skrbina v. Fleming Cos., Inc.*, 45 Cal. App. 4th 1353, 1366–67 (Cal. App. 1996) (severance agreement enforced when plaintiff's position was eliminated during his disability leave).  And in *Kennedy*, the court concluded that the plaintiff "went into negotiations and agreed to the Final Agreement knowing that risk" of waiving claims based on the termination because "the release explicitly covered discrimination claims."  *See Kennedy*, 2018 WL 1911808, at *8.

Nor does the fact that Jane Doe 4 allegedly felt "coercion and/or excessive pressure in light of [her] pregnancy, exhaustion, economic vulnerability, emotional anguish, and lack of alternatives for income" establish a wrongful act.  *See* Am. Compl. ¶ 362.  The fact that a plaintiff may feel "economic pressure to sign an agreement does not raise any inferences about a defendant's conduct, much less their wrongful conduct."  *Osanitsch v. Marconi PLC*, No. CV 05–3988 CRB, 2009 WL 5125821, at *5 (N.D. Cal. Dec. 21, 2009).  But that is all that Jane Doe 4 alleges here.

Jane Doe 4 does not make a single factual allegation identifying any purported wrongful act by Morrison.  That alone precludes her from asserting a viable economic duress theory.

### b. Plaintiff Fails To Allege A Lack Of Reasonable Alternatives To The Release To Which She Agreed

Jane Doe 4 also has not alleged and cannot establish economic duress because "reasonable alternative[s] [were] available, and there hence was no compelling necessity" to sign the Release. *Lanigan v. County of L.A.*, 199 Cal. App. 4th 1020, 1034 (2012) (internal quotation marks omitted). Reasonable alternatives exist in all but the most extreme circumstances—"when the only other alternative is bankruptcy or financial ruin." *Johnson*, 891 F. Supp. at 529 (internal quotation marks omitted). "Merely being put to a voluntary choice of perfectly legitimate alternatives is the antithesis of duress, even if that choice is made under less than ideal circumstances." *Tanner*, 2016 WL 4076116, at *5 (internal quotation marks omitted).

Jane Doe 4 alleges she believed she was "without alternate options" (Am. Compl. ¶ 113), but that "unadorned" conclusory statement is insufficient (*Iqbal*, 556 U.S. at 678) and does not suggest that she would have faced "imminent bankruptcy or financial ruin" if she did not sign the Release. *See Johnson*, 891 F. Supp. at 529. And Jane Doe 4's own allegations dispel the notion that she faced either. For example, as an attorney herself, Jane Doe 4 knew she could have preserved her rights and pursued litigation. *See Tanner*, 2016 WL 4076116, at *5 (rejecting economic duress claim and finding "Plaintiff could have preserved his claims and pursued legal action against Defendants, as an alternative to executing the Separation Agreement and its comprehensive release"). Here, Jane Doe 4 even consulted an employment lawyer before making the affirmative election to waive future claims in exchange for a generous severance agreement. Am. Compl. ¶ 113. It is also clear that Jane Doe 4 knew she could have "economized on [her] discretionary expenditures." *See Johnson*, 891 F. Supp. at 530; Am. Compl. ¶ 114. Finally, the existence of reasonable alternatives is underscored by Jane Doe 4's current employment at another law firm. *See Johnson*, 891 F. Supp. at 529; Answer ¶ 120; Brass Decl., Ex. D.

Jane Doe 4 has no plausible allegations that she lacked any reasonable alternative but to sign the Release, and thus her claim of economic duress fails. *Levesque*, 2015 WL 6152783, at *3.

### c. Jane Doe 4 Fails To Allege Knowing Exploitation Of Economic Vulnerability

Jane Doe 4 similarly does not—and cannot—make a single allegation that Morrison had knowledge that she—an associate making hundreds of thousands of dollars a year—was so

11

Gibson, Dunn & Crutcher LLP

1   economically vulnerable that she lacked the capacity to enter a binding agreement.  "A defendant's

2   'knowledge' of the plaintiff's economic exigencies is a necessary component of liability for economic

3   duress." *Johnson*, 891 F. Supp. at 530 (quoting *San Diego Hospice v. Cty. of San Diego*, 31 Cal. App.

