1  RACHEL S. BRASS, SBN 219301
       rbrass@gibsondunn.com
2  DANIEL M. BRUGGEBREW, SBN 307037
       dbruggebrew@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
4  San Francisco, CA 94105-0921
   Telephone:   415.393.8200
5  Facsimile:   415.393.8306

6  CATHERINE A. CONWAY, SBN 98366
       cconway@gibsondunn.com
7  MICHELE L. MARYOTT, SBN 191993
       mmaryott@gibsondunn.com
8  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
9  Los Angeles, CA  90071-3197
   Telephone:   213.229.7000
10 Facsimile:   213.229.7520

11 AMANDA C. MACHIN, *admitted pro hac vice*
       amachin@gibsondunn.com
12 GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue N.W.
13 Washington, D.C. 20036-5306
   Telephone:   202.955.8500
14 Facsimile:   202.467.0539

15 *Attorneys for Defendant*

16             UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18              SAN FRANCISCO DIVISION

19 JANE DOE 1, et al.,                    CASE NO. 3:18-cv-02542-JSC

20              Plaintiffs,               **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(C)**
21        v.

22 MORRISON & FOERSTER LLP,               Date:     May 16, 2019
                                          Time:     9:00 a.m.
23              Defendant.                Place:    Courtroom F, 15th Floor

24

25

26

27

28

1

2

## <u>TABLE OF CONTENTS</u>

3   I. INTRODUCTION ........................................................................................................ 2

4   II. SUMMARY OF FACTS ............................................................................................ 3

5       A.     After Receiving Notice Of Her Termination, Jane Doe 4 Negotiated And
    Executed A Release That Bars Her Claims.................................................... 3

6

7       B.     Morrison Repeatedly Put Jane Doe 4's Counsel On Notice About The Release
    And The Claims' Factual And Legal Deficiencies. ....................................... 5

8   III. ARGUMENT ............................................................................................................ 6

9       A.     Jane Doe 4's Claims Are Objectively Legally And Factually Baseless ....................... 7

10          1.     Jane Doe 4 Concedes Execution And Scope Of Release Of Claims ............... 7

11          2.     Jane Doe 4's Economic Duress Theory Lacks Any Legal Or Factual
    Basis ........................................................................................... 9

12

13          3.     Jane Doe 4's Undue Influence Claim Lacks Any Legal Or Factual
    Basis ........................................................................................... 13

14      B.     Jane Doe 4's Counsel Did Not Conduct A Reasonable And Competent Inquiry
    Before Filing The Amended Complaint........................................................ 16

15      C.     Plaintiff's Conduct Mandates The Imposition Of Sanctions ..................................... 18

16  IV. CONCLUSION........................................................................................................ 19

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**

*Baker Pac. Corp. v. Suttles*,
   220 Cal. App. 3d 1148 (1990)................................................................................................9

*Estate of Blue v. Cty. of L.A.*,
   120 F.3d 982 (9th Cir. 1997)................................................................................................7

*Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*,
   498 U.S. 533 (1991)...........................................................................................................18

*Chand v. Experian Info. Sols., Inc.*,
   No. 16-cv-6311-YGR, 2017 WL 1046971 (N.D. Cal. Mar. 20, 2017)...........................18

*Channell v. Anthony*,
   58 Cal. App. 3d 290 (1976)...............................................................................................17

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)...........................................................................................16

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990).............................................................................................................6

*Craig-Gersham v. CitiFinancial Credit Co.*,
   No. Civ. 04-40285, 2006 WL 901181 (E.D. Mich. Mar. 31, 2006) ...........................14, 17

*Dyke v. Lions Gate Entm't, Inc.*,
   No. SA CV 13-454 JLS ANX, 2014 WL 12470017 (C.D. Cal. July 23, 2014) ...............11

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001)..............................................................................................18

*Fyan v. McNutt*,
   266 Mich. 406 (Mich. 1934) ..............................................................................................15

*Gaskell v. Weir*,
   10 F.3d 626 (9th Cir. 1993)................................................................................................18

*Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*,
   No. C–13–1734 EMC, 2014 WL 3381416 (N.D. Cal. July 10, 2014).............................18

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005)....................................................................................6, 7, 16

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
   No. SA CV 04-00689 MRP, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) ....................7

Gibson, Dunn &
Crutcher LLP

*Johnson v. IBM Corp.*,
    891 F. Supp. 522 (N.D. Cal. 1995) ................................................................9, 10, 11, 12

*Kennedy v. Columbus Mfg., Inc.*,
    No. 17-cv-03379-EMC, 2018 WL 1911808 (N.D. Cal. Apr. 23, 2018) ......................9, 10, 13, 14

*Lanigan v. Cty. of L.A.*,
    199 Cal. App. 4th 1020 (2012) ................................................................10

*Levesque v. Rinchem Co., Inc.*,
    No. 5:14-cv-05655-PSG, 2015 WL 1738340 (N.D. Cal. Apr. 13, 2015) .....................11

*Levesque v. Rinchem Co.*,
    No. 14-cv-05655-PSG, 2015 WL 6152783 (N.D. Cal. Oct. 20, 2015) ......................9, 12

*Margolis v. Ryan*,
    140 F.3d 850 (9th Cir. 1998) ................................................................18

*Minor v. FedEx Office & Print Servs., Inc.*,
    78 F. Supp. 3d 1021 (N.D. Cal. 2015) ................................................................7

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*,
    797 F.2d 799 (9th Cir. 1986) ................................................................9

*Odorizzi v. Bloomfield Sch. Dist.*,
    246 Cal. App. 2d 123 (Cal. App. 1966) ................................................................15, 16

*Olam v. Cong. Mortg. Co.*,
    68 F. Supp. 2d 1110 (N.D. Cal. 1999) ................................................................13, 14, 15

*Osanitsch v. Marconi PLC*,
    No. CV 05–3988 CRB, 2009 WL 5125821 (N.D. Cal. Dec. 21, 2009) .......................10

*Palantir Techs., Inc. v. Palantir.net, Inc.*,
    No. C 10–04283 CRB, 2011 WL 62411 (N.D. Cal. Jan. 7, 2011) ...........................8

*Perez v. Uline, Inc.*,
    157 Cal. App. 4th 953 (2007) ................................................................9, 12

*Rhinehart v. Stauffer*,
    638 F.2d 1169 (9th Cir. 1979) ................................................................18

