UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>MORRISON & FOERSTER LLP,<br><br>            Defendant. | Case No.18-cv-02542-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 56 |

Plaintiff Jane Does 1-7 associate attorneys bring this gender, pregnancy, and maternity discrimination action against their current and former employer, Morrison & Foerster LLP. Plaintiffs allege state and federal discrimination, equal pay, and retaliation claims on their own behalf and on behalf of a class of similarly situated attorneys at the Morrison & Foerster law firm. Defendant's Federal Rule of Civil Procedure 12(c) motion for judgment on the claims brought by Plaintiffs Jane Doe 4 and Jane Doe 5 under is now pending before the Court.[1] (Dkt. No. 56.) Having considered the parties' briefs and having had the benefit of oral argument on April 18, 2019, the Court GRANTS IN PART and DENIES IN PART the motion for judgment on the pleadings. The motion is granted as to Jane Doe 4's retaliation claims and her rescission claim based on undue influence with leave to amend, but denied with respect to her other claims. The motion is granted as to Jane Doe 5's claims with leave to amend to allege equitable tolling.

//

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 20 & 66.)

# BACKGROUND

**A. Complaint Allegations**

Plaintiffs Jane Does 1-7 are or were employed as attorneys by the Morrison & Foerster's California, New York or Washington DC offices. (Second Amended Class and Collective Action Complaint (SAC), Dkt. No. 57 at ¶¶ 12-18.[2]) Although Morrison & Foerster "boasts of its work-life programs' for employees, including parental and adoption leave, parental transition time upon returning from leave, backup caregiving, flexible work options, and a reduced hours program" including "ostensibly allow[ing], and even encourag[ing], its female employees to take up to six months of maternity leave," the firm "discriminates against Plaintiffs and other female attorneys, especially pregnant attorneys and women with children, with respect to compensation and promotions through common policies, practices, and procedures." (*Id*. at ¶¶ 28, 30.) In particular, "[w]hen a female attorney at MoFo is pregnant, has children, or takes maternity leave, the Firm's standard operating procedure is to hold her back from advancement with her peers, denying her opportunities for greater pay and limiting her progression." (*Id*. at ¶ 30)

The following is a summary of Jane Does 4 and 5's allegations as relevant to the underlying motion:

*Jane Doe 4* worked as an attorney at one of Morrison & Foerster's California offices until she was terminated in 2017. (*Id*. at ¶¶ 106-107.) Prior to joining Morrison & Foerster, Jane Doe 4 had a federal clerkship and worked as an associate at another firm. (*Id*. at ¶ 107.) When Jane Doe 4 became pregnant in 2017 she planned to take maternity leave in 2018 in keeping with the firm's maternity leave policy. (*Id*. at ¶ 110.) However, in late 2017, after the she advised Morrison & Foerster of her pregnancy and intent to take maternity leave, Jane Doe 4 was told that she would not be advancing with her class, and instead, that she was being terminated. (*Id*. at ¶ 111.) At that point, Jane Doe 4 was less than two months away from her due date. (*Id*. at ¶ 114.) No reason was given for her termination, and at the time, she "was the highest billing associate in her practice group and a high performer overall who had received positive reviews and positive

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

feedback on her progression from supervising attorneys." (*Id*.) Jane Doe 4 later learned from her peers that shortly before her termination, a Morrison & Foerster partner had visited the offices of people who worked with her to solicit negative feedback, but was unable to obtain any such negative feedback. (*Id*. at ¶ 115.)

When she was terminated, Morrison & Foerster offered Jane Doe 4 a "cruel bargain: she could take her leave as anticipated, in exchange for a full release of claims." (*Id*. at ¶ 116.) She was given two weeks to decide what to do. (*Id*.) Jane Doe 4 was the "primary wage-earner for her family" and "learning that she would be terminated and would lose her promised leave soon before she was due to give birth caused her intense emotional turmoil." (*Id*. at ¶ 117.) She reached out to a local employment lawyer who said he would not take on Morrison & Foerster. (*Id*.) "[F]eeling that she had no other choice, Jane Doe 4 demanded more time and more money, including the bonus money she had already earned for 2017." (*Id*.) Morrison & Foerster only agreed "to a slight increase in bonus payout. Out of time and without alternative options, she reluctantly signed the agreement." (*Id*.) Without her salary, Jane Doe 4 and her husband were unable to afford their house and had to move just weeks before her due date. (*Id*. at ¶ 118.)

In 2018, after her maternity leave ended, Jane Doe 4 began working with an experienced recruiter. (*Id*. at ¶ 121.) After completing the full interview process with three prominent national firms she was told to expect an offer, but none materialized. "Jane Doe 4 believes that MoFo was thwarting her job prospects by providing negative references in retaliation for her decision to pursue legal action against the Firm." (*Id*. at ¶ 124.)

