1   RACHEL S. BRASS, SBN 219301
      rbrass@gibsondunn.com
2   DANIEL M. BRUGGEBREW, SBN 307037
      dbruggebrew@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
4   San Francisco, CA 94105-0921
    Telephone: 415.393.8200
5   Facsimile:  415.393.8306

6   CATHERINE A. CONWAY, SBN 98366
      cconway@gibsondunn.com
7   MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
8   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
9   Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
10  Facsimile:  213.229.7520

11  AMANDA C. MACHIN, *admitted pro hac vice*
      amachin@gibsondunn.com
12  GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue N.W.
13  Washington, D.C. 20036-5306
    Telephone: 202.955.8500
14  Facsimile:  202.467.0539

15  *Attorneys for Defendant*

16              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
17                SAN FRANCISCO DIVISION

18  JANE DOE 1, JANE DOE 2, JANE DOE 3,        | **Case No. 18-CV-2542 (JSC)**
19  JANE DOE 4, JANE DOE 5, JANE DOE 6,
    and JANE DOE 7, on behalf of themselves and
20  all others similarly situated,

                                                **DEFENDANT MORRISON & FOERSTER
21             Plaintiffs,                       LLP'S ANSWER TO THIRD AMENDED
                                                CLASS AND COLLECTIVE ACTION
22        v.                                    COMPLAINT**

23  MORRISON & FOERSTER LLP,

24             Defendant.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## **PRELIMINARY STATEMENT**

Defendant Morrison & Foerster LLP ("Morrison") is proud to be an industry leader in supporting and promoting women and working parents.  Through hard work and forward-looking decisions, Morrison has been and remains at the forefront of the legal industry in supporting female attorneys and attorneys who are caregivers.

Morrison's commitment is borne out not only in its policies and programs, but in its individual treatment of women and parents.  Thus the facts in this case will show Morrison's commitment to equal treatment of all associates, and to supporting and advancing women.  In the last five years alone, nearly half of all partner promotions have been women.  Women co-chair approximately twenty of the firm's practice groups, and the chair of the firm's partner compensation committee is female.  According to *Working Mother*, the firm exceeds the averages on leadership metrics for their 50 Best Law Firms for Women in terms of female equity partners and on the percentage of women on its compensation, executive, and partner-promotion committees.

Once women are promoted, they are also given positions of influence and leadership.  Here too, Morrison puts words into action.  Morrison is a founding signatory of the Mansfield Rule Initiative, a program that requires at least 30 percent of candidates for key leadership roles be women and attorneys of color.  And Morrison has recently been given "Mansfield Certification Plus" status, which indicates that, in addition to achieving the requirement for *considering* candidates, the firm has successfully *reached* at least 30 percent women and minority lawyer representation in a notable number of current leadership roles and committees.

The firm is also dedicated to supporting and advancing female associates and parenting associates.  The Firm's Women's Strategy Committee works closely with firm leadership (including the Board of Directors—itself 40% women—managing partners, and Chair) to ensure that the advancement of women is an important strategic priority.  This important committee regularly reviews retention data regarding the firm's women lawyers.  Sub-committees are tasked with addressing key strategic priorities (such as lateral recruitment).  And regular working calls serve as a forum for raising and addressing topics of interest to women at the firm.  Those efforts are complemented by affinity groups that foster a sense of community by hosting everything from networking lunches to trivia nights

to "coding and cocktails" evenings.  The firm also provides award-winning mentoring programs for women lawyers.

Morrison brings this same leadership to supporting its attorneys who are parents.  The firm provides 20 weeks of paid parental leave, plus 5 additional weeks of unpaid leave, to associate attorneys who are primary caregivers.  For the month before attorneys begin parental leave, and for the month after they return, Morrison's transition period policy ensures that their billable hours expectations are cut in half without any corresponding reduction in compensation.  New and expectant parents at Morrison also have a wide variety of other resources, including career coaching and a mentoring network, as well as a program that pays for attorneys to ship their breast milk for free while traveling for work.  And, Morrison maintains a generous reduced-hours schedule policy that gives returning parents additional flexibility.

In light of Morrison's leadership in these areas, industry experts consistently recognize Morrison as a firm of choice for women lawyers and working parents.  Yale Law Women has recognized Morrison as one of its Top 10 Family Friendly Firms from 2014 to 2017 and, in 2018, as one of its Top 10 Female Friendly Firms.  The firm was named Law Firm of the Year for Flexible Working Environments and Innovative Programs for Mothers by the 2017 Chambers Women in Law Awards: USA.  *Working Mother* has named Morrison to its list of the 50 (now 60) Best Law Firms for Women from 2014 to 2018.  And, for seven consecutive years, Morrison has received Gold Standard Certification from the Women in Law Empowerment Forum in recognition of the integration of women into leadership roles.

Morrison is committed to treating its associates fairly, and after investigating the Plaintiffs' claims, Morrison is confident that they were indeed treated fairly.  Jane Does 1, 2, and 3 complain that they did not advance with their class year at the end of 2017.  Those decisions were made for different reasons for each of Jane Does 1-3, all of them legitimate and unrelated to sex, gender, or parental status. Two of the Doe plaintiffs, Jane Does 1 and 3, were reclassified during their year-end evaluations. Under Morrison policy, an associate is typically but not always progressed in connection with the annual evaluation process.  A decision to reclassify means that for varying individualized reasons, partners determined that the associate in question needs an additional year of experience at his or her

current level.  As a result of the reclassification, the associate's billing rate and compensation rate are not increased.  Thus, for example, if an associate who possesses the requisite skills and experiences progresses from a fourth year to a fifth year, her salary and billable rate may also increase.  If she does not, her salary and billing rate are at the applicable fourth year rate.  To the extent the complaint suggests that the billing rate is increased by a class year when associates are reclassified, that is simply wrong.

A Morrison associate is automatically reclassified if he or she bills fewer than 600 client chargeable, pro bono, and legal service hours in a year—600 hours is approximately 30% of the firm's 1,950-hour annual requirement for full-time associates.  That automatic reclassification is a reflection of the fact that an attorney's skill, knowledge and judgment build over time, through experience.  If an associate bills 600 hours or more, he or she may still be reclassified on a discretionary basis because of a lack of skills or experience that the firm considers necessary for advancement.  This can sometimes occur after a leave, but it can also occur in other circumstances, including after an associate laterals to the firm or changes practice groups, when an associate's practice group has been particularly slow, or if the associate performed well but has had the opportunity to work only on a limited set of substantive areas.

The reclassification policy is gender-neutral, and applies to male and female associates alike.  It allows associates to gain critical additional experience at their current seniority level before they are priced out of the work they are asked to perform, and helps them to avoid being placed in situations where they fail to meet the expectations of more senior colleagues and clients.  As associates advance within the firm, their billable rates increase, and, as a result, more senior attorneys are less likely to be given more junior-level assignments.  By reclassifying associates, Morrison's policy allows associates to catch up.

Reclassification is not considered a performance failure or deficiency and it is not a black mark on someone's performance record.  Accordingly, the fact that an associate was reclassified has no effect on his or her bonus eligibility.  And it does not prevent future advancement—Morrison associates have made partner after being reclassified.  Indeed, some associates have affirmatively requested

reclassification, because it provides them with additional opportunities to develop at their current class year without being priced out (via billing rates) of the work they are performing.

The third, Jane Doe 2, received a "Not Progress" result.  This result, unlike reclassification, is a signal that the associate's work reflects serious performance deficiencies.  It often means, as it did in Jane Doe 2's case, that an associate has had sustained performance deficiencies over a number of years.  Accordingly, a "Not Progress" result affects bonus eligibility.  The "Not Progress" result does not correlate at all with parental leave.  Since 2014, twelve associates have received a "Not Progress" result on their annual evaluations, and only one (Jane Doe 2) received that result in a year that a parental leave was taken.

Plaintiffs incorrectly suggest that there is a standard operating procedure to hold back female associates or parents who take leave.  Of the hundreds of women who have worked at Morrison over the past five years, only about five percent have been reclassified and fewer still have not progressed.  And of the hundreds of associates who have taken parental leave, men and women, approximately 10% were reclassified and approximately 1% were not progressed.  The vast majority of women who have taken leave were not reclassified or not progressed.  This is not only a signifier of the strength of Morrison's programs to support and advance women and working parents, but a fundamental defect in the theory of this case.

Separately, Jane Does 4 and 5 challenge their terminations.  Both were terminated after a sustained history of performance deficiencies.  There is no basis for their suggesting that pregnancy or motherhood had any impact on their terminations.  In fact, in 2017, the year in which each was terminated for underperforming over a multi-year period, 57 firm associates took parental leave, and only one was terminated.

Jane Doe 6 challenges the fact that she was not elevated to partner, but during the three years in which she met the minimum length-of-service requirements to be considered for partner, more than 48% of those elevated to partner were women.  Not a single person from Jane Doe 6's practice group was elevated to partner in that time, although one woman was elevated to partner in a practice group that later merged with Jane Doe 6's.  And Jane Doe 6's suggestion that she was discriminated against for taking leave is absurd.  She was hired with the knowledge that she was weeks away from taking

maternity leave, and she took two additional maternity leaves during her time at the firm.  She was not penalized in any way for doing so.

The bulk of Jane Doe 6's allegations relate to workplace frustrations that the firm tried to help her with, despite her failure to respond to requests for information or otherwise engage in the process. Here, she misrepresents facts around the firm's commitment to *helping* her succeed.  For example, she suggests that she was forced to join a call in the middle of the night while traveling abroad and was chastised when she missed the call.  In fact, a prominent female partner received a client inquiry in Jane Doe 6's professed area of expertise and proactively sponsored Jane Doe 6 by offering her the opportunity to speak to high-level executives at the client—an offer Jane Doe 6 accepted, writing "***Sure – I'm happy to dial into a call.  (I'm expecting to be in [another country] for work, but 4 pm (NY time) is free for me.  Thanks for reaching out!***"  In light of Jane Doe 6's schedule, the partner responded, "I am not sure that makes sense.  Let me see what I can do."  Jane Doe 6 refused that offered accommodation, and instead wrote that she wanted to join the call even "in the night, [local] time." She then went completely dark at the time of the call, which she did not join, and did not respond to her work email for several days, including long after she was back in the United States.

Jane Doe 6 similarly alleges that male partners "required her to travel internationally on their behalf for informational" meetings, which the facts also belie.  Here too, the evidence will show those partners *offered* her the *optional* opportunity to feature her practice before an international audience— an opportunity she refused to pass up, even when she was asked if she had the time for it.  The partners made clear that the "main goal is to get you in front" of the other firms to present *her* practice.  Once abroad, whatever lasting relationships Jane Doe 6 allegedly created, they were unrelated to the firm-related efforts Morrison paid for and had invited her abroad to collaborate on.  While on the trip, Jane Doe 6 went completely incommunicado while she toured local sights, arrived late for a business meeting, absented herself for a large portion of a business meal in order to speak with a blogger, and made the personal decision to cut her trip short (and necessitate the firm cancelling several in-person meetings with valued relationships) in order to fly back to the United States and accept an award she claimed to have just learned about.

1    Ultimately, unwilling to comply with basic firm requirements (entering time, following proper

2  matter onboarding procedures, and being responsive to client concerns), Jane Doe 6 quit.

3    For her part, Jane Doe 7 elected to resign rather than make a concerted effort to improve her

4  performance, despite the fact that the partners in her practice group spent years encouraging her to do

5  so.  Unlike other women in her group, whose performance was exceptional and recognized as such,

6  Jane Doe 7 acted like a junior associate well into the sixth year after she graduated from law school.

7  As one evaluation put it, "she does what is asked, but not a lot more."  Not only did she fail to take

8  ownership of her work or be proactive, but senior attorneys often had to follow up with her repeatedly

9  to ensure that she completed tasks and updated clients.  She took little interest in her career at the firm—

10  sometimes not bothering to read her written evaluations before her in-person evaluation meetings.

11  Despite all this, the partners in her group asked her to stay at the firm and make a concerted effort to

12  improve within a set time period.  She declined to do so and instead resigned in the summer of 2016.

13    Morrison is confident that each of the seven Doe plaintiffs was treated fairly with respect to

14  work and advancement opportunities, pay, and their work experience.  That is because Morrison has

15  created an environment in which each was given every opportunity to succeed.  The firm has provided

16  communication coaches, marketing support, flexible work arrangements, and formal and informal

17  mentoring.  To those who had serious performance deficiencies, the firm provided detailed feedback

18  and resources for improvement over a number of years.  The firm cannot be blamed if, for example,

19  Jane Doe 2 ignored the statement in her 2016 evaluation that, "the coming year is an important one for

20  [her] development, and evaluators will be looking for her to establish command over her transactions."

21    That environment of respect and support is how Morrison approaches the careers of each of its

22  lawyers, male and female alike.  Morrison is consistent in its commitment to fair and equal treatment

23  of associates and others, without regard to sex, gender or parenting status.  It is dedicated to working

24  with each individual associate on his or her unique career path.  And make no mistake:  the path

25  navigated by each lawyer at Morrison is unique.  Over time, no two associates will work with the same

26  partners, on the same matters, or for the same clients, doing the same work.  Each will be called upon

27  to demonstrate her or his ability to exercise judgment, provide legal services and counsel, and perform

28  those critical aspects of his or her legal practice in a manner that meets a given partner's expectations.

