September 9, 2019

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States District Court
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

**Re: Doe et al. v. Morrison & Foerster LLP, Case No. 3:18-cv-02542-JSC**

Dear Judge Corley:

The parties submit this joint discovery letter brief concerning Defendant's proposed third-party subpoena to Jane Doe 4's current employer (Ex. A). The parties first met and conferred to resolve this dispute via telephone on June 21, 2019. After discussing this dispute with this Court on July 2, 2019, the parties continued their discussions and meeting and conferring most recently on July 29, 2019. This issue is now ripe for judicial intervention; the parties' positions follow.

***Plaintiff Jane Doe 4's Position***

Subpoenas directed to a plaintiff-employee's new employer are generally disfavored. *See, e.g.*, *Greenburg v. Red Robin Int'l, Inc.*, No. C17-6052, 2018 WL 2329671, at *1 (W.D. Wash. May 23, 2018); *Bicek v. C&S Wholesale Grocers, Inc.*, No. 13-MC-80130, 2013 WL 12147721, at *2 (N.D. Cal. Aug. 1, 2013); *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012); *Bickley v. Schneider Nat'l., Inc.*, No. 08-cv-5806, 2011 WL 1344195 (N.D. Cal. Apr. 8, 2011). For a court to countenance such a subpoena, it must be narrowly tailored to key issues on which relevant discovery cannot be obtained through other sources. *See, e.g.*, *Emara v. Multicare Health Sys.*, No. 3:11-CV-6055, 2012 WL 5205950, at *3 (W.D. Wash. Oct. 22, 2012) (quashing subpoenas where requesting party did not first attempt to ask employees about prior employment or establish reason for subpoenaing former employer). "Mere 'relevance'" will not suffice to justify the burden of imposing discovery obligations on a non-party. *R. Prasad Indus. v. Flat Iron Envtl. Solutions Corp.*, No. CV–12–08261, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014).

MoFo's wildly overbroad subpoena would fail this test at any stage of litigation; here, where Defendant has barely explored other avenues for discovery, it is categorically improper. Jane Doe 4 is still in the process of producing documents and has not yet been deposed. She has not refused to produce any relevant, non-privileged information, and is willing to cooperate with MoFo to provide documents and information covered by the subpoena that are genuinely relevant and necessary for a full and fair defense of her claims. Indeed, Plaintiff concedes that her earnings from her current employer are relevant to mitigation of damages, and she has in fact already produced relevant documents containing that information. MoFo's subpoena, however, demands everything and more: it seeks Jane Doe 4's complete personnel file, "any and all other documents relating to [her] job performance, disciplinary record, compensation, and benefits" at her new employer, and all other documents and communications related to her recruitment and hiring.

MoFo's proffered justifications for this all-encompassing demand are fatally inadequate.  MoFo

The Honorable Jacqueline Scott Corley
September 9, 2019
Page 2

first asserts that the subpoenaed documents are relevant to Plaintiff's claim that Defendant disparaged her to potential employers. However, Jane Doe 4 does *not* claim that MoFo has to date interfered with her current employment. Rather, as she will testify at her deposition, after three pending offers with other firms failed to materialize, Jane Doe 4 managed to obtain her current position through a former MoFo attorney, herself a mother, who is now a Partner at the firm where Jane Doe 4 is currently employed. This attorney's firsthand knowledge of Jane Doe 4's work at MoFo was evidently sufficient to justify her hiring. While MoFo has been fully apprised of these facts, it still pursues its subpoena on this asserted basis.

MoFo attempts to justify the far more expansive scope of its subpoena by asserting that information about Plaintiff's current employment is somehow broadly relevant to her claims, but in fact such information is neither relevant nor admissible. *See, e.g.*, *EEOC v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) ("Work performance with other employers" "is inadmissible under Rule 404(a)"); *Lewin v. Nackard Bottling Co*., No. CV 10-8041, 2010 WL 4607402, at *2 (D. Ariz. Nov. 4, 2010) ("an attack on plaintiff's credibility by introducing evidence of his character in another employment setting is likely inadmissible propensity evidence under Rule 404(a)"). In fact, requests for an employee's entire personnel file are routinely rejected as *per se* overbroad. *E.g.* *EEOC v. Evening Entm't. Grp. LLC*, No. CV 11-1870, 2012 WL 2357261, at *1 (D. Ariz. June 20, 2012) ("blanket requests for all personnel records" are "overbroad on their face" and "amount to a fishing expedition"); *Lewin*, 2010 WL 4607402, at *1 (quashing subpoenas for complete personnel records).

