March 9, 2020

The Honorable Jacqueline Scott Corley
United States District Court
San Francisco Courthouse, Courtroom E - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

**Re: William et al. v. Morrison & Foerster LLP, Case No. 3:18-cv-02542-JSC**

Dear Judge Corley:

The parties submit this joint discovery letter brief concerning Defendant's proposed subpoena to Ms. William's former employer (Ex. A) and Ms. Klayman's current employer (Ex. B). The parties met and conferred on February 7, 2020. This issue is now ripe for judicial intervention.

***Plaintiffs' Position***

Subpoenas on a plaintiff-employee's current or former employer(s) are highly disfavored. They invade the plaintiff's privacy interests (*see Greenburg v. Red Robin Int'l*, 2018 WL 2329671, at *1 (W.D. Wash. May 23, 2018) (noting that, absent "specific showing" of relevance, employment records from separate employers not discoverable due to their highly private nature)); impose needless burdens on third parties (*see Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (noting that broader restrictions apply when a non-party is the target of discovery)); invite retaliation and blacklisting; and exert a chilling effect on the exercise of protected rights. Such subpoenas are commonly regarded as improper attempts to harass and deter plaintiff and interfere with her job prospects. Accordingly, such subpoenas must be narrowly tailored to important case issues on which relevant discovery cannot be obtained through other sources.

Defendant's proposed subpoenas on Ms. William's former employer, Freshfields, and Ms. Klayman's current employer, Linklaters, fail this test. These subpoenas are not targeted but seek Plaintiffs' *complete* personnel files. *See* Ex. A, Request 1; Ex. B, Request 2. Requests for an employee's entire personnel file—and similar broad-gauge demands—are routinely rejected as *per se* overbroad. *See, e.g.*, *Bicek v. C&S Wholesale Grocers, Inc.*, 2013 WL 12147721, at *2 (N.D. Cal. Aug. 1, 2013); *EEOC v. Evening Entm't. Grp. LLC*, 2012 WL 2357261, at *1 (D. Ariz. June 20, 2012) (noting that "blanket requests for all personnel records" are "overbroad on their face" and "amount to a fishing expedition"); *Lewin v. Nackard Bottling Co.*, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) (quashing subpoenas for complete personnel records); *EEOC v. Vista Unified Sch. Dist.*, 2008 WL 4937000, at *1–2 (S.D. Cal. Nov. 17, 2008) (deeming subpoena for entire personnel file impermissibly overbroad).

With respect to the Freshfields subpoena, Defendant seeks all documents and communications regarding Freshfields' decision to classify Ms. William as class of 2011 rather than 2010. *See* Ex. A, Request 2. Defendant speculates that Freshfields' rationale "*may* corroborate" MoFo's decision to reclassify Ms. William, but Freshfields' actions in May 2012 cannot be used to support a decision made by MoFo in December 2017. *See* Fed. R. Evid. 404. As Ms. William testified, Freshfields made this designation at the time of her hiring based on her prior firm's classification.

Ex. C, William Dep 42:6–16. Any connection is specious and an impermissible basis for discovery.

Defendant's reliance on an after-acquired evidence defense is also misplaced: that defense permits an employer to limit certain remedies by putting forth evidence of an employee's *misconduct*, acquired post-termination, that would have justified the termination at the time of its discovery. Courts preclude defendants from subpoenaing other employers to fish for evidence giving rise to the defense. *E.g., Lewin*, 2010 WL 4607402, at *1 (citing cases)*. More generally, courts do not permit the use of subpoenas to troll for evidence in an attempt to impugn a plaintiff's credibility. *E.g. Boar v. Cty. of Nye*, 499 F. App'x 713, 716 (9th Cir. 2012) (holding it improper to use subpoenas to try "to find a basis for discrediting" an individual: "[b]road, unsupported claim[s] regarding the *possible* value of [an individual's] personnel file is not enough to compel discovery of those documents"). Here, Defendant has articulated no reason to discredit Ms. William's deposition testimony or to believe that she committed a terminable offense. As suggested in *McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 363 (1995), it is incumbent on the Court to deter discovery abuses in pursuit of a phantom after-acquired evidence defense. *See also* Fed. R. Civ. P. 26, Advisory Committee Notes, 2015 Amend. (proportionality amendments designed "encourage judges to be more aggressive in identifying and discouraging discovery overuse" and to "prevent the use of discovery to wage a war of attrition or as a device to coerce a party").

