# TAB F

**Declaration of J. Balas**

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
RONALD GOMEZ, SBN 295274
  rgomez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

AMANDA C. MACHIN, *admitted pro hac vice*
  amachin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306
Telephone: 202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRY WILLIAM and JOSHUA ASHLEY KLAYMAN,<br><br>                    Plaintiffs,<br>     v.<br><br>MORRISON & FOERSTER LLP,<br><br>                    Defendant. | CASE NO.: 3:18-cv-02542-JSC<br><br>**DECLARATION OF JULIA R. BALAS**<br><br>Judge:        Hon. Jacqueline Scott Corley<br><br>Action Filed: April 30, 2018 |

| | |
|---|---|
| 1 | RACHEL S. BRASS, SBN 219301 |
| | rbrass@gibsondunn.com |
| 2 | GIBSON, DUNN & CRUTCHER LLP |
| | 555 Mission Street, Suite 3000 |
| 3 | San Francisco, CA 94105-0921 |
| | Telephone: 415.393.8200 |
| 4 | Facsimile:  415.393.8306 |
| 5 | MICHELE L. MARYOTT, SBN 191993 |
| | mmaryott@gibsondunn.com |
| 6 | LAUREN M. BLAS, SBN 296823 |
| | lblas@gibsondunn.com |
| 7 | RONALD GOMEZ, SBN 295274 |
| | rgomez@gibsondunn.com |
| 8 | GIBSON, DUNN & CRUTCHER LLP |
| | 333 South Grand Avenue |
| 9 | Los Angeles, CA  90071-3197 |
| | Telephone: 213.229.7000 |
| 10 | Facsimile:  213.229.7520 |
| 11 | AMANDA C. MACHIN, *admitted pro hac vice* |
| | amachin@gibsondunn.com |
| 12 | GIBSON, DUNN & CRUTCHER LLP |
| | 1050 Connecticut Avenue N.W. |
| 13 | Washington, D.C. 20036-5306 |
| | Telephone: 202.955.8500 |
| 14 | Facsimile:  202.467.0539 |
| 15 | *Attorneys for Defendant* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRY WILLIAM and JOSHUA ASHLEY KLAYMAN, | CASE NO.: 3:18-cv-02542-JSC |
| | **DECLARATION OF JULIA R. BALAS** |
| Plaintiffs, | Judge:     Hon. Jacqueline Scott Corley |
| v. | Action Filed: April 30, 2018 |
| MORRISON & FOERSTER LLP, | |
| Defendant. | |

# DECLARATION OF JULIA R. BALAS

I, Julia Balas, declare as follows:

1. I am a partner at Morrison & Foerster LLP ("Morrison" or the "Firm"). I am a 2009 graduate of Columbia Law School. I have worked for Morrison as an attorney since 2013. From 2013 to 2019, I was an associate attorney. I asked to be promoted to of counsel on January 1, 2019, when I was a ninth-year associate. I negotiated my own salary and bonus eligibility. On January 1, 2020, approximately eleven years after I graduated from law school, I was promoted to partner, my current position. Since I began working for Morrison, I have worked in the Firm's Los Angeles office. Through my experience at Morrison, I have personal knowledge of the matters and information set forth in this declaration and, if called upon to testify thereto, can and would competently do so.

2. I joined Morrison as a lateral associate with partner Jeff Chester and of counsel Elizabeth Sluder. Before moving with them to Morrison, I had worked with them for about two years. Although I could have stayed at my prior firm, I thought the opportunity to continue working with them was the most natural next step in my career.

3. I have taken two maternity leaves since I joined Morrison. The first was from March 13, 2017 until September 5, 2017. I was an associate at the time. The second was from August 30, 2019 to January 17, 2020, during which I was promoted to partner. I understood that the custom at Morrison was for attorneys not to work during their leaves, and I did not work during either of my leaves. No one at Morrison suggested that I ought to work during my leaves if I wanted to be promoted, or otherwise pressured or signaled to me that I ought to be working during my leaves. To the contrary, my colleagues, including Mr. Chester and Ms. Sluder, were very supportive of my taking leave.

4. In early January, 2015, I was asked by Jeff Chester, then a partner at the Firm, to join a renewable energy deal for a client. I was told that I was needed because the of counsel who was then staffed on the deal, Josh Klayman, had a pre-planned three-week vacation at an important stage in the deal. I joined the matter in mid-January, 2015, after the term sheet had been drafted and negotiated and the initial draft of the purchase agreement prepared. In my experience at the Firm, after a partner becomes aware of scheduling conflicts like this on a team, they take proactive measures to staff the deal appropriately so that the departure of a team member is minimally disruptive when it ultimately

happens. I worked constructively with Ms. Klayman on the deal and then took over her duties when she left for her planned vacation. Ms. Klayman did not express, and I did not perceive, anger, annoyance or discomfort with the fact I had joined the deal.

5. Because Ms. Klayman's absence happened to fall during a particularly busy time in the deal, it made sense from a business perspective for me to continue working on the deal even after Ms. Klayman returned from her trip. During Ms. Klayman's absence, I had acquired significant knowledge of the deal's activity, and it would have been inefficient to relay this information to Ms. Klayman upon her return, in order for her to be brought up to speed and resume working on the deal. In my experience, this is common practice on project finance and other matters at Morrison. I don't recall Ms. Klayman ever asking to be put back on the deal, complaining about not being on the deal, or objecting to the fact that I was still on the deal.

6. I also interacted with Sherry William as part of my practice. I did not have any staffing authority over deals when I was an associate, and even when asked for my input, I would not have recommended Ms. William to be staffed on deals that I was working on, because we were both at a similar level of seniority and it rarely made economic sense to have two senior associates on a deal. I also had significantly more work experience than Ms. William, who despite being at a senior associate-level billing rate, had a junior associate-level of experience and skill set. When I became an of counsel and had staffing authority, I did not consider staffing her for these same reasons, and because I also had found her challenging to work with on the few deals that I had worked on with her. On those deals, I found that she was unwilling to follow even basic directives designed to make a deal flow more smoothly, like being consistent with document naming, changing the subject lines of emails to reflect their content, or being efficient and thoughtful about whether she was adding value. I never independently considered staffing Ms. William, and she did not ask me to staff her on any of the matters I was working on.

7. In one instance, shortly after Ms. William joined the firm, I had tried to give her advice about some of the idiosyncrasies involved in working with Mr. Chester and his clients in the renewable energy practice, but she was resistant to it. She complained that I was treating her like a junior associate, even though she had graduated from law school only one year after me. I told her that I

disagreed with her characterization and was just trying to be helpful, but agreed to keep her concern in mind.

I declare under penalty of perjury that the foregoing is true and correct. Executed on OCTOBER 2, 2020 in SHERMAN OAKS, CA.

_Julia R. Balas_
Julia R. Balas