MICHELE L. MARYOTT, SBN 191993
   mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

RACHEL S. BRASS, SBN 219301
   rbrass@gibsondunn.com
LAUREN M. BLAS, SBN 296823
   lblas@gibsondunn.com
RONALD GOMEZ, SBN 295274
   rgomez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

AMANDA C. MACHIN (admitted *pro hac vice*)
   amachin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Attorneys for Defendant
MORRISON & FOERSTER LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRY A. WILLIAM and JOSHUA ASHLEY KLAYMAN,<br><br>            Plaintiffs,<br><br>  v.<br><br>MORRISON & FOERSTER LLP,<br><br>            Defendant. | CASE NO. 3:18-cv-02542-JSC<br><br>**DEFENDANT MORRISON & FOERSTER LLP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM**<br><br>**Hearing:**<br>Date:    Thursday, December 10, 2020<br>Time:   9:00 a.m.<br>Place:   Courtroom E, 15th Floor<br>Magistrate Judge Jacqueline Scott Corley |

Gibson, Dunn & Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

**Table of Contents**

Page

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS & ISSUES TO BE DECIDED ............................... 1

III. ARGUMENT .......................................................................................................................... 1

    A. The Undisputed Evidence Shows No Maternity Leave Discrimination (Counts 1 and 3) ................................................................................................................... 2

        1. Ms. William's prima facie case fails ............................................................... 2

        2. Ms. William cannot prove causation ............................................................... 4

        3. Ms. William cannot prove pretext ................................................................... 6

    B. Ms. William Cannot Prove Her Retaliation Claims ...................................................... 8

        1. Ms. William cannot prove she did not receive work *because* of the lawsuit ............................................................................................................. 9

        2. Ms. William cannot prove she was terminated because of the lawsuit ......... 12

    C. Morrison Is Entitled To Summary Judgment On The Disparate Impact Claims ........ 14

    D. Ms. William Cannot Prove Her FMLA And CFRA Interference Claims (Counts 2 and 4) ........................................................................................................... 14

    E. Ms. William Cannot Prove Her Derivative Claims (Count 5 and 8) .......................... 15

    F. Ms. William Is Not Entitled To Punitive Damages. ................................................... 15

IV. CONCLUSION ..................................................................................................................... 15

Gibson, Dunn & Crutcher LLP

i

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beck v. UFCW, Local 99*,
    506 F.3d 874 (9th Cir. 2007)..................................................................................................2

*Black v. Grant Cty. Pub. Util. Dist.*,
    820 F. App'x 547 (9th Cir. 2020) .........................................................................................13

*Bowman v. CSX Transp., Inc.*,
    22 F. Supp. 3d 181 (N.D.N.Y. 2014) ...................................................................................15

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000)..................................................................................................9

*Delaney v. SimplexGrinnell L.P.*,
    No. CV10-05103 MEJ, 2012 WL 465177 (N.D. Cal. Feb. 13, 2012) ..................................15

*Earl v. Nielsen Media Research, Inc.*,
    658 F.3d 1108 (9th Cir. 2011)................................................................................................2

*Harper v. Lugbauer*,
    No. 11-CV-01306-JST, 2014 WL 1266305 (N.D. Cal. Mar. 21, 2014), aff'd, 709
    F. App'x 849 (9th Cir. 2017) ................................................................................................11

*Hawn v. Executive Jet Management*,
    615 F. 3d 1151 (9th Cir. 2010)...............................................................................................3

*Heard v. Lockheed Missiles & Space Co*,
    44 Cal. App. 4th 1735 (1996) ................................................................................................4

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)..............................................................................................................15

*Lam v. Univ. of Hawai'i*,
    40 F.3d 1551 (9th Cir. 1994)..................................................................................................7

*Manatt v. Bank of Am. Na.*,
    339 F.3d 792 (9th Cir. 2003)................................................................................................13

*Mann v. W. Contra Costa Unified Sch. Dist.*,
    No. C 00-2833 WHA, 2001 WL 764481 (N.D. Cal. June 18, 2001)......................................2

*McIndoe v. Huntington Ingalls, Inc.*,
    817 F.3d 1170 (9th Cir. 2016).........................................................................................8, 11

Gibson, Dunn & Crutcher LLP

ii
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Miller v. Int'l Bus. Machines Corp.*,
  No. C02-02118 MJJ, 2007 WL 1148996 (N.D. Cal. Apr. 18, 2007)................................................9

*Moran v. Selig*,
  447 F.3d 748 (9th Cir. 2006)..........................................................................................................3

*Peoples v. Cty. of Contra Costa*,
  No. C 01-00051, 2008 WL 2225671 (N.D. Cal. May 28, 2008) ....................................................7

*Stanley v. Univ. of S. Cal.*,
  178 F.3d 1069 (9th Cir. 1999)........................................................................................................2

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987).......................................................................................................13

*Tatum v. Schwartz*,
  405 F. App'x. 169 (9th Cir. 2010) ...............................................................................................13

*United States v. Ismay*,
  461 F. App'x 545 (9th Cir. 2011) ..................................................................................................6

*Wigent v. Sci. Applications Int'l Corp.*,
  19 F. Supp. 3d 1012 (D. Haw. 2014) .............................................................................................2

iii

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
JOSHUA ASHLEY KLAYMAN – CASE NO. 3:18-CV-02542-JSC

Gibson, Dunn & Crutcher LLP

## I. INTRODUCTION

Throughout this litigation, Ms. William has told a very specific story. Unfortunately, however, that tale does not match what she said time and again in what she testified were truthful candid moments. Her opposition brief is more of the same. Rather than grapple with her own admissions, Ms. William simply repeats the refrain that she was a "high performer on track for success." Opp. at 1. But no one ever said those words or anything like them about Ms. William when she was at Morrison, or at her prior firm—not even Ms. William herself. Try as she might to create a triable fact question by ignoring the facts on the ground, she cannot. Summary judgment should be entered against her.