4   4th 1048 (1995)).   Morrison's knowledge that Jane Doe 4 was facing termination is insufficient to

5   establish a claim for economic duress even if Morrison had also known that she needed to continue

6   earning her salary.  *See, e.g.*, *Perez*, 157 Cal. App. 4th at 959–60 (finding that economic duress was

7   not present even when Defendant knew Plaintiff needed the money offered under the severance

8   agreement to pay his bills).  If this were the case, economic duress "could be said of almost any case

9   where an employee is discharged [or faced discharge] and offered severance pay." *Id.*  Indeed, Plaintiff

10   alleges no facts that suggest that she was so uniquely economically situated that Morrison would have

11   known that she had no choice but to enter a release.  And any suggestion that Morrison should assume

12   so for all of its associates is not only implausible, but also contrary to controlling law.

13         Jane Doe 4 has failed to allege facts establishing the third element of economic duress.

14                 **d.        Jane Doe 4 Fails To Allege Inducement, Much Less Coercion**

15         Finally, Jane Doe 4 fails to adequately allege that Morrison's conduct induced her to enter into

16   the Release.  Jane Doe 4's "decision to endorse the [Release], instead of availing [herself] of other

17   reasonable alternatives, was [her] own, made knowingly and freely after receiving advice of counsel,

18   and was not caused by any untoward action on the part of [Morrison]." *Johnson*, 891 F. Supp. at 530;

19   *see* Brass Decl., Ex. A ¶ 13 (stating that the parties entered the agreement "*freely, without coercion*,

20   and based upon their respective judgments") (emphasis added).  As in *Johnson*, there are no factual

21   allegations suggesting anything to the contrary.  *See* 891 F. Supp. at 530.  And the concessions she

22   extracted while negotiating her Release *and* her decision to consult an attorney during negotiations

23   further undermine any plausible suggestion that her alleged duress induced her to sign.  *See Kennedy*,

24   2018 WL 1911808, at *10; Am. Compl. ¶ 113.  Here, too, plaintiff's allegations fall far short of

25   establishing economic duress.

26         Jane Doe 4 has not alleged economic duress, but instead the opposite:  that she aggressively

27   negotiated a generous severance agreement, with the advice of counsel.  Now, having enjoyed for more

28

Gibson, Dunn &
Crutcher LLP

than a year the benefit of that bargain, she wishes she had asked for more.  That desire, however, is insufficient to allege a plausible theory of economic duress.  Her claim should be dismissed.

### 2. Jane Doe 4 Fails To Allege Undue Influence

Jane Doe 4 has also failed to allege facts sufficient to establish that she was coerced into signing the Release through undue influence.  Undue influence includes "taking an unfair advantage of another's weakness of mind" and "taking a grossly oppressive and unfair advantage of another's necessities or distress."  Cal. Civ. Code § 1575(2)–(3).  To plead undue influence, a plaintiff must allege (1) "undue susceptibility, i.e., a weakness of mind that results in a lessened capacity to make a free contract" *and* (2) "excessive pressure, i.e., the application of excessive strength to secure an agreement."  *Kennedy*, 2018 WL 1911808, at *4.  Jane Doe 4 fails to sufficiently plead either element, and instead presents allegations that make implausible any theory of undue influence.

### a. Jane Doe 4 Fails To Allege She Was Unduly Susceptible

Jane Doe 4 attributes her undue influence to her pregnancy and, in conclusory fashion, to her "economic vulnerability" and "emotional anguish."  Am. Compl. ¶ 362.  Lack of full vigor due to age, physical condition, physical exhaustion, and emotional anguish may support—but do not necessitate—a finding of undue susceptibility.  *Olam v. Cong. Mortg. Co.*, 68 F. Supp. 2d 1110, 1141 (N.D. Cal. 1999).  Here, however, Jane Doe 4 has failed to allege facts that could ever give rise to a finding of undue susceptibility.  She alleges *no facts* that suggest she was "weak in the mind" or lacked any capacity during negotiations between her and Morrison—nor could she, as her own allegations prove otherwise.