*San Diego Hospice v. Cty. of San Diego*,
    31 Cal. App. 4th 1048 (1995) ................................................................12

*Simpson v. Lear Astronics Corp.*,
    77 F.3d 1170 (9th Cir. 1996) ................................................................6

*Stratton v. Grant*,
    139 Cal. App. 2d 814 (1956) ................................................................14

iii

Gibson, Dunn &
Crutcher LLP

*Tanner v. Kaiser Found. Health Plan, Inc.*,
    C-15-02763-SBA, 2016 WL 4076116 (N.D. Cal. Aug. 1, 2016) .......................................... *passim*

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    209 F.R.D. 169 (C.D. Cal. 2002) ....................................................................................6

*Weger v. Rocha*,
    138 Cal. App. 109 (1934)................................................................................................15

*Weisbuch v. Cty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997)..........................................................................................2

**Statutes**

California Civil Code § 1542 .........................................................................................4, 8

California Civil Code § 1575 ...........................................................................................13

**Rules**

Fed. R. Civ. P. 11 ...................................................................................................... *passim*

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11(C) –
CASE NO. 3:18-CV-02542-JSC

1

## <u>NOTICE OF MOTION</u>

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on May 16, 2019, at 9:00 a.m., or as soon thereafter as the matter

4

may be heard before the Honorable Jacqueline Scott Corley in Courtroom F on the 15th Floor of the

5

United States District Court for the Northern District of California, located at 450 Golden Gate Avenue

6

in San Francisco, California, 94102, Defendant Morrison & Foerster LLP ("Morrison") will and hereby

7

does move the Court for an order granting sanctions against Jane Doe 4 and her counsel for filing

8

frivolous claims, pursuant to Rule 11 of the Federal Rules of Civil Procedure and this Court's inherent

9

authority.  This motion is based upon this Notice of Motion; the following Memorandum of Points and

10

Authorities; the Declaration of Catherine A. Conway; all pleadings and papers on file in this action;

11

and upon such argument and matters as may be presented to the Court at the time of the hearing.

12

13

DATED:  April 8, 2019

Respectfully submitted,

14

GIBSON, DUNN & CRUTCHER LLP

15

16

By:    */s/ Catherine A. Conway*

Catherine A. Conway

17

Attorneys *for Defendant*

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION

Over a year ago, Jane Doe 4, a practicing attorney, negotiated and executed a release of most (if not all) of the claims she now seeks to bring against Morrison in exchange for a significant amount of severance and benefits.  She extinguished those claims for all time, and her attempt to revive them now violates Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").  That rule requires lawyers to evaluate the viability of their claims before filing.  They must confirm their clients' claims are warranted by existing law.  And they must abandon positions that are not viable.  Failure to do so runs afoul of their obligations as officers of the Court and exposes Jane Doe 4 and her counsel to sanctions.

Morrison does not bring a motion for sanctions lightly, but sanctions are required under these extraordinary circumstances.  Jane Doe 4 and her counsel filed this groundless lawsuit against Morrison despite knowing that Jane Doe 4 executed a Separation Agreement and General Release (the "Release") with Morrison, which released Morrison from claims asserted in this lawsuit.  Conway Decl., Ex. 1.  Jane Doe 4's or her counsels' knowledge about the Release are not in dispute.  Jane Doe 4 acknowledges in the Amended Complaint, as she must, that she signed a severance agreement with Defendant Morrison "in exchange for a full release of claims."  ECF No. 39, Am. Compl. ¶¶ 112, 113, 362.  Jane Doe 4 does not deny that the vast majority of her claims fall squarely within the scope of the Release, nor can she.  As such, Jane Doe 4 is contractually barred from bringing her claims against Morrison.

In a meager attempt to avoid her obligations under the Release—despite receiving full consideration for them—Jane Doe 4 alleges a claim for rescission based on economic duress and undue influence.  Any reasonable investigation of the circumstances surrounding the execution of the Release would have revealed this claim is frivolous.  Jane Doe 4 has not only failed to plead a claim for rescission, but instead affirmatively alleged facts that would preclude her from ever pursuing such a claim. *See Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).  Specifically, her admissions that she (1) is an attorney, (2) consulted legal counsel before signing the Release, (3) obtained a higher severance payout as a result of her negotiations, and (4) acknowledged the legally recognized reasonable alternatives available to her, separately and together disprove her claims of undue influence and economic duress.  As such, Jane Doe 4's claims are knowingly baseless.

Morrison moves this Court for sanctions pursuant to Rule 11 and this Court's inherent authority. As detailed herein, sanctions are warranted because Jane Doe 4's claims are factually and legally frivolous, and her counsel did not conduct an adequate and reasonable investigation before filing the Amended Complaint. Defense counsel has on three occasions asked Jane Doe 4's counsel to explain if and how Jane Doe 4's claims could possibly be either legally or factually supported in light of the Release. *See* Conway Decl. ¶¶ 5–7; *id.*, Exs. 1–2. Jane Doe 4's counsel did not respond substantively to any of these inquiries and proceeded to file an Amended Complaint and then a Second Amended Complaint. In the absence of any substantive response, Morrison has no choice but to conclude that its view on these matters is correct—that the Release bars Jane Doe 4 from this lawsuit. Jane Doe 4's frivolous claims not only drain the parties' resources but also imperils the administration of justice. The Court should therefore dismiss the case with prejudice and order Jane Doe 4 and her counsel to pay Morrison for the attorneys' fees it has expended defending against her baseless claims.

## II.   SUMMARY OF FACTS

### A.   After Receiving Notice Of Her Termination, Jane Doe 4 Negotiated And Executed A Release That Bars Her Claims

Jane Doe 4 was an associate in one of Morrison's California offices before Morrison put her on notice of her termination in November 2017. ECF No. 57, Second Am. Compl. ("SAC") ¶¶ 15, 110–14. She was terminated only after multiple years of sustained performance deficiencies. *See* ECF No. 59, Answer ¶ 109.