***Jane Doe 5*** was employed in Morrison & Foerster's Washington DC office until August 2017. (*Id*. at ¶ 125.) Prior to joining Morrison & Foerster, she worked at another large law firm in Washington DC. (*Id*. at ¶ 126.) During her time at the firm, she "excelled in her job duties and was named a 'Pro Bono All-Star.'" (*Id*. at ¶ 128.) In 2016, believing that Morrison & Foerster encouraged its female attorneys to take maternity leave, Jane Doe 5 did so, but when she returned she "learned that she had not been promoted with her peers, nor had she received the corresponding salary and bonus increase that should have accompanied her anticipated promotion." (*Id*. at ¶¶ 129-130.) A male associate in the same office and same practice group was

advanced with Jane Doe 5's class year and received the corresponding pay increase; the only material difference between them was Jane Doe's status as a woman who had become pregnant and taken leave. (*Id.* at ¶¶ 131-132.) In addition, Jane Doe 5 was paid less than male colleagues who worked the same number of hours as she did. (*Id.* at ¶ 131.)

Six months after returning from her maternity leave, Jane Doe 5 was told that she would be terminated effective August 4, 2017, although no performance problems were identified. (*Id.* at ¶ 135.) The only negative feedback was "from an associate who had complained to Jane Doe 5 about her work schedule at a time when Jane Doe 5 had to periodically leave the office for pregnancy-related medical monitoring." (*Id.*) Morrison & Foerster "all but openly acknowledged that maternity was the cause of Jane Doe 5's termination when, in the course of giving her notice of her termination, one of the partners—unprompted—informed her that MoFo had also already terminated the only other working mother in Jane Doe 5's practice group who had been on a part-time schedule."[3] (*Id.* at ¶ 136.)

Following this conversation—but before her actual termination date—Jane Doe 5 learned she was pregnant. (*Id.* at ¶ 138.) She experienced complications with this pregnancy "that required consistent medical monitoring and occasional unplanned hospital visits from June 2017 through the birth of her child in January 2018. From June 2017 through approximately September 2017, Jane Doe 5 was not able to work and needed assistance caring for her family. Additionally, following childbirth, Jane Doe 5 was disabled and unable to work or care for her family for approximately three months." (*Id.*)

**B. Procedural Background**

Plaintiffs Jane Does 1, 2, and 3 filed this action on April 30, 2018 alleging discrimination claims under state and federal law on behalf of themselves and a putative class of similarly situated female attorneys at Morrison & Foerster. (Dkt. No. 1.) The Complaint was accompanied

---

[3] Prior to her maternity leave, Jane Doe 5 was encouraged to take a part-time schedule and was told that if she took less than six-months maternity leave she could return with a part-time or flexible schedule. (*Id.* at ¶ 134.)

4

by a motion to proceed anonymously using pseudonyms. (Dkt. No. 2.) In January 2019, Plaintiffs filed a First Amended Complaint ("FAC") adding three additional plaintiffs, Jane Does 4, 5, and 6. (Dkt. No. 39.) The FAC was also accompanied by a motion to proceed anonymously using pseudonyms. (Dkt. No. 40.) Defendant filed its answer to the FAC and a motion for judgment on the pleadings the same day. (Dkt. Nos. 43, 46.) After the motion for judgment on the pleadings was fully briefed, Plaintiffs filed a Second Amended Complaint ("SAC") adding Plaintiff Jane Doe 7, also accompanied by a motion to proceed anonymously using a pseudonym. (Dkt. Nos. 53, 55.)

The now operative SAC pleads the following claims: (1) pregnancy and maternity (sex plus) discrimination in violation of Title VII; (2) gender discrimination in violation of Title VII; (3) discrimination, interference and retaliation under the Family and Medical Leave Act (FMLA); (4) denial of equal pay for equal work in violation of the Fair Labor Standards Act and the Equal Pay Act; (5) pregnancy and maternity (sex plus) discrimination in violation of California's Fair Employment and Housing Act on behalf of the California Class Representatives and the California subclass; (6) gender discrimination in violation of California's Fair Employment and Housing Act on behalf of the California Class Representatives and the California subclass; (7) discrimination, interference and retaliation in violation of the California Family Rights Act on behalf of the California Class Representatives and the California subclass; (8) denial of equal pay for equal and substantially similar work in violation of the California Equal Pay Act and California Fair Pay Act on behalf of the California Class Representatives and the California subclass; (9) unfair competition in violation of California Business and Professions Code section 17200 on behalf of the California Class Representatives and the California subclass; (10) gender discrimination in violation of the New York City Human Rights Law on behalf of Jane Does 6 and 7 and the New York subclass; (11) pregnancy, maternity, and caregiver discrimination in violation of the New York City Human Rights Law on behalf of Jane Does 6 and 7 and the New York pregnancy subclass; (12) unequal pay in violation of the New York Equal Pay law on behalf of Jane Does 6 and 7 and the New York subclass; (13) retaliation in violation of Title VII on behalf of Jane Does 1 and 4; (14) retaliation in violation of California's Fair Employment and Housing Act on behalf