For these and other reasons, indeed, as the fact-intensive claims and differences across the experiences of each of the six plaintiffs here underscore, the claims here are wholly incompatible with class-based litigation.   Setting aside the fact that each Plaintiff was treated fairly, each challenges highly individualized personnel decisions.  The evidence will show that Morrison actively cultivates a work environment irreconcilable with Plaintiffs' narrative.  In the words of a female executive committee member, "It's been a longstanding policy of MoFo's to continue to promote and encourage women. We don't just speak it, we walk the walk as well."

Below, Morrison has responded to the specific Paragraphs of the Third Amended Complaint ("Complaint").  *See* ECF No. 92.  At the outset, Morrison notes that it adopts the pseudonyms used in the Complaint.  At this time, Morrison does not object to the use of pseudonyms in this case, and defers to the Court on that issue.  However, as discussed at the Case Management Conference, Morrison reserves the right to object to the continued use of pseudonyms as the cases progresses.[*]

***

1.      Defendant admits that it employs nearly 800 attorneys in the United States and has 16 offices worldwide.  Defendant further admits that it specializes in a wide range of practice areas, including labor and employment, and that its policies and initiatives champion the advancement of female employees.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 1 of the Complaint.

2.      Defendant denies the allegations set forth in Paragraph 2 of the Complaint.

3.      Defendant denies the allegations set forth in Paragraph 3 of the Complaint.  As set forth in the preliminary statement, Morrison is an industry leader in providing flexible work arrangements for parents returning from leave.

4.      Defendant denies the allegations set forth in Paragraph 4 of the Complaint.  As set forth in the preliminary statement, many of Morrison's most successful female partners have been elevated to partner after or during parental leave.

---

[*]   Plaintiffs' Complaint contains many narrative headings that are not explicitly incorporated into the numbered paragraphs of the Complaint.  To the extent any response is required, Defendant denies all facts and allegations contained in these headings.

Gibson, Dunn &
Crutcher LLP

5.      This paragraph does not set forth any factual allegations against Morrison and therefore does not require a response. As set forth in the preliminary statement, many third-party groups have recognized that Defendant is ahead of the pack in the legal industry in terms of the advancement of women and parents. To the extent there are any allegations against Morrison set forth in Paragraph 5 of the Complaint, Morrison denies them.

6.      Defendant denies the allegations set forth in Paragraph 6 of the Complaint.

7.      This paragraph does not set forth any factual allegations against Morrison and therefore does not require a response. As set forth in the preliminary statement, many third-party groups have recognized that Defendant is ahead of the pack in the legal industry in terms of the advancement of women and parents. To the extent there are any allegations against Morrison set forth in Paragraph 7 of the Complaint, Morrison denies them.

8.      Defendant denies the allegations set forth in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations set forth in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations set forth in Paragraph 10 of the Complaint.

11.     To the extent that Paragraph 11 summarizes Plaintiffs' legal theories, no response is required. Defendant otherwise denies the allegations set forth in Paragraph 11 of the Complaint, and specifically denies that Plaintiffs are entitled to any relief.

12.     Defendant admits that Jane Doe 1 has been an employee in one of Morrison's California offices throughout her tenure at the firm. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 12 of the Complaint.

13.     Defendant admits that Jane Doe 2 has been an employee in one of Morrison's California offices throughout her tenure at the firm. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 13 of the Complaint.

14.     Defendant admits that Jane Doe 3 was an employee in one of Morrison's California offices throughout her tenure at the firm. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 14 of the Complaint.

15.     Defendant admits that Jane Doe 4 was an employee in one of Morrison's California offices throughout her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 15 of the Complaint.

16.     Defendant admits that Jane Doe 5 was an employee in Morrison's Washington, D.C. office throughout her tenure at the firm.  Defendant further admits that Jane Doe 5 provided Morrison a home address in Maryland.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 16 of the Complaint.

17.     Defendant admits that Jane Doe 6 was an employee in Morrison's New York office throughout her tenure at the firm and that, for a portion of her tenure, she was an Of Counsel.  Defendant further admits that Jane Doe 6 provided Morrison a home address in New Jersey.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 17 of the Complaint.

18.     Defendant admits that Jane Doe 7 was an employee in Morrison's New York office throughout her tenure at the firm, which ended in 2016.  Defendant further admits that Jane Doe 7 provided Morrison a home address in New York City.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 18 of the Complaint.

19.     Defendant admits that it has offices located around the world, including offices in Los Angeles, Palo Alto, San Diego, San Francisco, Washington, D.C., and New York.  Defendant further admits that nearly 400 Morrison attorneys work in California.  Defendant also admits that it has been Plaintiffs' employer throughout their tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 19 of the Complaint.

20.     Defendant admits that, pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal law claims alleged.  Defendant further admits that this Court may exercise supplemental jurisdiction over the state law claims at this time.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 20 of the Complaint.

21.     Morrison admits that it is headquartered in and transacts significant business in the State of California and this District; Morrison further admits that the Court has personal jurisdiction over the firm.

22.     Defendant admits only that venue is proper in this district and that Morrison conducts substantial business in the Northern District of California, where it is headquartered.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 22 of the Complaint.

23.     Defendant admits that Jane Does 1-3 filed charges with the DFEH and EEOC on April 24, 2018 and subsequently received Notices of Case Closure and Right to Sue from the DFEH. Defendant further admits that Jane Doe 1 filed a further administrative charge before the EEOC and DFEH that was received at some time during February of 2019, and that the EEOC and DFEH issued notices of her right to sue as to that charge on February 20, 2019 and February 28, 2019, respectively. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 23 of the Complaint.

24.     Defendant admits that Jane Doe 4 filed an administrative charge before the DFEH and the EEOC, and that the charges are dated October 30, 2018, but appear to have been filed on November 6, 2018.  Defendant further admits that the DFEH issued a Right to Sue notice, dated November 6, 2018, which made no factual findings.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Defendant admits that Jane Doe 5 filed an administrative charge before the EEOC that appears to have been filed on November 1, 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 25 of the Complaint.

26.     Defendant admits that Jane Doe 6 filed an administrative charge before the EEOC, and that the charge is dated December 26, 2018.  Defendant further admits that the EEOC issued Jane Doe 6 a notice of the right to sue on March 1, 2019.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 26 of the Complaint.

27.     Defendant denies the allegations set forth in Paragraph 27 of the Complaint.  Women co-chair approximately twenty of the firm's practice groups, and the chair of the firm's partner compensation committee is female.

28.     Defendant admits that it has a number of work-life programs, including parental transition time before going out on leave and upon returning from leave, backup caregiving, flexible work options, and a reduced hours program.  Defendant further admits that it has received recognition

1   for providing a greater number of weeks for paid primary caregiver leave than the vast majority of its

2   peers in the legal industry, or any other industry, and that Morrison encourages attorneys to take the

3   leave to which they are entitled under the policy.  Morrison further admits that where individual

4   attorneys need additional leave, it engages with the requesting attorney about such leave on a person-

5   by-person basis.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph

6   28 of the Complaint.

7        29.   Defendant denies the allegations set forth in Paragraph 29 of the Complaint.

8        30.   Defendant denies the allegations set forth in Paragraph 30 of the Complaint.

9        31.   Defendant denies the allegations set forth in Paragraph 31 of the Complaint.

10       32.   Defendant admits that Morrison's intranet was updated for all associates on

11  approximately January 9, 2018 to show class placement, and that some associates, including Jane Does

12  1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the

13  information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each

14  Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class

15  placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 32

16  of the Complaint.

17       33.   As to the allegations in Paragraph 33 of the Complaint regarding Plaintiffs' state of

18  mind, Defendant lacks knowledge or information sufficient to form a belief about the truth of those

19  allegations, and on that basis, denies them.  Defendant denies that reclassification constitutes being

20  held back.

21       34.   Defendant denies the allegations set forth in Paragraph 34 of the Complaint.  Both Jane

22  Does 4 and 5 had significant, ongoing performance issues in the years leading up to their respective

23  terminations.

24       35.   Defendant admits that approximately 50% of its associates are female.  Defendant

25  further admits that approximately 25% of its partners are females.  The representation of women in the

26  firm's partnership and management well exceeds industry averages, as independent publications like

27  *Working Mother* have repeatedly recognized.  That is also reflected in the firm's receipt of Mansfield

28  Certification Plus, which indicates that the firm has reached at least 30 percent women and minority

DEFENDANT'S ANSWER TO THIRD AMENDED COMPLAINT
CASE NO. 18-CV-2542 JSC
-5-

representation in a notable number of current leadership roles and committees.  The firm has made a concerted effort over many years to be an industry leader in this area.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 35 of the Complaint.

36.     Defendant denies that there is any disqualification from advancement for men or women returning from parental leave.  Defendant denies the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendant is proud that the representation of women in its partnership and management exceeds the national averages among peer firms, and that the representation of women continues to increase over time.  Defendant admits that its website reflects this accomplishment, noting that women account for 25% of Morrison's partnership and 50% of its associates.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 37 of the Complaint.

38.     Defendant denies the allegations set forth in Paragraph 38 of the Complaint

39.     Defendant admits that associate promotion decisions and certain compensation decisions are, in most cases, heavily influenced by the input of Practice Group and/or Department chairs.  Morrison further admits that the percentage of women in its partnership well exceeds national averages in the legal industry, and that this is true of its San Francisco, Los Angeles, Palo Alto, and San Diego offices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 39 of the Complaint.

40.     Defendant denies the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendant denies the allegations set forth in Paragraph 41 of the Complaint.

42.     Defendant admits that it has a proud history of mentorship and sponsorship at the firm, and that its history includes a tradition of attorneys encouraging and promoting colleagues different from themselves.  Defendant further admits that the firm has many powerful women who chair and co-chair practice groups, serve on the Board of Directors, and serve on key committees.  Those women have sponsored and supported attorneys (male and female alike), as have their male partners.  Defendant further admits that it compiled a video highlighting how Morrison partners have sponsored more junior attorneys different from themselves, consistent with the firm's culture and respect for diversity.  That video highlights men who have sponsored women, women who have sponsored

women, and women who have sponsored men, among other differences.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 42 of the Complaint

43.     Defendant denies the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendant admits that, for many years, it has invested in initiatives to encourage the recruitment, retention, and advancement of women and parents.  Defendant denies that there is inequitable promotion, pay, job assignment or other practices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendant denies that it engaged in misconduct or discriminated and otherwise denies the allegations set forth in Paragraph 45 of the Complaint.

46.     Defendant denies the allegations set forth in Paragraph 46 of the Complaint.

47.     Defendant denies the allegations set forth in Paragraph 47 of the Complaint.

48.     Defendant admits the allegations set forth in Paragraph 48 of the Complaint.

49.     Defendant admits that Jane Doe 1 has a B.A. and a J.D. and is admitted to the California bar. Defendant further admits that Jane Doe 1 was hired as a lateral associate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendant admits that, as would be expected for most associates, some of the feedback in Jane Doe 1's evaluations was positive.  However, Defendant denies that Jane Doe 1 "excelled at her duties."  Jane Doe 1 came to the firm with less substantive experience than would be expected at her level and faced a significant "learning curve," as her first annual evaluation stated.  Although she was encouraged to develop more skills relevant to her practice group, she did not do so, and she did not meet hours expectations.  She has also been non-responsive to partner requests and worked inefficiently (resulting in write-downs of her time) even after being advised to focus on efficiency.

51.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe 1 took maternity leave approximately two years after joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 51 of the Complaint.

52.     Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the

information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 52 of the Complaint.

53.     Defendant admits that, for a couple of days only, Morrison's intranet reflected the incorrect billing rate for Jane Doe 1.  This error was caused by a time delay between the processing of certain Human Resources data regarding class years and the processing of certain financial data regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 53 of the Complaint.

54.     Defendant admits only that certain colleagues in Jane Doe 1's office, including both male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 54 of the Complaint.

55.     Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

56.     Defendant denies that Jane Doe 1 was discriminated against and otherwise denies the allegations set forth in Paragraph 56 of the Complaint.

57.     Defendant admits that the partner it understands to be "Partner 1" (hereinafter, "Partner 1") was assigned to be Jane Doe 1's partner mentor for a period of time.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendant denies the allegations set forth in Paragraph 58 of the Complaint and further states that Partner 1 has actively encouraged the advancement of female colleagues and those who are parents.

59.     Defendant admits only that the partner it understands to be "Partner 2" (hereinafter, "Partner 2") spoke with Jane Doe 1 about an excellent female associate formerly at another firm; when Jane Doe 1 asked why the associate no longer worked with Partner 2, he informed her that the associate had decided not to return from maternity leave and was no longer working outside the home.  Defendant denies there was any discriminatory conduct.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 59 of the Complaint.

1      60.    Defendant denies the allegations set forth in Paragraph 60 of the Complaint.

2      61.    Defendant admits that Jane Doe 1 and Partner 1 had a conversation about her class year

3  on or about January 9, 2018, and that Partner 1 informed her that Partner 2 would provide her formal

4  performance review in person and discuss the issue further.  In discussing the inadvertent error of the

5  class year being posted prior to the evaluation delivery, Partner 1 also noted that the other associate

6  evaluations in the office's practice group had been delivered while Jane Doe 1 had been on leave.