The authority MoFo cites is unavailing, where, as here, Defendant offers no compelling argument that the discovery sought is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *Gragossian v. Cardinal Health Inc.*, 2008 WL 11387063, at *4 (S.D. Cal. July 21, 2008) relates to records of a plaintiff's *prior* employment, and thus crucially did not involve an active threat to Plaintiff's mitigation efforts by intrusive inquiries directed to a current employer. It also predates the 2015 proportionality amendments to Rule 26. For its part, *Tran v. Wells Fargo Bank, N.A.*, No. 3:15-CV-00979-BR, 2017 WL 1234131, at *3 (D. Or. Jan. 20, 2017) states, without explanation, that plaintiff's current employment records were relevant to his claims of career damage and loss of faith in the banking system. In *Botta v. Pricewaterhouse-Coopers LLP*, No. 18-CV-02615-RS (LB), 2018 WL 6257459, at *2 (N.D. Cal. Nov. 30, 2018), the court similarly assumed but did not explicate the relevance of the subpoenas; moreover, it noted, plaintiff failed to cite a single apposite case. The plaintiff in *Miller v. St. Charles Health Sys., Inc*., No. 2:18-CV-00762-SU, 2019 WL 486175, at *2 (D. Or. Feb. 7, 2019) also failed to present applicable arguments and authority; there, too, the court did not expound on its statement that records of plaintiff's performance and leave requests in later jobs were relevant to her claims against defendant.

Particularly in the wake of the 2015 amendment to Fed. R. Civ. P. 26, courts should not presume that information about prior or subsequent employment of an employee-plaintiff is relevant enough to be discoverable. As in any discrimination case, "[t]he issue presented here is whether Defendant's actions directed toward [plaintiff] were based on valid considerations or violated the discrimination laws. [Plaintiff's] prior employment has little if any bearing on that issue." *Henry v. Morgan's Hotel Group, Inc*., No. 15-cv-1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016). The

The Honorable Jacqueline Scott Corley
September 9, 2019
Page 3

same may be said for discovery relating to subsequent employment, where the burden on the plaintiff is only increased in light of the potential prejudicial impact on her mitigation efforts. *See, e.g.*, *EEOC v. Princeton Healthcare Sys.*, Civ. No. 10-4126, 2012 WL 1623870, at *21-22 (D.N.J. May 9, 2012) ("plaintiff has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job."). While Plaintiff's full employment records at her current employer are of, at most, tangential relevance to her claims of reputational damage, Defendant's effort to obtain those irrelevant records threatens to compound that damage.

MoFo's speculation that combing through the current employer's files might somehow reveal "party admissions" or material impugning Plaintiff's credibility is also an inadequate justification for the exercise. Courts do not permit the use of subpoenas to troll for evidence impugning a plaintiff's credibility. *E.g. Boar v. Cty. of Nye*, 499 F. App'x 713, 716 (9th Cir. 2012) (improper to use subpoenas to "try to find a basis for discrediting" an individual: "[b]road, unsupported claim[s] regarding the *possible* value of [an individual's] personnel file is not enough to compel discovery of those documents.").

In so far as MoFo suggests that Plaintiff has relinquished her privacy rights or has herself invited retaliation from current or prospective employers, this argument is off base and should not be countenanced. The ample authority cited above stands for the proposition that a plaintiff does not expose her current job record to *carte blanche* scrutiny merely by filing suit against her prior employer. Nor has she flung the door open to retribution, including attempts to harass and interfere with her subsequent employment. Nothing here warrants forcing Jane Doe 4's current employer into this litigation as an unwilling participant with tangible discovery burdens.

MoFo's proposed subpoena is both premature and vastly overbroad—redolent of an improper purpose. MoFo should not be able to launch such a damaging assault on Plaintiff's job security and career prospects, and fire off a warning to similarly-situated employees, on such a slender reed. The subpoena should therefore be quashed in all respects. The proper remedy is to quash the subpoena in its entirety, preclude its enforcement, and bar MoFo from issuing any further subpoenas on Plaintiffs' current or former employers without prior leave.[1]

Before proceeding with any subpoena, MoFo should be ordered to meet and confer with Plaintiff's counsel on potential proposals for obtaining adequate evidence on the relevant issues in this matter. This joint letter represents MoFo's first substantial attempt to justify its subpoena and set forth the information it seeks. While MoFo suggests that it has revised its proposed subpoena, any changes are largely cosmetic and do not meaningfully address the subpoena's sweeping overbreadth. Nor has MoFo considered or discussed alternate means to obtain the information sought. These facts are fatal to its bid to enforce the subpoena.