Defendant's reliance on *Dornell* is wholly inapposite because there, the court permitted discovery of records from two employers for whom the plaintiff worked *while she was on medical leave* (i.e., she was supposed to be working for defendant but claimed she was medically unable to do so); the court found those records relevant to plaintiff's claims of emotional distress and lost income. 2013 WL 5443036, at *5. *Frazier* is similarly unhelpful to Defendant because the non-party to whom the subpoena was directed did not meaningfully address relevance, and the plaintiff whose records were being subpoenaed took no position on the discovery dispute. 2011 WL 5854601, at *1.

In sum, Ms. William's former employment and job performance is wholly irrelevant to her claims against MoFo. *See, e.g., EEOC v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) ("Work performance with other employers…is inadmissible under Rule 404(a)"); *Chamberlain v. Farmington Sav. Bank*, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) (holding that performance history with other employers was irrelevant and improper character evidence). The subpoena amounts to nothing more than a fishing expedition. *See Belling v. DDP Holdings*, 2013 WL 12140986, at *3 (C.D. Cal. May 30, 2013) (holding that requested discovery must be relevant to the pending action and not be based on the requesting party's "mere suspicion or speculation.")

Regarding the Linklaters subpoena, Defendant likewise fails to articulate the relevance of Ms. Klayman's entire Linklaters personnel file to her claims in this action. *See, e.g., Scott v. Multicare Health Sys.,* 2019 WL 1559211, at *2 (W.D. Wash., Apr. 10, 2019) (finding that defendants' failure to make a specific showing of relevance, plaintiff's privacy interest in her employment records, and the negative impact of a third-party subpoena on her current employment constituted good cause for entry of protective order); *Serramonte*, 237 F.R.D. at 223; *Chamberlain*, 2007 WL 2786421, at *3. The authority Defendant cites is unavailing. *Tran* states, without explanation, that plaintiff's current employment records were relevant to his claims. 2017 WL 1234131, at *3. In both *Botta*, 2018 WL 6257459, at *2 and *Miller*, 2019 WL 486175, at *2, the court similarly assumed but did not explicate the relevance of the subpoenas; moreover, in both cases, the court

found that plaintiffs failed to cite a single apposite case. Here, Plaintiffs have cited substantial authority and would be able to marshal extensive precedent in more complete briefing.

MoFo seeks all documents and communications between Ms. Klayman and Linklaters regarding her claims, and all documents and communications related to any representations she may have made "about her experience at Defendant." *See* Ex. B, Requests 1, 4. To the extent Ms. Klayman's representations to Linklaters may be of marginal relevance, MoFo fails to articulate why these requests are necessary or proportional to the needs of this case. Such communications are already encompassed by Defendant's Requests for Production on Ms. Klayman herself. Defendant also seeks all documents regarding Ms. Klayman's current compensation and benefits at Linklaters. *See* Ex. B, Requests 3, 4. Ms. Klayman concedes that her earnings are relevant to damages; however, she has agreed to produce this evidence, and has already produced a copy of her offer letter. Defendants cannot obtain discovery through a subpoena without first asking Plaintiffs.

Indeed, Defendant has not come close to exhausting traditional discovery avenues for obtaining the information sought in either subpoena. *See, e.g., Emara v. Multicare Health Sys*., 2012 WL 5205950, at *3 (W.D. Wash. Oct. 22, 2012) (quashing subpoenas where requesting party did not first attempt to ask the employees about their prior employment or establish a reason for subpoenaing their former employer). Defendant could have deposed each Plaintiff about the topics in the subpoenas, but it did not do so. It is inexplicable that Defendant is seeking discovery from third parties, when it has not attempted do so through interrogatories or deposition of the Plaintiffs.

By bringing this action, Plaintiffs have not exposed their former and current job records to *carte blanche* scrutiny regardless of relevance and proportionality. Defendant fails to establish that the subpoenas are needed to obtain relevant discovery unavailable from other sources. Consequently, Defendant's proposed subpoenas are vastly overbroad—redolent of an improper purpose. The proper remedy is to quash the subpoenas in their entirety.

### *Defendant's Position*

The third-party subpoenas at issue are narrowly tailored to test Plaintiffs' specific allegations and Morrison's defenses, and to impeach their testimony, and should be issued as drafted.