## II. STATEMENT OF RELEVANT FACTS & ISSUES TO BE DECIDED

The relevant facts are stated in Morrison's opening motion. Ms. William's recitation of the facts involve numerous material mischaracterizations of the evidence as well as reliance on inadmissible evidence, including hearsay interrogatory responses, which Morrison has addressed below. The issues to be decided are the same as in Morrison's opening motion.

## III. ARGUMENT

Ms. William admitted she lacked the necessary training and experience to succeed as a project finance associate at Morrison and that she did not perform at the level required for her class year. She admitted that partners could, and did, choose to work with their pick of actually high performing associates—and that she was not one, writing "*I just feel like relative dead weight*"; "*im [sic] the weakest link in my group, objectively*"; "*everyone in my group is a fucking superstar.*" And she admitted that after filing this lawsuit, she billed hundreds of hours to "keeping current"—online shopping and surfing the internet—rather than aggressively seeking billable or pro bono work, or making other contributions.

Those facts, taken together with a close examination of the timeline of events in this record, demonstrate an undisputed legitimate nondiscriminatory reason for each of the decisions Ms. William complains of in her lawsuit. And those reasons cannot be disputed by Ms. William because she conceded—indeed, corroborated—each of them in contemporaneous chat messages with close friends. Because Morrison presented legitimate nondiscriminatory reasons for reclassifying, not staffing, and ultimately terminating Ms. William, and nothing in the opposition presents a dispute of material fact, summary judgment should be entered against her.

Gibson, Dunn & Crutcher LLP

1
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

1  **A.      The Undisputed Evidence Shows No Maternity Leave Discrimination (Counts 1 and 3)**

Ms. William attempts to preserve her two discrimination claims tied to her reclassification by focusing nearly exclusively on—and mischaracterizing—her 2016 evaluation.  But whether she complains of pay or promotion, Ms. William has adduced no evidence from which she could prove she suffered any adverse employment action *because* she took a maternity leave.  MSJ at 13–14.

**1.      Ms. William's prima facie case fails**

As a threshold matter, to establish pay discrimination, Ms. William must show that she was paid less than other attorneys for the same work *because* she took maternity leave.  MSJ at 18; *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999) ("[t]he crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e. whether a significant portion of the two jobs is identical"); *Mann v. W. Contra Costa Unified Sch. Dist.*, No. C 00-2833 WHA, 2001 WL 764481, at *3 (N.D. Cal. June 18, 2001) ("To state a prima facie case for unequal pay under Title VII, a plaintiff must prove the elements of a prima facie claim under the Equal Pay Act").  Ms. William cannot meet this standard, and so tries to argue a lesser standard applies, but that is wrong.  None of the caselaw she relies upon regarding the "similarly situated" requirement involves a pay discrimination claim or otherwise absolves a plaintiff of the obligation to establish a "common core" of tasks between herself and her comparators.  Opp. at 8–9 (*Wigent v. Sci. Applications Int'l Corp.*, 19 F. Supp. 3d 1012, 1031–32 (D. Haw. 2014) (marital status discrimination claim challenging non-fraternization policy); *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011) (age discrimination/wrongful termination claim); *Beck v. UFCW, Local 99*, 506 F.3d 874, 884 (9th Cir. 2007) (sex discrimination claim against union for failure to "aggressively" represent female member in termination grievance)).  Ms. William has not done so, and her claim accordingly fails.

Ms. William does identify two comparators in the 2010 salary class who were paid more when they advanced and she did not.  But both are litigation associates—not finance department associates, or even associates working on renewable energy issues in other practice groups.  MSJ at 18–19.  Ms. William presents no evidence that they shared a "common core" of day-to-day tasks.  Having failed to carry this burden, judgment on her pay claim is appropriate.

As for Ms. William's claim that the reclassification itself was discriminatory, Ms. William

Gibson, Dunn & Crutcher LLP

2
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

again tries to evade her burden, this time by overstating the law.  The Ninth Circuit did not hold in *Hawn v. Executive Jet Management*, 615 F. 3d 1151 (9th Cir. 2010), that the same supervisor requirement is "not permitted in this circuit."  Opp. at 9.  Instead, the Court acknowledged that "the presence or absence of a shared supervisor might be relevant [to determining who is similarly situated] in some cases," but then held that it was not relevant in that case because the plaintiffs' supervisor had been excluded from the decision to terminate them.  *Hawn*, 615 F. 3d at 1157.  The Court went on to reinforce that a plaintiff must show comparators are similarly situated in "all material respects."  *Id.* (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).  Here, there is no evidence that the only individuals who potentially meet that standard—those who also worked for Ms. Sluder and Mr. Chester in LA Project Finance—were not advanced because they did not take a maternity leave.  Indeed, one took leave at the *exact same* time as Ms. William and advanced.  And, in her own words, they were "superstars" with whom she would never catch up.  No inferences can be made of causation.