First, Jane Doe 4 concedes that as a result of the Release, she remained actively employed as a Morrison associate who rendered legal services to others after she signed the Release—work she in no way suggests she was incapable of performing.  Instead, she alleges the opposite:  that her work was exemplary throughout her employment.  Am. Compl. ¶ 106.  There can be no legitimate suggestion or inference that her mental capacity was so limited as to prevent her signing contracts, but fully qualified to advise others on complex and demanding legal matters.  *Twombly,* 550 U.S. at 557 (imposing plausibility requirement that a "'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2)).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 3:18-CV-02542-JSC

Further, the fact that she "negotiated" the Release to "obtain more compensation than was initially offered by Defendant[] suggests that [s]he was not of 'weak mind' when [s]he signed" it. *Kennedy*, 2018 WL 1911808, at *7 ("[T]he fact that [plaintiff] negotiated to explicitly exclude his workers' compensation claims from release clause in the Final Agreement and obtain more compensation than was initially offered by Defendants suggests that he was not of 'weak mind' when he signed the Final Agreement."); *see* Am. Compl. ¶ 113.

And Jane Doe 4 alleges no facts that suggest any condition she faced was so severe as to establish undue susceptibility.  Pregnancy does not impact a woman's ability to enter into a contract. Courts have rejected duress claims even in extreme circumstances not present here, such as where a plaintiff facing foreclosure and homelessness had been diagnosed with a high-risk pregnancy when she accepted an agreement.  *See Craig-Gersham v. CitiFinancial Credit Co.*, No. Civ. 04-40285, 2006 WL 901181, at *2 (E.D. Mich. Mar. 31, 2006).  Nor is Jane Doe 4's purported "economic vulnerability" or "lack of alternatives" (addressed in the previous section) sufficient to establish undue influence. Indeed, "the decision to accept somewhat onerous terms rather than risking the loss of everything cannot be the basis for a claim of undue influence under California law." *Olam*, 68 F. Supp. 2d at 1150 n.67.  And Jane Doe 4 alleges nothing even approximating such potential ruin.  Finally, Jane Doe 4 "must offer more than self-serving testimony" of any emotional challenges and must "prove that [she] was *mentally incompetent* to 'deal with the subject before [her] with a full understanding of [her] rights.'"  *Kennedy*, 2018 WL 1911808, at *7 (emphasis added) (citing *Stratton v. Grant*, 139 Cal. App. 2d 814, 817 (1956)).  She fails to allege any such facts, nor could she plausibly do so here given the other allegations made in her complaint.  Am. Compl. ¶ 106 ("After joining the Firm, Jane Doe 4 excelled in her job duties."); *id.* ¶ 110 ("Jane Doe 4 was the highest billing associate in her practice group and a high performer overall who had received positive reviews and positive feedback on her progression from supervising attorneys.").

For these reasons, Jane Doe 4 has failed to plausibly allege that she was unduly susceptible.

### b. Plaintiff Fails To Allege That Morrison Exercised Excessive Pressure

Jane Doe 4 similarly fails to allege the second element of her undue influence theory, excessive pressure. Morrison's persuasion may be characterized as excessive only if a "number" of "indicia" are "simultaneously present." *Tanner*, 2016 WL 4076116, at *6 (internal quotation marks omitted); *Olam*, 68 F. Supp. 2d at 1142. Indicators of excessive pressure include "discussion of the transaction at an unusual or inappropriate time," as when a businessman "with four others, arrived at [a plaintiff's] house at 1 a.m. . . . with the commission agreement he wanted her to sign" and insisted that she sign it even when she "protested being awakened at that hour." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 133–34 (Cal. App. 1966) (citing *Fyan v. McNutt*, 266 Mich. 406 (1934)). Another indicator of excessive persuasion is "consummation of the transaction [at] an unusual place," such as when one party is "confined in a cast in a hospital" shortly after the accident that was the subject of the parties' agreement. *Id.* (citing *Weger v. Rocha*, 138 Cal. App. 109 (1934)). Still other indicia include "insistent demand that the business be finished at once," "extreme emphasis on the untoward consequences of delay" or "statements that there is no time to consult financial advisers or attorneys," and "use of multiple persuaders by the dominant side against a . . . servient party," as when one of the five men interrupting Ms. McNutt's sleep at 1 a.m. "told her he had to have the paper . . . by morning, that the whole [deal] would fall through . . . then and there, [and] that there wasn't time to wait until morning to get outside advice." *Id.* (citing *McNutt*, 266 Mich. 406).