After Morrison notified Jane Doe 4 of her termination, the firm offered her significant and generous additional salary and benefits in exchange for a full release of claims. SAC ¶¶ 116–17; ECF No. 45-4, Ex. A to Declaration of Rachel S. Brass ("Brass Decl.") ("Ex. A") ¶ 2. She had approximately two weeks in total to review that offer and decide whether to sign the agreement. SAC ¶ 116. Although she initially was given a full week to consider the agreement, when she requested an additional week, the firm agreed. *See* Conway Decl., Exs. 4–5. Although Jane Doe 4 makes the conclusory allegation that she reluctantly signed the agreement because she was "[u]nder extreme pressure, and fe[lt] that she had no other choice," SAC ¶ 117, she admits that she consulted an attorney regarding her termination. *Id.* She further admits that, after seeking one week of additional time to consider the agreement, she had two weeks to do so, and that during that time, she *negotiated* the terms

1  of her severance agreement, including by successfully persuading Morrison to increase the lump sum

2  component. *Id.*  And, during those negotiations, she communicated to Morrison the fact that she had

3  consulted an attorney.  Conway Decl., Ex. 5 ("I have spoken with an attorney and am in the process of

4  deciding my next steps").  After that negotiation process, Jane Doe 4 signed the Release on November

5  17, 2017.  *Id.* ¶ 417; Ex. A.

6          The terms of the Release underscore what Jane Doe 4's allegations make clear:  Jane Doe 4, an

7  attorney, negotiated for herself generous and substantial consideration in exchange for the Release she

8  executed.  That included a lump sum monetary payment, a period of continued employment, continued

9  salary payment for nearly five months after her active employment ended, and nearly six additional

10 months of benefits.  Ex. A ¶ 2(a)–(c).  And she was also entitled to outplacement services through an

11 outplacement consulting firm for to up to six months from the time she initiated services.  *Id.* ¶ 2(d).

12         In exchange for this consideration, Jane Doe 4 "completely release[d] Morrison & Foerster LLP

13 and its partners . . . from all claims of any kind, known or unknown, suspected or unsuspected, which

14 Associate may now have or have ever had against any of them, including all claims arising from

15 Associate's employment with the Firm . . . , whether based on tort, contract (express or implied), or

16 any federal, state, or local law, statute, or regulation ("Released Claims")[,] . . . includ[ing] any claims

17 that may arise under Title VII of the Civil Rights Act of 1964, . . . the federal Family Medical Leave

18 Act, . . . and any comparable state or local laws. . . ."  Ex. A ¶ 4.  The Release explicitly encompassed

19 all known and unknown claims:

20              Associate understands and acknowledges this is a full and final release covering all
               known, unknown, anticipated, and unanticipated injuries, debts, claims, or damages to
21             her.  Associate hereby waives any and all rights or claims which she may now have, or
               in the future may have, under the terms of Section 1542 of the California Civil Code or
22             any similar laws or statutes that may be applicable in other states.  Section 1542
               provides, as follows:
23

24              A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
               CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
25             FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
               KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
26             OR HER SETTLEMENT WITH THE DEBTOR.

27 *Id.* ¶ 5.

28

When Jane Doe 4's employment with Morrison concluded in 2017, she began to apply for lateral associate positions at comparable firms, working with an experienced recruiter.  SAC ¶¶ 114, 121.  This Court can take judicial notice of the fact that she successfully secured employment at another law firm.  *See* ECF No. 45-7, Brass Decl., Ex. D (current website bio, submitted under seal); *see also* ECF No. 59, Answer ¶ 124.

Jane Doe 4 now alleges that she was under "duress" at the time she executed the Release, largely because her termination created financial uncertainty at a time when she was pregnant.  SAC ¶¶ 116, 418.  Based on this theory, she seeks to pursue a variety of claims that she previously released, *id.* ¶¶ 267–415, as well as rescission of the Release.  *Id.* ¶¶ 416–19.

**B.      Morrison Repeatedly Put Jane Doe 4's Counsel On Notice About The Release And The Claims' Factual And Legal Deficiencies.**

On June 13, 2018, David Sanford and Deborah Marcuse ("Plaintiffs' counsel"), Jane Doe 4's counsel, informed Gibson Dunn that Jane Doe 4 intended to pursue claims against Morrison.  Conway Decl. ¶ 4.  On July 3, 2018, Gibson Dunn sent a letter to Jane Doe 4's counsel notifying them of the Release, and specifically calling out the release of claims as a bar to Jane Doe 4's anticipated claims. *Id.*, Ex. 1.  Gibson Dunn received no substantive response.  During a telephone conference between Gibson Dunn and Jane Doe 4's counsel on December 12, 2018, Gibson Dunn reiterated that Jane Doe 4's claims are barred by the Release.  *Id.* ¶ 6.  Plaintiffs' counsel indicated their intent to pursue rescission under an economic duress theory, but when pressed about whether there was any case law to support that claim, counsel were unable to provide a single specific case in support of Jane Doe 4's rescission claim.  *Id.*  On January 24, 2019, in a final effort to implore Plaintiffs' counsel to satisfy their basic professional responsibilities, Gibson Dunn sent Plaintiffs' counsel a detailed letter reminding them about the Release's language, identifying the elements of an economic duress claim under California law, and revealing the gaping holes in their factual theory which would make it impossible for Jane Doe 4 to win, let alone successfully plead, a rescission claim.  *Id.*, Ex. 2.  The letter was clear: "there is no plausible basis on which [Plaintiff's counsel] could file such a lawsuit unless [they] failed to conduct a reasonable inquiry, as required by Federal Rule of Civil Procedure 11.  Accordingly, if

1  [Jane Doe 4] does file such a suit, our client intends to pursue Rule 11 sanctions." *Id.* at 1.  Once again,

2  Plaintiffs' counsel ignored this letter.  Conway Decl. ¶ 7.

3    Jane Doe 4's claims, including her rescission claims, appeared in the Amended Complaint, filed

4  on January 25, 2019.  ECF. No. 39.  In that complaint, Jane Doe 4 alleged that she was under "duress"

5  at the time she executed the Release, largely because she was pregnant.  *Id.* ¶¶ 112, 363.  Based on this

6  theory, she sought to pursue a variety of claims that she previously released, *id.* ¶¶ 246–360, as well as

7  rescission of the Release.  *Id.* ¶¶ 361–64.  In response, Morrison filed a motion for judgment on the

8  pleadings, ECF No. 46, and separately served Jane Doe 4's counsel with its draft Rule 11 motion.