of Jane Does 1 and 4; (15) wrongful termination in violation of Title VII on behalf of Jane Doe 4; (16) wrongful termination in violation of California's Fair Employment and Housing Act on behalf of Jane Doe 4; (17) rescission of contract on behalf of Jane Doe 4; (18) wrongful termination in violation of Title VII on behalf of Jane Doe 5; (19) wrongful termination in violation of the District of Columbia Human Rights Act on behalf of Jane Doe 5; (20) discrimination, interference and retaliation in violation of the District of Columbia Human Rights Act on behalf of Jane Doe 5; (21) wrongful constructive discharge in violation of Title VII on behalf of Jane Doe 6; (22) retaliation in violation of Title VII on behalf of Jane Doe 6; and (23) retaliation in violation of the New York City Human Rights law on behalf of Jane Doe 6.

Defendant filed both an answer to the SAC and a renewed motion for judgment on the pleadings. (Dkt. Nos. 56, 79.) The motion for judgment on the pleadings is now fully briefed and came before the Court for a hearing on April 18, 2019.

## DISCUSSION

Defendant's motion for judgment on the pleadings only addresses the claims brought by Jane Doe 4 and Jane Doe 5. Defendant insists that Jane Doe 4 signed a release that bars any claims which arose prior to her termination and that she has failed to adequately allege a retaliation claim. Defendant also maintains that Jane Doe 5's Title VII and District of Columbia claims are barred by the statute of limitations. The Court addresses each plaintiff's claims separately.

### A. Jane Doe 4's Claims

Jane Doe 4 brings individual claims for retaliation and wrongful termination in violation of Title VII and the California Fair Employment and Housing Act as well as a claim for rescission of contract under California Civil Code § 1688. (Dkt. No. 57 at ¶¶ 387-419.) Defendant contends that all these claims are barred either by Jane Doe 4's release or for failure to state a claim.

#### 1. Jane Doe 4's Release

After she was terminated and as part of her separation agreement, Jane Doe 4 signed a release that stated:

> 4.  In return for the consideration described above, which exceeds what Associate is otherwise entitled to under to the Firm's policies and practices, Associate hereby completely releases Morrison & Foerster LLP and its partners, officers, directors, employees, agents, insurers, attorneys, successors and assigns ("Released Parties") from all claims of any kind, known or unknown, suspected or unsuspected, which Associate may now have or have ever had against any of them, including all claims arising from Associate's employment with the Firm or her separation from employment with the Firm, whether based on tort, contract (express or implied), or any federal, state, or local law, statute, or regulation ("Released Claims"). By way of example and not in limitation of the foregoing, Released Claims shall include any claims that may arise under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the federal Family Medical Leave Act, the California Fair Employment and Housing Act, and any comparable state or local laws. Released Claims shall also include any claims for wrongful termination, retaliation, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, negligence, and defamation, any claims for paid leave benefits from the Firm, and any claims for attorneys' fees. Associate shall not file or initiate any lawsuit concerning the Released Claims. This paragraph does not prevent Associate from filing a charge with or participating in an investigation by a governmental administrative agency; provided, however, that Associate hereby waives any right to receive any monetary award resulting from such a charge or investigation. Associate further acknowledges she is not waiving or being required to waive any right or claim that cannot be waived as a matter of law, such as a claim for unemployment insurance benefits.
>
> 5.  Associate understands and acknowledges this is a full and final release covering all known, unknown, anticipated, and unanticipated injuries, debts, claims, or damages to her. Associate hereby waives any and all rights or claims which she may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code or any similar laws or statutes that may be applicable in other states. Section 1542 provides, as follows:

(Dkt. No. 45-4 at 3-4, Separation Agreement and General Release at ¶¶ 4-5.) Defendant insists that this release bars all of Jane Doe 4's claim. Jane Doe 4 responds that notwithstanding the release's broad language, it is unenforceable based on economic duress or undue influence.