7  When the topic of their prior mentorship relationship came up, Partner 1 explained that she was no

8  longer Jane Doe 1's assigned mentor.  The mentorship program in which Jane Doe 1 was enrolled upon

9  her entry to the firm covers approximately the first year following an associate's start at the firm.  The

10  firm admits that in the summer of 2018, Jane Doe 1 was also assigned a mentor through another firm

11  mentoring program.  Except as expressly admitted, Defendant denies the allegations set forth in

12  Paragraph 61 of the Complaint.

13      62.    Defendant admits that Jane Doe 1 spoke with a representative of the Attorney

14  Development Group about her evaluation results and her relationship with Partner 1.  Except as

15  expressly admitted, Defendant denies the allegations set forth in Paragraph 62 of the Complaint.

16      63.    Defendant admits that, during a subsequent conversation about her evaluation result,

17  Partner 1 explained to Jane Doe 1 that she had been reclassified.  As set forth in the preliminary

18  statement, reclassification is not viewed at Morrison as a negative evaluation result, including that it

19  does not affect bonus eligibility.  Defendant further admits that Partner 1 reminded Jane Doe 1 that the

20  Attorney Development Group could serve as a useful resource for Jane Doe 1, including for questions

21  about the reclassification policy.  Except as expressly admitted, Defendant denies the allegations set

22  forth in Paragraph 63 of the Complaint.

23      64.    Defendant admits that Partner 2 delivered Jane Doe 1's performance evaluation in

24  person, and that Partner 1 participated telephonically.  Defendant further admits that Partner 2

25  explained that Jane Doe 1 was behind in terms of her experience and skills development, and advised

26  her to make a concerted effort in these areas.  Partner 2 further cautioned that portions of Jane Doe 1's

27  time often could not be charged to clients (also called "written off") because of her inefficiency, and

28  that she should strive to meet her hours target with hours that were not inefficient.  Jane Doe 2 similarly

was advised that she needed to improve her time management skills and to deepen her commitment to the matters on which she was staffed.  Even though Jane Doe 1's hours fell 128 below her prorated annual billable target in 2017, she was "overly inclined to delegate work to others" rather than "'roll[] up her sleeves' and take ownership of a task."  And she "does not seem to effectively juggle multiple matters," with the "'biggest' assignment get[ting] great weight, and other assignments fall[ing] to the side."  For example, Jane Doe 1 had sent a partner in her group a draft document with an entire section missing, rather than proactively seeking guidance so the entire project could be timely completed; she had instead written a note that she did not know how to handle that portion.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 64 of the Complaint.

65.    Defendant admits only that, during a discussion of a natural dip in the practice group's overall business, Partner 1 explained to Jane Doe 1 that she was actively trying to build new business in order to support the entire team.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 65 of the Complaint.

66.    Defendant admits only that Jane Doe 1 spoke with representatives of the Attorney Development Group, who provided Jane Doe 1 with guidance about her career but acknowledged that in light of the low demand for her services—as compared to other individuals in her practice group (including working mothers)—she needed to find work in other practice areas or it would be difficult for her to be successful at the firm long-term.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 66 of the Complaint.

67.    Defendant admits only that Partners 1 and 2 encouraged Jane Doe 1 to seek work from other partners during a period of decreased activity in the practice group, during which the practice group leaders were also seeking additional work for the team.  Many months went by with almost no engagement from Jane Doe 1.  As to the remaining allegations set forth in Paragraph 67 of the Complaint, Defendant lacks sufficient knowledge or information to form a belief as to the allegations and on that basis denies same.

68.    Defendant denies the allegations set forth in Paragraph 68 of the Complaint.

69.     Defendant admits that Jane Doe 1's hours are inordinately low.   Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 69 of the Complaint and on that basis denies same.

70.     Defendant admits that, at the time Jane Doe 1's 2018 annual evaluation was delivered, she had billed 287 hours and was projected to bill 387 hours total through the end of the year.   Because Jane Doe 1 was on a full-time schedule, that was approximately 21% of the firm's hours expectation. Defendant denies that Jane Doe 1 was performing at the level expected; for example, on at least one occasion she turned down an assignment offered to her.   Defendant further admits that her 2018 annual evaluation advised her to address her lack of productivity.   Except as expressly admitted or denied, Defendant denies the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendant admits that others in Jane Doe 1's practice group, including a working mother, billed significantly more hours than Jane Doe 1 in 2018, but Defendant denies that all attorneys in the group met their hours expectations for 2018.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 71 of the Complaint.

72.     Defendant admits that some members of Jane Doe 1's practice group attended an out-of-town industry conference in February of 2019.   Due to expense, the practice group's standard policy is for only partners and of counsel attorneys to attend such conferences.   Accordingly, Partner 2 planned to attend the conference with Partner 1 and an Of Counsel (who is also a working mother). Subsequently, a client asked for a specific female associate to attend the conference, and Partner 2 approved that expense.   A second female associate requested and received approval to attend the reception portion of the conference.   After the conference had already started, Jane Doe 1 asked to attend.   Partner 2 responded, "I don't think we have any more passes for the conference at this point but if you would like to come down to the conference as an unregistered guest (as I believe a few other MoFo folks are doing) you are welcome to do so—we are hosting an event in the evening from 6-8 and you could come for that."   Jane Doe 1 came to the reception but, upon information and belief, stayed for less than an hour.   The firm paid for Jane Doe 1's hotel room for the evening.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 72 of the Complaint.

73.     Defendant admits the allegations set forth in Paragraph 73 of the Complaint.

74.    Defendant admits that Jane Doe 2 has a B.S. and a J.D., and is admitted to the California bar.  Defendant further admits that Jane Doe 2 had work experience before joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 74 of the Complaint.

75.    Defendant admits the allegations set forth in Paragraph 75 of the Complaint.

76.    Defendant admits only that Jane Doe 2 has participated in certain firm initiatives.  However, Jane Doe 2's performance declined over a period of years even as the firm's expectations increased because of her increased seniority.  From the beginning, partners advised her to improve her attention to detail and her legal knowledge, among other things.  She failed to do so.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 76 of the Complaint.

77.    Defendant admits that it encourages employees to take parental leave, and that Jane Doe 2 took maternity leave during her employment with the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 77 of the Complaint.

78.    Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 78 of the Complaint.

79.    Defendant admits that, in previous years, Jane Doe 2 had advanced with her class year, but Defendant denies Plaintiff's allegation that she had no history of performance issues prior to her maternity leave.  In fact, her performance reviews expressed serious concerns about her capabilities.  Jane Doe 2's evaluations identified material concerns with her performance (including her struggles with incorporating client instructions into initial work product and the extent of supervision required for her work).  In 2016, for example, she was cautioned regarding these issues and encouraged to resolve them promptly.  Her review explained that "her initial drafts . . . . were characterized by careless mistakes such as typos, formatting errors, cross-referencing errors and leaving carryover references to other deals, and . . . she did not pay adequate attention to the content of schedules and exhibits."  She

1   "sometimes fail[ed] to effectively analyze and pull together all the information that she has reviewed."

2   She was cautioned that, "[t]he coming year [was] an important one for [her] development, and

3   evaluators will be looking for her to establish command over her transactions." At the close of the

4   evaluation, to avoid any ambiguity, the firm encouraged Jane Doe 2 to seek support from the Attorney

5   Development Group on ways to improve her performance.  Yet the same problems persisted the

6   following year.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph

7   79 of the Complaint.

8          80.    Defendant admits that, for a couple of days only, Morrison's intranet reflected the

9   incorrect billing rate for Jane Doe 2.  This error was caused by a time delay between the processing of

10  certain Human Resources data regarding class years and the processing of certain financial data

11  regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect

12  rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 80 of the

13  Complaint.

14         81.    Defendant admits only that certain colleagues in Jane Doe 2's office, including both

15  male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly

16  admitted, Defendant denies the allegations set forth in Paragraph 81 of the Complaint.

17         82.    Defendant admits that Jane Doe 2 spoke with a representative of the Attorney

18  Development Group about her evaluation and the inadvertent error with the intranet posting.  Except

19  as expressly admitted, Defendant denies the allegations set forth in Paragraph 82 of the Complaint.

20         83.    Defendant admits only that the partner it understands to be "Partner 3" (hereinafter

21  "Partner 3") met with Jane Doe 1 to deliver her performance evaluation, and that he explained he

22  considered whether she might be a candidate for reclassification, but ultimately decided that her

23  performance was so sub-par that "Not Progress" was the appropriate result.  Except as expressly

24  admitted, Defendant denies the allegations set forth in Paragraph 83 of the Complaint.

25         84.    Defendant admits that, in previous years, Jane Doe 2 had advanced with her class year

26  and received a bonus, but Defendant denies Plaintiff's allegation that she had no history of performance

27  issues prior to her maternity leave.  Except as expressly admitted, Defendant denies the allegations set

28  forth in Paragraph 84 of the Complaint.

85.     Defendant denies that it discriminated against Jane Doe 2 and otherwise denies the allegations set forth in Paragraph 85 of the Complaint.

86.     Defendant admits that, when a lateral associate candidate with unique subject matter expertise was considering his offer to join Morrison, Partner 3 took him and the other members of the practice group out to dinner.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 86 of the Complaint.

87.     Defendant denies that Partner 3—who has worked with and mentored a number of working mothers and other women over the years—has any preference for working with male attorneys.  Defendant admits that, at one point, Partner 3 made efforts to retain two male associates in Jane Doe 2's practice group who had been working with a partner who exited Morrison.  During that time, Partner 3 suggested that the associates' experience might be a better fit for the work performed by certain partners in Morrison's New York office than it was for the work that he himself (and Jane Doe 2) does.  Accordingly, Partner 3 arranged for the associates to travel on one occasion to New York to meet with those other partners in person.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 87 of the Complaint.

88.     Defendant admits the allegations set forth in Paragraph 88 of the Complaint.

89.     Defendant admits that Jane Doe 3 has a B.A. and a J.D., and is admitted to the California bar.  Defendant further admits that Jane Doe 3 had work experience before joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 89 of the Complaint.

90.     Defendant admits the allegations set forth in Paragraph 90 of the Complaint.

91.     Defendant denies the allegations set forth in Paragraph 91 of the Complaint.

92.     Defendant admits that it encourages employees to take parental leave, and that Jane Doe 3 took maternity leave during her employment with the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 92 of the Complaint.

93.     Defendant admits that Morrison's intranet was updated for all associates on approximately January 9, 2018 to show class placement, and that some associates, including Jane Does 1-3, had not yet received their annual evaluations as of that date.  Defendant further admits that the information on the intranet regarding class placement for Jane Does 1-3 was accurate, and that each

Morrison associate, including Jane Does 1-3, was able only to view data relating to her or his own class placement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 93 of the Complaint.

94.   Defendant admits that Jane Doe 3 progressed a class year at the end of the 2016 evaluation process.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 94 of the Complaint.

95.   Defendant admits that, for a couple of days only, Morrison's intranet reflected the incorrect billing rate for Jane Doe 3.  This error was caused by a time delay between the processing of certain Human Resources data regarding class years and the processing of certain financial data regarding billing rates.  The error was promptly corrected, and no clients were billed at the incorrect rate.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 95 of the Complaint.

96.   Defendant admits only that certain colleagues in Jane Doe 2's office, including both male and female colleagues, advanced a class year at the beginning of 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 96 of the Complaint.

97.   Defendant denies that it discriminated against Jane Doe 3 and otherwise denies the allegations set forth in Paragraph 97 of the Complaint.

98.   Defendant admits that it has a reduced-hours (or "flex-time") policy, under which associates may request reduced-hours arrangements for any number of reasons.  In the case of associates returning from parental leave, they are automatically eligible for a reduced-hours schedule for one year, without regard to their level or length of employment.  Under this policy, an attorney returning from leave must notify at least one partner for whom they work that they intend to work a reduced-hours schedule, but the attorney does not need permission to do so.  The attorney may work as little as 67% of the standard full-time schedule, and his or her compensation is proportionate to the selected schedule.  Morrison will "true up" the associate's compensation at the end of the year if he or she works more than the selected schedule.  With respect to remote work arrangements, the reduced-hours policy makes clear that such arrangements are not guaranteed—rather, "the firm will . . . consider

requests to telecommute regularly; i.e., work one or more days per week outside the office or shortened days in the office each week."

Defendant also admits that, upon her return from maternity leave in 2017, Jane Doe 3 requested that she be permitted to work full-time but largely remotely from a city nearly 100 miles away, coming into the office only "one to two days per week" most weeks.  Partner 3 discussed Jane Doe 3's request with her and expressed concern that she would not be able to develop as quickly while working mostly from home because she would not have the advantage of in-person interactions on matters.  For someone at her more junior level and in her practice group, remote work (and particularly extended remote work) is not ideal.  After she and Partner 3 discussed the options available to her, Jane Doe elected to work a 67% schedule that would include some remote work.

Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 98 of the Complaint.