---

[1] *See, e.g.*, *Lewin*, 2010 WL 4607402, at *1-2 (quashing subpoena and issuing protective order); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No 1:07-cv-2207 (S.D.N.Y. July 24, 2008) (Ex. B) (protective order requiring defendant to seek leave before issuing further subpoenas); *Webb v. E. Ramapo Sch. Dist.*, No. 7:08-cv-3565 (S.D.N.Y. Dec. 7, 2009) (Ex. C), at 4 (same).

The Honorable Jacqueline Scott Corley
September 9, 2019
Page 4

### *Defendant's Position*

Jane Doe 4's retaliation claims put her job applications directly at issue, alleging that "the *only* explanation" for why she did not get job offers at certain law firms is that Morrison "conveyed negative information that derailed her candidacy." *See* TAC ¶¶ 127-151, 153 (emphasis added). She also put her application to and experience at her current employer at issue in this case by touting her performance in a "specialized field" and alleging that Morrison's actions "forced" her to accept the position at her current firm with less compensation and a greater commute than other positions. *See* TAC ¶ 153. Morrison intends to test these allegations by serving a third-party subpoena on that employer. Doe 4's objections to that subpoena should be rejected.

### The Narrowly Tailored Subpoena Seeks Discovery Relevant To Jane Doe 4's Allegations

The subpoena to Doe 4's current employer is narrowly tailored to obtain information that is relevant to both her claims and Morrison's defenses. Specifically, firm documents and communications relating to: (1) application to her current firm; (2) her interviews; (3) the firm's communications with her recruiter; (4) communications between the firm and Morrison; and (5) the decision to extend her an offer of employment all go directly to Doe 4's allegations regarding her qualifications and whether Morrison "provide[d] negative references and hinder[ed] her ability to find new employment." TAC ¶¶ 151, 438; Ex. A, Subpoena Request ¶¶ 1-6. While Doe 4 seeks refuge in the fact she does not allege that her current firm called Morrison, reference checks are standard, and Morrison should be able to probe whether such calls did happen and if so, what was said.

The subpoena is not, as Plaintiffs charge, "sweeping." Rather, it narrowly seeks documents probative of how her application materials, interview performance, and skill and performance in her "specialized field" were perceived and evaluated by the law firms to which she applied. TAC ¶¶ 109, 114, 123. For example, Doe 4 misrepresented her employment status in one application; Morrison should be able to probe if that happened more broadly. *Compare* Ex. D (suggesting employment was current in July 2018) *with* TAC ¶ 121 (alleging employment end date of June 2018). Morrison should be able to test that and other representations as "party admissions, which would be highly relevant." *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV0644-L(KSC), 2015 WL 11237636, at *4 (S.D. Cal. Apr. 10, 2015); Exs. __. This discovery is also relevant to testing her damages theory, mitigation efforts, and credibility. It is well-recognized that an employee's "claim for economic damages places records reflecting her . . . wages, benefits, duties, attendance records, performance evaluations and records of disciplinary action at issue." *Gragossian v. Cardinal Health Inc.*, 2008 WL 11387063, at *4 (S.D. Cal. July 21, 2008); *see also* Ex. A ¶ 6; TAC ¶ 453. She further alleges that pregnancy and maternity leave, and not the quality of her work (or lack thereof), caused her termination. Having alleged Morrison's reasons for its employment decisions were pretextual, Morrison is entitled to probe whether her performance is also viewed as subpar at her current law firm. Similarly, while Doe 4 claims that she was unable to find a position with similar compensation "[b]ecause of MoFo's retaliatory post-termination conduct," discovery to date shows that at least two of those firms concluded she had the experience of a third-year associate—while she applied for a fifth-year associate position. TAC ¶ 153; Exs. E, F. Similar reactions at her current firm are relevant to that inquiry as well as her allegation that "Defendant's conduct resulted in damage to [her] career . . ." *Tran v. Wells Fargo Bank, N.A.*, No. 3:15-CV-00979-BR, 2017 WL 1234131, at *3 (D. Or. Jan. 20, 2017).