**Freshfields Subpoena.**  The subpoena to Freshfields, Sherry William's former employer, seeks information rebutting any suggestion that Morrison's reasons for reclassification and termination are pretextual, among other reasons:  (1) Ms. William's personnel file and communications about her job performance; and (2) documents and communications regarding Freshfields' decision to classify her as Class of 2011 instead of 2010.  Ex. A, Freshfields Subpoena Request ¶¶ 1-2.  In this context, subpoenas of personnel files from former employers are routinely permitted.  *See Botta v. PricewaterhouseCoopers LLP*, 2018 WL 6257459, at *3 (N.D. Cal. Nov. 30, 2018) (permitting subpoena of former employer for job performance, compensation, and disciplinary records); *Dornell v. City of San Mateo*, 2013 WL 5443036, at *5 (N.D. Cal. Sept. 30, 2013) ("This district has found personnel files from former employers to be relevant and discoverable."); *Frazier v. Bed Bath & Beyond, Inc.*, 2011 WL 5854601, at *1 (N.D. Cal. Nov. 21, 2011) (allowing discovery of personnel files).  The *Dart* case provides no helpful guidance here because it ruled only that a release agreement absolved a company from its discovery obligations.  *See* 649 F.2d at 649.

Here, Ms. William challenges Morrison's decision to reclassify her. *See, e.g.*, FAC ¶¶ 144, 159. Yet she has testified that this was not the first (or even second) time a law firm concluded her class year did not align to her legal skills. Both Freshfields and Dewey & LeBoeuf classified and compensated her as a member of the Class of 2011 (not 2010). Ex. C, William Dep. 42:6-11. In a discrimination case, a defendant can justify a challenged employment decision with legitimate non-discriminatory explanations. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). That can include job performance or a failure of skill development. *Id.* at 1115. If it does so, a plaintiff must identify evidence suggesting that rationale is pretextual. *Id.*

Morrison concluded that Ms. William lacked the skills and experience of a 2010 Project Finance associate, Answer, Preliminary Statement, at 3; the parallel conclusions of two prior law firms are relevant to whether that decision was pretextual. For instance, Freshfields' decision to classify her as Class of 2011 may corroborate Morrison's assessment. *See, e.g., Compare* Answer, Separate Defenses, ¶ 30 (after-acquired evidence defense) *with Guitron v. Wells Fargo Bank, N.A.*, 2011 WL 4345191, at *3 (N.D. Cal. Sept. 13, 2011) (personnel records of former employer relevant to after-acquired defense). Moreover, Morrison is entitled to test the accuracy of representations William made when she applied for her job, which influenced Morrison's own initial classification. *See* FAC ¶ 42; *Guitron*, 2011 WL 4345191, at *3 (N.D. Cal. Sept. 13, 2011) (Plaintiff's personnel records and experience relevant to impeachment). And it is entitled to test her credibility, including her representations about her experience at Freshfields. *See* William Dep. 69:3-4; *Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 11237636, at *4 (S.D. Cal. Apr. 10, 2015) ("[A]ny documents that tend to implicate plaintiff Kellgren's credibility, such as disciplinary records and performance evaluations, are also discoverable."); *see also Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ("Rule 26 of the Federal Rules of Civil Procedure further permits the discovery of information which may simply relate to the *credibility* of a witness.") (emphasis in original).

That the subpoenas are tailored to identify material that is directly relevant to the parties' claims and defenses readily distinguishes this case from *Boar, Inc. v. County of Nye*, the case cited by Plaintiffs. 499 F. App'x at 716. In that case, the plaintiffs challenged Nye County's application of requirements for developing commercial real estate through RICO claims, constitution claims, and tort claims. The court denied the plaintiffs' request for the personnel files of two county employees who were involved in the dispute because there was no connection between the claims or defenses and the evidence sought. *Id.* Another case cited by Plaintiffs, *Emara v. Multicare Health Sys.*, solely addressed the relevance of subpoenas to the former employers of *individual defendants* in a discrimination case. 2012 WL 5205950, at *3. Here, however, the evidence sought is directly relevant to the discrimination claims. And the wage-and-hour cases on which Plaintiffs rely have no bearing here. *See, e.g.*, *Bicek*, 2013 WL 121477, at *2; *Bickley*, 2011 WL 1344195, at *4; *Serramonte*, 237 F.R.D. 220 at 223.