Unable to meet the actual standard, Ms. William further seeks to broaden who is a comparator by pointing to attorneys in the Finance & Projects Group who failed to meet their billable hours targets but were not reclassified.  Opp. at 10.  But she offers no evidence connecting not meeting that target to reclassification—unless you work fewer than 600 legal service hours.  MSJ at 21.  In any event, the undisputed evidence shows that Ms. William's reclassification stemmed not from her hours but because her substantive knowledge and skills did not justify advancement.  MSJ at 13–14.

Ms. William next turns to arguing that former ▇▇▇ associate ▇▇▇ was treated more favorably because he was "critiqued by the Firm for similar alleged performance issues to Ms. William, but with significantly different results."  Opp. at 9.  Different yes; better no.  For example, Ms. William complains that Mr. ▇▇▇ was offered "▇▇▇" and was given "▇▇▇" while she was not.  *Id.* at 9–10.  But it is undisputed that Morrison gave Ms. William assistance to improve her performance, including suggesting in her 2016 evaluation that she work with a partner who specializes in training (▇▇▇).  *See* Ex. 2 at MORRISON-289; Ex. 17 at MORRISON-10447–48; *see also* Ex. 141 (Drous) at 149:2-22 (Ms. Drous (ADG) recommended in January 2018 that Ms. William seek guidance from Julia Balas on ways to develop her legal knowledge).  Similarly, while Ms. William complains

Gibson, Dunn & Crutcher LLP

3

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

1  that Mr. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, she
2  received even more time.  She was not terminated in 2017—even though one partner thought that was
3  the right outcome.  Ex. 150 (Sluder) 163:20–164:4.  Rather, she was given a year to address her per-
4  formance shortfalls, and then, after that year, given *more than a year of notice* that she would be ter-
5  minated if she did not improve her productivity.  That she ultimately was told of her termination for
6  failure to improve her hours or performance four weeks before her last day of work, in a year in which
7  she had billed only 766 hours—40% of the Firm's expectation—is therefore of no moment.  Ex. 5 at
8  MORRISON-9893.

9  Finally, Ms. William argues that her claim can survive summary judgment absent viable com-
10 parators.  Opp. at 11 (citing *Heard v. Lockheed Missiles & Space Co*, 44 Cal. App. 4th 1735 (1996)).
11 True, but that would require direct evidence of discrimination.  *See Heard*, 44 Cal. App. 4th at 1755.
12 Ms. William cites to none in support of this argument.

13 **2.   Ms. William cannot prove causation**

14 In her first two years at Morrison, Ms. William confessed to friends on multiple occasions that
15 she lacked the necessary training and experience to function as a project finance associate at Morrison
16 (Ex. 37 (Ex. 502) at DOES34693–95; Ex. 42 (William II, Ex. 510) at DOES34426–27; *id.* at
17 DOES34415) and that she was behind in skill level compared to the "superstar" associates in her group
18 (Ex. 42 (William II, Ex. 510) at DOES34415, DOES34426-27; Ex. 37 (William II, Ex. 502) at
19 DOES34693–95).  She also admitted that she did not ask for help because she worried she would be
20 given junior-level work once others had seen just how far behind she had fallen.  Ex. 38 (William II,
21 Ex. 503) at DOES34488.  That candid self-assessment is perfectly consistent with Morrison's stated
22 reasons for reclassifying her—that Ms. William did not realize others had seen through the façade is
23 not discrimination and dooms her case.

24 Ms. William attempts to sidestep her admissions by arguing that she had "excelled" at her prior
25 firm.  Opp. at 7.  But the reviews she cites ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, nor answer her own admis-
26 sions, including that she was held back for two years at that firm ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
27 ▇▇▇.  Nor does the fact that Ms. William's resume and interviews made Morrison hopeful that she
28 could perform at the level of her peers say anything about whether she in fact did so.  *Id.*

Gibson, Dunn &
Crutcher LLP

4
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

Unable to avoid her admissions, Ms. William attempts to distract from them by focusing on two evaluations from the *2016* evaluation period to create a question of fact regarding whether she was performing at the expected level in the *2017* evaluation period in which she was reclassified. Opp. at 8. This focus on the 2016 evaluations is unavailing. There is no dispute, for example, that her 2016 review said that she was "always available, personable, bright, and very responsive" or a "born leader." *Id.* But neither of those quotes says anything about her legal skills and abilities or her substantive work. Ex. 150 (Sluder) at 186:2–12. And the 2016 evaluations *do speak* to those subjects: "[Ms. William] is slightly trailing behind on the legal knowledge required to function as a 6th year in the project finance group." Ex. 2 at MORRISON-288; *see also id.* ("In connection with drafting sales agreements, I would encourage her to slow down - watch for typos and grammar mistakes . . . and ask questions (when necessary) to confirm she understands the deal structure, client's intent, etc."; "one area where Sherry can improve is efficiency. She should be asking herself whether she is adding value and if the time can be justified to the client"). That is undisputed.