No such facts are alleged here, nor could they be. Jane Doe 4 was given two weeks to review the Release, during which period she negotiated more favorable terms and took the time to consult with individual counsel. Am. Compl. ¶ 113. This of course means that Morrison did not demand that Jane Doe 4 sign the Release "at once." *See Olam*, 68 F. Supp. 2d at 1150 n.67 (finding no undue influence even when plaintiff felt pressured to sign settlement agreement in less than 24 hours). And any dissatisfaction Jane Doe 4 may have had from her lawyer's advice does not, as a matter of law, amount to excessive pressure. *Id.* at 1150 ("Plaintiff vaguely intimated at some point that her own lawyer at the time . . . somehow pushed or 'urged' her to settle. The court rejects any attempt to expand California Civil Code §§ 1689(b)(1) and 1575 to include as a source of 'undue influence' the

complaining party's own lawyer."). Perhaps because they similarly would run directly against her theory, Jane Doe 4 alleges no facts about when negotiations of the Release took place, where she signed it, who was involved in the negotiations, or what Morrison said. Jane Doe 4 simply has not pleaded excessive pressure. *See Tanner*, 2016 WL 4076116, at \*7 (granting motion to dismiss rescission claim).

The limited facts Jane Doe 4 alleges only serve to disprove the existence of any excessive pressure. She cannot establish economic duress or undue influence, and her rescission claim should be dismissed.

**B.      Jane Doe 5's Title VII, DCHRA, DCFMLA and EPA Claims Must Be Dismissed**

Most of Jane Doe 5's claims are time-barred, and she fails to allege facts sufficient to support equitable tolling of her Title VII and state law claims. She also fails to state a plausible EPA claim. For these reasons, this Court should dismiss each of these claims.

**1.      The Majority Of Jane Doe 5's Claims Are Time-Barred, And No Tolling Doctrine Applies**

Jane Doe 5 concedes that most of her claims are untimely, but she seeks equitable tolling to revive those time-barred claims. Am. Compl. ¶ 134. She has not, however, alleged facts that give rise to any basis upon which to equitably revive her claims. Judgment should be entered on all time-barred claims.

Jane Doe 5 asserts claims under Title VII, the Family and Medical Leave Act ("FMLA"), and parallel District of Columbia laws. Am. Compl. ¶¶ 246–66; 365–70, 267–74, 371–81. Title VII claims can only proceed after an employee files a charge with the EEOC "within 180 days of the alleged discrimination, or 300 days if the complainant initially instituted proceedings with a state or local agency." *Fall v. Delta Air Lines, Inc.*, 731 F. App'x 678, 679–80 (9th Cir. 2018) (citing 42 U.S.C. § 2000e–5(e) and *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472, 1473 (9th Cir. 1989)). Claims under the District of Columbia Human Rights Act ("DCHRA") and the District of Columbia Family and Medical Leave Act ("DCFMLA") must be filed within one year. *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 31 (D.D.C. 2007) (citing D.C. Code § 2-1403.16(a)); *Brewer v. HR Policy Ass'n*,

1   887 F. Supp. 2d 118, 123 (D.D.C. 2012) (citing D.C. Code § 32-510(b)); *see also* D.C. Mun. Regs.