9  Conway Decl., Ex. 3.  Her counsel ignored the further correspondence, *id.* ¶ 9, and opposed the motion

10  for judgment on the pleadings.  ECF No. 50.  Hours after Morrison's reply in support of the motion

11  was filed, ECF No. 52, Plaintiffs amended the complaint further.  ECF No. 53; *see also* ECF No. 57

12  (corrected copy of SAC).  In the SAC, Jane Doe 4 continues to assert the same claims as before.  SAC

13  ¶¶ 116, 267–415, 416–19.

## III.   ARGUMENT

15    Rule 11 imposes basic duties on attorneys that are intended to "deter baseless filings in district

16  court."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  These rudimentary obligations

17  require counsel to present factual allegations that "have evidentiary support," Fed. R. Civ. P. 11(b)(3),

18  to make legal claims that are "warranted by existing law," Fed. R. Civ. P. 11(b)(2), and not to file

19  claims made "for any improper purpose."  Fed. R. Civ. P. 11(b)(1).  An attorney violates these

20  elementary responsibilities and Rule 11 sanctions are appropriate when "at the time the paper was

21  presented to the Court" the complaint "lacked evidentiary support or contained 'frivolous' legal

22  arguments."  *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 174–75 (C.D. Cal. 2002);

23  *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir. 1996).

24    "When, as here, a complaint is the primary focus of Rule 11 proceedings, a district court must

25  conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless

26  from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry

27  before signing and filing it."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citations omitted).

28  "A claim is legally baseless if it is legally unreasonable, while a claim is factually baseless if it lacks

factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MRP, 2007 WL 6137003, *3 (C.D. Cal. Apr. 16, 2007) (citing *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997)).

As detailed below, the relevant claims are frivolous and merit sanctions.  First, all of Jane Doe 4's claims are factually and legally baseless.  It is undisputed that she signed a Release barring her from pursing any legal claims against Morrison, and Jane Doe 4's own allegations contradict her rescission claims.  Second, Gibson Dunn's correspondence with Jane Doe 4's counsel confirm there was no reasonable and competent inquiry before signing and filing the Amended Complaint.  Accordingly, this Court should impose Rule 11 sanctions.[1]

## A.    Jane Doe 4's Claims Are Objectively Legally And Factually Baseless

### 1.    Jane Doe 4 Concedes Execution And Scope Of Release Of Claims

California law is clear—where a plaintiff releases her claims through a written agreement, the plaintiff is barred from pursuing those claims, and they must be dismissed.  *See Tanner v. Kaiser Found. Health Plan, Inc.*, C-15-02763-SBA, 2016 WL 4076116, at *7 (N.D. Cal. Aug. 1, 2016) (dismissing claims barred by release); *Minor v. FedEx Office & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1034–35 (N.D. Cal. 2015) (granting motion to dismiss former employee's wrongful termination claim where employee released all claims against employer in settlement agreement resolving a prior class action); *Skrbina v. Fleming Cos.*, Inc., 45 Cal. App. 4th 1353, 1366 (1996) (granting summary judgment because plaintiff's discrimination claims were within the scope of the release agreement he executed with his employer).  As such, Jane Doe 4's claims are legally baseless because they are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2); *see Holgate*, 425 F.3d at 676.

---

[1]  As set forth in Morrison's Renewed Motion for Judgment on the Pleadings, ECF No. 56, Jane Doe 4 has taken the position that her alleged retaliation claim is not covered by the Release.  *Id.* at 17.  She fails to provide any factual support for her alleged belief that Morrison provided negative references, *id.*, and indeed Morrison advised her counsel in its January 24, 2019 letter that there was no evidentiary support for this allegation.  Conway Decl., Ex. 2 at 3.  And the Release likely bars that claim as well.  *See* ECF No. 56 at 17.  However, there is no need for the Court to consider that claim for purposes of this motion; at the very minimum, Rule 11 sanctions are appropriate for the claims that are indisputably barred by the Release.

Gibson, Dunn & Crutcher LLP

Even in the most recent iteration of her complaint, Jane Doe 4 does not suggest the Release is not "clear, explicit and comprehensible in each of its essential details." *Palantir Techs., Inc. v. Palantir.net, Inc.*, No. C 10–04283 CRB, 2011 WL 62411, at *3 (N.D. Cal. Jan. 7, 2011). Nor is there any plausible legal basis for Jane Doe 4 to argue that her claims fall outside the unambiguous terms of the Release, which expressly identifies the statutory and common law claims now asserted:

> Associate hereby **completely releases** Morrison & Foerster LLP and its partners . . . from all claims of any kind, known or unknown, suspected or unsuspected, which Associate may now have or have ever had against any of them, including all claims arising from Associate's employment with the Firm . . . , whether based on tort, contract (express or implied), or any federal, state or local law, statute, or regulation ("Released Claims")[,] . . . includ[ing] any claims that may arise under **Title VII of the Civil Rights Act of 1964**, . . . **the federal Family Medical Leave Act**, **the California Fair Employment and Housing Act . . . and any comparable state or local laws**. . . ."

Ex. A ¶ 4 (emphases added). By signing the Release, Jane Doe 4 further confirmed that she "underst[ood] and acknowledge[d] this is a full and final release covering all known, unknown, anticipated, and unanticipated injuries, debts, claims, or damages to her" and "waive[d] any and all rights or claims which she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code . . . ." *Id.* ¶ 5. The Release explicitly obligates Jane Doe 4 to "not file or initiate any lawsuit concerning the Released Claims." *Id.* ¶ 4. It is simply not plausible that Jane Doe 4 and her counsel did not know her claims were barred by the Release when they brought them.

Realizing the Release is a death-knell for Jane Doe 4's claims, Jane Doe 4 "argues only that the [Release] is subject to rescission." *Tanner*, 2016 WL 4076116, at *7 (enforcing separation agreement and dismissing claims). Jane Doe 4 asserts two theories in support of her rescission claim: economic duress and undue influence. SAC ¶ 418. However, these theories are equally baseless because, as explained below, Jane Doe 4 does not even attempt to allege any facts to support an economic duress or undue influence claim. Where she does plead anything beyond conclusory statements reciting "threadbare recitals of the elements of a cause of action" in support of those theories, she admits facts that cannot be reconciled with her alleged entitlement to rescission. As such, there is no legal or factual basis for either rescission theory.