### a) Economic Duress

Under California law, economic duress can serve as a basis for rescinding a settlement agreement and/or release. *See* Cal. Civ. Code § 1689(b)(1) (a party to a contract may rescind the same if his or her consent was obtained through duress, menace, fraud, or undue influence); *see also Lanigan v. City of Los Angeles*, 199 Cal. App. 4th 1020, 1034 (2011) ("The doctrine of economic duress can form a basis for rescission of a settlement agreement."); *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528 (N.D. Cal. 1995) ("Under California law, economic duress can serve as a basis for invalidating a release or waiver."). Economic duress is an equitable doctrine which "come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the

7

1  perpetrator's pressure.*"  Rich & Whillock, Inc. v. Ashton Development, Inc*., 157 Cal.App.3d 1154,
2  1158 (1984).
3        "[C]ourts, in desiring to protect the freedom of contracts and to accord finality to a
4  privately negotiated dispute resolution, are reluctant to set aside settlements and will apply
5  'economic duress' only in limited circumstances and as a 'last resort.'" *San Diego Hospice v. Cty.*
6  *of San Diego*, 31 Cal. App. 4th 1048, 1058 (1995).  However, "the existence of economic duress
7  raises a number of factual inquiries that are ill-suited to resolution at the pleading stage."
8  *Advanced Cleanup Techs., Inc. v. BP Am. Inc*., No. CV14-9033-CAS (AJWX), 2016 WL 67671,
9  at *3 (C.D. Cal. Jan. 4, 2016); *see also Cross Talk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631,
10  644 (1998) ("Whether the party asserting economic duress had a reasonable alternative is
11  determined by examining whether a reasonably prudent person would follow the alternative
12  course, or whether a reasonably prudent person might submit. Clearly this inquiry is a factual one,
13  rarely if ever susceptible to determination on demurrer.") (internal citation omitted); *In re Outlaw*
14  *Labs., LP Litig*., 352 F. Supp. 3d 992, 1009 (S.D. Cal. 2018) (denying motion to dismiss rescission
15  claim because while it might ultimately fail, dismissal at the pleadings stage was improper); *Di*
16  *Ferdinando v. Intrexon Corp*., No. 16-CV-1826 W (JMA), 2017 WL 3641879, at *5 (S.D. Cal.
17  Aug. 24, 2017) (denying motion to dismiss rescission claim because whether the plaintiff "had a
18  reasonable alternative to signing is a question of fact" and her allegations of economic duress "rise
19  above the speculative level").
20        Jane Doe 4 alleges that Defendant terminated her less than two months from her due date.
21  Prior to her termination she had planned to take advantage of Morrison & Foerster's up to six
22  months of paid maternity leave following the birth of her child.  (Dkt. No. 57 at ¶¶ 28, 114, 116.)
23  When she was terminated, she was given two weeks to decide whether to take a severance
24  package which included her anticipated maternity leave in exchange for a full release of claims or
25  lose her job and planned maternity leave.  (*Id*. at ¶ 116.)  At that time, Jane Doe 4 was "the
26  primary wage-earner for her family" and following her termination she and her husband were
27  "unable to afford rent on their current home in the San Francisco Bay Area and had to move just
28  weeks before her baby was due."  (*Id*. at ¶¶ 117-118.)  Although she consulted a local employment

attorney, he refused to take the case because he did not want to take on Defendant. (*Id*. at ¶ 117.) Jane Doe 4 was "exhausted," "fear[ed] for her family, and fe[lt] she had no other choice" but to attempt to negotiate with Defendant to obtain more time and more money. (*Id*.) When these negotiations were largely unsuccessful, she "reluctantly signed the agreement" because she was "[o]ut of time and without alternative options." (*Id*. at ¶ 117.)

Defendant argues that these allegations are insufficient because they are akin to the economic duress claims in *Kennedy v. Columbus Mfg., Inc*., No. 17-CV-03379-EMC, 2018 WL 1911808, at *8 (N.D. Cal. Apr. 23, 2018), and *Skrbina v. Fleming Companies*, 45 Cal. App. 4th 1353, 1367 (1996). The Court is unpersuaded. In those cases the courts rejected economic duress claims because the alleged wrongful act was the threat to withhold severance payments unless the severance agreement was signed. Unlike those decisions—both of which arose at summary judgment—Jane Doe 4 alleges a wrongful act that is separate from being compelled to sign the severance agreement; namely, she alleges she was terminated based on her gender and pregnancy and was told that the only way she could get the maternity leave benefits that she was depending on was if she signed the release.

Defendant's complaint that there are "no allegations that Jane Doe 4 was guaranteed her leave by contract or otherwise" (Dkt. No. 62-2 at 11:12-13) overstates Jane Doe 4's burden at the pleading stage; at this stage, the court must accept the factual allegations as true and construe all reasonable inferences in the plaintiff's favor. Jane Doe 4 alleges that the firm "permitted" and "encouraged" maternity leave, that she planned to take maternity leave, and that Defendant offered her the maternity leave only if she signed the release. (Dkt. No. 57 at ¶¶ 110, 116.) These allegations, together with her discrimination allegations, plausibly satisfy the wrongful act requirement of an economic duress claim.