99.    Defendant denies the allegations set forth in Paragraph 99 of the Complaint.

100.    Defendant denies the allegations set forth in Paragraph 100 of the Complaint.

101.    Defendant admits only that, in 2017, Jane Doe 3 billed slightly more than the 600 minimum hours required to be considered for progression (including because she had failed the bar exam and took additional time away from work in order to retake it).  Her reclassification was therefore discretionary and based on her relative lack of experience and skill development in the years preceding the review.  In part because Jane Doe 3 had significantly less experience than expected for an associate of her class year at Morrison, her work product was "not always on the mark substantively."  Reviewers noted that her "record is mixed as to whether she readily incorporates the direction she has received into the work product that she is preparing."  One partner "noted several instances in which [she] did not fully reflect the directions that she had been given into her work product, and needed to rework drafts several times in order to capture the directions she had received in a way that also aligned with the terms of the underlying transaction that she was handling."  As a result, her "legal knowledge" and her "familiarity" with her practice area were "areas in which further progress is needed in order for [her] to perform as effectively as she could and to progress to the level we would expect for someone

1    in her upcoming class year.'"  Except as expressly admitted, Defendant denies the allegations set forth

2    in Paragraph 101 of the Complaint.

3        102.    Defendant admits that Jane Doe 3's written review contained some positive feedback,

4    but was not uniformly positive; her review noted that although she "generally drafts and communicates

5    in writing in an effective manner, her written work product is not always on the mark substantively.

6    This is partially a function of her need to advance her substantive knowledge and analytical skills,

7    which are areas where evaluators would like to see further progress before advancing her to the next

8    level."  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 102 of

9    the Complaint

10       103.    Defendant denies the allegations set forth in Paragraph 103 of the Complaint.

11       104.    Defendant denies the allegations set forth in Paragraph 104 of the Complaint.

12       105.    Defendant denies the allegations set forth in Paragraph 105 of the Complaint.

13       106.    Defendant admits the allegations set forth in Paragraph 106 of the Complaint.

14       107.    Defendant admits that Jane Doe 4 has a B.A. and a J.D., and is admitted to the California

15   bar.  Defendant further admits that Jane Doe 4 had work experience before joining Morrison.  Except

16   as expressly admitted, Defendant denies the allegations set forth in Paragraph 107 of the Complaint.

17       108.    Defendant admits the allegations set forth in Paragraph 108 of the Complaint.

18       109.    Defendant denies the allegations set forth in Paragraph 109 of the Complaint.  In her

19   first year at the firm, in which she took no leave, Jane Doe 4 performed "significantly below the level

20   expected."  Her work was often sloppy and inaccurate, even when the assignment was straightforward.

21   For example, one reviewer noted that Jane Doe 4 was asked to look at two batches of agreements to

22   see if a provision was the same across the batches.  Although she said that the provision remained the

23   same, the partner determined Jane Doe 4's assessment was incorrect.  One set of agreements was

24   missing an entire section, which Jane Doe 4 failed to realize.  Even though the firm encouraged Jane

25   Doe 4 from the beginning to work on these areas and take more ownership of her work, her performance

26   never reached the level expected of her seniority.

27       110.    Defendant admits that it encourages employees to take parental leave.  Except as

28   expressly admitted, Defendant denies the allegations set forth in Paragraph 110 of the Complaint.

111.    Defendant admits only that it put Jane Doe 4 on notice of termination because of sustained performance deficiencies.  Evaluators noted that she had "not shown sufficient progress in her substantive legal knowledge and, as a result, her written work often does not reflect the level of legal analysis that would be expected from an associate at her level."  For example, although she could summarize the documents she reviews, "she often does not take the next step of providing substantive legal analysis or useful 'value adds' for the client.  As had been the case in prior years, evaluators stated that "knowledge of [the statutory] issues" central to her practice "still does not meet expectations."  Also, "it was noted that [she] frequently bills significantly more time than would be expected for the work she performs.  As a result, a number of Corporate partners are reluctant to staff her on their matters."  Further answering Paragraph 111 of the Complaint, Defendant admits that Jane Doe 4 was pregnant when she was put on notice of her termination, but Defendant denies that her pregnancy—rather than her sustained performance deficiencies over multiple years—was a factor in her termination.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 111 of the Complaint.

112.    Defendant denies the allegations set forth in Paragraph 112.

113.    Paragraph 113 of the Complaint does not provide sufficient detail to permit Morrison to investigate and respond to the allegations, and on that basis, Morrison denies the allegations.  Morrison further denies that any similarly-situated associate was treated less favorably than Jane Doe 4.

114.    Defendant incorporates its response to Paragraph 111 of the Complaint.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 114 of the Complaint.

115.    Defendant admits that the decision to terminate Jane Doe 4 followed internal discussions about her sustained performance deficiencies.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 115 of the Complaint.

116.    Defendant admits that the negotiation period between Morrison and Jane Doe 4 of her severance agreement spanned approximately two weeks.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 116 of the Complaint.

117.    Defendant admits that Plaintiff informed a firm representative that she had consulted counsel regarding her severance agreement before signing it.  Defendant further admits that Plaintiff

1  negotiated the terms of that agreement, resulting in a doubling of the lump sum payout.  The agreement

2  made clear that by signing, each party "confirm[ed] that they have chosen to sign the Agreement freely,

3  without coercion, and based upon their respective judgments."   Except as expressly admitted,

4  Defendant denies the allegations set forth in Paragraph 117 of the Complaint.

5  118.   Defendant states that Jane Doe 4 received a severance package that included a

6  substantial and generous sum in the form of continued salary, a lump sum, and additional benefits.

7  Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations

8  set forth in Paragraph 118 and on that basis denies same.

9  119.   Defendant denies that it took adverse employment action against any attorneys,

10  including Jane Doe 4, for having children or taking leave; in 2017, the year in which Jane Doe 4 was

11  terminated for sustained performance deficiencies, 57 firm associates took parental leave, and only one

12  was terminated.

13  120.   Defendant lacks sufficient knowledge or information to form a belief as to the

14  allegations set forth in Paragraph 120 and on that basis denies same.

15  121.   Defendant admits that Jane Doe 4 negotiated and executed a separation agreement with

16  Morrison.  That agreement provided, among other things, for a transition period as well as a notice

17  period.  It also provided that Jane Doe 4 would be listed as an associate on Morrison's website through

18  June 25, 2018, subject to certain exceptions.  Except as expressly admitted, Defendant denies the

19  allegations set forth in Paragraph 121 of the Complaint.

20  122.   Answering Paragraph 122 of the Complaint, Defendant admits that, after Jane Doe 4

21  expressed concerns about her termination to an Attorney Development Group representative, the

22  representative explained to Jane Doe 4 that the decision was made as part of Morrison's standard

23  evaluation process.  Defendant further admits that Jane Doe 4 executed a separation agreement that she

24  actively negotiated.  Finally, Defendant admits that Jane Doe 4's attorneys contacted Morrison on or

25  about June 13, 2018.  Except as expressly admitted, Defendant denies the allegations set forth in

26  Paragraph 122 of the Complaint.

27  123.   Defendant admits that Jane Doe 4 has practiced in a specialized area of the law but

28  otherwise denies the allegations set forth in Paragraph 123 of the Complaint.

124.     Defendant denies that it provided negative references for Jane Doe 4 or violated any policy regarding references.  Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 124 and on that basis denies same.

125.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 125 and on that basis denies same.

126.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 126 and on that basis denies same.

127.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 127 and on that basis denies same.

128.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 128 of the Complaint and on that basis denies same.

129.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 129 of the Complaint and on that basis denies same.

130.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 130 of the Complaint and on that basis denies same.

131.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 131 of the Complaint and on that basis denies same.

132.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 132 of the Complaint and on that basis denies same.

133.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 133 of the Complaint and on that basis denies same.

134.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 134 of the Complaint and on that basis denies same.

135.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 135 of the Complaint and on that basis denies same.

136.     Defendant lacks sufficient knowledge or information to form a belief as to the allegations regarding Jane Doe 4's state of mind that are set forth in Paragraph 136 of the Complaint

1  and on that basis denies same.  Defendant denies that the Partner it understands to be "Partner 4"

2  provided a negative reference regarding Jane Doe 4 to any attorneys at Pillsbury.

3      137.    Defendant lacks sufficient knowledge or information to form a belief as to the

4  allegations set forth in Paragraph 137 of the Complaint and on that basis denies same.

5      138.    Defendant lacks sufficient knowledge or information to form a belief as to the

6  allegations set forth in Paragraph 138 of the Complaint and on that basis denies same.

7      139.    Defendant lacks sufficient knowledge or information to form a belief as to the

8  allegations set forth in Paragraph 139 of the Complaint and on that basis denies same.

9      140.    Defendant lacks sufficient knowledge or information to form a belief as to the

10  allegations set forth in Paragraph 140 of the Complaint and on that basis denies same.

11      141.    Defendant lacks sufficient knowledge or information to form a belief as to the

12  allegations set forth in Paragraph 141 of the Complaint and on that basis denies same.

13      142.    Defendant lacks sufficient knowledge or information to form a belief as to the

14  allegations set forth in Paragraph 142 of the Complaint and on that basis denies same.

15      143.    Defendant lacks sufficient knowledge or information to form a belief as to the

16  allegations set forth in Paragraph 143 of the Complaint and on that basis denies same.

17      144.    Defendant lacks sufficient knowledge or information to form a belief as to the

18  allegations set forth in Paragraph 144 of the Complaint and on that basis denies same.

19      145.    Defendant lacks sufficient knowledge or information to form a belief as to the

20  allegations set forth in Paragraph 145 of the Complaint and on that basis denies same.

21      146.    Defendant lacks sufficient knowledge or information to form a belief as to the

22  allegations regarding Plaintiff's state of mind that are set forth in Paragraph 146 of the Complaint and

23  on that basis denies same.

24      147.    Defendant lacks sufficient knowledge or information to form a belief as to the

25  allegations set forth in Paragraph 147 of the Complaint and on that basis denies same.

26      148.    Defendant lacks sufficient knowledge or information to form a belief as to the

27  allegations set forth in Paragraph 148 of the Complaint and on that basis denies same.

28

149.    Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 149 of the Complaint and on that basis denies same.

150.    Defendant lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 150 of the Complaint and on that basis denies same.

151.    Defendant lacks sufficient knowledge or information to form a belief as to the allegations regarding Jane Doe 4's state of mind that are set forth in Paragraph 151 of the Complaint and on that basis denies same.  Defendant denies that it provided a negative reference regarding Jane Doe 4 to her "potential subsequent employers."

152.    Defendant denies the allegations set forth in Paragraph 152 and expressly denies that it provided negative references for Jane Doe 4 or violated any policy regarding references.

153.    Defendant denies that it retaliated against Jane Doe 4.  Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 153 of the Complaint and on that basis denies same.

154.    Defendant admits that Jane Doe 5 was employed in its Washington, D.C. office.  Defendant further admits that Jane Doe 5 was on the firm's payroll until August 2017, after being notified of her termination on May 4, 2017.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 154 of the Complaint.

155.    Defendant admits that Jane Doe 5 has a B.B.A. and a J.D., and is admitted to the Washington, D.C. bar.  Defendant further admits that Jane Doe 5 had work experience at a law firm before joining Morrison.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 155 of the Complaint.

156.    Defendant admits the allegations set forth in Paragraph 156 of the Complaint.

157.    Defendant admits that Jane Doe 5's hours of pro bono work met the firm's threshold for Pro Bono All Star.  The firm appreciates the commitment to pro bono work demonstrated by Jane Doe 5 and the approximately 500 of her colleagues each year who meet that threshold, consistent with the firm's commitment to pro bono service.  However, Jane Doe 5's work in her practice area was consistently sub-par, despite repeated encouragement and opportunities to improve.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 157 of the Complaint.

158.   Defendant admits that it encourages employees to take parental leave, and that Jane Doe 5 took maternity leave in 2016.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 158 of the Complaint.

159.   Defendant admits that on December 2, 2016, Jane Doe 5's year-end evaluation was delivered.   As part of that evaluation, she was informed that she was being reclassified because of her low hours.   At that time, Jane Doe 5 was projected to bill only 451 hours by the end of the year, far less than the 600 hours required to be considered for progression.   In other words, Jane Doe 5 was projected to bill less than 25% of what a full-time associate was expected to bill, and approximately half of the hours expectation for a person taking six months of leave (accounting for the ramp up and ramp down periods).   Jane Doe 5 ultimately billed only 524.95 hours by the end of that year.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 159 of the Complaint.

160.   Defendant admits only that certain colleagues in Jane Doe 5's office, including both male and female colleagues, advanced a class year at the beginning of 2017.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 160 of the Complaint.

161.   Defendant denies the allegations set forth in Paragraph 161 of the Complaint.

162.   Defendant denies that it discriminated against Jane Doe 5 and otherwise denies the allegations set forth in Paragraph 162 of the Complaint.

163.   Defendant admits that it has a reduced-hours (or "flex-time") policy, under which associates may request reduced-hours arrangements for any number of reasons.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 163 of the Complaint.

164.   Defendant admits that on May 4, 2017, Jane Doe 5 was informed that she would be terminated effective August 4, 2017 because of continued performance deficiencies, including that she would often bill many times the hours that would be expected for even rote tasks while still committing significant errors requiring correction by more senior attorneys.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 164.