The Honorable Jacqueline Scott Corley
September 9, 2019
Page 5

For all of these reasons, courts in this Circuit routinely permit discovery of current employment records of named plaintiffs in retaliation cases. *Sirota v. Penske Truck Leasing Corp.*, 2006 WL 708910, at *1 (N.D. Cal. Mar. 17, 2006) (rejecting motion to quash subpoenas for hiring, payroll, attendance, separation, and discipline records from former employer because relevance outweighed intrusion into privacy); *Botta v. PricewaterhouseCoopers LLP*, No. 18-CV-02615-RS (LB), 2018 WL 6257459, at *2 (N.D. Cal. Nov. 30, 2018) (permitting subpoena to current employer for information regarding job performance and disciplinary records relevant to retaliation claim, as well as communications between the plaintiff and her employers relating to her termination from defendant); *Miller v. St. Charles Health Sys., Inc.,* No. 2:18-CV-00762-SU, 2019 WL 486175, at *2 (D. Or. Feb. 7, 2019) (permitting discovery of plaintiff's subsequent employer and rejecting plaintiff's "conjectures that subsequent employers could be prejudiced against plaintiff by learning that she sued a prior employer" because "it [was] plaintiff who ha[d] elected to bring [the] action"). This distinguishes Morrison's subpoena from character evidence gathered from a former or subsequent employer. *See Serramonte*, 237 F.R.D. at 223 (N.D. Cal. 2006); *Lewin*, 2010 WL 4607402, at *2. Nor are the wage and hour cases Doe 4 relies on to the contrary.

**Jane Doe 4's Privacy Does Not Override Morrison's Right To A Full and Fair Defense**

During meet and confer efforts, counsel has argued Morrison's subpoena violates Jane Doe 4's privacy.  But courts throughout this Circuit hold that where a plaintiff initiates an employment lawsuit, [her] privacy interest in employment records is reduced." *Botta*, 2018 WL 6257459, at *2 (permitting third-party subpoena to the current employer of a plaintiff with a retaliation claim) (citing *Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW (MEJ), 2011 WL 4345191, at *2 (N.D. Cal. Sept. 13, 2011)); *Kellgren*, 2015 WL 11237636, at *4. Nevertheless, to respect this concern, Morrison has tailored the subpoena so that only a small subgroup at her current employer needs to respond, and only essential information is sought. To the extent that it mitigates privacy concerns, Morrison can seek to serve the subpoena by email to her current employer's general counsel, and otherwise work with the employer to limit who is aware that the subpoena was served.

Nor has Jane Doe 4 identified private information that would be revealed in response to the subpoena, or why the protective order and other steps proposed are insufficient. Her principal objection to the subpoena is that it identifies her as someone who has sued her employer, but without her Doe designation, that would be public. And her own counsel represented in seeking pseudonym protection, "if any unforeseen prejudice to Defendant arises, any such prejudice can be re-weighed against Plaintiffs' interests in proceeding under pseudonyms and, if the Court deems appropriate, by ordering disclosure of Plaintiffs' names at that time." Dkt. 55 at 7. This is such a situation.

This case is now positioned such that a very narrow disclosure of Jane Doe's identity is warranted to avoid tying Morrison's hands in its ability to defend itself. There is no alternative means to obtain the information, which is relevant to her claims and Morrison's defenses.

**Defendant's Final Proposed Compromise**

Morrison refers to its proposed revised subpoena, sent to Plaintiffs on July 24, 2019. Ex. A.

The Honorable Jacqueline Scott Corley
September 9, 2019
Page 6


Respectfully Submitted,


 /s/ *Michele L. Maryott*                      _ /s/ *Deborah K. Marcuse*_____

Michele L. Maryott                      Deborah K. Marcuse
GIBSON, DUNN & CRUTCHER LLP             SANFORD HEISLER SHARP, LLP
*Counsel for Defendant*                 *Counsel for Plaintiffs*


**ECF Attestation**

I, Michele L. Maryott, hereby attest that, pursuant to Civil L.R. 5-1(i)(3), concurrence in

the filing of this document has been obtained from the above signatories.

By:  /s/ *Michele L. Maryott*_____
                    Michele L. Maryott