Finally, the documents sought are not available from other sources. *Internal* discussions about Freshfields' *internal* decisions are in its possession, and Ms. William identifies no alternative method of obtaining this information. And she suffers no burden as a result of a subpoena to a single previous employer. *Compare Sirota v. Penske Truck Leasing Corp.*, 2006 WL 708910, at *2 (N.D. Cal. Mar. 17, 2006) (finding that defendant's subpoenas, limited to plaintiff's two most recent places of employment, were sufficiently narrow) *with Lewin*, 2010 WL 4607402, at *1

4

(subpoenas to five former employers) and *Evening Entm't Grp. LLC*, 2012 WL 2357261, at \*1 (subpoenas to three former employers). Indeed, these records are limited to an approximately three-year period. *See Vista Unified Sch. Dist.*, 2008 WL 4937000, at \*1 (noting that "[e]mployee progress reports and performance evaluations may be relevant for impeachment purposes," and allowing defendants to re-issue subpoenas to plaintiff's previous employers for a four-year period). Morrison is entitled to seek out this information directly from Freshfields.

**Linklaters Subpoena.** Current employment records are also routinely discoverable in retaliation cases. *See Botta v. PricewaterhouseCoopers LLP*, 2018 WL 6257459, at \*2 (N.D. Cal. Nov. 30, 2018); *Miller v. St. Charles Health Sys., Inc.,* 2019 WL 486175, at \*2 (D. Or. Feb. 7, 2019). The narrowly tailored subpoena to Linklaters requests only: (1) communications Ms. Klayman had with Linklaters about claims against Morrison; (2) her performance evaluations and disciplinary records from an approximately one-year period, and (3) documents relating to her current compensation and benefits, including representations she made to Linklaters in negotiations. Ex. B, Linklaters Subpoena ¶¶ 1-4. Each goes to Ms. Klayman's claims or Morrison's defenses.

*First*, why Ms. Klayman left Morrison is hotly disputed. *Compare* FAC ¶¶ 214, 224 *with* Answer ¶¶ 214, 224. Communications between her and Linklaters, including any job application or interview notes, likely address that question. For impeachment and other reasons, these "party admissions, [] would be highly relevant." *Kellgren*, 2015 WL 11237636, at \*4.

*Second*, documents about Klayman's job performance are relevant. *Compare Tran v. Wells Fargo Bank, N.A.*, 2017 WL 1234131, at \*3 (D. Or. Jan. 20, 2017) ("Plaintiff's current employment records are relevant to his claims in light of his allegation that Defendant's conduct resulted in 'damage to [Plaintiff's] career'") *with* FAC ¶ 141 (accusing Defendant of "attempting to undermine her reputation with others in her field."). Ms. Klayman alleges that pregnancy and maternity leave—not the quality of her work (or lack thereof)—resulted in inequitable pay and prevented her promotion to partner. FAC ¶¶ 100-103. This includes alleging she was not paid for "partner-level work." FAC ¶ 97. Having alleged Morrison's reasons for its decisions were pretextual, FAC ¶ 118, Morrison is entitled to probe her performance and productivity at her current law firm. *Botta*, 2018 WL 6257459, at \*2 (permitting current employer subpoena for job performance and disciplinary records). Similarly, to the extent that she attributes the fact she was not promoted to partner at Morrison to discrimination, the reasons that she was not hired by Linklaters as a partner either, nor yet promoted to that position, may corroborate the non-discriminatory reasons Morrison did not promote her, and otherwise contradict any suggestion that those reasons are pretextual.

*Third*, Klayman's "claim for economic damages places records reflecting her . . . wages, benefits, duties, attendance records, performance evaluations and records of disciplinary action at issue." *Gragossian v. Cardinal Health Inc.*, 2008 WL 11387063, at \*4 (S.D. Cal. July 21, 2008); *Miller*, 2019 WL 486175, at \*1 (earnings from subsequent employers relevant to mitigation); Ex. B ¶¶ 3-4; FAC ¶ 210-211; 217-219. This information goes to causation and mitigation.

*Finally*, Ms. Klayman fails to articulate any specific alternative source of the *centrally maintained* information sought. Ex. B ¶ 2. Since Ms. Klayman does not have access to Linklaters' internal communications about her, Defendant's subpoena "seeks additional information that is not otherwise available." *See Kellgren*, 2015 WL 11237636, at \*5.

Respectfully Submitted,

_/s/ *Michele L. Maryott*_     __/s/ *Deborah K. Marcuse*_____

Michele L. Maryott                           Deborah K. Marcuse
GIBSON, DUNN & CRUTCHER LLP     SANFORD HEISLER SHARP, LLP
*Counsel for Defendant*                      *Counsel for Plaintiffs*

### ECF Attestation

    I, Michele L. Maryott, hereby attest that, pursuant to Civil L.R. 5-1(i)(3), concurrence in the filing of this document has been obtained from the above signatories.

              By:  /s/  *Michele L. Maryott*_____
                         Michele L. Maryott