Perhaps for this reason Ms. William blurs the temporal distinctions between the 2016 and 2017 evaluation periods to try to create inferences where they do not exist. Her 2016 review covered the period from September 1, 2015 to August 31, 2016. Ex. 140 (30(b)(6)) at 140:15–20; Ex. 2. From September 1, 2016 through June 14, 2017 (when she went on leave), Ms. William continued to work for Mr. Chester and Ms. Sluder, and the 2017 review covered that 9.5-month period. So when Ms. William argues that "the record is devoid of any indication that either Ms. Sluder or Mr. Chester believed that Ms. William had performance issues before she took leave," Opp. at 14, that is incorrect.

Rather, it is undisputed that in this period, Mr. Chester was forced to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 148 (Chester) 114:3–14; White Decl. Ex. D (accounting spreadsheet).[1] Ms. Sluder was forced to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (November 2016) (Sluder Decl. ¶ 7; Ex. 52), to draft sections of an agreement that Ms. William had left undone with no good

---

[1] Ms. William attempts to create a dispute of fact as to whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is an indicator of performance by citing to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Opp. at 21, n.19; Marcuse Decl. Ex. 20. But that is night and day from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 148 (Chester) at 114:3–18.

5

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

reason (February 2017) (*Id.* ¶¶ 9-11), and to field an unsettling call from a senior-level client complaining that Ms. William had acted unprofessionally and that the client expected better service from the Firm (March 2017) (*id.* ¶ 13). At that point, Ms. Sluder could not entrust routine interactions to Ms. William, a seventh-year associate, and did most of the work herself. *Id.* ¶ 14. How did Ms. William characterize her work in this period? She admitted that she could not operate as a seventh year associate: "*it's hard enough I'm being expected to operate as a 7th year in my 'normal work' … since I've only been doing that for 1.5 years*." Ex. 154 at Ex. A, DOES50882-84. There is no evidence otherwise, leaving Ms. William to argue (without authority in a footnote) that these admissions are not "record evidence." Opp. at 15 n.9. That is wrong too: "[a] party's statement is not hearsay when it is used against him; rather it is an admission, a species of non-hearsay." *United States v. Ismay*, 461 F. App'x 545 (9th Cir. 2011) (admitting online chat messages). Ms. William told her friends the truth and the world a fiction. *See* Ex. 146 (William II) at 305:11–306:15; 306:16–308:13; 308:14–309:6.

Her last ditch argument that she was performing well because she was reclassified as opposed to not progressed fares no better. Opp. at 14. That ignores the undisputed evidence that shows she was reclassified as a compromise between Ms. Sluder's preference for termination and Mr. Chester's optimism that she could be "salvaged," with the two reaching a consensus that her billable rate should not increase. Ex. 148 (Chester) at 137:21–138:3; Ex. 150 (Sluder) at 163:20–166:5. Certainly Ms. William could have been held back, denied ▇▇▇▇▇▇▇▇, and been told that her problems reflected more than a failure to develop the skills expected for her class year—▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. 140 (30(b)(6)) at 180:1–3, 189:15–19; Ex. 53 (Comp. Brochure) at MORRISON-698. But that fact is not evidence that makes her reclassification discriminatory.

### 3. Ms. William cannot prove pretext

Ms. William attempts to manufacture bias against working mothers in order to establish pretext. Opp. at 14–15. None of the evidence she relies upon, however, creates a material question of fact for trial, because stray remarks generally are insufficient to establish discrimination (MSJ at 15), and because those alleged remarks are inconsistent with Mr. Chester and Ms. Sluder's actual conduct—a track record of working with and supporting mothers, including Ms. William.

First, Ms. William points to stray remarks purportedly made by Mr. Chester and Ms. Sluder

Gibson, Dunn & Crutcher LLP

6
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

within the first few months of her joining Morrison. Opp. at 15. But that argument does not meet Morrison's motion, which explained that for nearly two years after these alleged comments were made, Mr. Chester and Ms. Sluder staffed Ms. William (a parent) and gave time to prove herself. MSJ at 15; Ex. 3 (William Ex. 6). Those facts are undisputed. And while Ms. William attempts to dismiss Mr. Chester and Ms. Sluder's work with (and sponsorship for partner of) other working mothers, Opp. at 10 n.5, the record is undisputed that Ms. Balas took leave the same year as Ms. William, was not reclassified and was promoted to partner with widespread Morrison support. Ex. 137 (William Vol. I) at 149:21–150:5; Ex. 148 (Chester) at 101:1–8; Klayman Opp. at 13.

Sadly, Ms. William attempts to discredit the advancement of Ms. Balas, and the work of Ms. ███ who were in her group, took leave and were not reclassified. She suggests that Ms. Balas may have received "special dispensation" and was not reclassified after her leave because she had worked with Mr. Chester for a long time, and she wildly speculates that Ms. ███ may have advanced after leave because of this lawsuit. Opp. at 10 n.5, 11. Ms. William knows better—she herself wrote that what really distinguishes Ms. Balas and Ms. ███ is that they were "*superstars*," "*multi-disciplinary and industry experts*," and "*business people and lawyers*" who "*literally do it and know it all*," while she was "*relative dead weight*." Ex. 49 at DOES33947; Ex. 154 at DOES50912, 29, 64; Ex. 47 (William II, Ex. 516) at DOES312. Her words demonstrate there is no pretext. And when not suggesting their success was ill-deserved, Ms. William deals with the success of mothers in her group by citing to caselaw that does not address the question of pretext. *See Peoples v. Cty. of Contra Costa*, No. C 01-00051, 2008 WL 2225671, at *8 (N.D. Cal. May 28, 2008) (favorable treatment of member of protected class did not defeat *prima facie* case); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1561 (9th Cir. 1994) (analyzing favorable treatment of member of protected class outside the context of pretext).