2   tit. 4, §§ 702, 1610.[2]

3          Jane Doe 5 challenges the decision not to promote her a class year in January of 2017 (Am.

4   Compl. ¶ 126, Brass Decl., Ex. B ¶ 8), and the fact that the firm put her on notice of termination on

5   May 4, 2017, with an August 4, 2017 effective date.  Am. Compl. ¶ 130; Brass Decl., Ex. B ¶ 14.  Any

6   charge challenging the promotion decision should have been filed no later than November 27, 2017

7   under Title VII and no later than January 31, 2018 under D.C. law.  And any challenge to her

8   termination should have been filed no later than February 28, 2018 under Title VII and no later than

9   May 4, 2018 under D.C. law.[3]

10         But Jane Doe 5 did not file claims during that timeframe, and the brief tolling period to which

11  the parties agreed did not start until June 13, 2018, 40 days after the last statute of limitations period

12  had already expired.  *See* Brass Decl., Ex. C ¶ 21 n.1.  When Jane Doe 5 untimely filed an EEOC charge

13  on November 1, 2018—almost 18 months after she was on notice of her termination and at least 21

14  months after she learned that she would not be promoted—she did not file it with the District of

15  Columbia Office of Human Rights.  *Id.*, Ex. B ¶ 14.  It was only later, on November 29, 2018—weeks

16  after, by Jane Doe 5's concession, the tolling agreement expired (*id.*, Ex. C ¶ 21 n.1)—that she filed an

17  amended charge with both the EEOC and the District of Columbia Office of Human Rights.  *See id.*,

18  Ex. C at 1.  By failing to file with both agencies at the outset, Jane Doe 5 failed to take advantage of

19  the extended 300-day statute of limitations for dual filings and was required to file within 180 days of

20  the challenged incidents (no later than October 31, 2017), which she indisputably failed to do.  *See*

21  *Fall*, 731 F. App'x at 679–80 (citing 42 U.S.C. § 2000e-5(e)(1)).  To the extent Jane Doe 5's counsel

22  is responsible for the failure to dual-file, something that is not alleged here, that would not support

23  equitable tolling.  *See Congress v. D.C.*, 324 F. Supp. 3d 164, 174 n.8 (D.D.C. 2018) ("Where, as here,

24  _____

25  [2]  Jane Doe 5's federal FMLA claim is not a subject of this motion.

26  [3]  For purposes of calculating the statute of limitations period, it is irrelevant that Jane Doe 5 was paid
        for a few months after she was on notice of her termination because in cases challenging
        terminations, "the limitations period begins to run when the employee receives notice of the
27      decision, not when the termination actually takes effect."  *Thompson v. Brennan*, No. 17-cv-03798-
        EMC, 2018 WL 558934, at *3 (N.D. Cal. Jan. 25, 2018) (citing *Del. State Coll. v. Ricks*, 449 U.S.
28      250, 257–58 (1980)).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 3:18-CV-02542-JSC

1   'counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not

2   the continuation of litigation against an adversary who played no role in the error.'") (quoting *Farzana*

3   *K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 706 (7th Cir. 2007)).

4         Jane Doe 5 suggests her medical issue (a difficult pregnancy) provide a basis to equitably toll

5   her expired claims.  That is not supported in law or fact.  For purposes of the state law claims, the

6   District of Columbia Code provides that the running of a statute of limitations will be tolled only when

7   the plaintiff is, "at the time the right of action accrues[,] . . . non compos mentis."  D.C. Code § 12-

8   302(a) (2001).  A party is only considered non compos mentis under District of Columbia law in

9   extreme circumstances, such as when someone has been "adjudged incompetent, signed a power of

10   attorney, had a guardian or caretaker appointed, or otherwise [taken] measures to let someone else

11   handle her affairs such as might be done for someone who is non compos mentis."  *Speiser v. U.S.*

12   *Dep't of Health & Human Servs.*, 670 F. Supp. 380, 385 (D.D.C. 1986), *aff'd*, 818 F.2d 95 (D.C. Cir.