### 2. Jane Doe 4's Economic Duress Theory Lacks Any Legal Or Factual Basis

There is no objective legal or factual basis for Jane Doe 4's economic duress theory.  Releases and contracts are presumptively enforced in California.  *See MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986); *Baker Pac. Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1153 (1990).  "The doctrine of economic duress serves as a 'last resort' to correct exploitation of business exigencies 'when conventional alternatives and remedies are unavailing.'"  *Levesque v. Rinchem Co.*, No. 14-cv-05655-PSG, 2015 WL 6152783, at *2 (N.D. Cal. Oct. 20, 2015) (hereafter, "*Levesque 2*") (quoting *Johnson v. IBM Corp.*, 891 F. Supp. 522, 529 (N.D. Cal. 1995)).  To establish a claim for economic duress, Jane Doe 4 must allege: "(i) [Morrison] engaged in a sufficiently coercive wrongful act such that; (ii) a reasonably prudent person in [Jane Doe 4's] economic position would have had no reasonable alternative but to succumb to [Morrison's] coercion; (iii) Morrison knew of [Jane Doe 4's] economic vulnerability; and (iv) [Morrison]'s coercive wrongful act actually caused or induced [Jane Doe 4] to endorse the Release."  *See Johnson*, 891 F. Supp. at 529 (finding no economic duress where an employee consulted counsel, confirmed voluntary assent, and was not facing imminent bankruptcy before signing a severance).  Jane Doe has not alleged and cannot demonstrate these elements.

### a. Jane Doe 4 Fails To Allege A Wrongful Act

Jane Doe 4 fails to identify a *single* coercive or wrongful act by Morrison, despite her conclusory allegation that "wrongful acts caused or induced [her] to endorse the severance agreement."  SAC ¶ 418.  That alone is dispositive.  Neither Jane Doe 4's termination nor the fact that she was offered a severance agreement satisfies the "wrongful act" element.  *See Kennedy v. Columbus Mfg., Inc.*, No. 17-cv-03379-EMC, 2018 WL 1911808, at *7 (N.D. Cal. Apr. 23, 2018).  To the contrary, obtaining a release of potential claims as part of a severance package, as Morrison did here, is a common employment practice, not a "wrongful act."  *See, e.g.*, *Kennedy*, 2018 WL 1911808, at *10; *Tanner*, 2016 WL 4076116, at *5; *see also Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959–60 (2007) (finding no economic duress where, like the Release, a general release was given in exchange for six weeks' severance pay).  The Northern District's decision in *Kennedy* is particularly instructive.  There, the court held that even "[t]ermination *during* a medical leave," which did not occur here, "does not itself establish economic duress."  2018 WL 1911808, at *8 (emphasis added); *see also Skrbina*, 45

Gibson, Dunn & Crutcher LLP

Cal. App. 4th at 1366–67 (severance agreement enforced when plaintiff's position was eliminated during his disability leave).   And in *Kennedy*, the court concluded that the plaintiff "went into negotiations and agreed to the Final Agreement knowing that risk" of waiving claims based on the termination because "the release explicitly covered discrimination claims."  *See Kennedy*, 2018 WL 1911808, at *8.  Therefore, as a matter of law, Jane Doe 4 cannot invoke her termination as an allegedly wrongful act.

Nor does the fact that Jane Doe 4 allegedly felt "coercion and/or excessive pressure in light of [her] pregnancy, exhaustion, economic vulnerability, emotional anguish, and lack of alternatives for income" establish a wrongful act.  *See* SAC ¶ 417.  The fact that a plaintiff may feel "economic pressure to sign an agreement does not raise any inferences about a defendant's conduct, much less their wrongful conduct."  *Osanitsch v. Marconi PLC*, No. CV 05–3988 CRB, 2009 WL 5125821, at *5 (N.D. Cal. Dec. 21, 2009).  And the law is also clear that, if Jane Doe 4 "argues that [she] was coerced into signing the release because defendant[] told [her she] would not otherwise get [her] severance benefits, the argument fails because [she] was entitled to those benefits only under the terms of the [agreement], which included signing the release."  *See Skrbina*, 45 Cal. App. 4th at 1367.

Jane Doe 4 does not make a single factual allegation identifying any purported wrongful act by Morrison, despite being on notice of defendant's motion for judgment on the pleadings (as well as its prior draft motion for sanctions) and having an opportunity to amend or withdraw the complaint.  That alone objectively precludes her from asserting a non-frivolous economic duress theory.

### b.    Jane Doe 4 Fails To Allege A Lack Of Reasonable Alternatives To The Release

Jane Doe 4 concedes that she recognized that "reasonable alternative[s] [were] available, and there hence was no compelling necessity" to sign the Release.  *Lanigan v. Cty. of L.A.*, 199 Cal. App. 4th 1020, 1034 (2012) (internal quotation marks omitted).  Reasonable alternatives exist in all but the most extreme circumstances—"when the only other alternative is bankruptcy or financial ruin." *Johnson*, 891 F. Supp. at 529 (internal quotation marks omitted).

Jane Doe 4 does not allege otherwise, nor can she.  Jane Doe 4 alleges she believed she was "without alternative options," SAC ¶ 117, but that "unadorned" conclusory statement is insufficient,

*Iqbal*, 556 U.S. at 678, and does not suggest that she would have faced "imminent bankruptcy or financial ruin" if she did not sign the Release.  *See Johnson*, 891 F. Supp. at 529; *see also Tanner*, 2016 WL 4076116, at *5 ("Merely being put to a voluntary choice of perfectly legitimate alternatives is the antithesis of duress, even if that choice is made under less than ideal circumstances.") (internal quotation marks omitted)).

Indeed, Jane Doe 4's own allegations dispel either notion.  For example, as an attorney █████ █████████████████████████████████████████████████████████, Jane Doe 4 knew she could have preserved her rights and pursued litigation.  *See Tanner*, 2016 WL 4076116, at *5 (rejecting economic duress claim and finding "Plaintiff could have preserved his claims and pursued legal action against Defendants, as an alternative to executing the Separation Agreement and its comprehensive release").  Here, Jane Doe 4 even spoke with an employment lawyer before she made the affirmative election to waive future claims in exchange for a generous severance and other benefits, and she invoked that fact in the process of her negotiations in an attempt to leverage a better severance package.  SAC ¶ 118; Conway Decl., Ex. 5 ("I have spoken with an attorney and am in the process of deciding my next steps").