Jane Doe 4 has also adequately alleged a lack of a reasonable alternative; namely, that given her late-stage pregnancy, impending planned maternity leave, and status as the family's primary wage-earner, she felt there was no reasonable alternative but to sign the release so that she could obtain her maternity leave. While this argument may not prevail on the merits, the Court cannot say as a matter of law that a reasonably prudent woman who was eight months pregnant,

was facing the loss of both her job and her paid maternity leave, was the primary wage-earner in her family, and could longer afford her current home, would have had reasonable alternatives to signing the release and accepting the severance package Defendant offered. *See Rich & Whillock, Inc*., 157 Cal. App. 4th at 1159 ("[A] reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin.").

The three cases Defendant cites where economic duress claims were dismissed at the pleading stage are inapposite. In *Tanner*, while the plaintiff's employment was suspended, he was offered the "opportunity to terminate [his] employment voluntarily in exchange for severance pay and medical/dental coverage." *Tanner v. Kaiser Found. Health Plan, Inc*., No. C 15-02763-SBA, 2016 WL 4076116, at *2 (N.D. Cal. Aug. 1, 2016). Given that his "termination was not a certainty and the plaintiff had the option to await resolution of his suspension and return to work," the court concluded that plaintiff could not show that he had no reasonable alternative but to accept the severance package. *Id*. at *4. Here, in contrast, Jane Doe 4 had been terminated—her option was to accept the termination and lose her paid maternity leave or sign the severance and obtain her maternity leave in addition to other benefits. (Dkt. No. 57 at ¶ 117.) While the *Tanner* court went on to observe that even if the plaintiff had been terminated he still had not sufficiently alleged no reasonable alternative because "the mere fact that Plaintiff might have lost his job and 'needed the money offered under the agreement...does not equate to economic duress,'" *id*. at *5 (quoting *Perez v. Uline, Inc*., 157 Cal. App. 4th 953, 960 (2007)), this Court is not persuaded that Jane Doe 4's allegations are likewise insufficient.

First, unlike the *Tanner* plaintiff, Jane Doe 4 was eight-months pregnant—these circumstances plausibly support an inference that she was unable to immediately find another job. Second, *Perez*, the case upon which *Tanner* relied, was decided at summary judgment. In affirming the trial court's summary judgment ruling that the plaintiff had not submitted evidence sufficient to support an economic duress rescission claim, the court held that there was no "evidence plaintiff was on the verge of bankruptcy, the six weeks' salary was inequitably low, or plaintiff was forced to accept the settlement amount to stave off financial disaster." *Perez*, 157

10

Cal. App. 4th at 960. Here, in contrast, Jane Doe 4 alleges she was about to give birth, she was the primary wage-earner, she feared for her family, even with the severance her family could not afford their current living situation, and she felt she had no other choice—allegations the Court must accept as true. (Dkt. No. 57 at ¶ 117.) Whether there is evidence to support these allegations and show that she signed the release "to stave off financial disaster" is a question for a later stage.

Defendant's reliance on *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119–20 (9th Cir. 2018), is even less availing. There, the Ninth Circuit affirmed the district court's dismissal of an economic duress claim brought by professional golf caddies who participate in golf tournaments run by the PGA Tour. The court rejected the caddies' claim that they only agreed to wear bibs containing advertisements at professional golfing events under economic duress because "the Caddies embark[ed] upon a profession whose practitioners have long been required to wear bibs, and who therefore have not been able to display logos on the part of the shirt covered by the bib. In these circumstances, the caddies['] allegation that they were coerced into this arrangement on threat of extreme economic hardship is not plausible." *Id.* at 1119-20 (internal quotation marks and citation omitted). This factual scenario is wholly dissimilar to that alleged here: an eight-month pregnant employee being required to sign a release upon the termination of her employment in order to obtain maternity leave benefits and severance pay or face immediate loss of income and no paid leave to enable her to personally care for her new baby.