165.   Defendant denies that Jane Doe 5's maternity leave was the cause of her termination and otherwise denies the allegations set forth in Paragraph 165 of the Complaint.   Defendant was unaware that Jane Doe 5 was pregnant at the time of her termination.

1    166.    Defendant denies the allegations set forth in Paragraph 166 of the Complaint.

2    167.    Defendant admits that, on May 4, 2017, Jane Doe 5 was informed that she would be

3    terminated effective August 4, 2017 because of continued performance deficiencies, including that she

4    would often bill many times the hours that would be expected for even rote tasks while still committing

5    significant errors requiring correction by more senior attorneys.  Defendant further admits that Jane

6    Doe 5 stopped performing work shortly after she received that notice, although she continued to receive

7    her full salary through August 4, 2017.

8    168.    Defendant denies the allegations set forth in Paragraph 168.

9    169.    Defendant denies the allegations set forth in Paragraph 169.

10   170.    Defendant lacks sufficient knowledge or information to form a belief as to the

11   allegations set forth in Paragraph 170 of the Complaint and on that basis denies same.

12   171.    Defendant lacks sufficient knowledge or information to form a belief as to the

13   allegations set forth in Paragraph 171 of the Complaint and on that basis denies same.

14   172.    Defendant lacks sufficient knowledge or information to form a belief as to the

15   allegations set forth in Paragraph 172 of the Complaint and on that basis denies same.

16   173.    Defendant lacks sufficient knowledge or information to form a belief as to the

17   allegations set forth in Paragraph 173 of the Complaint and on that basis denies same.

18   174.    Defendant lacks sufficient knowledge or information to form a belief as to the

19   allegations set forth in Paragraph 174 of the Complaint and on that basis denies same.

20   175.    Defendant lacks sufficient knowledge or information to form a belief as to the

21   allegations set forth in Paragraph 175 of the Complaint and on that basis denies same.

22   176.    Defendant lacks sufficient knowledge or information to form a belief as to the

23   allegations set forth in Paragraph 176 of the Complaint and on that basis denies same.

24   177.    Defendant lacks sufficient knowledge or information to form a belief as to the

25   allegations set forth in Paragraph 177 of the Complaint and on that basis denies same.

26   178.    Defendant lacks sufficient knowledge or information to form a belief as to the

27   allegations set forth in Paragraph 178 of the Complaint and on that basis denies same.

28

Gibson, Dunn &
Crutcher LLP

179.     Defendant admits that Jane Doe 5 seeks equitable tolling, but to the extent Paragraph 179 states legal conclusions, Defendant is not required to respond.  Defendant further admits that Plaintiff does not allege that she suffered any disability from September 2017 to January 2018, and that she alleges she took no action to protect her rights during that period, including that she did not take any action to file an administrative complaint challenging her termination by the firm.  Defendant lacks sufficient knowledge or information to form a belief as to the remaining allegations regarding Jane Doe 5's medical condition set forth in Paragraph 179 of the Complaint and on that basis denies same.

180.     Defendant admits that Jane Doe 5's attorneys contacted Morrison's counsel on or about June 13, 2018 and informed Morrison that they represented Jane Doe 5.  Defendant further admits that the parties subsequently entered into a tolling agreement that made clear it did not revive claims that were untimely as of its effective date.  Defendant lacks sufficient knowledge or information to form a belief as to the allegations regarding when Jane Doe 5 contacted counsel, and on that basis denies same. Defendant expressly denies that Jane Doe 5's counsel acted "promptly" by failing to take any action to pursue her alleged claims for a period of five to six weeks after she alleges that she contacted them.

181.     Defendant denies the allegations set forth in Paragraph 181 of the Complaint.

182.     Defendant admits that Jane Doe 6 worked in its New York office, and that she resigned her employment in 2018.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 182 of the Complaint.

183.     Defendant admits that Jane Doe 6 has a B.A. and a J.D., and is admitted to the New York bar.  Defendant further admits that Jane Doe 6 was a lateral associate who had previously worked at other firms.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 183 of the Complaint.

184.     Defendant admits that Jane Doe 6 was offered an associate position at the firm in 2013, while she was employed by another firm, pregnant, and understood to be shortly taking a maternity leave.  The offer letter provided that she would receive a transition bonus of $10,000, and that she would be eligible for a discretionary bonus that year (which would not be prorated based on her start date or otherwise).  Defendant denies that her offer letter promised her that she would be considered for partner after two years at the firm; instead, the offer letter states, "The firm has a flexible partnership

track.  An attorney is considered for partnership when it appears that his or her experience with the firm and its practice make it appropriate to be considered, which generally first occurs between the seventh to ninth year after law school graduation.  For those attorneys joining the firm as senior associates, of counsel and other senior attorneys, the firm takes into consideration the attorney's prior experience, but requires *at least two years* with the firm prior to consideration for potential admission to the partnership.  Therefore, the *earliest* time that you might be reviewed for admission to the partnership would be the fall of 2015 for potential admission as of January 1, 2016" (emphases added).  Further answering Paragraph 184 of the Complaint, Defendant admits that Jane Doe 6 was not elected to the firm's partnership.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 184 of the Complaint.

185.    Defendant denies the allegations set forth in Paragraph 185 of the Complaint.

186.    Defendant admits that Jane Doe 6 participated in pro bono work and diversity and inclusion activities.  Defendant further admits that, at times, Jane Doe 6 received positive evaluations.  As a result, within a year of her arrival at the firm and after her first maternity leave at the firm, Jane Doe 6 was promoted to an Of Counsel position.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 186 of the Complaint.

187.    Defendant admits only that Jane Doe 6 was not admitted to the partnership.  The only years in which she was eligible for consideration were 2015 (for admission in 2016), 2016, and 2017.  In 2015, Morrison elected 12 partners, 5 of whom were women.  Two of those individuals were in Jane Doe 6's Department, both of whom were women.  In 2016, Morrison elected 15 partners, 7 of whom were women.  Of the two individuals in Jane Doe 6's Department, one was a woman and the male attorney was from an international office.  In 2017, Morrison elected 10 partners, 6 of whom were women; none of the newly-named United States partners were in Jane Doe 6's Department.  During these three years, no one from Jane Doe 6's practice group was elevated to the partnership; one woman was elevated to the partnership in a practice group that later merged with Jane Doe 6's.  Defendant otherwise denies the allegations in Paragraph 187 of the Complaint.

188.     Defendant admits that Jane Doe 6 took three maternity leaves during her tenure at the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 188 of the Complaint.

189.     Defendant states that Jane Doe 6 received four pay raises during her five years at the firm.  She was never denied a pay raise to which she was entitled.  She was never demoted.  She and Attorney 1 had co-created a working group, and Attorney 1 had actively encouraged the Marketing Department to first feature Jane Doe 6 as sole Chair in order to help her advance her career, with the understanding that in time he would serve as Co-Chair with Jane Doe 6.  He did ultimately serve as Co-Chair, while Jane Doe 6 retained the working group Co-Chair title and role.  Jane Doe 6 acknowledged, unsolicited, that she "could not ask for a better Co-Founder of" the working group, "or a better and more supportive colleague" than Attorney 1.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 189 of the Complaint.

190.     Defendant admits that Jane Doe 6's salary did not immediately increase when she was named Of Counsel; the title change does not automatically come with a pay increase.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 190 of the Complaint.

191.     Defendant denies the allegations regarding Jane Doe 6's compensation, including the allegation that her base compensation was below that of full-time associates.  Defendant also denies that Jane Doe 6 was doing partner level work, instead she failed to respond to client concerns and failed to comply with basic firm policy—in 2018, she had approximately 6% compliance with time entry deadlines even though multiple partners advised her that compliance was a basic expectation of all lawyers and failure to comply diminished the firm's return on her hours because late-submitted time often could not be billed to clients.  As to the allegations regarding discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them.

192.     Defendant acknowledges that Jane Doe 6 received 80% of her base compensation because she had elected an 80% schedule, consistent with Morrison's flex-time policies and practices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 192 of the Complaint.

193.    Defendant admits that, in response to a request from Jane Doe 6, her compensation was increased.  Defendant denies the remaining allegations set forth in Paragraph 193 and specifically denies that any similarly-situated attorney was paid more than Jane Doe 6.

194.    Defendant denies that any similarly-situated attorney was paid more than Jane Doe 6. As to the allegations regarding discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them. Defendant denies the remaining allegations in Paragraph 194.

195.    Defendant admits that Jane Doe 6 was not elevated to partner.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 195 of the Complaint.

196.    Defendant admits that Of Counsel attorneys, including both men and women, who worked on a particular floor of the New York office had offices comparable in size to partner offices. Jane Doe 6 did not work on that same floor and so, unlike the male and female Of Counsels who did, did not have a partner-sized office.  Defendant denies that any similarly-situated attorney was paid more than Jane Doe 6.  Defendant further denies that Jane Doe 6 was denied any promotion based on her sex, gender, or pregnancy, or that less qualified colleagues were advanced to the partnership. Defendant further denies that anyone less "trusted" than Jane Doe 6 was elevated to the partnership. Defendant otherwise denies the allegations in Paragraph 196.

197.    Defendant denies the allegations set forth in Paragraph 197 of the Complaint.

198.    Defendant denies the allegations set forth in Paragraph 198 of the Complaint.

199.    Defendant denies the allegations set forth in Paragraph 199 of the Complaint.  With respect to the specific allegations regarding compensation, Defendant states that in years during which Jane Doe 6 worked more than her part-time schedule, her compensation was increased at year-end to account for that work.

200.    Defendant admits that Jane Doe 6 was not elevated to partner.  Defendant denies that Jane Doe 6 was expected to "cede" to Attorney 1, who practiced in another Department.  Defendant further denies that Jane Doe 6 received anything but fair compensation.  As to the allegations regarding discussions Jane Doe 6 has had, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them.

201.     Defendant admits that Jane Doe 6 elected an 80% schedule after her maternity leave. With respect to the allegations regarding compensation, Defendant states that in years during which Jane Doe 6 worked more than her part-time schedule, her compensation was increased at year-end to account for that work.  Defendant denies that Jane Doe 6's part-time schedule affected the allocation of her work among billable and non-billable matters.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 201 of the Complaint.

202.     Defendant admits that Jane Doe 6 exceeded her hours targets, and in one year exceeded her hours target by approximately 54% (annualizing at 1,017 credited hours for the year).  Defendant further admits that evaluators occasionally described certain aspects of Jane Doe 6's efforts (including her marketing efforts) as "tireless."  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 202 of the Complaint, including the allegation that Jane Doe 6 experienced retaliation.

203.     Defendant admits that Jane Doe 6 consulted with other attorneys on occasion regarding reduced-hours schedules.  Defendant further admits that Jane Doe 6 was counseled in her last year at the firm to be more targeted in her nonbillable efforts so that she could focus more on billable work. At that time, Jane Doe 6 was recording time almost exclusively for business development efforts, rather than client services, despite being informed that the partnership she wanted to join was a "working partnership."  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 203 of the Complaint.

204.     Defendant states that attorneys (both male and female) have been encouraged in specific circumstances to pursue a reduced hours schedule if the individual attorney in question determined that was the best fit for his or her life.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 204 of the Complaint.

205.     Defendant denies the allegations set forth in Paragraph 205 of the Complaint.

206.     Defendant denies the allegations set forth in Paragraph 206 of the Complaint.

207.     Defendant denies the allegations set forth in Paragraph 207 of the Complaint.

208.     Defendant denies the allegations set forth in Paragraph 208 of the Complaint.

209.    Defendant incorporates its response to Paragraph 189 of the Complaint.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 209 of the Complaint.

210.    Defendant admits that, in response to feedback about Jane Doe 6's email communications, Defendant retained (at its own expense) a job coach to assist Jane Doe 6 in improving her communication skills.   Jane Doe 6 failed to respond to repeated requests from the job coach to connect.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 210 of the Complaint.

211.    Defendant admits that the Attorney Development Group received negative feedback regarding Jane Doe 6's communication skills.   Defendant further admits that it retained (at its own expense) a job coach to assist Jane Doe 6 in improving her communication skills.   Jane Doe 6 failed to respond to repeated requests from the job coach to connect.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 211 of the Complaint.

212.    Defendant admits that Jane Doe 6 was encouraged not to work while on maternity leave. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 212 of the Complaint.

213.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 213, and on that basis, denies them.

214.    Defendant lacks knowledge or information sufficient to form a belief about the truth of Jane Doe 6's allegations regarding discussions with unnamed individuals, and on that basis, denies them.

215.    Defendant denies the allegations set forth in Paragraph 215 of the Complaint.

216.    Defendant denies the allegations set forth in Paragraph 216 of the Complaint.

217.    Defendant admits that Partner 2 was named Co-Chair of a new practice group that included Jane Doe 6.   Defendant further admits that, after that announcement, Jane Doe 6 raised concerns with a partner and a member of the Attorney Development Group, informing them that she had a prior personal relationship with Partner 2, which took place before either joined the firm.   In response, the firm ensured that she did not have to work with Partner 2, nor was he making decisions

Gibson, Dunn &
Crutcher LLP

about her pay or career trajectory.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 217 of the Complaint.

218.    Defendant denies Partner 2 engaged in gender-based harassment and otherwise denies the allegations set forth in Paragraph 218 of the Complaint.