Similarly, while Ms. William selectively cites as evidence of bias Mr. Chester's experience with a former associate who left the practice of law after having a child, the uncontroverted evidence tells the opposite story. Mr. Chester testified that he has repeatedly tried to convince this attorney (a mother) to come back to work with him and, to this day, would still offer her a job. Marcuse Decl. Ex. 3 at 179:1-180:24. Finally, Ms. William points to a statement in ███ as evidence of bias. But his acknowledging an objectively true fact—███

Gibson, Dunn & Crutcher LLP

7
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

██████████████████████████████████████████████████████████████

██████████████████████████, does not demonstrate bias—particularly given that he reviewed one of those two associates as "████████████," "██████████████████," and "██████████████████████████████████████." Ex. 16 at MORRISON-9958.

Second, Ms. William argues Mr. Chester was "intolerant" of her parental status, specifically citing his alleged denial of a relocation opportunity to the Firm's Tokyo office. Opp. at 15. But once again, Ms. William tells one story here, and told another in private. What did she tell friends at the time? The truth—that she "couldn't do that" due to her husband's job and other unsavory reasons. Ex. 48 at DOES33878–84. And her bald accusation that Mr. Chester purposefully scheduled a call while she was at her daughter's doctor's appointment, Opp. at 15, need not be credited. *See McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("Arguments based on conjecture or speculation are insufficient" to defeat summary judgment).

Finally, Ms. William tries to convert her abandoned disparate impact claim into an argument about the treatment of other female associates who were not progressed with their class year. Opp. at 16. As an initial matter, Ms. William presents *absolutely no evidence* regarding these associates—who they are, what their evaluations looked like, whether they billed 600 hours, etc. In other words, there is no evidence that any of these reclassifications were not justified by legitimate nondiscriminatory reasons. Moreover, her statistics fail to take into account the fact that while the associates in these *16* instances did not progress after taking leave, *105* associates (86.7%) did. Brass Decl. ¶ 159. And while Ms. William tries to argue that these statistics somehow evidence discriminatory intent, she leaves unanswered Morrison's proof of the business necessity of its reclassification policy. MSJ at 23. In short, while Ms. William cites many cases about what statistical evidence can theoretically prove, there is no dispute of fact that it does not prove pretext here.

**B.     Ms. William Cannot Prove Her Retaliation Claims**

In order to prove retaliation, Ms. William must establish that she was denied work opportunities, and ultimately terminated, *because* she filed this lawsuit. However, the true reasons she was unable to secure sufficient work to meet her hours requirement are undisputed—she was "*the weakest link in [her] group objectively*" and failed to make the necessary effort to create a demand for her legal

Gibson, Dunn & Crutcher LLP

8

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

services. And those low hours—not the filing of this lawsuit *18 months earlier*—caused her termination. Because the reasons surrounding Ms. William's inability to meet her hours are undisputed, Morrison is entitled to summary judgment on Ms. William's retaliation claims (counts 5 and 6).

### 1. Ms. William cannot prove she did not receive work *because* of the lawsuit

Ms. William presents two unconvincing arguments in an effort to establish that this lawsuit is the reason she did not attract work: (a) that Mr. Chester and Ms. Sluder never assigned her work after she filed the lawsuit, and (b) that she was "frozen out" of her group. Because each is unsupported by evidence, Ms. William cannot create a question of fact regarding this essential element of her claim.

First, she argues that *after* she filed suit, Mr. Chester and Ms. Sluder "never again assigned her substantive legal work or staffed her on a deal." Opp. at 17. This is demonstrably untrue. *See* Sluder Decl. ¶ 19 (describing working with Ms. William on a deal for a renewable energy client in *May 2018*). Nor can Ms. William create an issue of fact by again intentionally blurring the timeline. The undisputed evidence is that both Mr. Chester and Ms. Sluder concluded that Ms. William's performance issues made it difficult to staff her on deals *well before* she filed her lawsuit. *Compare* Marcuse Decl. Ex. 49 (*January 2018* email from Ms. Sluder "Given her experience level, she's too expensive to work on my matters, unless we steeply discount her rate") *with* Dkt. No. 1 (April 30, 2018 complaint). There is no temporal connection between not staffing Ms. William and her lawsuit; her cited cases about inferences or retaliatory intent are therefore inapposite.

Second, Ms. William argues that, following the lawsuit, her group "froze her out entirely, which further supports a causal connection." Opp. at 17. As evidence that she was excluded from meetings and that offices adjacent to hers were emptied, Ms. William relies exclusively on inadmissible hearsay, namely her own interrogatory responses. *Compare* Opp. at 17–18 *with Miller v. Int'l Bus. Machines Corp.*, No. C02-02118 MJJ, 2007 WL 1148996, at *2 (N.D. Cal. Apr. 18, 2007). Her other evidence of "antagonism" relates to social ostracization by *the junior associates* not responsible for assigning work. *See also* MSJ at 16; *see Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000). Finally, Ms. William argues that she was "not invited to a attend conference" but offers no evidence that other associates were invited to attend, and her own evidence shows that she was allowed to do so after expressing an interest. *See* Marcuse Decl. Ex. 33. In short, Ms. William has no evidence of retaliation.