13   1987).  None of those things is alleged to have occurred here.

14         Similarly, in the context of federal claims, equitable tolling of statutes of limitations is only

15   available in "extreme cases" and is "applied sparingly."  *Ticer v. Young*, No. 16-cv-02198-KAW, 2018

16   WL 2088393, at *7 (N.D. Cal. May 4, 2018) (quoting *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir.

17   1992)).  The party invoking "equitable tolling bears the burden of establishing two elements: (1) that

18   he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his

19   way."  *Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded by U.S. v. Wong*, 135

20   S. Ct. 1625 (2015).  The first element "requires the effort that a reasonable person might be expected

21   to deliver under his or her particular circumstances.  Central to the analysis is whether the plaintiff was

22   without *any fault* in pursuing his claim."  *Id.* (emphasis added) (internal quotation marks omitted).  As

23   to the second element, the party "must show that extraordinary circumstances were the cause of his

24   untimeliness and . . . made it impossible to file the document on time."  *Id.* (emphasis added) (internal

25   quotation marks omitted).

26         With respect to the time period when Jane Doe 5 was not working, her "conclusory statements

27   concerning medical treatment" are not enough to "warrant equitable tolling."  *Braz v. Delta Air Lines,*

28   *Inc.*, No. 18-cv-06162-JST, 2019 WL 202817, at *4 (N.D. Cal. Jan. 15, 2019) (concluding that

"allegation[s] that [Plaintiff] 'was incapacitated emotionally, unemployed, going through treatment for Neck, Arms, Back and Stomach condition,' unrepresented by an attorney, and 'in hardship to [make ends] meet'" did not support a conclusion that plaintiff was unable to timely file his Title VII and ADEA claims).  Rather, to justify the application of equitable tolling, the party seeking tolling must "actually allege . . . that she was *mentally* incapacitated at the time," which Jane Doe 5 has not done. *Long v. Paulson*, 349 F. App'x 145, 147 (9th Cir. 2009) (emphasis added).  "The threshold for incapacitation therefore requires a showing that the plaintiff 'was completely psychiatrically disabled during the relevant limitation period.'" *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *11 (N.D. Cal. Mar. 4, 2015) (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)).  "At the pleadings stage, the plaintiff bears the burden of establishing entitlement to equitable tolling." *Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2016 WL 1639372, at *8 (N.D. Cal. Apr. 26, 2016) (citing *Limon-Rodriguez v. U.S. Dep't of Homeland Sec.*, No. 12-cv-833-IEG (RBB), 2012 WL 1416274, at *4 (S.D. Cal. Apr. 24, 2012) (citing *V.C. v. L.A. Unified Sch. Dist.*, 139 Cal. App. 4th 499, 417–18 (2006)).  For example, equitable tolling was denied in a Title VII case where the plaintiff did have a significant medical problem but "offered no evidence that her asserted medical problems significantly impaired her ability to function or to communicate." *Elshirbiny v. Hewlett Packard Co.*, No. C 00-4104 MMC, 2001 WL 590034, at *4-5 (N.D. Cal. May 24, 2001), *aff'd*, 23 F. App'x 699 (9th Cir. 2001).  Here, Jane Doe 5 was by her own admission employed at another company throughout several months of the statute of limitations period and therefore was not unable to pursue her claim.  There can be no genuine suggestion that she was so impaired at that time she could not have pursued her rights.

Because Jane Doe 5's Title VII claims and D.C. claims are time-barred, and no tolling doctrine applies, the claims should be dismissed.

### 2.     Jane Doe 5 Failed To Allege The Essential Elements of Her EPA Claim

Jane Doe 5 asserts a claim under the Fair Labor Standards Act, as amended by the Equal Pay Act ("EPA"), Am. Compl. ¶¶ 275–84, but fails to allege facts tied to the essential elements of that claim.  As a result, it should be dismissed.