Although Jane Doe 4 alleges that she was the "primary wage-earner for her family," SAC ¶ 117, there is no suggestion that Jane Doe 4 was the *only* wage-earner or that she lacked any meaningful financial support from other sources.  In fact, her spouse's LinkedIn profile states that ██████████ ██████████████████████████████ at the time, Conway Decl., Ex. 6, further underscoring the difference between Jane Doe 4 and plaintiffs whose economic duress claims have survived.  *See Dyke v. Lions Gate Entm't, Inc.*, No. SA CV 13-454-JLS-ANX, 2014 WL 12470017, at *4 (C.D. Cal. July 23, 2014) (permitting duress claim to proceed where plaintiff signed away some of his rights to a screenplay he wrote upon threat of termination from a church because his "salary from the Church was his only source of income").  It is also clear that Jane Doe 4 knew she could have "economized on [her] discretionary expenditures."  *See Johnson*, 891 F. Supp. at 530; SAC ¶ 118. Finally, the existence of other reasonable alternatives is underscored by Jane Doe 4's current employment at another law firm.  *See Johnson*, 891 F. Supp. at 529; *Levesque v. Rinchem Co., Inc.*, No. 5:14-CV-05655-PSG, 2015 WL 1738340, at *4 (N.D. Cal. Apr. 13, 2015) (hereafter "*Levesque*

*I*") (granting motion to dismiss because plaintiff "did not allege that he had no other employment opportunities"); ECF No. 59, Answer ¶ 124; ECF No. 45-7, Brass Decl., Ex. D.

Jane Doe 4's own allegations show that she recognized possible reasonable alternatives, but still signed the Release, and there is no factual basis supporting this element of economic duress. *Levesque 2*, 2015 WL 6152783, at *3.

### c.     Jane Doe 4 Fails To Allege Knowing Exploitation Of Economic Vulnerability

Jane Doe 4 similarly does not allege and cannot prove that Morrison had knowledge that she— an associate making hundreds of thousands of dollars a year—was so economically vulnerable that she lacked the capacity to enter a binding agreement.   "A defendant's 'knowledge' of the plaintiff's economic exigencies is a necessary component of liability for economic duress."   *Johnson*, 891 F. Supp. at 530 (quoting *San Diego Hospice v. Cty. of San Diego*, 31 Cal. App. 4th 1048 (1995)). Morrison's knowledge that Jane Doe 4 was facing termination is insufficient to establish a claim for economic duress even if Morrison had also known that she needed to continue earning her salary.  *See, e.g.*, *Perez*, 157 Cal. App. 4th at 959–60 (finding that economic duress was not present even when defendant knew plaintiff needed the money offered under the severance agreement to pay his bills).  If this were the case, economic duress "could be said of almost any case where an employee is discharged [or faced discharge] and offered severance pay."  *Id.*  Indeed, Jane Doe 4 alleges no facts that suggest that she was so uniquely economically situated that Morrison would have known that she had no choice but to enter a release.  And any suggestion that Morrison should assume so for all of its associates is not only implausible, but also contrary to controlling law.

Jane Doe 4 has no legal or factual basis to support the third element of economic duress.

### d.     Jane Doe 4 Fails To Allege Inducement, Much Less Coercion

Finally, Jane Doe 4 fails to adequately allege that Morrison's conduct induced her to enter into the Release.  Jane Doe 4 decided "to endorse" the Release, "instead of availing [herself] of other reasonable alternatives." *Johnson*, 891 F. Supp. at 530.  That decision was her "own, made knowingly and freely" after reviewing her options—no "untoward action on the part of [Morrison]" induced her to make that decision.  *Id.*; *see* Ex. A ¶ 13 (stating that the parties entered the agreement "*freely, without*

Gibson, Dunn & Crutcher LLP

*coercion*, and based upon their respective judgments") (emphasis added).  There are no factual allegations suggesting anything to the contrary, and the concessions she extracted while negotiating the Release *and* her decision to contact an attorney during those negotiations, and communicate to Morrison the fact that she had done so, further undermine any plausible suggestion that any action on Morrison's part induced her to sign.  *See Kennedy*, 2018 WL 1911808, at *10; SAC ¶ 117.  Here, too, Jane Doe 4 falls far short of establishing economic duress.

Jane Doe 4 has not alleged economic duress, but instead the opposite:  that she aggressively negotiated a generous severance agreement, with the advice of counsel.  These contradictions underscore the frivolousness of Jane Doe 4's economic duress claims.

### 3.  Jane Doe 4's Undue Influence Claim Lacks Any Legal Or Factual Basis

Jane Doe 4 cannot point to any support for her allegation that she was coerced into signing the Release through undue influence.  Undue influence includes "taking an unfair advantage of another's weakness of mind" and "taking a grossly oppressive and unfair advantage of another's necessities or distress."  Cal. Civ. Code § 1575(2)–(3).  To plead undue influence, a plaintiff must allege (1) "undue susceptibility, i.e., a weakness of mind that results in a lessened capacity to make a free contract" *and* (2) "excessive pressure, i.e., the application of excessive strength to secure an agreement."  *Kennedy*, 2018 WL 1911808, at *4.  Jane Doe 4 presents allegations that disprove both elements—making any theory of undue influence both legally and factually baseless.

### a.  Jane Doe 4 Fails To Allege She Was Unduly Susceptible

Jane Doe 4 attributes her undue influence to her pregnancy and, in conclusory fashion, to her "economic vulnerability," "emotional anguish," and "emotional turmoil."  SAC ¶¶ 117, 417.  Lack of full vigor due to age, physical condition, physical exhaustion, and emotional anguish may support— but do not necessitate—a finding of undue susceptibility.  *Olam v. Cong. Mortg. Co.*, 68 F. Supp. 2d 1110, 1141 (N.D. Cal. 1999).  Here, however, Jane Doe 4 has failed to allege facts that could ever give rise to a finding of undue susceptibility.  She alleges *no facts* that suggest she was "weak in the mind" or lacked any capacity during negotiations between her and Morrison—nor could she, as her own allegations and her correspondence during negotiations prove otherwise.

1    First, Jane Doe 4 concedes that as a result of the Release, she remained actively employed as a

2    Morrison associate who rendered legal services to others after she signed the Release—work she in no

3    way suggests she was incapable of performing.  Instead, she alleges the opposite:  that her work was

4    exemplary throughout her employment.  SAC ¶ 109.  There can be no legitimate suggestion or

5    inference that her mental capacity was so limited as to prevent her signing contracts, but fully qualified

6    to advise others on complex and demanding legal matters.