While *Levesque v. Rinchem Co., Inc.*, No. 5:14-CV-05655-PSG, 2015 WL 1738340, at *3 (N.D. Cal. Apr. 13, 2015)*, Levesque v. Rinchem Co., Inc.*, No. 5:14-CV-05655-PSG, 2015 WL 6152783, at *3 (N.D. Cal. Oct. 20, 2015), are more analogous to the allegations here, the *Levesque* court relied on the plaintiff having already begun to receive workers compensation benefits at the time he negotiated his severance to negate any plausible inference of economic duress. 2015 WL 6152783, at *3. The court also relied heavily on *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528 (N.D. Cal. 1995), but *Johnson* was a *post-trial* decision. Given the California Court of Appeals caution that "[w]hether the party asserting economic duress had a reasonable alternative is determined by examining whether a reasonably prudent person would follow the alternative course, or whether a reasonably prudent person might submit" which "is a factual

11

1  [inquiry], rarely if ever susceptible to determination on demurrer," *Cross Talk Prods., Inc. v.*
2  *Jacobson*, 65 Cal. App. 4th 631, 644 (1998), and that the complaint as pled does not suggest an
3  obvious reasonable alternative, the Court declines to follow *Levesque*. Again, it may be that Jane
4  Doe 4 is unable to ultimately prevail on her claim of a lack of reasonable alternative, but her
5  allegations are sufficient to get beyond the pleading stage.

Given the factual nature of this question, it is unsurprising that all of the other cases Defendant relies upon were decided at summary judgment or trial. *See Kennedy v. Columbus Mfg., Inc.*, No. 17-CV-03379-EMC, 2018 WL 1911808, at *4 (N.D. Cal. Apr. 23, 2018) (summary judgment); *Osanitsch v. Marconi PLC*, No. CV 05-3988 CRB, 2009 WL 5125821, at *6 (N.D. Cal. Dec. 21, 2009) (summary judgment); *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 530 (N.D. Cal. 1995) (findings of fact following a bench trial); *Dyke v. Lions Gate Entm't, Inc.*, No. SACV13454JLSANX, 2014 WL 12470017, at *3 (C.D. Cal. July 23, 2014) (summary judgment); *Lanigan v. City of Los Angeles*, 199 Cal. App. 4th 1020, 1028 (2011) (appeal following grant of writ of mandate); *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (2007) (appeal following summary judgment); *Skrbina v. Fleming Companies*, 45 Cal. App. 4th 1353, 1366 (1996) (appeal following summary judgment); *San Diego Hospice v. Cty. of San Diego*, 31 Cal. App. 4th 1048 (1995) (appeal following summary judgment); *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1044 (6th Cir. 1986) (appeal following summary judgment); *Massi v. Blue Cross & Blue Shield Mut. of Ohio*, 765 F. Supp. 904 (N.D. Ohio 1991) (summary judgment).

Accordingly, the Court denies the motion for judgment on the pleadings as to the economic duress rescission claim.[4] *See CrossTalk*, 65 Cal. App. 4th at 644.

### b) Undue Influence

Jane Doe 4 also separately argues that she is entitled to rescission based on an undue influence theory. California Civil Code Section 1575 defines undue influence as: 1) "the use, by

---

[4] The Court also declines to hold that the plaintiff must plead that the defendant had knowledge of the plaintiff's economic vulnerability. As the court noted in *Advanced Cleanup Techs.*, there is "no authority holding that [this] criteria constitute express pleading requirements and numerous California district courts have evaluated claims for economic duress in the context of a Rule 12(b)(6) motion without any mention of these criteria." 2016 WL 67671 at *4 (collecting cases re: same).

12

one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him"; 2) "taking an unfair advantage of another's weakness of mind"; or 3) "taking a grossly oppressive and unfair advantage of another's necessities or distress."  "Undue influence ... describe[s] persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment. The hallmarks of such persuasion is high pressure, a pressure which works on mental, moral, or emotional weakness to such an extent that it approaches the boundaries of coercion. In this sense, undue influence has been called overpersuasion." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 130 (1966).  *Odorizzi* lists seven factors which "generally accompany" overpersuasion:

> (1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, (7) statements that there is no time to consult financial advisers or attorneys. If a number of these elements are simultaneously present, the persuasion may be characterized as excessive.

*Id*. at 133.  These factors, however, are flexible and courts are most concerned with "whether from the entire context it appears that one's will was overborne and he was induced to do or forbear to do an act which he would not do, or would do, if left to act freely." *Keithley v. Civil Service Bd. of the City of Oakland*, 11 Cal.App.3d 443, 451 (1970).

Jane Doe 4 relies on the same allegations supporting her economic duress claim to support her undue influence claim.  Those allegations, however, do not support a plausible inference that any of the *Odorizzi* factors was present.  She nonetheless insists that her advanced pregnancy, sleep-depraved state, and panic and anxiety at her termination rise at least to the level of a "weakness of spirit" which would make her unduly susceptible and put her under excessive pressure.  Defendant counters that Jane Doe 4 cannot allege the requisite weakness of mind given that she continued to work as an attorney during this time, she consulted with an attorney, had two weeks to decide whether to accept Defendant's offer, and ultimately, she was capable of

13

negotiating with Defendant to obtain a better severance package.