219.    Defendant denies the allegations set forth in Paragraph 219 of the Complaint.

220.    Defendant denies the allegations set forth in Paragraph 220 of the Complaint.

221.    Defendant admits that Jane Doe 6 expressed frustration with some of her working relationships to the Attorney Development Group, the Chief Human Resources Officer, and the head of her Department.  In response, all of those individuals attempted to speak with her multiple times to understand her concerns and explore possible solutions.  Jane Doe 6 was often non-responsive to these individuals, refusing to either meet with them or provide the information necessary to understand her concerns.  She was further non-responsive when these individuals actively tried to assist her.  Indeed, after she expressed her frustrations to the head of her Department, he handed over a matter with one of his existing clients, telling her that she would be responsible for the matter and be credited as such.  But she promptly failed to respond to the client's request for basic information.  She so disappointed that client that the Department head received an email from the client, asking if perhaps the client should consult another firm on the matter.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 221 of the Complaint.

222.    Defendant states that appropriate firm personnel have spoken with witnesses identified by Jane Doe 6.  Defendant denies that Jane Doe 6 was forced to report to or interact with anyone who had allegedly discriminated against her.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 222 of the Complaint.

223.    Defendant denies the allegations set forth in Paragraph 223 of the Complaint.

224.    Defendant admits that Jane Doe 6 was expected to comply with firm policy regarding the onboarding of matters, including performing appropriate conflicts checks and analyzing the potential risk of any engagement.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 224 of the Complaint.

225.    Defendant denies the allegations set forth in Paragraph 225 of the Complaint.

226.     Defendant denies that partners "required [Jane Doe 6] to travel internationally on their behalf for informational" meetings.  The evidence will show those partners who *offered* her the *optional* opportunity to feature her practice before an international audience—an opportunity she refused to pass up, even when she was asked if she had the time for it.  The partners made clear that the "main goal is to get you in front" of the other firms to present *her* practice.  Once abroad, whatever lasting relationships Jane Doe 6 allegedly created, they were unrelated to the firm-related efforts Morrison paid for and had invited her abroad to collaborate on.  While on the trip, Jane Doe 6 went completely incommunicado while she toured local sights, arrived late for a business meeting, absented herself for a large portion of a business meal in order to speak with a blogger, and made the personal decision to cut her trip short (and necessitate the firm cancelling several in-person meetings with valued relationships) in order to fly back to the United States and accept an award she claimed to have just learned about.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 226 of the Complaint.

227.     Defendant denies that Jane Doe 6 was forced to join a call in the middle of the night while traveling.  Rather, a prominent female partner received a client inquiry in Jane Doe 6's professed area of expertise.  She offered Jane Doe 6 the opportunity to speak to high-level executives at the client.  Jane Doe 6 responded, "Sure – I'm happy to dial into a call.  (I'm expecting to be in [another country] for work, but 4 pm (NY time) is free for me.  Thanks for reaching out!"  In light of Jane Doe 6's schedule, the partner responded, "I am not sure that makes sense.  Let me see what I can do."  Jane Doe 6 professed that she still wanted to join the call even "in the night, [local] time," although another attorney could have covered the call in her stead.  She then went completely dark at the time of the call and did not respond to her work email for days, long after she was back in the United States.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 227 of the Complaint.

228.     Defendant admits that the Partner it understands to be "Partner 6" ("Partner 6") was asked to attend a client development meeting with Jane Doe 6.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 228 of the Complaint.

229.     Defendant admits that firm policy encourages the internal reporting of concerns.  Attorney Development encouraged Jane Doe 6 to share her concerns about any workplace frustrations.

Gibson, Dunn &
Crutcher LLP

As to the allegations regarding discussions Jane Doe 6 has had with others, Defendant lacks knowledge or information sufficient to form a belief about the truth of those, and on that basis, denies them. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 229 of the Complaint.

230.   Defendant admits that the Partner it understands to be "Partner 5" ("Partner 5") was supportive of Jane Doe 6. Defendant denies that either Partner 5 or Jane Doe 6 faced any retaliation based on Jane Doe 6's internal Human Resources report. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 230 of the Complaint.

231.   Defendant admits that a female partner expressed concern that Jane Doe 6 was exposing the firm to unnecessary risk, including by failing to complete the necessary opening matter paperwork and by offering advice that she was not authorized to give (such as when she suggested to a third party that he steal documents from his employer). Defendant further admits that the firm developed a risk management protocol for Jane Doe 6's practice area, and that Jane Doe 6 contributed to the development of that protocol. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 231 of the Complaint.

232.   Defendant admits that Jane Doe 6 voluntarily resigned her employment with the firm and is now pursuing other career opportunities. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 232 of the Complaint.

233.   Defendant denies that it retaliated against Jane Doe 6, whose counsel notified Defendant of her alleged claims approximately two weeks before she voluntarily resigned her employment. Defendant further denies that Attorney 1 and Partner 6 have avoided participating in events attended by Jane Doe 6. Defendant otherwise denies the allegations set forth in Paragraph 233 of the Complaint.

234.   Defendant admits that Attorney 1 (who practices in a Department other than the one in which Jane Doe 6 practiced) was one of the many diverse candidates elevated to Morrison's partnership. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 234 of the Complaint.

235.   Defendant admits that Jane Doe 7 worked in its New York office, and that she received a salary through September 2016. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 235 of the Complaint.

236.   Defendant admits the allegations set forth in Paragraph 236 of the Complaint.

237.   Defendant admits the allegations set forth in Paragraph 237 of the Complaint.

238.   Defendant denies the allegations set forth in Paragraph 238 of the Complaint.

239.   Defendant admits that it encourages employees to take parental leave, and that Jane Doe 7 took two maternity leaves during her employment with the firm, including one that started in 2015 and ended in 2016.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 239 of the Complaint.

240.   Defendant admits that Jane Doe 7 worked a flex-time schedule during a portion of her tenure at the firm.  Defendant further admits that Jane Doe 7 was reclassified at the end of 2013 because she had billed less than 600 hours at her then-current seniority level.  At various points during her tenure, Jane Doe 7 was advised that she should be more engaged in her work and career and take more ownership of her work.  Her lackluster performance was in stark contrast to the stellar performance of other attorneys in her practice group, including a female attorney who took leave, came back on a flex-time schedule, and continued to advance within the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 240 of the Complaint.

241.   Defendant admits that Jane Doe 7 took her second maternity leave starting in the fall of 2015 and returned toward the end of the first quarter of 2016.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 241 of the Complaint.

242.   Defendant admits that as part of the annual evaluation process in 2015, the partners in Jane Doe 7's practice group concluded that she did not have the experience necessary to progress to the next seniority level.  They also reported that they "would like to see [her] take a more proactive role in her matters" and "encouraged [her] to take more initiative to run deals independently, and to keep senior attorneys posted so that they do not need to check in on things."  Her evaluation also reflects that, "at times she does not seem to be focused and her writing contains errors and oversights that evaluators would not expect to see at her level."

Defendant further admits that the Partner it understands to be "Partner 7" advised Jane Doe 7 of the reclassification decision by phone in January of 2016 and followed up with a written compensation memorandum that same month.  And Defendant admits that Jane Doe 7's annual

Gibson, Dunn &
Crutcher LLP

1  evaluation was discussed with her in-person after she returned from leave.  Except as expressly

2  admitted, Defendant denies the allegations set forth in Paragraph 242 of the Complaint.

3      243.    Defendant admits only that certain colleagues in Jane Doe 7's office, including both

4  male and female colleagues, advanced a class year at the beginning of 2016.  Except as expressly

5  admitted, Defendant denies the allegations set forth in Paragraph 243 of the Complaint.

6      244.    Defendant admits that Jane Doe 7 billed more than 600 hours in 2015.

7      245.    Defendant denies that it discriminated against Jane Doe 7 and otherwise denies the

8  allegations set forth in Paragraph 245 of the Complaint.

9      246.    Defendant admits only that Jane Doe 7 continued to work on a flex-time schedule after

10  her return from leave in 2016.  Defendant lacks sufficient knowledge or information to form a belief

11  as to the allegations about Jane Doe 7's state of mind set forth in Paragraph 246 and on that basis denies

12  same.

13     247.    Defendant admits that Jane Doe 7's practice group conducted somewhat regular

14  Continuing Legal Education ("CLE") sessions, although the sessions were not conducted on a weekly

15  basis.  All practice group members, including Jane Doe 7, were welcome to attend, but Defendant

16  admits that some of the sessions occurred on days when Jane Doe 7 was not in the office.  Except as

17  expressly admitted, Defendant denies the allegations set forth in Paragraph 247 of the Complaint.

18     248.    Defendant admits that in mid-2016, partners in Jane Doe 7's practice group spoke with

19  her about her performance struggles.  They explained that it was critical for her to take concrete steps

20  toward improved performance within the coming months.  They encouraged her to do so and hoped

21  that she would stay at the firm and improve.  Instead, Jane Doe 7 chose to resign.  She was offered a

22  three-month, paid notice period.  For those three months, she was expected to work only on an

23  intermittent basis and to focus her efforts on finding new employment.  Except as expressly admitted,

24  Defendant denies the allegations set forth in Paragraph 248 of the Complaint.

25     249.    Defendant incorporates Paragraphs 1 through 248 above.  Except as expressly admitted,

26  Defendant denies the allegations set forth in Paragraph 249 of the Complaint.

27

28

250.     Answering Paragraph 250 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 250 of the Complaint.  Defendant specifically denies that class certification is appropriate.

251.     Answering Paragraph 251 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 251 of the Complaint.  Defendant specifically denies that collective action certification is appropriate.

252.     Defendant denies the allegations set forth in Paragraph 252 of the Complaint.

253.     Defendant denies the allegations set forth in Paragraph 253 of the Complaint.

254.     Defendant denies the allegations set forth in Paragraph 254 of the Complaint.

255.     Defendant denies the allegations set forth in Paragraph 255 of the Complaint.

256.     Defendant denies the allegations set forth in Paragraph 256 of the Complaint.

257.     Defendant denies the allegations set forth in Paragraph 257 of the Complaint.

258.     Defendant denies the allegations set forth in Paragraph 258 of the Complaint.

259.     Defendant denies the allegations set forth in Paragraph 259 of the Complaint.

260.     Defendant admits only that certain policies (including Morrison's anti-discrimination policy) are applicable to all offices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 260 of the Complaint.

261.     Defendant denies the allegations set forth in Paragraph 261 of the Complaint.

262.     Defendant denies the allegations set forth in Paragraph 262 of the Complaint, and expressly denies that Plaintiffs are entitled to any relief.

263.     Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 263 of the Complaint.  Defendant specifically denies that class certification is appropriate.

264.     Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 264 of the Complaint.  Defendant specifically denies that class certification is appropriate.

265.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 265 of the Complaint.  Defendant specifically denies that class certification is appropriate.

266.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 266 of the Complaint.  Defendant specifically denies that class certification is appropriate.

267.    Defendant admits only that Jane Does 1-4 so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 267 of the Complaint.  Defendant specifically denies that class certification is appropriate.

268.    Defendant admits only that Jane Does 6 and 7 so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 268 of the Complaint.  Defendant specifically denies that class certification is appropriate.

269.    Defendant admits only that Jane Does 6 and 7 so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 269 of the Complaint.  Defendant specifically denies that class certification is appropriate.

270.    Defendant denies the allegations set forth in Paragraph 270 of the Complaint.

271.    Defendant admits only that Plaintiffs so allege.   Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 271 of the Complaint.

272.    Defendant denies the allegations set forth in Paragraph 272 of the Complaint.

273.    To the extent Paragraph 273 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 273 of the Complaint.

274.    To the extent Paragraph 274 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 274 of the Complaint.

275.    To the extent Paragraph 275 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 275 of the Complaint.

276.    To the extent Paragraph 276 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 276 of the Complaint.

277.    To the extent Paragraph 277 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 277 of the Complaint.

278.    To the extent Paragraph 278 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 278 of the Complaint.

279.    To the extent Paragraph 279 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 279 of the Complaint.

280.    To the extent Paragraph 280 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 280 of the Complaint.

281.    Answering Paragraph 281 of the Complaint, Defendant admits only that certain policies (including Morrison's anti-discrimination policy) are applicable to all offices.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 281 of the Complaint.

282.    To the extent Paragraph 282 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 282 of the Complaint.

283.    To the extent Paragraph 283 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 283 of the Complaint.

284.    To the extent Paragraph 284 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 284 of the Complaint.

285.    To the extent Paragraph 285 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 285 of the Complaint.

286.    To the extent Paragraph 286 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 286 of the Complaint.

287.    To the extent Paragraph 287 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 287 of the Complaint.

288.    To the extent Paragraph 288 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 288 of the Complaint, and denies Plaintiffs are entitled to relief.

289.    To the extent Paragraph 289 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 289 of the Complaint.

290.    To the extent Paragraph 290 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 290 of the Complaint.

291.    To the extent Paragraph 291 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 291 of the Complaint.

292.    To the extent Paragraph 292 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 292 of the Complaint.

293.    To the extent Paragraph 293 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 293 of the Complaint.

294.    To the extent Paragraph 294 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 294 of the Complaint.

295.    To the extent Paragraph 295 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 295 of the Complaint.

296.    To the extent Paragraph 296 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 296 of the Complaint

297.    To the extent Paragraph 297 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 297 of the Complaint.

298.    To the extent Paragraph 298 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 298 of the Complaint.

299.    To the extent Paragraph 299 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 299 of the Complaint.

300.    To the extent Paragraph 300 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 300 of the Complaint.

301.    Defendant incorporates Paragraphs 1 through 300 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 301 of the Complaint.