Gibson, Dunn & Crutcher LLP

9
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

In any event, Ms. William fails to establish that Morrison's legitimate nondiscriminatory reasons for her lack of utilization were pretextual. It is undisputed that the LA project finance partners were slow in early 2018. MSJ at 8. Ms. William admitted as much to a friend in February 2018, saying she was worried she would be laid off since the group had not brought in "any new deals since [O]ctober." Ex. 87 at DOES35201–04. That other associates in her group were nevertheless able to meet their hours in 2018 and 2019 does not establish pretext, as they were by Ms. William's own admission better lawyers. When Mr. Chester or Ms. Sluder did bring in a new deal, "work [naturally flowed] to the people who were the most capable of doing it" which meant "work would flow [to] Elizabeth, Julia, ▮, ▮, and then Sherry." Ex. 148 (Chester) at 170:24–171:6; Ex. 150 (Sluder) at 219:18–220:9. This legitimate nondiscriminatory reason for not staffing Ms. William is not in dispute (*see* Opp. at 20)—she admitted that partners can staff a matter as they choose (Ex. 146 (William II) at 384:22–385:10), and confided to close friends that the other associates in her group were "*superstars*" while, in comparison, she was "*dead weight*" and "*the weakest link in [her] group objectively*." Ex. 47 (William II, Ex. 516) at DOES312; Ex. 87 (William II, Ex. 521) at DOES35225.

Moreover, the other associates in her group also developed alternative work streams. *See* Ex. 148 (Chester) at 98:22-99:10; *see also* Ex. 16 at MORRISON-9936; Ex. 15 at MORRISON-9990 (Balas and ▮ evaluations discussing work for partners outside of their group). Ms. William, by contrast, failed to proactively seek work from attorneys outside of her group or establish an internal demand for her services. MSJ at 16. It is undisputed that she reached out to *just 13 people, partners and associates*, across all of 2018 and 2019, often with little to no follow up. She presents no evidence of following her mentor Geoff Peck's advice to regularly speak with those with whom she wanted to work, give internal presentations or author articles. *See* Ex. 130 (Peck Ex. 23). Nor does she dispute that she actually *turned down work*—offering the uncredible explanation that she rejected guaranteed work (and an opportunity to establish a relationship with a new partner) to leave open the *possibility* of future work with Mr. Chester, *after* claiming he discriminated against her. *See* Opp. at 19, n.16. Rather than attempt to dispute any of this evidence, Ms. William instead argues, without evidence, that the onus is not on associates to find work. *Id.* at 20. But the fact that partners made efforts to staff associates on their matters does not create a dispute of fact, as Ms. William would suggest, because

Gibson, Dunn & Crutcher LLP

10
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

Morrison partners also made such efforts for her—even if she rebuffed them. Ex. 148 (Chester) at 96:9-14; Ex. 150 (Sluder) at 144:17–145:12; Ex. 149 (Wojciechowski) at 45:3–19, 50:23–51:22; Ex. 127 (Chester: "Sherry is available and I would encourage you to use her") at MORRISON-18051; Marcuse Decl. Ex. 78 (Sluder recommending Ms. William for a pro bono project). Nor does it change that the onus is on the associate to meet her hours requirement. *See* Ex. 143 (Peck) at 230:24–231:10.

      Ms. William falls back to arguing that another Morrison lawyer "acknowledged that she was not receiving work because" of the lawsuit. Opp. 20. But Mr. ▓▓▓▓' comment does not prove what Ms. William contends. It merely demonstrates that Ms. Sluder refrained from speaking negatively about Ms. William, as she could easily have answered those questions by sharing her candid views, but instead respected the *Doe* designation ordered by this Court. It was not until Ms. Sluder said "I don't know. Can't talk about it" that Mr. ▓▓▓▓ "wondered" aloud if Ms. William was a plaintiff in the lawsuit. Even if Mr. ▓▓▓▓' statement was not inadmissible hearsay, it would still be of no moment. *See Harper v. Lugbauer*, No. 11-CV-01306-JST, 2014 WL 1266305, at *14 (N.D. Cal. Mar. 21, 2014), *aff'd*, 709 F. App'x 849 (9th Cir. 2017) (an out of court statement in support of an opposition to summary judgment was "hearsay and therefore [] inadmissible and insufficient to defeat summary judgment"). There is no evidence that Mr. ▓▓▓▓ denied Ms. William work because she sued the firm, nor any evidence that he had any reason to connect her low hours and the lawsuit other than pure speculation. This is insufficient to establish pretext or create a dispute of fact. *McIndoe*, 817 F. 3d at 1173.