"To state a cognizable claim for a violation of the EPA, a plaintiff must allege the employer paid 'different wages to employees of the opposite sex for equal work.'" *Werner v. Advance Newhouse*

*P'ship, LLC*, No. 1:13-cv-01259-LJO, 2013 WL 4487475, at *5 (E.D. Cal. Aug. 19, 2013) (quoting *Hein*, 718 F.2d at 913). The complaint must contain "sufficient *specific*, *factual* allegations comparing the 'skill, effort, and responsibility' required for the two positions." *Banawis-Olila v. World Courier Ground, Inc.*, No. 16-cv-00982-PJH, 2016 WL 4070133, at *3 (N.D. Cal. July 29, 2016) (emphasis in original) (interpreting parallel "skill, effort, and responsibility" provision in former version of California Equal Pay Act and citing cases interpreting the federal EPA for support). "The bare assertion that the two jobs are 'the same' is simply a legal conclusion not entitled to a presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 664); *Werner*, 2013 WL 4487475, at *5 (dismissing EPA claim where plaintiff's allegation that she "'was paid less than similarly situated male employees'" was "not entitled to the assumption of truth without factual support" since being "'similarly situated' is a legal conclusion") (citations omitted).

In support of her EPA claim, Jane Doe 5 does not make any "specific factual allegations." Instead, she simply asserts that she was paid less than "similarly situated male colleagues." But that "legal conclusion" is "not entitled to the assumption of truth without factual support." *Werner*, 2013 WL 4487475, at *5; *Iqbal*, 556 U.S. at 678. She further asserts that "a male associate in the same office" as her was promoted when she was not, and that he "received [a] corresponding pay increase." Am. Compl. ¶ 127. In the context of her EPA claim, however, this allegation does not demonstrate that there were "different wages" for "equal work." *Hein,* 718 F.2d at 913. To the contrary, the allegation merely supports an inference that one male associate was paid more following a promotion than that one male associate had been paid prior to that promotion. She makes no effort to provide any "comparison of the jobs in question." *See Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999). It is irrelevant that they were allegedly both attorneys in the D.C. office. "[B]land abstractions—untethered from allegations regarding [the] attorneys' *actual* job duties—say nothing about whether the attorneys were required to perform 'substantially equal' work." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 257 (2d Cir. 2014) (emphasis in original). Similarly implausible is Jane Doe 5's suggestion that "male colleagues who worked the same number of hours as she did" are by necessity similarly situated. *See* Am. Compl. ¶ 137.

1   Jane Doe 5 has failed "[t]o state a cognizable claim for a violation of the EPA" because she has

2   failed to plausibly allege that Morrison paid "different wages to employees of the opposite sex for equal

3   work." *Werner*, 2013 WL 4487475, at *5. In the "absence of sufficient facts alleged under a cognizable

4   legal theory," *Conservation Force*, 646 F.3d at 1242 (citation omitted), the Court should dismiss

5   Count 4 with respect to Jane Doe 5. *See Iqbal*, 556 U.S. at 678.

6   ## V. CONCLUSION

7   For the foregoing reasons, Defendant Morrison & Foerster LLP respectfully requests that the

8   Court grant the motion for judgment on the pleadings and dismiss Jane Doe 4's rescission claim and

9   FMLA claim (Counts 3 and 14), and the following claims, to the extent they are asserted by Jane Does

10  4 and 5: Counts 1, 2, 10, 12, and 15 (Title VII), Count 4 (Equal Pay Act), Counts 5, 6, 11, and 13

11  (FEHA), Count 7 (CFRA), Count 8 (California Equal Pay Act), Count 9 (Unfair Competition), Count

12  16 (DCHRA), and Count 17 (DCFMLA).

13

14  Dated: February 8, 2019

15                              GIBSON, DUNN & CRUTCHER LLP

16

17                              By:   */s/ Rachel S. Brass*
                                      Catherine A. Conway
18                                    Michele L. Maryott
                                      Rachel S. Brass
19                                    Amanda C. Machin
                                      Daniel M. Bruggebrew
20

21                              *Attorneys for Defendant Morrison & Foerster LLP*

22

23

24

25

26

27

28