7    Further, the fact that she "negotiated" the Release to "obtain more compensation than was

8    initially offered by Defendant[] suggests that [s]he was not of 'weak mind' when [s]he signed" it.

9    *Kennedy*, 2018 WL 1911808, at *7; *see* SAC ¶ 117.  Her correspondence with the firm confirms that

10   she was negotiating the Release aggressively, and exploring all of her options.  *See* Conway Decl.,

11   Exs. 4–5.

12   Even if all of Jane Doe 4's allegations related to undue influence are true (they are not), the

13   basic legal inquiry required under Rule 11 would reveal that neither purported reason could be a legal

14   basis for an undue influence claim.  Pregnancy does not impact a woman's ability to enter into a

15   contract.  Courts have rejected duress claims even in extreme circumstances not present here, such as

16   where a plaintiff facing foreclosure and homelessness had been diagnosed with a high-risk pregnancy

17   when she accepted an agreement.  *See Craig-Gersham v. CitiFinancial Credit Co.*, No. Civ. 04-40285,

18   2006 WL 901181, at *2 (E.D. Mich. Mar. 31, 2006).  Nor is Jane Doe 4's purported "economic

19   vulnerability" or "lack of alternatives" (addressed in the previous section) sufficient to establish undue

20   influence.  Indeed, "the decision to accept somewhat onerous terms rather than risking the loss of

21   everything cannot be the basis for a claim of undue influence under California law."  *Olam*, 68

22   F. Supp. 2d at 1150.  And Jane Doe 4 alleges nothing even approximating such potential ruin.  Finally,

23   Jane Doe 4 "must offer more than self-serving testimony" of any emotional challenges and must "prove

24   that [she] was *mentally incompetent* to 'deal with the subject before [her] with a full understanding of

25   [her] rights.'"  *Kennedy*, 2018 WL 1911808, at *7 (emphasis added) (citing *Stratton v. Grant*, 139 Cal.

26   App. 2d 814, 817 (1956)).  She fails to allege any such facts, nor could she plausibly do so here given

27   the other allegations made in her complaint.  SAC ¶ 109 ("After joining the Firm, Jane Doe 4 excelled

28   in her job duties."); *id.* ¶ 114 ("Jane Doe 4 was the highest billing associate in her practice group and

14

a high performer overall who had received positive reviews and positive feedback on her progression from supervising attorneys.").

For these reasons, there was no basis for Jane Doe 4 to claim that she was unduly susceptible.

### b.  Jane Doe 4 Fails To Allege That Morrison Exercised Excessive Pressure

Jane Doe 4 similarly has no objective basis for alleging the second element of her undue influence theory, excessive pressure.  Morrison's persuasion may be characterized as excessive only if a "number" of "indicia" are "simultaneously present." *Tanner*, 2016 WL 4076116, at *6 (internal quotation marks omitted); *Olam*, 68 F. Supp. 2d at 1142.  Indicators of excessive pressure include "discussion of the transaction at an unusual or inappropriate time," as when a businessman "with four others, arrived at [a plaintiff's] house at 1 a.m. . . . with the commission agreement he wanted her to sign" and insisted that she sign it even when she "protested being awakened at that hour." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 133-34 (Cal. App. 1966) (citing *Fyan v. McNutt*, 266 Mich. 406 (Mich. 1934)).  Another indicator of excessive persuasion is "consummation of the transaction [at] an unusual place," such as when one party is "confined in a cast in a hospital" shortly after the accident that was the subject of the parties' agreement.  *Id.* at 133–34 (citing *Weger v. Rocha*, 138 Cal. App. 109 (1934)).  Still other indicia include "insistent demand that the business be finished at once," "extreme emphasis on the untoward consequences of delay" or "statements that there is no time to consult financial advisers or attorneys," and "use of multiple persuaders by the dominant side against a servient party," as when one of the five men interrupting Ms. McNutt's sleep at 1 a.m. "told her he had to have the paper . . . by morning, that the whole [deal] would fall through then and there, [and] that there wasn't time to wait until morning to get outside advice." *Id.* (citing *McNutt*, 266 Mich. 406).

No such facts are alleged here, nor could they be.  Jane Doe 4 was given a total of two weeks to review the Release, during which period she negotiated more favorable terms and took the time to consult with individual counsel.  SAC ¶ 117; Conway Decl., Exs. 4–5.  This of course means that Morrison did not demand that Jane Doe 4 sign the Release "at once." *See Olam*, 68 F. Supp. 2d at 1150 n.67 (finding no undue influence even when plaintiff felt pressured to sign settlement agreement in less

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11(C) – CASE NO. 3:18-CV-02542-JSC

Gibson, Dunn & Crutcher LLP

than 24 hours).  When she asked for more time, she received it.  Conway Decl., Exs. 4–5.  And there is no suggestion she asked for even more time to seek additional legal advice, much less any allegations that Morrison prevented her from doing so or made statements "that there [was] no time to consult financial advisers or attorneys," as required to demonstrate excessive pressure.  *Odorizzi*, 246 Cal. App. 2d at 133.  Moreover, there would have been no reason to do so, since her communication to Morrison at the time was that she was already engaged with counsel, a fact she was using to attempt to secure a more generous severance agreement.

Perhaps because they similarly would run directly against her theory, Jane Doe 4 alleges no facts about when negotiations of the Release took place, where she signed it, who was involved in the negotiations, or what Morrison said.  Jane Doe 4 simply has not pleaded excessive pressure.  *See Tanner*, 2016 WL 4076116, at *7 (granting motion to dismiss rescission claim).  The limited facts Jane Doe 4 alleges only serve to disprove the existence of any excessive pressure.

Jane Doe 4's rescission claims are factually and legally baseless.  Jane Doe 4 and her counsel cannot ignore key elements of a legally viable rescission claim, particularly where Jane Doe 4's conceded facts contradict her economic duress or undue influence theories for rescission.

### B.    Jane Doe 4's Counsel Did Not Conduct A Reasonable And Competent Inquiry Before Filing The Amended Complaint

"The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."  *Holgate*, 425 F.3d at 677.  Sanctions are appropriate under Rule 11 where "[e]ven the most cursory legal inquiry would have revealed" the deficiencies in the pleading, *see id.*, or where an attorney or party files a case "without factual foundation."  *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).