The Court agrees. It is not plausible that a woman is susceptible to undue influence and cannot freely enter into a contract merely because she is pregnant, whether it be one month or eight months, especially when she is working as an attorney during that same period of "weakness of spirit." The rescission claim based on undue influence is dismissed with leave to amend.

\*\*\*

Because Jane Doe 4 has stated a plausible claim for rescission based on economic duress, the Court denies Defendant's motion for judgment on her discrimination and wrongful termination claims.

### 2. Jane Doe 4's Retaliation Claims

Jane Doe 4 separately pleads state and federal retaliation claims based on acts committed after her termination; namely that she "believes" Defendant "was thwarting her job prospects by providing negative references in retaliation for her decision to pursue legal action." (Dkt. No. 57 at ¶ 124.) Defendant contends that these claims are barred by the release and even if not so barred fail to allege facts giving rise to a plausible retaliation claim.

A retaliatory dissemination of a negative employment reference can violate Title VII. *See Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997). Here, however, Jane Doe 4 has not alleged that Defendant gave her a negative employment reference; instead, Jane Doe 4 alleges that she "believes" that Defendant provided negative references because although she completed the full interview process with three prominent firms and "was told to expect an offer," "the promised offer never materialized" and when questioned the firms "offered only vague platitudes." (Dkt. No. 57 at ¶¶ 122-123.) These allegations do not support a plausible inference that the reason she was not offered employment was because Defendant provided a negative reference. *See, e.g., Krug v. Maricopa Cty. Superior Court*, No. 2:14-CV-01320 JWS, 2014 WL 6983092, at \*4 (D. Ariz. Dec. 10, 2014) (dismissing similar blackballing claim because the plaintiff did "not allege with certainty that any bad references were given" but instead that '[u]pon information and belief' that she did not receive a position with the Maricopa County Attorney's Office or other prospective employers because 'her former employers' blackballed her and provided these

employers with negative reviews in retaliation for her protected speech"), aff'd in part, vacated in part, remanded, 674 F. App'x 652 (9th Cir. 2017).[5]

Jane Doe 4's attempt to distinguish *Krug* on the grounds that the plaintiff's claims there were against individual defendants and not the employer itself is unpersuasive. Regardless of who the claim is pled against, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). The Court cannot reasonably infer from the facts alleged here that the reason Jane Doe 4 did not receive job offers from the three firms is because Defendant provided negative references; indeed, Jane Doe 4 does not even allege that the law firms sought references from Defendant or, if they did, at what point in the process they did so.

Accordingly, Jane Doe 4's retaliation claims (Claims 13 and 14) are dismissed with leave to amend.

**B. Jane Doe 5's Title VII and District of Columbia Claims**

Jane Doe 5 brings discrimination and wrongful termination claims under Title VII, FMLA, and parallel District of Columbia laws. The exhaustion requirements of Title VII and the District of Columbia Human Rights Act ("DCHRA") and the District of Columbia Family and Medical Leave Act ("DCFMLA") are at issue on Defendant's motion for judgment on the pleadings. Specifically, a person seeking relief under Title VII must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice, or, if the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. §

---

[5] The Ninth Circuit specifically affirmed the dismissal of the blackballing claim. *See Krug v. Maricopa Cty. Superior Court*, 674 F. App'x 652, 653–54 (9th Cir. 2017) ("the district court properly dismissed Krug's retaliatory termination claim against defendant Alessi and her blackballing claim because Krug failed to allege facts sufficient to state a plausible claim.").

1  2000e-5(e)(1). Claims under the DCHRA and DCFMLA must be brought within one year of the
2  unlawful employment practice. *See Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 31 (D.D.C.
3  2007) (A claim under the DCHRA must be filed "within one year of the unlawful discriminatory
4  act, or the discovery thereof.") (citing D.C. Code § 2–1403.16(a)); *Brewer v. HR Policy Ass'n*, 887
5  F. Supp. 2d 118, 123 (D.D.C. 2012) ("the DCFMLA has a one-year statute of limitations.") (citing
6  D.C. Code § 32–510(b) (2001)).

7  Defendant notified Jane Doe 5 of her termination on May 4, 2017. (Dkt. No. 57 at ¶ 135;
8  Dkt. No. 45-5.) In the absence of tolling, the 300-day deadline to file her EEOC charge based on
9  an unlawful termination would have expired on February 28, 2018. The EEOC received her
10 charge on November 1, 2018. (Dkt. No. 45-5.) Pursuant to the parties' tolling agreement, some,
11 but not all of this time was tolled, and, in any event, Jane Doe 5 concedes that regardless of any
12 agreed-upon tolling her November 1 filing was untimely. (Dkt. No. 57 at ¶ 139.) Jane Doe 5
13 nevertheless insists that she is entitled to equitable tolling based on her alleged physical
14 disabilities during and after her pregnancy.