302.    Answering Paragraph 302 of the Complaint, Defendant admits only that Plaintiffs so allege.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 302 of the Complaint.  Defendant specifically denies that collective action certification is appropriate.

303.    To the extent Paragraph 303 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 303 of the Complaint.

304.    To the extent Paragraph 304 states legal conclusions, Defendant is not required to respond.  Defendant denies the remaining allegations set forth in Paragraph 304 of the Complaint.

305.    To the extent Paragraph 305 states legal conclusions, Defendant is not required to respond.  Defendant states that 29 U.S.C. § 216(b) is a statute that speaks for itself.  Defendant denies the remaining allegations set forth in Paragraph 305 of the Complaint.

306.    To the extent Paragraph 306 states legal conclusions, Defendant is not required to respond.  Answering Paragraph 306 of the Complaint, Defendant admits only that Plaintiffs seek to bring collective action claims pursuant to the FLSA.  Except as expressly admitted, Defendant denies the remaining allegations set forth in Paragraph 306 of the Complaint.

307.    Defendant incorporates Paragraphs 1 through 306 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 307 of the Complaint.

308.    To the extent Paragraph 308 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 308 of the Complaint.

309.    Defendant denies the allegations set forth in Paragraph 309 of the Complaint.

310.    Defendant denies the allegations set forth in Paragraph 310 of the Complaint.

311.    Defendant denies the allegations set forth in Paragraph 311 of the Complaint.

312.    Defendant denies the allegations set forth in Paragraph 312 of the Complaint.

313.    Defendant denies the allegations set forth in Paragraph 313 of the Complaint.

314.    Defendant denies the allegations set forth in Paragraph 314 of the Complaint.

315.    Defendant incorporates Paragraphs 1 through 314 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 315 of the Complaint.

316.    To the extent Paragraph 316 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 316 of the Complaint.

317.    Defendant denies the allegations set forth in Paragraph 317 of the Complaint.

318.    Defendant denies the allegations set forth in Paragraph 318 of the Complaint.

319.    Defendant denies the allegations set forth in Paragraph 319 of the Complaint.

1    320.    Defendant denies the allegations set forth in Paragraph 320 of the Complaint.

2    321.    Defendant denies the allegations set forth in Paragraph 321 of the Complaint.

3    322.    Defendant denies the allegations set forth in Paragraph 322 of the Complaint.

4    323.    Defendant denies the allegations set forth in Paragraph 323 of the Complaint.

5    324.    Defendant denies the allegations set forth in Paragraph 324 of the Complaint.

6    325.    Defendant denies the allegations set forth in Paragraph 325 of the Complaint.

7    326.    Defendant denies the allegations set forth in Paragraph 326 of the Complaint.

8    327.    Defendant denies the allegations set forth in Paragraph 327 of the Complaint.

9    328.    Defendant incorporates Paragraphs 1 through 327 above.  Except as expressly admitted,
10   Defendant denies the allegations set forth in Paragraph 328 of the Complaint.

11   329.    To the extent Paragraph 329 states legal conclusions, Defendant is not required to
12   respond.  Except as expressly admitted, Defendant denies the remaining allegations set forth in
13   Paragraph 329 of the Complaint.

14   330.    To the extent Paragraph 330 states legal conclusions, Defendant is not required to
15   respond.  Except as expressly admitted, Defendant denies the remaining allegations set forth in
16   Paragraph 330 of the Complaint.

17   331.    Defendant denies the allegations set forth in Paragraph 331 of the Complaint.

18   332.    Defendant denies the allegations set forth in Paragraph 332 of the Complaint.

19   333.    Defendant denies the allegations set forth in Paragraph 333 of the Complaint.

20   334.    Defendant denies the allegations set forth in Paragraph 334 of the Complaint.

21   335.    Defendant denies the allegations set forth in Paragraph 335 of the Complaint.

22   336.    Defendant incorporates Paragraphs 1 through 335 above.  Except as expressly admitted,
23   Defendant denies the allegations set forth in Paragraph 336 of the Complaint.

24   337.    To the extent Paragraph 337 states legal conclusions, Defendant is not required to
25   respond.  Defendant denies the allegations set forth in Paragraph 337 of the Complaint.

26   338.    Defendant denies the allegations set forth in Paragraph 338 of the Complaint.

27

28

339.    To the extent Paragraph 339 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 339 of the Complaint.

340.    Defendant denies the allegations set forth in Paragraph 340 of the Complaint.

341.    Defendant denies the allegations set forth in Paragraph 341 of the Complaint.

342.    Defendant denies the allegations set forth in Paragraph 342 of the Complaint.

343.    Defendant denies the allegations set forth in Paragraph 343 of the Complaint.

344.    Defendant denies the allegations set forth in Paragraph 344 of the Complaint.

345.    Defendant denies the allegations set forth in Paragraph 345 of the Complaint.

346.    Defendant incorporates Paragraphs 1 through 345 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 346 of the Complaint.

347.    To the extent Paragraph 347 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 347 of the Complaint.

348.    Defendant denies the allegations set forth in Paragraph 348 of the Complaint.

349.    Defendant denies the allegations set forth in Paragraph 349 of the Complaint.

350.    Defendant denies the allegations set forth in Paragraph 350 of the Complaint.

351.    Defendant denies the allegations set forth in Paragraph 351 of the Complaint.

352.    Defendant denies the allegations set forth in Paragraph 352 of the Complaint.

353.    Defendant denies the allegations set forth in Paragraph 353 of the Complaint.

354.    Defendant denies the allegations set forth in Paragraph 354 of the Complaint.

355.    Defendant denies the allegations set forth in Paragraph 355 of the Complaint.

356.    Defendant denies the allegations set forth in Paragraph 356 of the Complaint.

357.    Defendant denies the allegations set forth in Paragraph 357 of the Complaint.

358.    Defendant incorporates Paragraphs 1 through 357 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 358 of the Complaint.

359.    To the extent Paragraph 359 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 359 of the Complaint.

360.    Defendant denies the allegations set forth in Paragraph 360 of the Complaint.

361.    Defendant denies the allegations set forth in Paragraph 361 of the Complaint.

362.    Defendant denies the allegations set forth in Paragraph 362 of the Complaint.

363.    Defendant denies the allegations set forth in Paragraph 363 of the Complaint.

364.    Defendant denies the allegations set forth in Paragraph 364 of the Complaint.

365.    Defendant denies the allegations set forth in Paragraph 365 of the Complaint.

366.    Defendant denies the allegations set forth in Paragraph 366 of the Complaint.

367.    Defendant denies the allegations set forth in Paragraph 367 of the Complaint.

368.    Defendant denies the allegations set forth in Paragraph 368 of the Complaint.

369.    Defendant denies the allegations set forth in Paragraph 369 of the Complaint.

370.    Defendant incorporates Paragraphs 1 through 369 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 370 of the Complaint.

371.    To the extent Paragraph 371 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 371 of the Complaint.

372.    To the extent Paragraph 372 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 372 of the Complaint.

373.    Defendant denies the allegations set forth in Paragraph 373 of the Complaint.

374.    Defendant denies the allegations set forth in Paragraph 374 of the Complaint.

375.    Defendant denies the allegations set forth in Paragraph 375 of the Complaint.

376.    Defendant denies the allegations set forth in Paragraph 376 of the Complaint.

377.    Defendant denies the allegations set forth in Paragraph 377 of the Complaint.

378.    Defendant incorporates Paragraphs 1 through 377 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 378 of the Complaint.

379.    To the extent Paragraph 379 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 379 of the Complaint.

380.    Defendant denies the allegations set forth in Paragraph 380 of the Complaint.

381.    Defendant denies the allegations set forth in Paragraph 381 of the Complaint.

382.    Defendant denies the allegations set forth in Paragraph 382 of the Complaint.

383.    Defendant denies the allegations set forth in Paragraph 383 of the Complaint.

384.    Defendant denies the allegations set forth in Paragraph 384 of the Complaint.

385.    Defendant denies the allegations set forth in Paragraph 385 of the Complaint.

386.    Defendant denies the allegations set forth in Paragraph 386 of the Complaint.

387.    Defendant denies the allegations set forth in Paragraph 387 of the Complaint.

388.    Defendant incorporates Paragraphs 1 through 387 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 388 of the Complaint.

389.    To the extent Paragraph 389 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 389 of the Complaint.

390.    To the extent Paragraph 390 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 390 of the Complaint.

391.    Defendant denies the allegations set forth in Paragraph 391 of the Complaint.

392.    Defendant denies the allegations set forth in Paragraph 392 of the Complaint.

393.    Defendant incorporates Paragraphs 1 through 392 above. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 393 of the Complaint.

394.    To the extent Paragraph 394 states legal conclusions, Defendant is not required to respond.  Defendant denies the allegations set forth in Paragraph 394 of the Complaint.

395.    Defendant denies the allegations set forth in Paragraph 395 of the Complaint.

396.    Defendant denies the allegations set forth in Paragraph 396 of the Complaint.

397.    Defendant denies the allegations set forth in Paragraph 397 of the Complaint.

1    398.    Defendant denies the allegations set forth in Paragraph 398 of the Complaint.

2    399.    Defendant denies the allegations set forth in Paragraph 399 of the Complaint.

3    400.    Defendant denies the allegations set forth in Paragraph 400 of the Complaint.

4    401.    Defendant denies the allegations set forth in Paragraph 401 of the Complaint.

5    402.    Defendant denies the allegations set forth in Paragraph 402 of the Complaint.

6    403.    Defendant denies the allegations set forth in Paragraph 403 of the Complaint.

7    404.    Defendant denies the allegations set forth in Paragraph 404 of the Complaint.

8    405.    Defendant denies the allegations set forth in Paragraph 405 of the Complaint.

9    406.    Defendant incorporates Paragraphs 1 through 405 above.  Except as expressly admitted,

10   Defendant denies the allegations set forth in Paragraph 406 of the Complaint.

11   407.    To the extent Paragraph 407 states legal conclusions, Defendant is not required to

12   respond.  Defendant denies the allegations set forth in Paragraph 407 of the Complaint.

13   408.    Defendant denies the allegations set forth in Paragraph 408 of the Complaint.

14   409.    Defendant denies the allegations set forth in Paragraph 409 of the Complaint.

15   410.    Defendant denies the allegations set forth in Paragraph 410 of the Complaint.

16   411.    Defendant denies the allegations set forth in Paragraph 411 of the Complaint.

17   412.    Defendant denies the allegations set forth in Paragraph 412 of the Complaint.

18   413.    Defendant denies the allegations set forth in Paragraph 413 of the Complaint.

19   414.    Defendant denies the allegations set forth in Paragraph 414 of the Complaint.

20   415.    Defendant denies the allegations set forth in Paragraph 415 of the Complaint.

21   416.    Defendant denies the allegations set forth in Paragraph 416 of the Complaint.

22   417.    Defendant denies the allegations set forth in Paragraph 417 of the Complaint.

23   418.    Defendant denies the allegations set forth in Paragraph 418 of the Complaint.

24   419.    Defendant incorporates Paragraphs 1 through 418 above.  Except as expressly admitted,

25   Defendant denies the allegations set forth in Paragraph 419 of the Complaint.

26   420.    To the extent Paragraph 420 states legal conclusions, Defendant is not required to

27   respond. Defendant denies the allegations set forth in Paragraph 420 of the Complaint.

28   421.    Defendant denies the allegations set forth in Paragraph 421 of the Complaint.

422.     Defendant denies the allegations set forth in Paragraph 422 of the Complaint.

423.     Defendant denies the allegations set forth in Paragraph 423 of the Complaint.

424.     Defendant denies the allegations set forth in Paragraph 424 of the Complaint.

425.     Defendant denies the allegations set forth in Paragraph 425 of the Complaint.

426.     Defendant denies the allegations set forth in Paragraph 426 of the Complaint.

427.     Defendant incorporates Paragraphs 1 through 426 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 427 of the Complaint.

428.     To the extent Paragraph 428 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 428 of the Complaint.

429.     Defendant denies the allegations set forth in Paragraph 429 of the Complaint.

430.     Defendant denies the allegations set forth in Paragraph 430 of the Complaint.

431.     Defendant denies the allegations set forth in Paragraph 431 of the Complaint.

432.     Defendant denies the allegations set forth in Paragraph 432 of the Complaint.

433.     Defendant denies the allegations set forth in Paragraph 433 of the Complaint.

434.     Defendant denies the allegations set forth in Paragraph 434 of the Complaint.

435.     Defendant denies the allegations set forth in Paragraph 435 of the Complaint.

436.     Defendant incorporates Paragraphs 1 through 435 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 436 of the Complaint.

437.     To the extent Paragraph 437 states legal conclusions, Defendant is not required to respond.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 437 of the Complaint.

438.     Defendant denies the allegations set forth in Paragraph 438 of the Complaint.

439.     Defendant denies the allegations set forth in Paragraph 439 of the Complaint.

440.     Defendant denies the allegations set forth in Paragraph 440 of the Complaint.

441.     Defendant denies the allegations set forth in Paragraph 441 of the Complaint.

442.     Defendant denies the allegations set forth in Paragraph 442 of the Complaint.

443.     Defendant denies the allegations set forth in Paragraph 443 of the Complaint.

444.    Defendant incorporates Paragraphs 1 through 443 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 444 of the Complaint.

445.    Defendant denies the allegations set forth in Paragraph 445 of the Complaint.

446.    Defendant denies the allegations set forth in Paragraph 446 of the Complaint.

447.    Defendant denies the allegations set forth in Paragraph 447 of the Complaint.

448.    Defendant denies the allegations set forth in Paragraph 448 of the Complaint.

449.    Defendant denies the allegations set forth in Paragraph 449 of the Complaint.

450.    Defendant incorporates Paragraphs 1 through 449 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 450 of the Complaint.

451.    Defendant denies the allegations set forth in Paragraph 451 of the Complaint.

452.    Defendant denies the allegations set forth in Paragraph 452 of the Complaint.

453.    Defendant denies the allegations set forth in Paragraph 453 of the Complaint.

454.    Defendant denies the allegations set forth in Paragraph 454 of the Complaint.

455.    Defendant denies the allegations set forth in Paragraph 455 of the Complaint.

456.    Defendant incorporates Paragraphs 1 through 455 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 456 of the Complaint.

457.    Defendant admits only that Jane Doe 4 signed a severance agreement on or about November 17, 2017.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 457 of the Complaint.

458.    Defendant denies the allegations set forth in Paragraph 458 of the Complaint.

459.    Defendant denies the allegations set forth in Paragraph 459 of the Complaint.

460.    Defendant incorporates Paragraphs 1 through 459 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 460 of the Complaint.

461.    Defendant denies the allegations set forth in Paragraph 461 of the Complaint.

462.    Defendant denies the allegations set forth in Paragraph 462 of the Complaint.

463.    Defendant denies the allegations set forth in Paragraph 463 of the Complaint.

464.    Defendant denies the allegations set forth in Paragraph 464 of the Complaint.

465.    Defendant denies the allegations set forth in Paragraph 465 of the Complaint.

466.    Defendant incorporates Paragraphs 1 through 465 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 466 of the Complaint.

467.    Defendant denies the allegations set forth in Paragraph 467 of the Complaint.

468.    Defendant denies the allegations set forth in Paragraph 468 of the Complaint.

469.    Defendant denies the allegations set forth in Paragraph 469 of the Complaint.

470.    Defendant denies the allegations set forth in Paragraph 470 of the Complaint.

471.    Defendant incorporates Paragraphs 1 through 470 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 471 of the Complaint.

472.    Defendant denies the allegations set forth in Paragraph 472 of the Complaint.

473.    Defendant denies the allegations set forth in Paragraph 473 of the Complaint.

474.    Defendant denies the allegations set forth in Paragraph 474 of the Complaint.

475.    Defendant denies the allegations set forth in Paragraph 475 of the Complaint.

476.    Defendant denies the allegations set forth in Paragraph 476 of the Complaint.

477.    Defendant incorporates Paragraphs 1 through 476 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 477 of the Complaint.

478.    Defendant denies the allegations set forth in Paragraph 478 of the Complaint.

479.    Defendant denies the allegations set forth in Paragraph 479 of the Complaint.

480.    Defendant denies the allegations set forth in Paragraph 480 of the Complaint.

481.    Defendant denies the allegations set forth in Paragraph 481 of the Complaint.

482.    Defendant denies the allegations set forth in Paragraph 482 of the Complaint.

483.    Defendant incorporates Paragraphs 1 through 482 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 483 of the Complaint.

484.    Defendant admits that Jane Doe 6 expressed concerns about her workplace frustrations to Partner 5, Human Resources, and the Attorney Development Group.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 484 of the Complaint.

485.    Defendant denies the allegations set forth in Paragraph 485 of the Complaint.

486.    Defendant denies the allegations set forth in Paragraph 486 of the Complaint.

487.    Defendant denies the allegations set forth in Paragraph 487 of the Complaint.

488.     Defendant denies the allegations set forth in Paragraph 488 of the Complaint.

489.     Defendant denies the allegations set forth in Paragraph 489 of the Complaint.

490.     Defendant denies the allegations set forth in Paragraph 490 of the Complaint.

491.     Defendant denies the allegations set forth in Paragraph 491 of the Complaint.

492.     Defendant incorporates Paragraphs 1 through 491 above.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 492 of the Complaint.

493.     Defendant admits only that Jane Doe 6 discussed her compensation with certain members of the firm.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 493 of the Complaint.

494.     Defendant denies the allegations set forth in Paragraph 494 of the Complaint.

495.     Defendant denies the allegations set forth in Paragraph 495 of the Complaint.

496.     Defendant denies the allegations set forth in Paragraph 496 of the Complaint.

497.     Defendant denies the allegations set forth in Paragraph 497 of the Complaint.

498.     Answering the unnumbered prayer for relief (including subparts), Defendant denies that Plaintiffs are entitled to the relief requested or any relief.

## SEPARATE AND ADDITIONAL DEFENSES

Without admitting any of the facts alleged in the Complaint, Defendant hereby asserts and alleges the following separate and additional defenses, without assuming the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs, and without prejudice to Defendant's right to argue that Plaintiffs bear the burden of proof as to any one or more of said defenses.  Furthermore, all such defenses are pleaded in the alternative and do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever.  Defendant presently has insufficient knowledge or information as to whether it may have additional, as yet unasserted, defenses.  Defendant therefore reserves the right to assert additional defenses in the event discovery or further proceedings indicate such additional defense would be appropriate:

1.     Plaintiffs' claims are barred to the extent the Complaint, and each purported cause of action asserted therein, fails to state facts sufficient to constitute a cause of action against Defendant.

2.      Plaintiffs' claims are barred to the extent Plaintiffs lack the requisite standing to assert each purported cause of action.

3.      Plaintiffs' claims are barred by applicable statutes of limitations.

4.      Plaintiffs' claims are barred by the doctrine of laches.

5.      Plaintiffs' claims are barred by the doctrine of unclean hands.

6.      Plaintiffs' claims are barred by the doctrine of estoppel.

7.      Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

8.      Plaintiffs' claims are barred by the doctrine of release; Jane Doe 4 in particular negotiated and executed a severance agreement that bars her suit.

9.      Plaintiffs' claims are barred by the doctrine of payment.

10.     Plaintiffs' claims are barred by the doctrine of waiver.

11.     Plaintiffs' claims are barred by the doctrine of ratification.

12.     Plaintiffs' claims are barred by the doctrine of consent.

13.     Plaintiffs' claims are barred by their failure to exhaust jurisdictional, procedural, or administrative remedies under state and federal laws.

14.     Plaintiffs' claims for punitive damages are barred to the extent such damages are not authorized by applicable federal or state law.

15.     The imposition of punitive damages would violate the federal and state constitutions. The Complaint, to the extent it seeks exemplary damages or penalties, violates Defendant's right to equal protection under the United States and California Constitutions, violates Defendant's right to procedural due process under the Fourteenth Amendment of the United States Constitution, and under Article I, Section 7 of the Constitution of the State of California, and violates Defendant's right to substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution and, therefore, fails to state a cause of action upon which exemplary, double, or punitive damages or penalties may be awarded.

16.     An award of punitive damages would violate the Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution because:  (a) the standard for an award of punitive damages is so vague, indefinite, and uncertain that it does not give

the Defendant adequate notice of the kind of conduct for which it may be liable for punitive damages or the extent of their possible liability; (b) the judge or jury is not provided with constitutionally adequate standards of sufficient clarity, objectivity, and uniformity for determining either the appropriate imposition of an award of punitive damages or the appropriate size of an award of punitive damages; (c) the judge or jury is not instructed in a constitutionally adequate manner on the limits of punitive damages awards imposed by the applicable principles of punishment and deterrence; (d) the judge or jury is not expressly prohibited from awarding punitive damages, or from determining the amount of an award of punitive damages, in whole or in part, on the basis of individually discriminatory characteristics, including without limitation the residence, wealth, and corporate status of Defendant; (e) Defendant may be subjected to punishment based upon the same course of conduct in more than one action; (f) the judge or jury is permitted to award punitive damages under standards for determining liability for, and the amount of, punitive damages that are vague and arbitrary and that do not define with sufficient clarity the culpable conduct or mental state that makes an award of punitive damages permissible; and (g) an award of punitive damages is not subject to judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate standards of sufficient clarity, objectivity, and uniformity.

17.     Plaintiffs' claims for punitive damages are barred because Defendant did not act with fraud, oppression, malice, wanton, willful, or conscious disregard, or reckless indifference toward Plaintiffs.

18.     Plaintiffs' claims for punitive damages are barred because Defendant engaged in good faith effort to comply with the law.

19.     Plaintiffs' claims for punitive damages are barred because no managerial agent of Defendant acted with the requisite mental state toward any individual.

20.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were based on legitimate, nondiscriminatory business reasons and were not pretexts for discrimination.

21.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were job-related and consistent with business necessity.

22.     Plaintiffs' claims are barred in whole or in part because Defendant's employment decisions and actions were based on *bona fide* factors other than sex, gender, pregnancy, or parenthood.

23.     Plaintiffs' claims are barred in whole or in part to the extent that the claims challenge employment decisions and actions that were based on a *bona fide* seniority, merit, or incentive system.

24.     Plaintiffs' claims are barred in whole or in part because Defendant did not intentionally engage in an unlawful employment practice.

25.     Plaintiffs' claims are barred in whole or in part to the extent that the claims are based on alleged incidents that do not constitute tangible adverse employment actions against Plaintiffs, Defendant exercised reasonable care to prevent the alleged incidents, and the Plaintiffs unreasonably failed to take advantage of available preventative or corrective opportunities

26.     Plaintiffs have suffered no damages as a result of any alleged act or omission of Defendant.

27.     Even if Plaintiffs have suffered damages, Plaintiffs' claims are barred in whole or in part by their failure to mitigate, or attempt to mitigate, their damages.

28.     Plaintiffs' claims are barred to the extent that damages, if any, resulted from the acts and/or omissions of Plaintiff or any person on whose behalf relief is sought.

29.     Plaintiffs' claims are barred in whole or in part because actual payments paid to Plaintiffs were reasonable, appropriate, and commensurate with the services and work actually performed.

30.     Plaintiffs' claims are barred in whole or in part by the after-acquired evidence doctrine.

31.     Plaintiffs' claim of purported "pattern and practice" discrimination fails because Defendant has not engaged in any "pattern or practice" of discrimination.

32.     Plaintiffs' claims for injunctive, equitable, and/or declaratory relief are inappropriate to the extent Plaintiffs have an adequate remedy at law.

33.     Plaintiffs' claims for equitable relief are barred in whole or in part to the extent Plaintiffs have not suffered injury or harm and will not suffer imminent and irreparable injury or harm as a result of any action or conduct by Defendant.

34.     Plaintiffs' claims are barred to the extent they result in an unjust enrichment to Plaintiffs and/or any person on whose behalf relief is sought.

35.     This action may not be maintained as a class action because one or more of the requirements for a class action are not met:  (1) joinder of all members of the purported class is not impracticable; (2) there are no questions of fact or law common to all purported members of the class; (3) the claims asserted in the Complaint are not typical of the claims of the purported class; (4) the representative party and proposed class counsel will not fairly and adequately protect the interests of the purported class; (5) facts common to the purported class do not predominate over questions affecting only individual members; and (6) a class action lawsuit is not superior to other methods for the fair and efficient adjudication of the matter.

36.     Trying this case as a class action would violate the U.S. Constitution, the California Constitution, and the Constitution of the State of New York.

37.     Defendant cannot be liable for any alleged violation of the Unfair Competition Law, California Business and Professions Code sections 17200 *et seq.*, because its actions were not unfair, fraudulent, or likely to mislead, and its conduct and dealings were lawful, as authorized by applicable state and federal statutes, rules, and regulations, and such actions, conduct, and dealings were carried out in good faith and for legitimate business purposes.

38.     Any award of restitution under California Business & Professions Code, sections 17200 *et seq.*, would constitute a taking of property without just compensation in violation of the Takings Clauses of the Fifth Amendment to the United States Constitution (as incorporated into the Fourteenth Amendment to the United States Constitution) and of Article I, Section 19, of the California Constitution.

39.     Any finding of liability under California Business & Professions Code Sections 17200, 17203, and 17204 would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and of Article I, Section 7 of the California Constitution, because the

standards of liability under these statutes are unduly vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest.

40.     Any award of restitution under California Business & Professions Code Section 17203 to persons who refuse to execute an acknowledgement that the payment is in full settlement of claims against Defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Dated:   June 4, 2019                                      GIBSON, DUNN & CRUTCHER LLP

                                                           By:     */s/ Michele L. Maryott*

                                                           Attorneys for Defendant
                                                           MORRISON & FOERSTER LLP

DEFENDANT'S ANSWER TO THIRD AMENDED COMPLAINT
CASE NO. 18-CV-2542 JSC
-54-