      Ms. William also argues that the treatment of male associates demonstrated that Morrison's reasons for not staffing Ms. William were pretextual. Opp. at 21–20, n.20. Specifically, Ms. William claims that the Firm assisted Mr. ▓▓▓▓ but not her, with performance shortfalls. As discussed above, however, the undisputed evidence shows otherwise. For example, Morrison presented evidence that, ▓▓▓▓▓▓▓▓, Ms. William's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. 143 (Peck) at 217:6–13; White Decl. Ex D. And Ms. William was assigned Geoff Peck as a mentor and was given the opportunity to work with Rick Jenney for legal training. Ex. 2 at MORRISON-289. While Mr. ▓▓▓▓ availed himself of this training opportunity (Marcuse Decl. Ex. 8 (Wojciechowski) at 125:17–126:4), there is no evidence that Ms. William did so. Moreover, despite her paltry efforts to secure work for herself, multiple partners at the firm, including Mr. Chester, Ms.

Gibson, Dunn & Crutcher LLP

11
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

Sluder, and Mr. Wojciechowski, recommended Ms. William to other partners after she filed the lawsuit. She presents no admissible evidence to the contrary, relying instead on her own interrogatory. *Compare infra* p. 11 *with* Opp. at 20 n.17.[2]

Moreover, even if the Court finds that Mr. ▮▮▮▮ was treated differently, there are undisputed reasons wholly unrelated to his gender. He was very good at "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and brought in a matter worth nearly $750,000 in billable time. Ex. 149 (Peck) at 268:24–269:21; Ex. 85 (Email from Moser to Herman); Ex. 149 (Wojciechowski) at 141:3-142:5. By contrast, Ms. William failed to make the effort to increase her internal demand and instead billed over 700 hours to "keeping current" which included time "at my desk doing nothing," shopping online, and browsing social media. Ex. 137 (William I) at 191:7–192:14.

**2.   Ms. William cannot prove she was terminated because of the lawsuit**

Ms. William argues that she was terminated not for an almost complete lack of productivity over two years, but rather because she withdrew her request to proceed under a pseudonym. Opp. at 18. In so arguing, Ms. William describes Morrison's good faith request to lift the *Doe* designations as a "naked bid to get her to abandon the action." *Id.* This blatantly mischaracterizes the record.

*From the beginning*, Morrison informed both Ms. William *and this Court* that it would seek to lift the *Doe* designation at an appropriate time. *See* Dkt. No. 44 (Feb. 8, 2019); Dkt. No. 60 (Mar. 16, 2019); Maryott Reply Decl. Ex. 5 (April 18, 2019 Hearing Tr.) ("we do agree there may come a time where it will become necessary [to oppose Plaintiffs' request to proceed under pseudonyms]"); *id.* at ¶ 7 (September 23, 2019 Status Conference wherein Morrison raised their intent to seek to lift the *Doe* designation). This culminated with a November 19, 2019 email to Ms. William's counsel attaching a draft motion to lift pseudonyms, which states in full:

> As previously discussed, we think the time has come to lift the pseudonyms in this case. We have prepared the attached draft motion, which we are prepared to file next week, on November 27, noticing it for the first available hearing date (January 16). To avoid unnecessary motion practice, we would propose that the parties stipulate to lifting the pseudonyms, and agree to a specific date in January on which those pseudonyms will be lifted. Barring that, we will proceed with the filing. We presume that, if such a filing is necessary, you consent to sealing the exhibits, but please let us know.

---

[2] While Ms. Sluder refused to supervise her pro bono project, there is no evidence that the proffered reason was untrue ("I'm running 4 teams right now and am past capacity"). *See* Marcuse Decl. Ex. 78.

Gibson, Dunn & Crutcher LLP

12
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

*Id.* Ex. 6. This is the communication Ms. William describes as a threat—one that simply moves forward an intention Morrison had communicated for over nine months and twice to this Court. There is no possible basis to infer, as Ms. William asks, that Morrison fired her for doing exactly what Morrison asked her to do exactly when Morrison asked her to do it. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (only "rational or reasonable" inferences are drawn in favor of the non-moving party).

Absent this untenable contrafactual inference, the only evidence in the record about why Ms. William was terminated is undisputed. In December 2018, Morrison warned her that "failure to demonstrate significant and sustained improvement in her billable and total hours contributions could result in termination," and a year later it did so—*18 months* after Ms. William filed her lawsuit. Ms. William's reliance on *Black v. Grant Cty. Pub. Util. Dist.*, 820 F. App'x 547, 551 (9th Cir. 2020), is unconvincing given its finding that an *8-month* gap did not defeat causation. She cannot establish a temporal connection between her termination in December 2019 and the filing of her lawsuit in April 2018. *See Tatum v. Schwartz*, 405 F. App'x. 169, 171 (9th Cir. 2010) (one-year proximity insufficient for inference of causation); *Manatt v. Bank of Am. Na.*, 339 F.3d 792, 802 (9th Cir. 2003) (9-month lapse between complaint and adverse decision insufficient to establish causation).

Nevertheless, assuming that Ms. William establishes causation, her termination was justified. Her hours indisputably fell far below expectations in 2018 and 2019. While she argues (without evidence) that there was a firmwide conspiracy to deny her work because of this lawsuit, Opp. at 22, there is actual evidence showing that Ms. William failed to engage in sufficient effort to attract that work, and even turned down work that was offered to her.

Similarly, Ms. William argues that the fact she was progressed in 2018 undercuts the argument that her performance deficiencies warranted termination in 2019, but the fact that after two years she was able to advance does not refute later performance deficiencies. Tellingly, Ms. William's argument completely ignores these documented performance issues. Specifically, in her 2019 evaluation, Mr. Peck noted that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Marcuse Decl. Ex. 69. Victor Liang similarly documented severe performance issues. *Id.* Liang Decl. at ¶¶ 9–18 (describing

Gibson, Dunn & Crutcher LLP

13
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

a draft as "of the quality expected from a first or second-year associate").³

Grasping at straws, Ms. William points to the treatment surrounding the departures of Mr. ███ and ███ associate ███. Comparisons to Mr. ███'s departure are inappropriate because ███. *See* Marcuse Decl. Ex. 83. ███ is only available to someone "close to partnership who is not going to make partner, but is not seriously underperforming." Ex. 151 (Stone Herman) at 54:6–55:15. Ms. William presents no evidence to dispute that this characterization applied to Mr. ███ while she was not "close to partnership" but instead seriously underperforming. And while she characterizes Mr. ███ notice period as longer, Opp. at 22, n.20, that willfully ignores that she was on notice for *over a year* that if she failed to improve her hours, she could be terminated. Yet she proceeded to coast and bill only 766 hours—40% of her target.

In sum, Ms. William fails to create a question of material fact that her termination was anything but justified. Summary judgment is therefore warranted.

**C.    Morrison Is Entitled To Summary Judgment On The Disparate Impact Claims**

Ms. William makes no attempt to defend her disparate impact claim. That leaves undisputed that the ratio of the advancement rate for women who took leave compared to the advancement rate for men and for women who did not is not statistically significant and that Morrison's reclassification policy is justified by a business necessity. MSJ 21-24.

**D.    Ms. William Cannot Prove Her FMLA And CFRA Interference Claims (Counts 2 and 4)**

Ms. William attempts to rescue her interference claims by arguing only that there is an issue of fact as to whether leave was a negative factor in the Firm's decision to reclassify her. Opp. at 23. In so arguing, she relies on two out-of-context statements from Mr. Chester. Neither supports her claim. To the contrary, both of the cited documents confirm that Ms. William was reclassified *because* of her performance deficiencies. *See* Marcuse Decl. Ex. 46 ("she was somewhat behind when she started with us. Although she's made a lot of progress, she was still a little behind") and Marcuse Decl. Ex. 70 ("███

---

³ Ms. William attempts to explain away this critique by arguing that she was forced to work in areas outside of her practice area. MSJ at 22. But according to Ms. William, she came to Morrison with a "developed expertise" in multiple areas of finance, including leveraged finance—the types of deals she worked on with Mr. Peck. *See* Opp. at 2; Marcuse Ex. 16 (leveraged finance experience).

14
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊"). Mr. Chester's acknowledgment that she took a maternity leave that same year (an undisputed fact) does not make the leave a negative factor in her reclassification. If anything, it explains why she was not given the harsher not progress result. MSJ 22-23. Summary judgment is warranted. *Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 191 (N.D.N.Y. 2014) (granting summary judgment on interference claim when "the overwhelming evidence shows that [plaintiff] was terminated for his well-documented poor performance and insubordinate behavior"); *see also Delaney v. SimplexGrinnell L.P.*, No. CV10-05103 MEJ, 2012 WL 465177, at *7 (N.D. Cal. Feb. 13, 2012) ("Plaintiff has not shown that his termination was caused by anything other than his poor performance.").

Ms. William also has not adduced evidence that her leave was a *negative* factor in her reclassification—a practice she does not dispute is justified by business necessity. Nor does she present any evidence that her leave was viewed *negatively* by Mr. Chester or Ms. Sluder. For example, Ms. Balas, who did not have the same skill and knowledge deficiencies, also took maternity leave in 2017 and was not reclassified. Ms. William's maternity leave in a given year does not (and cannot) insulate her from facing the consequences of her demonstrated and undisputed performance deficiencies.

**E.     Ms. William Cannot Prove Her Derivative Claims (Count 5 and 8)**

Because Morrison is entitled to summary judgment on Ms. William's discrimination and retaliation claims, her wrongful termination and UCL claims fail. *See* MSJ at 18, n.3; *id.* at 24.

**F.     Ms. William Is Not Entitled To Punitive Damages.**

Ms. William claims that there is a triable issue of fact with respect to her bid for punitive damages. Opp. at 24–25. She relies generally on the same paltry evidence, rather than offer clear and convincing evidence that (1) Morrison acted with "malice or with reckless indifference to the federally protected rights of an aggrieved individual," and (2) punitive damages can be imputed to Morrison under a "managing agent" theory. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 539–40 (1999). She has not even attempted to identify anyone who could be considered a "managing agent" for purposes of imputing liability. Summary judgment should accordingly be granted on punitive damages.

### IV.     CONCLUSION

The Court should grant summary judgment to Morrison on all of Ms. William's claims.

Gibson, Dunn & Crutcher LLP

15

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC

Dated: November 24, 2020

                                            MICHELE L. MARYOTT
                                            RACHEL S. BRASS
                                            LAUREN M. BLAS
                                            RONALD GOMEZ
                                            AMANDA C. MACHIN
                                            GIBSON, DUNN & CRUTCHER LLP

                                  By:  */s/ Rachel S. Brass*
                                                    Rachel S. Brass

                                  Attorneys for Defendant
                                  MORRISON & FOERSTER LLP

Gibson, Dunn & Crutcher LLP

16
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF
SHERRY A. WILLIAM – CASE NO. 3:18-CV-02542-JSC