Far from conducting a reasonable and competent inquiry to assess the truth and viability of Jane Doe 4's claims, Plaintiffs' counsel disregarded the gaping factual holes in Jane Doe 4's story and non-existence of a feasible legal theory.  Gibson Dunn's repeated warnings about both the legal and factual deficiencies with Jane Doe 4's claims went ignored.  Conway Decl. ¶¶ 5–7; *id.* Exs. 1–2.  Plaintiffs' counsel made this transparent disregard for conducting any reasonable inquiry clear during their

December 12, 2018 call with Gibson Dunn.  Conway Decl. ¶ 6.  After being asked to present even one case supporting Jane Doe 4's claim of duress, Plaintiffs' counsel could not identify a single case, either during or after the call.  *Id.*  Instead, Plaintiffs' counsel vaguely referred to the possible existence of an unnamed case involving foreclosure they suggested supports Jane Doe 4's duress claims based on her pregnancy.  Yet, the only case we found matching that description found no duress where a woman accepted only $4,600 in relocation money in exchange for a deed to her property, even though she (1) faced foreclosure, (2) was in poor health from a high risk pregnancy, and (3) needed to accept the small sum of money to "avoid being cast out into the street with her children."  *Craig-Gersham v. CitiFinancial Credit Co.*, 2006 WL 901181, at *2 (E.D. Mich. Mar. 31, 2006).  Similarly, as detailed in the above sections, California courts rarely rescind contracts for economic duress and undue influence.  The only California case cited in the opposition to Morrison's motion for judgment on the pleadings that mentions foreclosure involved a countersigning party that swore the deed transfer documents were "'just for show' to get the property away from the Farmer's Home Administration, and that they would be torn up after the property was in escrow."  *Channell v. Anthony*, 58 Cal. App. 3d 290, 297 (1976).  It hardly standards for the proposition that any person who may have to move to a different home is incapable of signing a binding contract.

Under the weight of such extremely unfavorable law, it is inconceivable that Plaintiffs' counsel pursued Jane Doe 4's claims after a reasonable inquiry—particularly in light of Jane Doe 4's unique circumstances.  After making several hundreds of thousands of dollars as an attorney, she used her legal experience and the advice of outside counsel to extract additional money from Morrison's already lucrative severance offer.  A minimal investigation into Jane Doe 4's Release negotiations would have revealed the multitude of flaws in pursuing a rescission claim—several of which Gibson Dunn identified in its correspondence to Plaintiffs' counsel.  Yet, Jane Doe 4 and her counsel continue to press enforcement notwithstanding that Morrison provided them an advance copy of this Motion pursuant to Rule 11's safe harbor rule.

Accordingly, because Jane Doe 4 and her counsel filed a complaint that is objectively baseless without performing a reasonable and competent inquiry before signing and filing it, Rule 11 sanctions are appropriate.

## C.   Plaintiff's Conduct Mandates The Imposition Of Sanctions

A court may impose sanctions against "parties or their lawyers for improper conduct" under Rule 11(c) of the Federal Rules of Civil Procedure or pursuant to its inherent authority. *See Fink v. Gomez*, 239 F.3d 989, 991, 994 (9th Cir. 2001) ("It is well settled, however, that the district court may, in its informed discretion, rely on inherent power rather than the federal rules.").

Dismissal is a permissible sanction under Rule 11 and the court's inherent authority. *See Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 554 (1991) (affirming dismissal of the action as a Rule 11 sanction); *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) (court has power to dismiss frivolous complaints). Attorney's fees are also appropriate as Rule 11(c)(4) specifically authorizes an award of "all of the reasonable attorney's fees and other expenses directly resulting from the violation" as a sanction for Jane Doe 4's and her counsel's litigation misconduct. *See also Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) ("In a case like this, where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions" under Rule 11.). Such an award would also include fees incurred by Morrison in connection with the motion. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *Margolis v. Ryan*, 140 F.3d 850, 855 (9th Cir. 1998) ("[D]istrict court did not err by including in the amount [of sanctions awarded under Rule 11] the costs and fees borne by defendants-appellees in bringing the motion for sanctions.").

Both sanctions are warranted here. Any reasonable investigation into Jane Doe 4's claims would have revealed the truth—no legal and factual support exists for Jane Doe 4's lawsuit. Jane Doe 4 signed a release, which she concedes legally prevents her from pursuing her claims absent rescission. Yet, her rescission theories are frivolous and "tantamount to bad faith" because the Amended Complaint "contained contradictory" allegations and "even a cursory review of the complaint would have revealed the glaring inconsistencies." *See Chand v. Experian Info. Sols., Inc.*, Case No. 16-cv-6311-YGR, 2017 WL 1046971, at *2 (N.D. Cal. Mar. 20, 2017); *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, No. C–13–1734 EMC, 2014 WL 3381416, at *7 (N.D. Cal. July 10, 2014) (sanctioning counsel pursuant to court's inherent authority for filing frivolous claim without basis in

law or fact).  Jane Doe 4 was not coerced to sign the Release, but used her experience and training as an attorney, ███████████████████████, as well as the guidance of an independent attorney to evaluate her options over the course of two weeks.  By her own lights, she negotiated aggressively and successfully for more consideration before signing the agreement.  And she ultimately voluntarily decided to sign the Release.  Accordingly, dismissal of Jane Doe 4's claims with prejudice and awarding Morrison all attorney's fees incurred to date in Jane Doe 4's claims are appropriate sanctions. If this Court determines that an attorney's fees award is appropriate, Morrison requests leave to file a Motion for Attorney's Fees and Costs.

## IV.   CONCLUSION

For the foregoing reasons, Morrison respectfully asks the Court to sanction Jane Doe 4 and her counsel pursuant to Federal Rule of Civil Procedure 11 and this Court's inherent authority, including by dismissing Jane Doe 4's claims with prejudice and awarding Morrison all attorney's fees incurred to date relating to Jane Doe 4's claims.

Dated: April 8, 2019

GIBSON, DUNN & CRUTCHER LLP


By:    _/s/ Catherine A. Conway_
        Catherine A. Conway
        Michele L. Maryott
        Rachel S. Brass


*Attorneys for Defendant Morrison & Foerster LLP*