15 **1) Equitable Tolling of Jane Doe 5's Title VII Claim**

16 Under federal law, "the litigant seeking equitable tolling bears the burden of establishing
17 two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some
18 extraordinary circumstances stood in h[er] way." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052
19 (9th Cir. 2013), aff'd and remanded sub nom. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625
20 (2015). "Equitable tolling is typically granted when litigants are unable to file timely [documents]
21 as a result of external circumstances beyond their direct control." *Harris v. Carter*, 515 F.3d 1051,
22 1055 (9th Cir. 2008).

23 Jane Doe 5 has plausibly alleged some extraordinary circumstances; namely, that due to
24 her disabilities, she was unable to attend to her own affairs. She alleges that after her termination,
25 but prior to her termination date, she learned she was pregnant. (Dkt. No. 57 at ¶ 138.) She
26 experienced complications which "required constant medical monitoring" and "occasional
27 unplanned hospital visits from June 2017 through the birth of her child in January 2018." (*Id.*) In
28 particular, from June 2017 through September 2017 was not able to work and needed assistance

caring for her family, and from January 2018 through March 2018 she was disabled and unable to work or care for her family. (*Id.*)

However, Jane Doe 5's complaint lacks any allegations regarding the first prong of the equitable tolling test; namely, that she was diligently pursuing her rights. In particular, the complaint lacks allegations regarding how Jane Doe 5 was diligently pursuing her rights between the end of her alleged period of incapacity in April 2018 through her EEOC filing in November 2018. *See Wong*, 732 F.3d at 1052 (holding that the question is whether Plaintiff was "without any fault in pursuing [her] claim") (internal citation and quotation marks omitted). While the parties' briefs reference a tolling agreement, the agreement is not alleged in the complaint nor are the specifics contained with sufficient particularity in the parties' briefs. Because Plaintiff's counsel indicated at oral argument that Jane Doe 5 could amend this claim to add additional allegations regarding Jane Doe 5's diligence, her Title VII claim (Claim 18) is dismissed with leave to amend.

**2) Equitable Tolling of Plaintiff's District of Columbia Claims**

Under District of Columbia law, "a person who is *non compos mentis* and who has failed to file a legal action in a timely fashion may bring the action 'within the time limited after the disability is removed.'" *Smith-Haynie v. D.C.*, 155 F.3d 575, 580 (D.C. Cir. 1998) (quoting D.C. Code § 12–302). "The code does not itself define non compos mentis, but '[t]he phrase 'non compos mentis ... generally refers to someone incapable of handling her own affairs or unable to function [in] society.'" *Smith-Haynie*, 155 F.3d at 580 (quoting *Hendel v. World Plan Executive Council et al*., 705 A.2d 656, 665 (D.C. 1997).) An individual must show that she was "unable to engage in rational thought and deliberate decision making sufficient to pursue her claim alone or through counsel." *Smith–Haynie*, 155 F.3d at 580. Allegations "that the plaintiff had a 'mental disability,' or was 'unable to function' and 'lost the ability to care for herself' [are] insufficient to demonstrate that plaintiff was *non compos mentis*." *Dahlman v. Am. Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 78 (D.D.C. 2011) (collecting cases); *see also Speiser v. U.S. Dep't of Health & Human Servs*., 670 F. Supp. 380, 385 (D.D.C. 1986) (holding that evidence was insufficient to support a finding that the plaintiff was incapable of handling her own affairs or

17

unable to comprehend her legal rights as needed to support equitable tolling where there was no evidence that the plaintiff has ever been "adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise took measures to let someone else handle her affairs such as might be done for someone who *is non compos mentis*"), aff'd, 818 F.2d 95 (D.C. Cir. 1987).

Jane Doe 5's allegations do not plausibly support an inference of such extreme incapacity. While she alleges that she could not work or care for her children, there are no factual allegations that suggest she did not understand her legal rights, or that she could not engage in rational thought or otherwise suffered from similar mental incapacity. Accordingly, Jane Doe 5's DCHRA and DCFMLA claims (Claims 19 and 20) are dismissed with leave to amend to plead additional facts supporting her claim that she was *non compos mentis.*

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. It is granted with leave to amend as to Jane Doe 4's retaliation claims and her rescission claim based on undue influence, but denied as to Jane Doe 4's other claims. It is granted with leave to amend as to Jane Doe 5's Title VII and DCHRA and DCFMLA claims.

Any amended complaint must be filed within 20 days of this Order.

**IT IS SO ORDERED.**

Dated: May 1, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge